FILED

OCT 02 2026

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 26-30161-mvl7** |
| JASON EMORY McKEMIE, | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

**DEBTOR'S REPLY IN SUPPORT OF THE MOTION FOR ORDER AUTHORIZING RULE 2004 SUBPOENAS [ECF 97], AND RESPONSE TO THE OBJECTION OF GWENDOLYN LAURA ULIJASZ [ECF 111]**

**TO THE HONORABLE MICHELLE V. LARSON, UNITED STATES BANKRUPTCY JUDGE:**

Jason Emory McKemie, the Debtor, replies in support of his Motion for Order Authorizing Rule 2004 Subpoenas [ECF 97] (the "2004 Motion") and in response to the Objection of Gwendolyn Laura Ulijasz [ECF 111] (the "Objection"), and respectfully states:

1. The Objection does not defend privacy; it defends concealment. Stripped of its authorities, it asks for two things: that any records be produced to the Trustee alone and "not be disseminated to the Debtor absent further order," and that the Debtor be "prohibit[ed]" from using any records in the divorce court "or in any other proceeding." Objection ¶ 43(c)(v)–(vi). Those two restrictions, not any of the doctrinal objections that precede them, are the point of the Objection, and they would defeat the only purpose the records serve: tracing where the community's money went.

2. The Trustee's Form 1 identifies the estate's asserted interests in Voya, the Accenture Voluntary Equity Investment Plan, the Accenture restricted stock, the AdvantiGen investment, the Ameriprise accounts, and "all marital assets and funds acquired or retained by non-filing spouse," and values them at "Unknown." ECF 91. A current balance does not answer where prepetition withdrawals went or what asset received them. Movant's own filings concede the gap: she admits that her account was overdrawn on October 14, 2025 and later refilled, and that "[n]o one has identified an asset into which any earlier funds can be traced." ECF 110 ¶ 13. Transfer, linked-account, receiving-account, and successor-account records are the only records that answer the question, and they are the records the Objection seeks to withhold.

3. The local rule does not bar the discovery; it changes the vehicle. Local Bankruptcy Rule 2004-1(b) provides that where a contested matter or adversary proceeding is pending, the adversary discovery rules (Bankruptcy Rules 7027–7036) "govern discovery pertaining to such contested matter or adversary proceeding." It routes the discovery; it does not deny it. If, as Movant now argues, the records "pertain to" her § 362 contested matter, then the Debtor — the respondent to that contested matter — is entitled to that very discovery under Part VII, and the Court can and should authorize it on that basis. Movant cannot have it both ways. In the same week she tells this Court that the records pertain to a contested matter and so must

await adversary-rule discovery (Objection ¶¶ 12–16), she asks this Court, in her annulment motion, to decide that same contested matter now, on her declaration, before the Debtor obtains any discovery at all [ECF 110 ¶¶ 2(b), 15]. The records are either discoverable because they pertain to the contested matter, or the contested matter cannot be decided without them. Either way they must be produced.

4. Most of the requests pertain to estate administration, not to either pending proceeding. The discharge adversary (No. 26-03034-mvl) concerns InTouch Credit Union's objection to discharge and a single vehicle; it has nothing to do with the deposit, brokerage, retirement, and compensation records the 2004 Motion seeks. Those records are sought to identify and value the community-property interests the Trustee listed for administration — the core use Rule 2004 exists to serve. In re Mirant Corp., 326 B.R. 354, 356 (Bankr. N.D. Tex. 2005), holds that "Rule 2004 contains no exceptions" and declines to write one for anticipated litigation; Movant concedes that holding. The two decisions she offers to narrow it do not fit this motion. Snyder v. Society Bank (In re Snyder), 181 B.R. 40 (S.D. Tex. 1994), aff'd, No. 94-60572 (5th Cir. Apr. 12, 1995), was a debtor subpoenaing the records of the very bank he was separately suing, for use in that suit; here the targets are neutral third-party custodians of records the Trustee needs to value the estate. And Matter of Wilcher, 56 B.R. 428 (Bankr. N.D. Ill. 1985), forbids a "wholesale investigation of a non-debtor's private business affairs"; it does not forbid examination into the debtor's own community-property interest and the administration of his estate, which is exactly what § 541(a)(2) and Rule 2004(b) make relevant.

5. The temporal scope is tailored to the tracing question, not untethered from it. The window begins January 1, 2024 because the community's funds were moved before the divorce was filed in December 2024, and a statement that predates a transfer is the only record that shows the transfer. It runs to the present because, as Movant concedes, no one has identified the asset into which the earlier funds were traced — which is precisely what a later statement shows. Movant's demand that the Debtor first "identify the petition-date interest to be traced" before he may obtain the records, Objection ¶ 31, is circular: the records are what identify it. Her own admission that the overdraft "does not by itself exclude earlier withdrawals having been placed in another asset or later redeposited" [ECF 110 ¶ 13] is the reason the records are indispensable.

6. The Trustee's role is a reason to order production to the Trustee, not a reason to deny it. Movant does not dispute that the Debtor is a party in interest entitled to seek Rule 2004 relief; she concedes it. Objection ¶ 36. Section 521(a)(3) requires the Debtor to cooperate with the Trustee; it does not strip a party in interest of the examination Rule 2004 expressly allows "any" party in interest to pursue. The Debtor does not object to production to the Trustee. He objects to being excluded from it. The Debtor's knowledge is necessary to identify the account relationships and explain the transactions — and the estate's own records, which would otherwise supply that knowledge, were removed from the Debtor's residence on April 16, 2026. Simultaneous production to the Trustee and to the Debtor is the practical, reviewable solution, and it fully answers the concern the Objection asserts.

