FILED
NOV 13 2026
CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | **CASE NO. 26-30161-mvl7** |
| | § | |
| JASON EMORY McKEMIE, | § | **CHAPTER 7** |
| | § | |
| Debtor. | § | Hearing: Nov. 18, 2026, 9:30 a.m. |

# DEBTOR'S SUPPLEMENT IN RESPONSE TO MOVANT'S NOVEMBER 12, 2026 FILINGS [ECF 141, 142, 143], IN OPPOSITION TO MODIFICATION OF THE STAY [ECF 110], AND IN SUPPORT OF RULE 2004 SUBPOENAS [ECF 97]

(Relates to ECF 97, 110, 111, 134, 136, 137, 141, 142, 143, and 144)

**TO THE HONORABLE MICHELLE V. LARSON, UNITED STATES BANKRUPTCY JUDGE:**

Jason Emory McKemie, the Debtor, files this supplement to address matters raised for the first time in the three papers that Gwendolyn Laura Ulijasz ("Movant") filed on November 12, 2026 (ECF 141, 142, 143). He gave notice on November 10 that he would do so by today. ECF 141 at 12. Page citations are to CM/ECF page numbers. "Decl." is the Debtor's declaration at the end of this supplement.

## I. WHAT CHANGED ON NOVEMBER 12

1. Six days before the final evidentiary hearing that she requested and noticed (ECF 110 ¶ 4; ECF 128), Movant changed what the hearing is about. She now (a) asks leave to withdraw, "without adjudication," her requests to annul the stay and to determine that her accounts are not property of the estate; (b) states that she "does not intend to offer her declaration or to testify"; and (c) asks to attend only by WebEx. ECF 143 ¶¶ 1, 6 at 2, 4; ECF 141 ¶ 1 at 2. She still asks the Court to modify the stay so that the divorce court can divide the marital estate, and to declare that the stay never applied to the dissolution. She intends to prove both by judicial notice of two orders. ECF 143 ¶ 7 at 4–5.

2. Three things follow:

   a) **THE RULE 2004 MOTION (ECF 97) SHOULD BE GRANTED NOW.**

Movant's procedural objection was that the records "pertain to" her contested matter because it asked the Court to decide whether her accounts "were property of this estate on January 12, 2026." ECF 111 ¶ 14 at 6. She has withdrawn that request. She also concedes that any division must remain subject "to this Court's determination of the estate's interest in any property." ECF 143 ¶ 7 at 4. That determination cannot be made without the institutions' records. The Trustee's Form 1 carries each of these interests at "Unknown." ECF 91.

b) **THE STAY SHOULD NOT BE MODIFIED.**

ECF 110 asked for modification only as to "property that this Court determines to be property of the estate." ECF 110 ¶ 2(c) at 3. Movant has withdrawn her request for that determination, and she offers no evidence of cause.

c) **MOVANT MUST TESTIFY.**

She states that she "will be available by WebEx for the entire hearing." ECF 141 ¶ 1 at 2. She has put her own conduct in issue, including her June 26, 2026 change to the Debtor's health coverage, on which she designates the Debtor as her witness (ECF 136) while declining to be his.

3. The sworn record of how the parties got here is at ECF 134 at 24–26 and ECF 122 at 18–32. In the months before she left, Movant told the Debtor the household had a short-term cash shortage, directed him to carry its expenses on his own credit cards, and talked him out of a $250,000 position. She received the first half of a $300,000 signing bonus, in the amount of $150,000, on November 21, 2024, while telling the Debtor that the sign-on bonus had been moved to mid-December and instructing him to think of, create, and purchase thoughtful, generous, and meaningful Christmas gifts for her family members on his personal credit cards. She assured him that they would clear all of the balances as soon as the sign-on bonus was received and would then resume paying every credit card in full each month, as they had since January 2024. ECF 138-1 at 19; ECF 134 at 24 ¶ 3; ECF 122 at 18 ¶ 1A. The Debtor had spinal surgery on December 10, 2024. On December 11, 2024, after finding substantial documentation of Movant's past weaponization of victim narratives, of her civil and criminal filings against past romantic partners, the spouses of former spouses, neighbors, and a landlord, and of settlements extracted from at least three prior employers, the Debtor called 911 and reported that his wife was trying to set him up and that false police reports and a fraudulent protective order would be filed against him. The police call log records: "caller thinks is being set up by wife." ECF 134 ¶ 19 at 4; *id.* at 25 ¶ 6. The following day, Movant reported as fraud, and had cancelled, the retainer he had paid a lawyer and the funds he had set aside to live on. Those funds were three months of living expenses for the marital

residence and not a dollar more, which is what his counsel had directed him to transfer. ECF 134 ¶ 66 at 16; *id.* at 25 ¶ 7.

On January 7, 2025, Movant's counsel, Donna Tomlinson, who had filed the application for protective order, withdrew before the temporary orders and protective order hearing, stating that to proceed with her representation of Movant would violate her ethical oath as an officer of the court. Movant then represented herself, assisted by her out-of-state sister, Pamela Woodman, who served as her only witness. Together they staged a stalking narrative. The court ultimately denied the protective order in full, but not before their coordinated aggravated perjury stripped the Debtor of access to all marital assets and burdened him with approximately $25,000 a month in expenses for the entire marital estate and legal fees. That burden fell after his credit had been maxed out at Movant's direction over the prior months, and while he was recovering from emergency invasive spinal surgery following a six-day hospitalization. ECF 134 ¶ 40 at 9–10; ECF 51 at 67.

Movant, opposing temporary support, testified, "I don't have any more money." ECF 134 ¶ 74 at 18. That testimony was false, and it was aggravated perjury. Tex. Penal Code § 37.03. The temporary orders entered on it left the Debtor responsible for approximately $25,000 a month with no income and no access to any marital account. He lives in his parents' home, and they have lent him approximately $50,000. ECF 134 at 26 ¶ 12.

On April 16, 2026, while the Debtor was in this courtroom, Movant and movers she paid took his possessions, records, computers, and drives from his residence. ECF 134 ¶ 71 at 17; id. at 26 ¶ 13. That was theft, Tex. Penal Code § 31.03, and a violation of the stay and of this Court's order of that day, ECF 57.