7. The health-plan request seeks economic and administrative records, not medical substance. The Debtor seeks enrollment status, dependent-eligibility events, premiums, employer contributions, and the health savings account's balances, contributions, distributions, access credentials, and beneficiary changes — the records that show when and how his coverage and HSA access were terminated and controlled. He does not seek diagnoses or medical-claim

substance. To the extent any responsive record contains protected health information, 45 C.F.R. § 164.512(e) is satisfied by a qualified protective order limiting use to these proceedings and requiring return or destruction — the ordinary tool for the problem, not a reason to strike the economic records entirely. Movant herself placed the January 2026 statement of that account before the Court as an exhibit to her annulment declaration; she cannot use the account's records when they help her and wall them off when they do not.

8. The two restrictions the Objection actually seeks must be refused. A direction that the records be produced to the Trustee but withheld from the Debtor would make the party with the most knowledge of the accounts the one party forbidden to see them, and would preserve the very information monopoly that drove the Debtor into this Court. A blanket prohibition on using the records in Cause No. DF-24-18010 is equally improper: the records concern the same community assets the State Court must characterize and divide once the estate's interest is determined, subject to this Court's control over property of the estate, and admissibility, confidentiality, and lawful use are matters the receiving court and tailored protective terms can address. On September 18, 2026, the State Court vacated the Decree's division and ordered a new trial on division and characterization, to be set once the stay is lifted or this case is disposed of. The property record must now be reconstructed, and that reconstruction requires neutral, institution-origin records. The state-court ruling strengthens the need for the subpoenas; it does not reduce it.

9. The requested subpoenas do not adjudicate ownership and impose no burden on Movant; they run to the custodians. They locate the estate, test the claimed separate-property sources, identify transfers and replacement assets, and allow the Trustee and the parties to evaluate recovery and administration. The Debtor conferred to the extent possible and served the 2004 Motion on Movant and her counsel by email on August 21, 2026 as a courtesy; Movant has appeared and been heard.

**PRAYER**

The Debtor asks the Court to overrule the Objection [ECF 111] except as to tailored redaction of any protected health information under a qualified protective order; grant the 2004 Motion [ECF 97] as filed; authorize the Clerk to issue, and the Debtor to serve, the subpoenas identified in the 2004 Motion; direct that production be made simultaneously to the Chapter 7 Trustee and to the Debtor; reject any prohibition on the lawful use of the records in Cause No. DF-24-18010 or in any other proceeding; permit health-benefit discovery limited to economic and administrative records; assess no fees or costs against the Debtor; and grant such other and further relief as is just.

Respectfully submitted,

Jason Emory McKemie
Debtor, pro se
539 W. Commerce St., #2010
Dallas, Texas 75208

(214) 519-8958
jmckemie@mckemie.net

**CERTIFICATE OF SERVICE**

I certify that on the 1st day of October, 2026, a true and correct copy of the foregoing, with its exhibit, was filed with the Clerk of the United States Bankruptcy Court for the Northern District of Texas and served by email and first-class United States mail on: Richard G. Dafoe, Waddell Serafino Geary Rechner Jenevein, P.C., 1717 Main Street, Suite 2500, Dallas, Texas 75201, rdafoe@wslawpc.com; Jonathan D. Steele, Beermann LLP, 161 N. Clark Street, Suite 3000, Chicago, Illinois 60601, jsteele@beermannlaw.com; and Sara A. Boucher, Beermann LLP, saboucher@beermannlaw.com, counsel for Gwendolyn Laura Ulijasz; Areya Holder Aurzada, Chapter 7 Trustee, Law Office of Areya Holder, P.C., P.O. Box 2105, Addison, Texas 75001-2105, areya@holderlawpc.com; the Office of the United States Trustee, 1100 Commerce Street, Room 976, Dallas, Texas 75202, ustpregion06.da.ecf@usdoj.gov; and Loriann A. Martinez, Quilling, Selander, Lownds, Winslett & Moser, P.C., counsel for InTouch Credit Union, lmartinez@qslwm.com.

Jason Emory McKemie

# EXHIBIT A

*Memorandum Ruling signed September 18, 2026, Cause No. DF-24-18010 (Hon. Ashley Wysocki)*

**301ST JUDICIAL DISTRICT COURT**
**JUDGE ASHLEY WYSOCKI**
GEORGE L. ALLEN, SR. COURTS BUILDING
600 COMMERCE STREET
DALLAS, TEXAS 75202

**MEMORANDUM RULING**

RENDERED ON September 18, 2026

DF-24-18010
GWENDOLYN ULIJASZ MCKEMIE
vs.
JASON MCKEMIE

HEARING DATE: 09/03/2026

- THE COURT MAKES THE FOLLOWING RULING:

Respondent's Motion for New Trial is GRANTED in part and DENIED in part.

The Court grants the motion for new trial as to division and characterization of material property only.

IT IS ORDERED that Sections 8, 9, 11-15 of the Decree of Divorce signed on June 26, 2026, are VACATED.

IT IS ORDERED that Sections 1 through 7 and 10 of the Decree of Divorce signed on June 26, 2026, remain in full force and effect but are interlocutory. The remaining issues shall be set for trial once the stay has been lifted or Respondent's bankruptcy case is otherwise disposed.

All other relief requested is DENIED.

Signed September 18, 2026.

Hon. Ashley Wysocki, Presiding



Copy from re:SearchTX