Movant terminated the Debtor's health coverage on October 31, 2025. The plan has since admitted that the coverage was dropped because of a participant-reported, divorce-based qualifying life event when no divorce had occurred, that the Debtor remained an eligible dependent, and that no COBRA qualifying event occurred. That termination blocked his surgery for a torn rotator cuff and ruptured bicep and caused more than $30,000 in medical billing to be denied or clawed back and billed against him. Decl. ¶ 14. It was the final blow that drove the Debtor into this very courtroom. His benefits were partially reinstated in February 2026. Life, Supplemental Life, AD&D, Critical Illness, and FSA coverage were never restored, and his access to the HSA card was relentlessly obstructed, which blocked his access to surgeries and prescriptions once all copays and deductibles reset for the year following Movant's delay of the restoration. The reinstated benefits were then terminated again effective June 30, 2026. ECF 134 at 25–26 ¶¶ 8, 10–12; ECF 110 at 33 ¶ 13. His access to healthcare has been relentlessly obstructed since December 18, 2024, when his HSA card was cut off for allegedly failing to upload a medical receipt. The HSA administrator has

confirmed that no such policy exists and that receipt uploads are optional and kept only for tax purposes. He has never had unobstructed access to his benefits, nor received a dollar of marital assets, since. Decl. ¶ 10.

4. November 18 would be the first time Movant has had to answer the Debtor's questions under oath. ECF 134 ¶ 23 at 5; Decl. ¶ 10. In the motion he served on November 10, the Debtor told the Court that "a claim framed as danger, emergency, or inability to appear is foreseeably likely before that hearing." ECF 134 ¶ 23 at 5. On November 10 at 11:24 a.m. her counsel announced the WebEx motion and stated no reason she could not attend. ECF 144 at 119. Counsel "learned of the medical circumstances" on November 11. ECF 141 at 13.

**Where the rest of the record is.** This supplement does not repeat what is already on file. (1) The violations of the automatic stay, 11 U.S.C. § 362(a), are set out in the Debtor's signed Notice of State-Court Ruling and Stay Violations, ECF 138, with the June 11, 2026 trial transcript and the affidavit of Movant's counsel at ECF 138-1. They include the June 11, 2026 trial and division of property while the stay was in effect and the April 16, 2026 removal of the Debtor's property. (2) The Debtor's Advance Notice of Anticipated Safety-Based Allegations and Motion to Compel In-Person Testimony, ECF 134, with Exhibits A through X at ECF 135, told the Court on November 10 that "a claim framed as danger, emergency, or inability to appear is foreseeably likely before that hearing," and set out the pattern behind that warning. Two days later Movant moved to attend only by WebEx. ECF 141. (3) The Debtor's Opposition to WebEx or Other Remote Appearance or Testimony, ECF 144, answers that motion. (4) The Debtor's Opposition to ECF 110, with his sworn declaration, is ECF 122. (5) His Rule 2004 motion, response, and reply are ECF 97, 120, and 124. The proposed orders at ECF 126 and ECF 127 are replaced by the updated orders submitted today. (6) His witness list is ECF 140, and his exhibit list is filed with this supplement.

## II. RULINGS REQUESTED

5. The Debtor requests a separate written ruling, **GRANTED** or **DENIED**, on each of the following. Updated proposed orders are submitted with this supplement.

(1) ECF 97 is **GRANTED** and ECF 111 is **OVERRULED.** The Clerk shall issue subpoenas under Fed. R. Bankr. P. 9016 and Fed. R. Civ. P. 45 on the Debtor's request, and each custodian shall produce to the Debtor and the Chapter 7 Trustee at the same time.

(2) Movant's request for leave to withdraw "without adjudication" is **DENIED.** Her request for annulment of the stay is **DENIED WITH PREJUDICE.** Her request for a

determination that property is not property of the estate is **DENIED** and may not be renewed before production under ECF 97 is complete.

(3) Movant's request to modify the stay is **DENIED.**

(4) Movant's request for a determination under 11 U.S.C. § 362(b)(2)(A)(iv) is **DENIED**, and the Court makes no determination of the finality, present effect, or operative date of any dissolution.

(5) ECF 141 is **DENIED** and ECF 134 is **GRANTED**. Movant shall appear in person on November 18, 2026.

(6) Whatever the manner of her appearance, the Debtor may call Movant as an adverse witness. She shall be sworn, shall answer, and shall remain in attendance until excused by the Court.

(7) The automatic stay remains in effect, and the periods in 11 U.S.C. § 362(e) are extended through the Court's ruling on ECF 110.

(8) Movant shall reimburse the Debtor's out-of-pocket costs of responding to the withdrawn requests. The Debtor's claims under 11 U.S.C. § 362(k)(1) are preserved. All requests for fees, costs, or sanctions against the Debtor are **DENIED.**

## III. THE RULE 2004 MOTION SHOULD BE GRANTED NOW [ECF 97, 111]

### A. MOVANT'S LOCAL-RULE OBJECTION RESTED ON A REQUEST SHE HAS WITHDRAWN.

6. Local Bankruptcy Rule 2004-1(b) provides that "[i]f a contested matter or an adversary proceeding is pending, the adversary discovery rules (Bankruptcy Rules 7027 - 7036), not Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004-1, govern discovery pertaining to such contested matter or adversary proceeding." Movant's objection rested on one proposition: that what ECF 110 "asks this Court to decide is whether the interests the Debtor now wishes to document ... were property of this estate on January 12, 2026," so that discovery about those accounts "is discovery pertaining to that contested matter." ECF 111 ¶ 14 at 6.

7. On November 12 Movant withdrew that request. ECF 143 ¶ 6 at 4. What remains, by her account, is a request for modification that she will support with "court records" alone and a request that "turns on the text of the statute." ECF 143 ¶ 7 at 5. On her own description, the

account records no longer pertain to anything pending in ECF 110, and Rule 2004 governs. Her alternative request to "defer consideration of the 2004 Motion until the Court has resolved Movant's motion under 11 U.S.C. § 362 concerning the status of the property from which records are sought" (ECF 111 ¶ 43(b) at 16) is moot. She no longer asks the Court to resolve the status of the property.

8. If the Court instead treats any of the records as still pertaining to ECF 110, the local rule changes the vehicle, not the result. Rule 9014(c) applies Rule 7034 in a contested matter. Civil Rule 34(c) provides that a nonparty may be compelled to produce documents "[a]s provided in Rule 45." Rule 9016 applies Rule 45 in cases under the Code. Movant's own objection says that such discovery is "to proceed, if at all, under Bankruptcy Rules 7027 through 7036." ECF 111 ¶ 43(c)(i) at 17. Under either rule the Clerk "must issue a subpoena ... to a party who requests it." Fed. R. Civ. P. 45(a)(3). The Debtor asks the Court to authorize the subpoenas under both, so that no party or custodian can litigate the label.

## B. MOVANT CONCEDES THAT THIS COURT MUST DETERMINE THE ESTATE'S INTEREST. ONLY THE RECORDS PERMIT IT.

9. Movant's request for modification is premised on the division remaining "subject to the rights of the Chapter 7 Trustee and to this Court's determination of the estate's interest in any property." ECF 143 ¶ 7 at 4. Property of the estate is within this Court's exclusive jurisdiction, 28 U.S.C. § 1334(e)(1), and community property comes into the estate under 11 U.S.C. § 541(a)(2). The matters Rule 2004 reaches are these: "the debtor's acts, conduct, or property," "the debtor's liabilities and financial condition," and "any matter that may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b)(1). Movant concedes that the Debtor is a party in interest (ECF 111 ¶ 36 at 14) and that "Rule 2004 contains no exceptions" (ECF 111 ¶ 18 at 8). The Debtor's stake is direct. Movant's motion reports that the claims register "contains a single claim." ECF 110 ¶ 14 at 14. After allowed claims are paid, the surplus of the estate is the Debtor's. 11 U.S.C. § 726(a)(6).

10. Movant's own motion states the tracing problem. Her payroll account was "overdrawn" on October 14, 2025. That fact "does not by itself exclude earlier withdrawals having been placed in another asset or later redeposited." And "[n]o one has identified an asset into which any earlier funds can be traced." ECF 110 ¶ 13 at 12. No one has identified it because no institution has produced a record. The transfer, wire, and receiving-account records are the only documents that answer the question. They are what ECF 97 seeks.

## C. MOVANT'S SWORN STATEMENTS IDENTIFY WHAT THE RECORDS MUST EXPLAIN.

11. The following comes from Movant's September 10, 2026 declaration (ECF 110 at 27–34), her motion (ECF 110 at 12), her July 22, 2025 sworn inventory (ECF 110 at 76–95), her January 7, 2025 testimony (ECF 134 ¶ 29 at 7), and her June 11, 2026 trial testimony (ECF 138-1 at 7–53).

| Date | What Movant swore or stated | Record |
|---|---|---|
| Nov. 2024 and Nov. 2025 | She received a cash signing bonus in two payments of $150,000. "Does any of that money still exist today?" "No." | ECF 138-1 at 19–20 |
| Jan. 7, 2025 | Opposing temporary support, she testified that Accenture had paid her a signing bonus of about $150,000, then told the court, "I don't have any more money." | ECF 134 ¶ 29 at 7 |
| July 22, 2025 | Her sworn inventory lists one Accenture "Signing Bonus": "Anticipated amount of bonus: $150,000," "expected to be paid: November 2025," source "Contract, signing bonus." The $150,000 she received in November 2024 is not in that entry. | ECF 110 at 80, 95 |
| Dec. 11, 2024 | She paid $25,513 on a SoFi loan, the day after the Debtor's spinal surgery. | ECF 110 at 33 ¶ 14 |
| Jan. 2025 | She opened a new Chase account and moved her balance into it. She withdrew $5,103 and $5,000 and "redeposited them." | ECF 110 at 29–30 ¶ 10 |
| Oct. 14, 2025 | Her payroll account was overdrawn after a $13,000 payment on her own credit card. | ECF 110 at 12 ¶ 13 |
| Jan. 2, 2026 | She paid $85,522 to the Internal Revenue Service, ten days before the petition. | ECF 110 at 33 ¶ 14 |
| Jan. 5, 2026 | A wire from her UBS account was deposited into her payroll account. | ECF 110 at 12 ¶ 13 |
| Jan. 23, 2026 | She paid $17,163.30 to LightStream, eleven days after the petition. | ECF 110 at 33 ¶ 14 |
| Feb. 28, 2026 | She traded in the BMW, the dealer paid a $54,500 lien, and she financed a replacement. This was ten days after the date she swears she learned of this case. | ECF 110 at 27, 31 ¶¶ 4, 11 |

| Date | What Movant swore or stated | Record |
|---|---|---|
| June 11, 2026 | She testified at trial that she owned a BMW and owed "BMW Finance" $60,000. She did not mention the trade-in. | ECF 138-1 at 38–40 |
| Aug. 2026 | She paid about $6,000 on the SoFi loan. | ECF 110 at 34 ¶ 14 |

12. The Debtor has identified a further $62,549.84 wire, labeled "Loan Repayment," sent five days before the petition. ECF 134 ¶ 74 at 18. A post-petition payment made with community funds held on the petition date is a transfer of property of the estate, made without authority. 11 U.S.C. §§ 362(a)(3), 549. The February 28, 2026 trade-in disposed of a vehicle Movant held on the petition date, ten days after the date she swears she learned of this case. Which funds paid for each transfer, and whether the Trustee will avoid and recover it, cannot be determined while the estate's interest is carried at "Unknown."

13. At the June 11, 2026 trial Movant swore that her income is "$390,000 a year" exclusive of annual bonuses, that "I never have gotten a bonus," and that the "entirety" of her community property is "about $40,000" in an equity-purchase account and "a couple thousand dollars" in a health savings account. ECF 138-1 at 22, 26, 28–29. Her Accenture contract sets her total target compensation at approximately $1,500,000 a year. ECF 134 ¶ 75 at 18. The divorce court told her counsel that what it had been given "for separate and for community" was "pretty limited." ECF 138-1 at 40. Counsel answered that he "came to the case late" and that "it seemed simple on its face." *Id.* at 43. The property division entered on that record has been vacated. ECF 122 at 17.

The records the Debtor does hold confirm it. Exhibit SUPP-2 is Movant's Accenture agreement and three Chase statement pages she produced in the divorce. The agreement provides a "Signing Bonus in the amount of $300,000.00," "paid in 2 installments." SUPP-2 at 2. Her Chase account ending 3898 received Accenture payroll deposits of $106,407.03 and $10,448.03 on November 21, 2024, and held $78,343.72 on November 27, 2024. SUPP-2 at 3–4. That was while she was telling the Debtor the bonus had been moved to mid-December (paragraph 3 above), and 41 days before she testified, "I don't have any more money." Her Chase account ending 9259 received $171,990.36 from Accenture between October 28 and November 28, 2025, including $113,475.00 on November 21, 2025, and held $126,335.18 on November 28, 2025. SUPP-2 at 5. That was 45 days before the petition. At trial she testified that none of the signing bonus exists. ECF 138-1 at 19–20. She has produced no financial record since February 17, 2026, and what she did produce includes a fabricated statement page. Decl. ¶¶ 6, 8. The Debtor cannot show the Court where the $126,335.18 went between

November 28, 2025 and January 12, 2026, or after. Accenture and JPMorgan Chase can. ECF 97 ¶ 10(a), (c) at 3–4.

### D. THE DIVORCE COURT IS NOT AN ALTERNATIVE SOURCE OF THESE RECORDS.

14. Movant's answer to the Rule 2004 motion is that "the Debtor had the Texas discovery rules available to him throughout the divorce" (ECF 111 ¶ 27 at 11) and that these matters "are for the court that will divide" the estate (ECF 143 ¶ 15 at 9). The record of that forum is the reason the subpoenas are needed. Decl. ¶¶ 2–9.

| Date | Event |
|---|---|
| Apr. 28–29, 2025 | Movant's counsel moves to withdraw, and the order is signed. |
| May 27, 2025 | The Debtor serves requests for disclosure, requests for production, and interrogatories on Movant. |
| June 23, 2025 | Last day of the discovery period. At 11:08 p.m. new counsel files a notice of appearance. At 11:15 p.m. he emails, "We have been re-retained by Gwendolyn," with blanket objections and a link to 1,266 pages. Counsel then treats discovery as closed. |
| Sept. 21–25, 2025 | The Debtor demands complete statements. Counsel requires him to identify "specific instances of missing pages." He sends a page-by-page inventory. |
| Oct. 10, 2025 | Counsel's response is two pages, labeled "Dec 2024 page 3" and "Nov 2024 page 3," that show the same transactions on the same dates in the same amounts. |
| Nov. 3, 2025 | The Debtor files a motion to compel. Movant's counsel moves to withdraw the same day. |
| Jan. 20–25, 2026 | Movant sends links to files, the last at 11:55 p.m. on the day discovery closes. |
| Feb. 17, 2026 | Movant sends a link titled "Released After CutOff-Supplement 3," twenty-three days after discovery closed and seven days before the trial setting. She has produced nothing since. |
| May 29, 2026 | Movant's lead counsel swears that "ordinary nonparty discovery is not open on the eve of the June 11, 2026 trial" and requests fees against the Debtor for seeking subpoena leave. ECF 138-1 at 3–4 ¶¶ 8, 10. |

| Date | Event |
|---|---|
| June 1 and 8, 2026 | Subpoena leave is denied, and the Debtor is told no hearing on review can be set before trial. ECF 122 at 29 ¶ 16. |
| June 11, 2026 | The trial proceeds in the Debtor's absence on Movant's testimony alone. |

15. Between November 19, 2025 and July 27, 2026 the Debtor filed at least nineteen papers in the divorce asking for leave to subpoena these institutions. No subpoena was authorized. Decl. ¶ 9. The docket in that case exceeds 250 filings. Since December 2024 the Debtor has also had to defend three eviction suits in the justice court and an appeal in the county court, to file a protective appeal in the Fifth Court of Appeals, to litigate this case and Adversary No. 26-03034-mvl, and to pursue the Accenture plan and the Department of Labor to restore the health coverage Movant terminated. Decl. ¶ 11; ECF 138 ¶ 25 at 14–15. In none of those forums has one institution been required to produce a record of where the community's money went.

16. Movant has taken three positions that together close every door. In the divorce court, through counsel under oath, nonparty discovery "is not open" and the Debtor should pay fees for asking. ECF 138-1 at 3–4. In this Court on September 11, Rule 2004 is unavailable, the Debtor should use the state rules, and anything produced should go to the Trustee alone and be barred from use "in Cause No. DF-24-18010 or in any other proceeding." ECF 111 ¶¶ 27, 43(c)(v)–(vi) at 11, 17. In this Court on November 12, the estate-property question is withdrawn, the stay should be lifted, and the division should return to the first forum. ECF 143 ¶¶ 6–7, 15. *Snyder*, on which Movant relies, rested on the premise that "an ordinary discovery route was open to the movant in the other forum." ECF 111 ¶ 27 at 11. Her own counsel's affidavit says it was not.

## E. TERMS OF PRODUCTION.

17. The Debtor asks for the terms in his updated proposed order, which carries forward ECF 126 and adds the following.

   a) *Production to the Debtor and the Trustee at the same time.* Movant herself proposed that "the Court may direct that they be produced to" the Trustee. ECF 111 ¶ 36 at 14. Section 542(e) independently authorizes the Court to order a person holding recorded information "relating to the debtor's property or financial affairs" to disclose it to the Trustee. The Debtor does not object to production to the Trustee.

He objects to being excluded from it. He is the only person other than Movant who knows these accounts, and his own records were stolen on April 16, 2026.

b) *Three custodians that Movant's declaration identified after ECF 97 was filed:* LightStream (the January 23, 2026 payoff), and BMW of San Antonio and BMW Financial Services (the February 28, 2026 trade-in, payoff, and financing), limited to those transactions. ECF 110 at 31, 33.

c) *Benefits records, limited to economic and administrative data, including the health care flexible spending account.* On November 12, 2026 the Plan Administrator wrote that "Ms. Ulijasz is able to seek reimbursement under the healthcare FSA for eligible expenses incurred by you from January 1, 2026 through December 31, 2026," and that the Debtor's access "can only be secured through the accountholder." Ex. SUPP-1 at 1. Movant's own hearing Exhibit 3 shows the same account as "Coverage Terminated," with a term date of June 30, 2026. ECF 137-3 at 3. Who has been reimbursed from that account, and for whose expenses, is in the administrator's records.

d) *Employer payments and further custodians.* The order should also let the estate follow the money once the institutions' records arrive. Movant's own papers already identify payees and custodians that are not financial institutions. Jetty Partners LLC invoiced her $24,227.94 on January 9, 2025, two days after she testified, "I don't have any more money." ECF 134 at 7. Her Cognizant settlement paid $104,000 to her and $52,015 to her lawyers. On January 7, 2025, three months after retaining those lawyers, she denied under oath that she was waiting on a settlement from any former employer. ECF 134 ¶ 31 at 7. Her July 22, 2025 settlement with the landlord, Skweres Properties, LLC, surrendered the $4,999 security deposit and released her alone. ECF 134 ¶ 55 at 14; ECF 110, Ulijasz Decl. ¶ 12 & Ex. 2. She swears that "[t]wo movers from All My Sons Moving, booked for me by a friend and paid for by me," loaded their truck at the Debtor's residence on April 16, 2026. ECF 110, Ulijasz Decl. ¶ 12. Movant is also the organizer, registered agent, and manager of GLU Distribution Limited Liability Company, an Illinois company (Secretary of State File No. 08945586). Debtor's Exhibit List, Decl. ¶ 4. The Debtor asks that the order (1) include Accenture's expense, housing, and rental reimbursements and Cognizant's payments to Movant; (2) reach every account in the name of GLU Distribution; and (3) permit a subpoena, on seven days' notice to Movant and the Trustee, to any entity that the records identify as having received a payment from Movant's accounts or as having moved, stored, or held the property removed from his residence. Updated proposed order ¶¶ 3, 5–6.

# IV. THE STAY SHOULD NOT BE MODIFIED [ECF 110]

## A. THE MODIFICATION MOVANT NOW REQUESTS IS NOT THE ONE SHE PLEADED.

18. ECF 110 requested modification, in the alternative, only "to permit the State Court to complete or redo the division of any property that this Court determines to be property of the estate." ECF 110 ¶ 2(c) at 3; *see id.* ¶ 20 at 24, Prayer (3) at 25. Movant told the Court that "no determination has been made" and asked the Court "to make that determination now, with the Trustee before it." *Id.* ¶ 15 at 15. She has withdrawn that request. What she asks for now is the reverse: division first, in the divorce court, with "this Court's determination of the estate's interest" to follow. ECF 143 ¶ 7 at 4.

19. The Code runs the other way. Property of the estate is within this Court's exclusive jurisdiction. 28 U.S.C. § 1334(e)(1). The Trustee must collect it and investigate the Debtor's financial affairs. 11 U.S.C. § 704(a)(1), (4). The divorce exception to the stay stops at "the division of property that is property of the estate." 11 U.S.C. § 362(b)(2)(A)(iv). A division made before anyone knows what the estate owns either divides estate property or must be done again. The June 11, 2026 trial is the example. It divided the estate on Movant's word, and the division has been vacated.

## B. MOVANT OFFERS NO EVIDENCE OF CAUSE.

20. Movant accepts that she bears the initial burden to show cause. ECF 143 ¶ 7 at 4–5. She will offer two orders, noticed for "the entry and terms of those orders and filings, not the truth of disputed assertions made in them." *Id.* at 5. Those orders establish that the divorce court tried the property division while the stay was in effect and then vacated it. They do not establish cause. Movant identifies no harm to herself from the stay. She holds every account, and she has continued to pay debts from them before and after the petition. ECF 110 at 33–34 ¶ 14.

21. Movant's papers do not put the September 18 ruling before the Court. Her WebEx motion and her response both state that the ruling "is attached as Exhibit C" or "is Exhibit C to the WebEx Motion." ECF 141 ¶ 2 at 3; ECF 143 ¶ 3 at 3. The document attached is the June 26, 2026 Decree. ECF 141 at 26–34. Her exhibit list describes the Decree as "entered June 11, 2026" and does not list the ruling that vacated its property division. ECF 137 at 1.

22. The stay should not be modified. The sequence matters: records first, then this Court's determination of the estate's interest with the Trustee heard, then division. Section 362(d)

authorizes relief "by terminating, annulling, modifying, or conditioning" the stay, and any order that modifies it over this opposition must contain at least these conditions:

a) no modification takes effect until production under ECF 97 is complete, the Trustee has filed a statement of the estate's interest, and the Court has determined that interest;
b) Movant files in Cause No. DF-24-18010 a written stipulation that discovery is open for the retrial, that she will not assert that any discovery period has closed, and that records produced under this Court's order may be used there;
c) no award, transfer, turnover, or enforcement against any property takes effect without further order of this Court;
d) Movant takes no act to terminate or change the Debtor's health coverage, HSA or FSA access, or beneficiary status, and she submits the Debtor's eligible expenses to the health care FSA and remits each reimbursement to him;
e) Movant and anyone acting for her have no access to, and make no inspection, imaging, copying, or use of, the Debtor's computers and drives; and
f) the fourteen-day stay of the order under Fed. R. Bankr. P. 4001(a) is not waived.

## C. THE REQUEST FOR A DETERMINATION UNDER § 362(B)(2)(A)(IV) SHOULD BE DENIED.

23. Movant asks the Court to declare that the stay "did not apply to the Decree's dissolution provisions." ECF 143 ¶ 6 at 4. That is not a pure question of law. The exception reaches a proceeding "for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate." 11 U.S.C. § 362(b)(2)(A)(iv). The June 11, 2026 trial was one proceeding that determined dissolution and division together, in the Debtor's absence, in little more than an hour. ECF 138-1 at 10–52. Whether any part of it survives is contested, and the Debtor's motion to vacate the remaining sections is pending in the divorce court. ECF 138 ¶ 26 at 15.

24. The question Movant actually wants answered is one of Texas law that she has already put to the divorce court. That court ruled that the remaining sections of the Decree "remain in full force and effect but are interlocutory." ECF 122 at 17. On September 29, 2026 Movant asked it for briefing on "the present legal effect" of the dissolution, "including the operative date," because her employer's plan "reads the Ruling as leaving the parties married" and "will reinstate Respondent as her dependent retroactive to July 1, 2026." ECF 138 ¶¶ 28–29 at 15–16. The Plan Administrator did so on October 6, 2026, determining that the Debtor "remain[s] legally married to Gwendolyn Ulijasz under Texas law." Ex. SUPP-1 at 3. A declaration from this Court about the scope of § 362 would be used to terminate the Debtor's coverage again. It is not needed to decide anything pending here.

25. Movant has also put the termination in issue as a matter of fact. She designates the Debtor as her adverse witness on "the end of that coverage on June 30, 2026 after Gwendolyn's enrollment change of June 26, 2026" (ECF 136 at 1) and lists two benefits documents as exhibits (ECF 137 at 1). Those documents raise questions only she can answer. Her Exhibit 3 was "Generated On 06/26/2026 At 05:31:28 CDT" and already shows "Dependents - 0." ECF 137-3 at 1. She has sworn that she made the change "[i]n reliance on the Decree, on June 26, 2026, the day it was signed." ECF 110 at 33 ¶ 13. She swore to reliance on an order that had not been signed at 5:31 a.m. That is a false declaration. 18 U.S.C. §§ 152(3), 1623(a); ECF 134 ¶ 72 at 17. Her Exhibit 2 is a COBRA notice dated June 26, 2026 and addressed to the La Foy Boulevard house. ECF 137-2 at 1. The notice the Debtor received is dated August 4, 2026 and addressed to his mailing address. Decl. ¶ 12. A determination cannot rest on judicial notice when the movant's own exhibits are disputed.

## V. MOVANT MUST TESTIFY, AND SHOULD DO SO IN THE COURTROOM [ECF 134, 141, 143, 144]

### A. WHETHER MOVANT TESTIFIES AND HOW SHE TESTIFIES ARE SEPARATE QUESTIONS.

26. Movant's papers answer only the second question. Her proposed order says that it "does not determine whether Movant will be called as a witness." ECF 141 at 21. She acknowledges that she may testify "because the Court permits the Debtor to call her or wishes to hear from her." ECF 141 ¶ 9 at 7. The Debtor asks the Court to decide the first question now. He may call her.

27. A subpoena compels a witness to attend. It is not a condition of examining a party who does attend. Movant states that she "will be available by WebEx for the entire hearing" (ECF 141 ¶ 1 at 2; *id.* at 24 ¶ 7), and her own proposed order requires her to "remain available by WebEx until excused by the Court" (*id.* at 21). A party in attendance may be called by her adversary, Fed. R. Evid. 611(c)(2), and by the Court, Fed. R. Evid. 614(a). Movant's own witness list shows she understands this. She designates the Debtor as her adverse witness (ECF 136 at 1) and has served no subpoena on him. Decl. ¶ 13.

28. *GFI Computer Industries, Inc. v. Fry*, on which Movant relies, reversed a default judgment entered against a defendant who lived outside the court's subpoena jurisdiction. ECF 143 ¶ 10 at 6. Movant is the party asking this Court for relief. She concedes that she "is within the reach of a subpoena for a hearing in Dallas." *Id.* at 6–7. She states that she "will comply with any order" the Court enters. ECF 143 ¶ 2 at 2. The Debtor does not ask for a default. He asks that a party who is before the Court on her own motion be sworn and examined.

29. To remove the objection entirely, the Debtor also requests that the Clerk issue a hearing subpoena to Movant under Fed. R. Civ. P. 45(a)(3) and that the Court direct her counsel of record to accept service of it on her behalf, with the fee and mileage required by Rule 45(b)(1) tendered to counsel. Service through counsel requires no contact with Movant, and the Debtor will not initiate any. The address she uses in the record is a private mailbox (ECF 137-3 at 1), and her police reports concerning him are summarized at ECF 144 at 121.

## B. THE ISSUES ON WHICH MOVANT'S TESTIMONY IS MATERIAL.

30. Movant asks the Court to "identify the issue" on which her testimony is required. ECF 143 ¶ 16 at 9. Rule 9014(d) requires that testimony on a disputed material factual issue "be taken in the same manner as testimony in an adversary proceeding." The disputed material issues on which she is the only witness are:

a) *Cause for modification and its conditions:* her transfers of community funds before and after the petition (paragraph 11 above), where the two $150,000 bonus payments went, and whether she will treat discovery as open in the divorce court.

b) *Her § 362(b)(2)(A)(iv) request:* what she reported to the Plan on June 26, 2026 and at what time, and her Exhibits 2 and 3 (paragraph 25 above). She cannot designate the Debtor to testify about her enrollment change and decline to testify about it herself.

c) *ECF 97 and ECF 111:* what accounts exist, what she produced and when, and the factual statements in her objection, which is unsworn.

d) *The terms of withdrawal:* why requests supported by her sworn declaration are withdrawn six days before the hearing.

e) *Her September 10 declaration,* which the Debtor will offer against her under Fed. R. Evid. 801(d)(2)(A), as she agrees he may. ECF 143 ¶ 16 at 9.

## C. MOVANT HAS NOT SHOWN "GOOD CAUSE IN COMPELLING CIRCUMSTANCES."

31. Testimony "must be taken in open court." Fed. R. Civ. P. 43(a); Fed. R. Bankr. P. 9017. Remote testimony requires "good cause in compelling circumstances." Movant's showing fails on her own papers.

a) *The request came before the reason.* On November 7 her counsel wrote that she "will comply with whatever the Court directs" and gave no reason she could not attend. ECF 134 ¶ 11 at 2–3. On November 10 counsel announced the WebEx motion, again

with no reason. ECF 144 at 119. Counsel "learned of the medical circumstances" on November 11, and the provider's letter is dated that day. ECF 141 at 13, 35.

b) *The advice is described three ways.* The letter recommends that she "refrain from travel" for two months. ECF 141 at 35. Her application says she was advised "not to fly until she is reassessed." ECF 142 ¶ 2 at 2. Her response says "advice against air travel." ECF 143 ¶ 2 at 2. Dallas is a four-and-a-half-hour drive from her home, and her declaration treats driving as an option whose cost is that she "would miss the full workday." ECF 141 at 23–24 ¶¶ 4–5.

c) *The letter does not show that she cannot attend.* It is unsworn. It comes from a family nurse practitioner. It identifies no condition, no limitation, and no reason a car trip is unsafe. It says only that travel "would pose an increased risk" and "could interfere with the continuity and effectiveness of current treatment," and it runs "through approximately January 11, 2027." ECF 141 at 35.

d) *Movant works full time, and her treatment is the day before the hearing, not the day of it.* ECF 141 at 23 ¶¶ 3, 5.

e) *She concedes the point.* On distance her circumstances are "closer to *Herrmann* than to *Katzin*," and she has had six weeks' notice. ECF 141 ¶ 9 at 8.

32. Credibility is the issue. Movant's only sworn testimony on these subjects was given on June 11, 2026, in the Debtor's absence. He had filed a verified emergency motion at 1:17 p.m. stating that he was suffering chest pain and shortness of breath on the way to court and asking to appear remotely. The trial began at 1:34 p.m. ECF 122 ¶ 8 at 3; ECF 138-1 at 10. The Debtor will be in the courtroom on November 18. Decl. ¶ 13. Any order that permits video over this opposition must still require that Movant remain on camera for the entire hearing, be sworn, and be examined by the Debtor on the issues in paragraph 30.

## VI. WITHDRAWAL, COSTS, SANCTIONS, AND RESERVED CLAIMS

33. **WITHDRAWAL.** Rule 7041 applies in contested matters. Fed. R. Bankr. P. 9014(c). After a response has been served, a request may be withdrawn "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The Fifth Circuit holds that the court may deny such a request or impose conditions that cure the prejudice to the other side, including that the dismissal be with prejudice. *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314 (5th Cir. 2002). The prejudice here is concrete. Movant obtained a final evidentiary setting on a sworn declaration. The Debtor answered it (ECF 122), moved to examine her on it (ECF 134), and prepared for trial. Six days before the hearing she withdrew the declaration and the requests

it supported "without adjudication," which would leave her free to seek annulment again whenever the Debtor's claims for her stay violations are heard. The terms should be: (a) annulment is denied with prejudice; (b) the request for a determination that property is not property of the estate is denied and may not be renewed until production under ECF 97 is complete; (c) Movant reimburses the Debtor's out-of-pocket costs of responding to the withdrawn requests, in the amount shown by a declaration he will file within seven days; and (d) the September 10 declaration and the exhibits to ECF 110 are not received on Movant's behalf. If Movant declines those terms, the requests remain pending, she has offered no evidence, and they should be denied on the merits.

34. **RULE 9011.** ECF 110 was filed with its drafting notes still in it. The motion states: "[Counsel: this bracket stands or falls with the trade-in sentence in declaration ¶ 11, and both wait on the answer to the W-5 question in the cover note (fifteenth pass).]" ECF 110 at 10. It states: "[Confirm the identity of the Chase account referred to in Section 8.F before filing; see the cover note.]" *Id.* at 14. And: "[Counsel: confirm against the certified matrix and Schedule E/F; add the La Foy service fact if Gwen identifies the document.]" *Id.* at 21–22. The sworn declaration contains bracketed sentences about the February 28, 2026 vehicle transaction and about the Debtor's payments. *Id.* at 31, 34. The paper shows on its face that identified facts were unconfirmed when it was signed and sworn. Movant has now withdrawn the declaration rather than be examined on it. The Debtor asks the Court to enter an order under Fed. R. Bankr. P. 9011(c)(3) directing Movant and her counsel to show cause why ECF 110 did not violate Rule 9011(b)(3).

35. **SECTION 362(e).** The stay remains in effect. Movant noticed the November 18 final hearing herself (ECF 128), "does not dispute the setting" (ECF 143 ¶ 4 at 3), and continues to ask the Court to modify a stay that she treats as in force. The Debtor asked on October 2 that the periods in § 362(e) be extended (ECF 122 at 11–12), and he asks that the order on ECF 110 so find.

36. **RESERVED CLAIMS.** The Debtor's claims under 11 U.S.C. § 362(k)(1) for the stay violations of record (ECF 138) are preserved, as Movant agrees (ECF 143 ¶ 14 at 8), and he asks that they be set for hearing. No fees, costs, or sanctions should be assessed against the Debtor on any of these matters.

## VII. PRAYER

37. The Debtor asks the Court to enter the rulings in paragraph 5 by separate written orders on (1) ECF 134 and ECF 141, (2) ECF 97 and ECF 111, and (3) ECF 110, in the forms submitted with this supplement, and to grant all other relief to which he is entitled.

Dated: November 13, 2026

Respectfully submitted,

**Jason Emory McKemie**
Debtor, pro se
539 W. Commerce St., #2010
Dallas, Texas 75208
(214) 519-8958
jmckemie@mckemie.net

# DECLARATION OF JASON EMORY McKEMIE

(28 U.S.C. § 1746)

I, **Jason Emory McKemie,** declare as follows:

1. I am the Debtor in this case and the Respondent in Cause No. DF-24-18010 (the "divorce"). I am over eighteen and competent to make this declaration. The facts below are within my personal knowledge, including my knowledge of the emails and documents I sent and received and the papers I filed.

2. The divorce was filed in December 2024 in the 254th Judicial District Court of Dallas County. It was transferred to the 302nd and then to the 301st. The discovery period in the 254th ended on June 23, 2025, thirty days before the July 23, 2025 trial setting.

3. On April 28, 2025 Movant's counsel moved to withdraw, and the order was signed on April 29, 2025. On May 27, 2025, at 4:33 p.m., I served requests for disclosure, requests for production, and interrogatories on Movant by email.

4. On June 23, 2025, at 11:08 p.m., Ethan Scroggins of Sullivan & Cook filed a notice of appearance for Movant. At 11:15 p.m. he emailed me, "We have been re-retained by Gwendolyn," with her discovery responses, which asserted blanket objections, and a link to documents that her index numbers GU000403 through GU001668. After that night Movant's counsel took the position that discovery was closed.

5. The production consisted of bundled PDF files of statements with missing pages and unreadable text. I audited it page by page. In the 302nd, the pretrial order of September 8, 2025 set trial for February 24, 2026 and closed discovery on January 25, 2026. On September 21, 2025 I demanded complete statements. On September 23, 2025 Mr. Scroggins answered that I must identify "specific instances of missing pages." On September 24 and 25, 2025 I sent him a page-by-page inventory of the missing pages.

6. On October 10, 2025, at 1:33 p.m., Mr. Scroggins sent me two pages in response: GU001669, labeled "Dec 2024 page 3," and GU001670, labeled "Nov 2024 page 3," for a Chase card ending 2372. The two pages show the same transactions, on the same dates, in the same amounts, in the same positions on the page. The same transactions cannot appear on page 3 of two different monthly statements. One or both pages are fabricated. The same two pages were sent to me again on January 10, 2026.

7. On November 3, 2025 I filed a motion to compel. Movant's counsel moved to withdraw the same day, and the order was signed on November 18, 2025.

8. On January 20, 24, and 25, 2026 Movant sent me links to additional files, the last at 11:55 p.m. on the day discovery closed. On February 17, 2026, at 10:33 p.m., twenty-three days after discovery closed and seven days before the trial setting, she sent a link titled "Released After CutOff-Supplement 3." That is the last production of any kind I have received from Movant. I have received no financial record from her since February 17, 2026.

9. Between November 19, 2025 and July 27, 2026 I filed at least nineteen papers in the divorce asking for leave to subpoena records from the institutions that hold these accounts. No subpoena was authorized. On June 1, 2026 my request for subpoena leave was denied, and on June 8, 2026 I was told that no hearing on my request for review could be set before the June 11 trial.

10. I have never questioned Movant under oath. November 18, 2026 would be the first time. Since Movant filed the divorce I have not received a dollar of marital assets.

11. Since December 2024 I have had to litigate in the following forums, without counsel since my last attorney withdrew in 2025: (a) the 254th, 302nd, and 301st Judicial District Courts of Dallas County, Cause No. DF-24-18010, in which more than 250 papers have been filed; (b) the Justice Court, Precinct 5, Place 1, Dallas County, in three eviction suits, including Nos. JPC-25-06838-51 and JPC-25-12755-51; (c) the County Court at Law, Dallas County, on appeal of an eviction judgment, No. CC-26-01092-A; (d) the Fifth Court of Appeals at Dallas, No. 05-26-01443-CV; (e) this Court, in this case and in Adversary No. 26-03034-mvl; and (f) the United States Department of Labor, Employee Benefits Security Administration, File No. 202630-18882, and the claims process of the Accenture US Group Health Plan.

12. Exhibit SUPP-1 is a true copy of three pages of an email chain I received from the Accenture US Group Health Plan. Page 1 is the Plan's email to me of November 12, 2026, 4:07 p.m. Page 2 is the Plan's letter of October 14, 2026. Page 3 is the Plan's determination of October 6, 2026. I redacted one member identification number on page 1 and made no other change. The COBRA election notice I received is dated August 4, 2026 and is addressed to my mailing address, 539 W. Commerce St., #2010, Dallas, Texas 75208. I did not receive a notice dated June 26, 2026.

13. Movant has not served me with a subpoena for the November 18, 2026 hearing. I will be in the courtroom on November 18, 2026.

14. The member portal of the plan's medical carrier shows three denied claims for care I received on November 26, 2025 and December 2, 2025. The amounts it lists as my share

are $28,501.20, $2,602.99, and $200.00, a total of $31,304.19. The portal lists me as "Spouse."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in **Brazos County** on **November 13, 2026.**

Jason Emory McKemie

## INDEX OF EXHIBITS

Exhibit SUPP-1 — Emails of the Accenture US Group Health Plan to the Debtor dated November 12, 2026, October 14, 2026, and October 6, 2026 (3 pages; one identification number redacted).

Exhibit SUPP-2 — Two pages of Movant's Accenture employment agreement and three Chase statement pages Movant produced in DF-24-18010 (GU000960, GU000961, GU001969) (5 pages; account and loan numbers redacted to the last four digits). Authenticated in the Debtor's declaration at the end of his Exhibit List filed today.

Updated proposed orders are submitted separately on (1) ECF 134 and ECF 141; (2) ECF 97 and ECF 111; and (3) ECF 110.

# CERTIFICATE OF SERVICE

I certify that on November 13, 2026, I served a true and correct copy of this supplement, with its declaration and exhibits and the three updated proposed orders, by email on the following counsel for the Movant, Gwendolyn Laura Ulijasz:

- Jonathan D. Steele (jsteele@beermannlaw.com), Beermann LLP
- Sara A. Boucher (saboucher@beermannlaw.com), Beermann LLP
- Richard G. Dafoe (rdafoe@wslawpc.com), Waddell Serafino Geary Rechner Jenevein, P.C.
- Rebecca L. Armstrong (rebecca@armstronglawtexas.com), Armstrong Divorce & Family Law, PLLC
- Terra Aguirre (terra@armstronglawtexas.com), Armstrong Divorce & Family Law, PLLC
- Lauren Shaw (lauren@armstronglawtexas.com), Armstrong Divorce & Family Law, PLLC

and on:

- Areya Holder Aurzada, Chapter 7 Trustee (areya@holderlawpc.com)
- Office of the United States Trustee (ustpregion06.da.ecf@usdoj.gov)

On the same date I emailed a copy to the courtroom deputy at mvl_settings@txnb.uscourts.gov. Counsel of record will also receive electronic notice through the Court's CM/ECF system upon docketing.

The original, ink-signed paper filing was submitted to the Clerk, United States Bankruptcy Court, Northern District of Texas, 1100 Commerce Street, Room 1254, Dallas, Texas 75242, as follows (one box checked):

[✓] delivered in person to the Clerk's office on November 13, 2026.

[ ] placed in overnight delivery on November 13, 2026, for delivery on the Court's next business day, November 16, 2026.

Jason Emory McKemie