FILED
NOV 13 2026
CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# EXHIBIT SUPP-1

Emails of the Accenture US Group Health Plan to the Debtor:
November 12, 2026 (page 1); October 14, 2026 (page 2); October 6, 2026 (page 3).

Three pages of the email chain as received by the Debtor.
One member identification number on page 1 is redacted. No other change was made.

In re Jason Emory McKemie, Case No. 26-30161-mvl7 (Bankr. N.D. Tex.)
Debtor's Supplement of November 13, 2026

**From:** **USBenefits** USBenefits@accenture.com
**Subject:** RE: [External] Status request — Health Care Flexible Spending Account and UnitedHealthcare Vision Plan access / Response Requested by Monday, Nov 2nd
**Date:** November 12, 2026 at 4:07 PM
**To:** Jason McKemie jmckemie@mckemie.net
**Cc:** Pott, Wynn E. wynn.e.pott@accenture.com, info@businessolver.com, Boone, Nathan T. nboone@littler.com, Juarez, Lizeth lgjuarez@littler.com, DHerring@littler.com dherring@littler.com

Dear Mr. McKemie,

As you know, you are a dependent spouse covered under the Accenture US Group Health Plan and your coverage under the plan was restored retroactive to July 1, 2026. With respect to the FSA, the restoration of your coverage means that Ms. Ulijasz is able to seek reimbursement under the healthcare FSA for eligible expenses incurred by you from January 1, 2026 through December 31, 2026 (or such earlier date if your coverage is terminated in accordance with plan rules). As a covered dependent, you do not have independent entitlement to establish or access an Accenture FSA account. The FSA Plan permits, but does not require, that you be provided a right to seek reimbursement for eligible claims. However, your ability to seek reimbursement of expenses under the FSA can only be secured through the accountholder and Accenture has no involvement in that process.

We provide the following information with respect to your vision coverage. Documentation related to your vision coverage is available using the information below.

- Member/subscriber ID [redacted]
- Member-services num[redacted]0 5711

Your eligibility for, and entitlement to, any benefits remains subject to the applicable Plan terms. The Plan Administrator expressly reserves all rights, defenses, and positions.

Sincerely,
ACCENTURE US GROUP HEALTH PLAN

Wynn E. Pott
On behalf of the Plan Administrator
***NOTE: Accenture reserves the right, in its sole discretion, to amend, modify or terminate any of its benefit plans at any time.***

**From:** Jason McKemie <jmckemie@mckemie.net>
**Sent:** Friday, October 30, 2026 7:34 PM
**To:** Pott, Wynn E. <wynn.e.pott@accenture.com>
**Cc:** USBenefits <USBenefits@accenture.com>; info@businessolver.com; NA.HR.Questions <NA.HR.Questions@accenture.com>; NBoone@littler.com; LGJuarez@littler.com; DHerring@littler.com
**Subject:** [External] Status request — Health Care Flexible Spending Account and UnitedHealthcare Vision Plan access / Response Requested by Monday, Nov 2nd

Wynn E. Pott, on behalf of the Plan Administrator,

Two items. Please answer in writing.

1. Health Care Flexible Spending Account. This is an ERISA employee welfare benefit plan. ERISA § 3(1), 29 U.S.C. § 1002(1). My enrollment in it was terminated on October 31, 2025 by an erroneous qualifying life event submission — a divorce-based QLE submitted when no divorce had occurred. The Plan has represented that all of my benefits have been restored. Where is my Health Care Flexible Spending Account?

State in writing: (a) my current status under that account; (b) if it was restored after the October 31, 2025 erroneous QLE submission, the date it was restored and the proof of restoration; (c) if it was not restored, confirm that; and (d) the exact process by which I submit a claim against that account and receive reimbursement.

This item concerns the Health Care Flexible Spending Account, not the Dependent Care Flexible Spending Account.

2. UnitedHealthcare Vision Plan. Your October 14, 2026 letter states that my vision coverage under the Participating Vision Plan was restored retroactive to July 1, 2026. I cannot log in to UnitedHealthcare Vision and cannot use the coverage. Provide my member or subscriber ID, the group number, the member services number, and a copy of any vision ID card on file for me.

I cannot obtain either of these from the Benefits Center. Every time I call, I am told I am not authorized to speak to anyone about the account. That is why I am requesting this in writing from you.

Please respond by Monday, Nov 2nd

Jason Emory McKemie
Covered Dependent Spouse, Accenture US Group Health Plan
(214) 519-8958 | jmckemie@mckemie.net
539 W. Commerce St., Ste. 2010, Dallas, TX 75208

On Oct 14, 2026, at 3:07 PM, Pott, Wynn E. <wynn.e.pott@accenture.com> wrote:

Dear Mr. McKemie:

For the specific reason recited in our communication dated October 6, 2026, the Plan Administrator confirms that your active prescription drug coverage under the Participating Medical Plan and your vision coverage under the Participating Vision Plan, both under the Accenture US Group Health Plan, have been restored retroactive to July 1, 2026, with no gap in coverage. We are also working with Aetna to ensure that claims affected during the period beginning July 1 are reprocessed under the Participating Medical Plan.

In response to the additional benefit-administration matters identified in your October 9 correspondence, we provide the following:

1. All claims and reimbursements will be administered in accordance with the terms of the applicable plan; no separate channels or single points of contact will be created.
2. Benefits administration records do not indicate that you were enrolled in dependent life insurance or critical illness coverage in 2026.
1. The Plan Administrator's position on your rights to coverage under the HSA as a covered dependent remains as previously communicated.
2. You are not permitted to make beneficiary designations as a covered dependent under any of the Accenture plans, so no information is available to you regarding beneficiary designations.

Your eligibility for, and entitlement to, any benefits remains subject to the applicable Plan terms. The Plan Administrator expressly reserves all rights, defenses, and positions.

Sincerely,
ACCENTURE US GROUP HEALTH PLAN

Wynn E. Pott
On behalf of the Plan Administrator

Wynn E. Pott
Accenture – North America Benefits Director
Phone: 727-897-4230
Email: wynn.e.pott@accenture.com

**Please note our new Benefits administrators:**
**Health & Insurance – benefitscenter.accenture.com or 888 259 6059**
**401(k) – www.benefits.ml.com/login/accenture or 888 401 8258**

**From:** Jason McKemie <jmckemie@mckemie.net>
**Sent:** Friday, October 9, 2026 4:39 PM
**To:** Pott, Wynn E. <wynn.e.pott@accenture.com>
**Cc:** USBenefits <USBenefits@accenture.com>; info@businessolver.com; NA.HR.Questions <NA.HR.Questions@accenture.com>; Unruch, Joel <joel.unruch@accenture.com>; kate.clifford@accenture.com; NBoone@littler.com; LGJuarez@littler.com; DHerring@littler.com
**Subject:** Re: [External] URGENT / LIFE-SAFETY — Prescription Access Required TODAY — Full Demand Attached (EBSA File No. 202630-18882)

Mr. Pott,

My previous message crossed with yours — I sent it before I had seen your reply.

I will be heading to the pharmacy shortly to fill prescriptions and will confirm once they are in hand; if the pharmacy cannot fill, I will contact you and CVS Customer Care immediately, and I ask that you remain reachable today until the fill is confirmed.

So that I can actually fill today, please send me in writing everything the pharmacy needs to process the claim: my RxBIN, RxPCN, RxGroup, Member/Cardholder ID, my person/dependent code, and the coverage effective date. If you have a prescription or medical ID card on file for me — or for any benefit that has been restored so far — please email me a copy of it; a single card image showing those fields is the fastest way for the pharmacy to run the claim and for me to confirm what is active.

Today's action on prescriptions addresses the first and most urgent item in my demand. It does not address the rest of it. The following remain outstanding, on the schedule and the deadlines stated in the demand, each of which continues to run:

1. Full Aetna medical reinstatement with all accumulated deductibles, copayments, and out-of-pocket maximums credited, and reprocessing of every claim clawed back on or after October 31, 2025 and between June 30 and July 9, 2026 (Monday, October 12);
1. An independent claims-submission and direct-reimbursement channel in my name, and a full accounting of reimbursements paid to the participant (October 13–14);

On Oct 6, 2026, at 9:10 AM, USBenefits <USBenefits@accenture.com> wrote:

Dear Mr. McKemie,

The Plan Administrator has reviewed your email correspondence dated September 18, 2026, and the memorandum ruling entered in Cause No. DF-24-18010 on the same date.

The Plan Administrator has determined that the information provided indicates that you remain legally married to Gwendolyn Ulijasz under Texas law. You are therefore an eligible dependent spouse of Ms. Ulijasz under the Plan, and your active coverage will be restored retroactive to July 1, 2026. The Plan Administrator will process its notification to appropriate vendors in due course.

This determination does not constitute any determination by the Plan Administrator as to your entitlement to any particular benefit under the Plan. The Plan Administrator expressly reserves all rights, defenses, and positions, and nothing in this correspondence should be construed as an admission of any factual allegation, legal conclusion, or characterization contained in your correspondence. Your current eligibility, future eligibility, and entitlement to any benefits from the Plan remains subject to the Plan's governing documents.

Sincerely,

**ACCENTURE US GROUP HEALTH PLAN**

Wynn E. Pott
On behalf of the Plan Administrator

*NOTE: Accenture reserves the right, in its sole discretion, to amend, modify or terminate any of its benefit plans at any time.*

---

**From:** jmckemie@mckemie.net <jmckemie@mckemie.net>
**Sent:** Friday, September 18, 2026 1:45 PM
**To:** USBenefits <USBenefits@accenture.com>
**Cc:** Pott, Wynn E. <wynn.e.pott@accenture.com>; info@businessolver.com; NA.HR.Questions <NA.HR.Questions@accenture.com>
**Subject:** [External] URGENT — Demand for Immediate Reinstatement of Medical and Prescription Coverage — Jason McKemie, Dependent Spouse — Divorce Not Final (Interlocutory) — DF-24-18010
**Importance:** High

**To the Plan Administrator, Accenture US Group Health Plan, and Businessolver:**

1. I am Jason McKemie, the dependent spouse of Accenture employee Gwendolyn Ulijasz under the Accenture US Group Health Plan. **I demand immediate reinstatement of my active medical and prescription-drug coverage today. Treat this as a formal claim for benefits and a request for an eligibility determination under the Plan and 29 C.F.R. § 2560.503-1.**
2. On July 9, 2026, USBenefits wrote that my coverage would "cease effective June 30, 2026" because "the parties are divorced pursuant to the signed divorce decree executed on June 26, 2026, and there is not documentation to the contrary." **That predicate is now false.**
3. On September 18, 2026, the 301st District Court, Dallas County (Cause No. DF-24-18010), signed a ruling vacating the property-division and finality provisions of the June 26, 2026 decree and making the remaining divorce provisions interlocutory. Under controlling Texas authority — Gathe v. Gathe, 376 S.W.3d 308, and Vautrain v. Vautrain, 646 S.W.2d 309 — a partial new trial on the property division renders the divorce interlocutory and the parties remain married until the property issues are finally disposed of. **The divorce is not final. I remain a married, eligible dependent spouse. The signed ruling is attached. This is the documentation to the contrary.**
4. **Accenture has already applied this exact rule to me.** On January 21, 2026, USBenefits wrote that when "the qualifying event that triggered Cobra notice wasn't final yet, and therefore you were still an eligible dependent, we directed them to negate the life event," restored coverage with "no gap in coverage," and "reached out to both your medical carrier and pharmacy benefit manager to correct their records." The identical correction is required now.
5. **I demand, today: (a) reverse the June 30, 2026 termination and restore my active medical and prescription coverage with no gap; (b) direct Aetna and CVS Caremark to correct their records to reflect active coverage so my prescriptions can be dispensed today; and (c) confirm in writing the effective**

# EXHIBIT SUPP-2

Movant's Accenture employment agreement (two pages) and
Chase statements Movant produced in DF-24-18010 (three pages).

Page 1: Employment Agreement, first page.
Page 2: Exhibit B to the Employment Agreement, "Signing Bonus."
Pages 3–4: Chase account ending 3898, October 26 – November 27, 2024 (GU000960–961).
Page 5: Chase account ending 9259, October 28 – November 28, 2025 (GU001969).

Account and loan numbers are redacted to the last four digits (Fed. R. Bankr. P. 9037).
No other change was made.

In re Jason Emory McKemie, Case No. 26-30161-mvl7 (Bankr. N.D. Tex.)
Debtor's Supplement of November 13, 2026

**U.S. MANAGING DIRECTOR EMPLOYMENT AGREEMENT (LLP)**

**Employment Agreement**

This Employment Agreement ("Agreement") is between Accenture LLP ("Accenture") and Gwendolyn Ulijasz ("You" and all similar references) as of 10/02/2024 (the "Effective Date.")

In consideration of the promises and mutual covenants herein and for other good and valuable consideration, the parties agree as follows:

**1. Certain Definitions**

For purposes of this Agreement and its incorporated Exhibits, the following definitions shall apply. The plural forms of the following terms may also be used in this Agreement.

**(a)** The term "Accenture" means Accenture LLP.

**(b)** The term "Affiliate" means any other Legal Entity which Controls, is Controlled by or is under common Control with Accenture which includes Accenture Plc (a company incorporated in the Republic of Ireland) and any other Affiliate to or successor entity of Accenture Plc, and any successor in title or assign of any such Legal Entity.

**(c)** The term "Alliance Entity" means any Legal Entity with whom Accenture and/or any Affiliate has entered into an alliance agreement, joint venture agreement, or any other legally binding go-to-market agreement, resale agreement or any agreement to combine offerings, products and/or services, or (without limiting the foregoing) any Legal Entity in which Accenture and/or any Affiliate has an interest, whether or not a Controlling interest; provided always that the term "Alliance Entity" shall not include: (1) any Competitive Enterprise, (2) any contractor and/or sub-contractor of Accenture and/or any Affiliate, and/or (3) any sales, buying and/or marketing agent of Accenture and/or any Affiliate.

**(d)** The term "Competitive Enterprise" shall mean a business enterprise that engages in or owns or controls a significant interest in any entity that engages in the performance of services of the type conducted, authorized, offered, or provided by Accenture or any of its Affiliates. Without limiting the generality of the preceding sentence, "Competitive Enterprise" shall include, without limitation, the entities set forth on Accenture's current list of Accenture's competitors. Accenture maintains the current list on the "myHoldings" page on the Accenture portal (located under "Departure Considerations" in the "Frequently Asked Questions" document on the Resources section of the site). Accenture may update this list from time-to-time.

**(e)** The term "Control" means (1) ownership by a Legal Entity of at least a majority of the voting interest of another Legal Entity or (2) the right or ability of a Legal Entity, whether directly or indirectly, to direct the affairs of another by means of ownership, contract or otherwise, and "Controls," "Controlled" and "Controlling" shall be construed accordingly.

**(f)** The term "Knowledge Capital" means any reports, documents, templates, studies, software programs, delivery methods, specifications, business methods, tools, methodologies, inventions,

**EXHIBIT B**

**ADDITIONAL TERMS RELATED TO COMPENSATION AND EQUITY**

The following are additional terms and conditions related to your compensation, bonuses, and equity grants. Accenture retains the right, in its discretion, to modify or remove components that currently comprise Accenture Leadership compensation or Accenture Leadership equity programs.

**SIGNING BONUS**

You will receive a Signing Bonus in the amount of $300,000.00. Your Signing Bonus will be paid in 2 installments, if you are an employee in good standing as of each payment date.

Within two years of your start date, should you for any reason decide to leave the Company or your employment is terminated by us for "cause" as defined in your employment agreement, you will be required to remit to Accenture a pro-rata amount of your Signing Bonus based on the following calculation, and no subsequent bonus payments will be made to you:

- If you depart or are asked to leave in the first 12 months—1/12th of the total installment payments made in the first 12 months times each full month of the 12-month period running from the date of your resignation or the date you are given notice to terminate by the Company until the end of the 12-month period, whether you are asked to work all or part of your notice period.

- If you depart or are asked to leave after 12 months but before 24 months—1/24th of the total net payment (Y1 and Y2) times each full month of the 24-month period running from the date of your resignation or the date you are given notice to terminate by the Company until the end of the 24-month period, whether you are asked to work all or part of your notice period.

You will not be required to remit the sign-on bonus on a pro rata basis if you are terminated for reasons other than "cause."

Your signature below authorizes the Company to deduct any payments due under this provision from any monies due to you on termination of your employment to the extent permitted by applicable law. Any shortfalls will still require remittance from you and shall be recoverable as a debt.

**GLOBAL ANNUAL BONUS**

Accenture's global annual bonus (GAB) determines payouts based on individual achievements as well as overall company performance. To be eligible for the GAB, you must join Accenture by August 31 of the current fiscal year (our fiscal year ends on August 31) and must also be employed with Accenture on August 31 of each fiscal year for which a bonus is declared. In your first year, the amount of your GAB will be pro-rated based on your start date with the Company. Your GAB will be paid out at the end of the calendar year once your achievements and Company performance for the fiscal year are known. Your bonus is determined as a percentage of earned base pay in the fiscal year, based upon:

- Accenture's achievement of its earnings objectives; and
- Individual contributions and achievements

CHASE

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

October 28, 2024 through November 27, 2024
Account Number: [redacted]3898

**CUSTOMER SERVICE INFORMATION**

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-888-262-4273 |
| Para Espanol: | 1-888-262-4273 |
| International Calls: | 1-713-262-1679 |

We accept operator relay calls

00222170 DRE 111 212 33324 NNNNNNNNNNN 1 000000000 18 0000
MS GWENDOLYN L ULIJASZ
539 WEST COMMERCE STREET
#2010
DALLAS TX 75208

**Please review our overdraft service options at the end of this statement**

We've included an overview of our overdraft services and fees that are available for personal checking account(s) at the end of this statement.

Please note, the following overdraft services are not available for certain accounts:

- Standard Overdraft Practice and Chase Debit Card Coverage℠ are not available for Chase High School Checking℠, Chase Secure Checking℠ and Chase First Checking℠.
- Overdraft Protection is not available for Chase Secure Checking℠ and Chase First Checking℠.

If you have questions, please visit **chase.com/overdraft** or call us at the number on this statement. We accept operator relay calls.

## CHECKING SUMMARY

Chase Sapphire Checking

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$14,504.24** |
| Deposits and Additions | 134,199.71 |
| ATM & Debit Card Withdrawals | -500.00 |
| Electronic Withdrawals | -69,835.23 |
| Fees | -25.00 |
| **Ending Balance** | **$78,343.72** |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.23 |
| Interest Paid Year-to-Date | $2.30 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/28 | Remote Online Deposit 1 | $3,084.16 |
| 10/29 | Mspbna ACH Trnsfr PPD ID: 1391321258 | 0.11 |
| 11/06 | Accenture Llp Payroll PPD ID: 1720542904 | 10,607.36 |
| 11/06 | Accenture Llp Payments PPD ID: 8975729001 | 70.00 |
| 11/12 | Online Transfer From Chk ...6893 Transaction#: 22695263377 | 3,400.00 |
| 11/20 | Payoneer 7362 EDI Paymnt 366184728596456 CCD ID: 1352254039 | 123.79 |
| 11/21 | Accenture Llp Payroll PPD ID: 1720542904 | 106,407.03 |



GU000960

CHASE

October 28, 2024 through November 27, 2024
Account Number: [redacted]3898

## DEPOSITS AND ADDITIONS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/21 | Accenture Llp Payroll PPD ID: 1720542904 | 10,448.03 |
| 11/26 | State of Ill Ilsttaxrfd PPD ID: 1376002057 | 59.00 |
| 11/27 | Interest Payment | 0.23 |
| **Total Deposits and Additions** | | **$134,199.71** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/25 | ATM Withdrawal 11/23 5220 W Lovers Ln Dallas TX Card 0416 | $500.00 |
| **Total ATM & Debit Card Withdrawals** | | **$500.00** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/28 | 10/27 Online Transfer To Chk ...6893 Transaction#: 22516949333 | $500.00 |
| 10/28 | American Express ACH Pmt W3000 Web ID: 2005032111 | 174.00 |
| 10/31 | Zelle Payment To Travis Jpm99Aqathrj | 5,000.00 |
| 11/04 | 11/04 Payment To Chase Card Ending IN 4005 | 1,000.00 |
| 11/06 | 11/06 Payment To Chase Card Ending IN 4005 | 5,000.00 |
| 11/07 | Amex Epayment ACH Pmt A6336 Web ID: 6133133497 | 683.04 |
| 11/07 | Sofi Bank Pl Pl Pymt T52510340 Web ID: 3452499527 | 2,782.26 |
| 11/12 | Intouch Credit U Ck-Wth PPD ID: 311079474 | 1,161.70 |
| 11/13 | 11/12 Payment To Chase Card Ending IN 4005 | 12,053.39 |
| 11/15 | Zelle Payment To Housekeeperfiras Jpm99AR8Jme1 | 40.00 |
| 11/18 | American Express ACH Pmt M8164 Web ID: 2005032111 | 15.00 |
| 11/18 | Venmo Payment 1038312877401 Web ID: 3264681992 | 158.00 |
| 11/22 | 11/22 Online Transfer To Chk ...6893 Transaction#: 22796750628 | 1,500.00 |
| 11/22 | 11/22 Payment To Chase Card Ending IN 4005 | 37,571.87 |
| 11/22 | Zelle Payment To Jason Mckemie 22806450937 | 1,500.00 |
| 11/25 | Loan-Aig [redacted]10O Web ID: 1132592361 | 695.97 |
| **Total Electronic Withdrawals** | | **$69,835.23** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/27 | Monthly Service Fee | $25.00 |
| **Total Fees** | | **$25.00** |

Did you know you can waive your Chase Sapphire Checking Monthly Service Fee by keeping an average daily balance of at least $75,000 in qualifying linked deposits and investments? During this statement period, your combined average daily balance was $26,181.

CHASE

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

October 28, 2025 through November 28, 2025
Account Number: [redacted]9259

**CUSTOMER SERVICE INFORMATION**

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-935-9935 |
| Para Espanol: | 1-877-312-4273 |
| International Calls: | 1-713-262-1679 |
| We accept operator relay calls | |

00191151 DRE 111 212 33325 NNNNNNNNNNN 1 000000000 18 0000
MS GWENDOLYN L ULIJASZ
11703 HUEBNER RD STE 106 PMB 499
SAN ANTONIO TX 78230-1211

01911510201000000022

## CHECKING SUMMARY

Chase Total Checking

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$10,663.69** |
| Deposits and Additions | 171,990.36 |
| ATM & Debit Card Withdrawals | -1,387.00 |
| Electronic Withdrawals | -54,931.87 |
| **Ending Balance** | **$126,335.18** |
| Interest Paid Year-to-Date | $0.27 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/06 | Accenture Llp Payroll PPD ID: 1720542904 | $11,071.79 |
| 11/06 | Accenture Llp Payments PPD ID: 8975729001 | 654.65 |
| 11/14 | Accenture Llp Payroll PPD ID: 1720542904 | 34,225.57 |
| 11/20 | Accenture Llp Payments PPD ID: 8975729001 | 1,268.66 |
| 11/21 | Accenture Llp Payroll PPD ID: 1720542904 | 113,475.00 |
| 11/21 | Accenture Llp Payroll PPD ID: 1720542904 | 11,294.69 |
| **Total Deposits and Additions** | | **$171,990.36** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/29 | Recurring Card Purchase 10/29 Kasa Yoga Dallas Mindbodyonlin TX Card 3022 | $227.00 |
| 11/03 | Payment Sent 11/02 Cash App*Joe Dominguez Oakland CA Card 3022 | 60.00 |
| 11/03 | ATM Withdrawal 11/02 815 Evans Rd San Antonio TX Card 3022 | 300.00 |
| 11/24 | ATM Withdrawal 11/23 7959 Fredericksburg Rd San Antonio TX Card 3022 | 500.00 |
| 11/28 | ATM Withdrawal 11/28 5258 De Zavala Rd San Antonio TX Card 3022 | 300.00 |
| **Total ATM & Debit Card Withdrawals** | | **$1,387.00** |

GU001969

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 26-30161-mvl7** |
| JASON EMORY McKEMIE, | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

**ORDER ON DEBTOR'S MOTION TO COMPEL MOVANT'S IN-PERSON APPEARANCE AND TESTIMONY [ECF 134] AND ON MOVANT'S MOTION FOR LEAVE TO TESTIFY BY WEBEX [ECF 141]**

Before the Court are (a) the Debtor's Advance Notice and Motion to Compel Movant's In-Person Appearance and Testimony at the November 18, 2026 Evidentiary Hearing [ECF 134], his opposition to remote testimony [ECF 144], and his supplement filed November 13, 2026; and (b) the Motion of Gwendolyn Laura Ulijasz ("Movant") for Leave to Give Any Testimony at the November 18, 2026 Hearing by WebEx Videoconference [ECF 141], her application to shorten time [ECF 142], and her response [ECF 143]. Having considered the papers and the record, the Court ORDERS:

1. **Expedited consideration.** The requests for expedited consideration are GRANTED.

2. **WebEx motion.** ECF 141 is DENIED. Movant has not shown good cause in compelling circumstances for testimony by contemporaneous transmission from a different location. Fed. R. Civ. P. 43(a); Fed. R. Bankr. P. 9017.

3. **Appearance.** ECF 134 is GRANTED as stated in this Order. Movant shall appear in person at the hearing on November 18, 2026, at 9:30 a.m., at 1100 Commerce Street, Dallas, Texas, in the courtroom of the undersigned, and shall remain in attendance until excused by the Court.

4. **Testimony.** The Debtor may call Movant as an adverse witness. Fed. R. Evid. 611(c)(2), 614(a). Movant shall be sworn and shall answer. No subpoena is required to examine a party who is in attendance.

5. **Issues.** The examination may address: (a) cause for modification of the automatic stay and the conditions of any modification, including Movant's transfers of funds and property before and after January 12, 2026; (b) Movant's request under 11 U.S.C. § 362(b)(2)(A)(iv), including her June 26, 2026 enrollment change and her Exhibits 2 and 3; (c) the accounts, compensation, and records that are the subject of ECF 97 and ECF 111, including Movant's productions; (d) the terms of Movant's requested withdrawal; and (e) the statements in Movant's September 10, 2026 declaration.

6. **Declaration.** Movant's September 10, 2026 declaration and the exhibits to ECF 110 are not received as evidence on Movant's behalf. Her statements in them may be offered against her. Fed. R. Evid. 801(d)(2).

7. **Subpoena.** On the Debtor's request the Clerk shall issue a subpoena under Fed. R. Civ. P. 45(a)(3) commanding Movant to attend the hearing. Movant's counsel of record shall accept service of the subpoena on her behalf by email. Tender of the attendance fee and mileage to counsel satisfies Fed. R. Civ. P. 45(b)(1).

8. **Failure to appear.** If Movant does not appear and submit to examination as ordered, the Court will decide ECF 110, ECF 111, and ECF 97 on the evidence received, may draw adverse inferences from her absence, and will hear any request for further relief.

9. **Other requests.** Any request concerning Movant's safety or her ability to attend shall be made by sworn motion filed and served on the Debtor before the hearing. All requests for fees, costs, or sanctions against the Debtor in connection with ECF 134, 141, 142, 143, or 144 are DENIED.

10. **Separate rulings.** ECF 97, ECF 110, and ECF 111 will be decided by separate written orders.

# # # End of Order # # #

Prepared and submitted by:

Jason Emory McKemie
Debtor, pro se
539 W. Commerce St., #2010
Dallas, Texas 75208
(214) 519-8958

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 26-30161-mvl7** |
| JASON EMORY McKEMIE, | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

**ORDER GRANTING DEBTOR'S MOTION FOR RULE 2004 SUBPOENAS [ECF 97] AND OVERRULING OBJECTION [ECF 111]**

Before the Court are the Debtor's Motion for Order Authorizing Rule 2004 Subpoenas [ECF 97], the Objection of Gwendolyn Laura Ulijasz ("Movant") [ECF 111], the Debtor's reply [ECF 124], and the Debtor's supplement filed November 13, 2026. Having considered the papers, the evidence, and the arguments at the hearing on November 18, 2026, the Court ORDERS:

1. **Authorization.** The Debtor's Motion for Rule 2004 Subpoenas [ECF 97] is GRANTED as stated below. Movant's Objection [ECF 111], including the request to defer this discovery, is OVERRULED. The Debtor is a party in interest. The records relate to the Debtor's property and financial condition and to matters that may affect the administration of the estate. Fed. R. Bankr. P. 2004(b)(1). Good cause exists for this examination.

2. **Applicable procedure.** Local Bankruptcy Rule 2004-1(b) does not bar this discovery. Movant has withdrawn her request that the Court determine in ECF 110 whether the property is property of the estate. To the extent any request pertains to a pending contested

matter, it is also authorized under Fed. R. Bankr. P. 9014(c) and 7034 and Fed. R. Civ. P. 34(c) and 45. No further motion and no adversary complaint is required to obtain it.

3. **Subpoenas.** On the Debtor's request the Clerk shall issue subpoenas under Fed. R. Bankr. P. 9016 and Fed. R. Civ. P. 45(a)(3) to the custodians identified in ECF 97, Section IV. The subpoenas to financial institutions shall include every account in the name of GLU Distribution Limited Liability Company (Illinois Secretary of State File No. 08945586) and every account on which Movant is a signer. Otherwise proper discovery in a pending matter is not limited to those custodians and may reach additional institutions, lenders, or transferees connected to the disputed interests. Additional Rule 2004 examinations may be sought by supplemental motion. Rule 45's notice, service, objection, and nonparty protections remain applicable.

4. **Additional custodians.** The Clerk shall also issue subpoenas to LightStream, BMW of San Antonio, and BMW Financial Services, limited to the January 23, 2026 loan payoff and the February 28, 2026 trade-in, lien payoff, and financing described in Movant's September 10, 2026 declaration [ECF 110 at 31, 33].

5. **Employer payments.** The subpoena to Accenture LLP shall include all expense, housing, rental, and relocation reimbursements and allowances paid to or for Movant and the account into which each was paid. The Clerk shall also issue a subpoena to Cognizant Technology Solutions Corporation, and to the affiliate that employed Movant, for records of all payroll, bonus, equity, expense-reimbursement, and separation or settlement payments to or for Movant on or after January 1, 2024, and the account into which each was paid.

6. **Further custodians on notice.** The Debtor may serve a subpoena under this Order on any other entity that the records produced, or Movant's own filings and testimony, identify as (a) having received a payment or transfer from Movant or from an account in her name on or after January 1, 2024, including Jetty Partners LLC and Skweres Properties, LLC, or (b) having moved, stored, received, or held property removed from the Debtor's residence on April 16 or May 22, 2026, including All My Sons Moving & Storage. The Debtor shall first file a notice identifying the entity and the records sought and serve it on Movant's counsel and the Chapter 7 Trustee. If no objection is filed within 7 days after service, the Clerk shall issue the subpoena. If an objection is filed, the Court will hear it on an expedited basis. A subpoena under clause (a) to a law firm is limited to the dates of engagement, the dates and amounts of invoices, the payments received, and the source of each payment.

7. **Tracing and asserted loans.** Responsive source records shall identify transfers, withdrawals, deposits, linked and receiving accounts, proceeds, and successor assets; compensation, equity, retirement, vehicle, and title interests; and actual consideration, funding, repayments, and balances of asserted debts, including family loans. Production shall include maintained source and destination account and routing numbers, counterparty identities, wire and ACH references, check images, and tracing audit trails.

8. **Period.** The periods stated in ECF 97 apply, through each subpoena's service date. Earlier source records may be sought through the applicable discovery procedure to test claimed premarital sources. Postpetition records may trace earlier property and proceeds; this Order does not classify new postpetition earnings as estate property.

9. **No characterization barrier.** Records shall not be withheld solely because property is claimed separate or solely managed, is titled in one name, has a zero or overdrawn balance, is not itemized on Form 1, or has an unidentified destination. Discovery may test source, mixing, management, and liability under 11 U.S.C. § 541(a)(2)(A) and (B). Ownership is not adjudicated.

10. **Benefits records.** Production shall include every qualifying-life-event and other eligibility-event submission, attestation, and supporting document, with audit trails, premiums, HSA and FSA balances, contributions, distributions, reimbursements and the payee of each reimbursement, card and access events, and beneficiary changes. Disclosure under 45 C.F.R. § 164.512(e)(1)(i), where applicable, is authorized only for these economic and administrative records. Unrelated diagnoses, treatment, and medical-claim substance are excluded.

11. **Production and use.** Subject to timely Rule 45 objections, responsive records shall be produced electronically, directly and simultaneously to the Debtor and the Chapter 7 Trustee within 21 days after service; unaffected records shall not be delayed. Production to the Trustee is also ordered under 11 U.S.C. § 542(e). Privilege claims shall comply with Fed. R. Civ. P. 45(e)(2). Other parties shall receive copies as required by the applicable discovery rules. No Trustee-only, attorneys'-eyes-only, or blanket other-proceeding use restriction is imposed. Lawful use in Cause No. DF-24-18010 is not prohibited. Applicable privilege, privacy, and admissibility rules remain in force.

12. **Identifiers and drives.** Full identifiers needed for tracing shall be retained in discovery production and protected from public filing under Fed. R. Bankr. P. 9037. This Order authorizes source-record discovery, not inspection, imaging, copying, review, or use of the Debtor's drives, their contents, or derivatives, and does not diminish his separate-property, theft, or return claims.

13. **Review before adjudication.** Before a merits determination of disputed estate-property interests, the Debtor and the Trustee shall have at least 14 days after completion of material financial discovery and receipt of all seven identified April 16, 2026 body-camera recordings to review and supplement the record. Emergency preservation, return of essential property, healthcare, subsistence, and litigation-funding requests shall not be delayed by this review provision.

14. **Fees and rights.** Requests for fees, costs, or sanctions against the Debtor concerning ECF 97 or ECF 111 are DENIED. No such amount is assessed. This Order does not adjudicate recovery claims, alter any other court's orders, or grant relief from the automatic stay.

# # # End of Order # # #

Prepared and submitted by:

Jason Emory McKemie
Debtor, pro se
539 W. Commerce St., #2010
Dallas, Texas 75208
(214) 519-8958

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 26-30161-mvl7** |
| JASON EMORY McKEMIE, | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

**ORDER DENYING MOTION OF GWENDOLYN LAURA ULIJASZ FOR ANNULMENT, DETERMINATION, AND MODIFICATION OF THE AUTOMATIC STAY [ECF 110]**

Before the Court are the Motion of Gwendolyn Laura Ulijasz ("Movant") for annulment of the automatic stay, for a determination under 11 U.S.C. § 362, and alternatively for modification of the stay [ECF 110], as limited by her response of November 12, 2026 [ECF 143]; the Debtor's response and declaration [ECF 122]; and the Debtor's supplement filed November 13, 2026. Having considered the papers, the evidence, and the arguments at the final hearing on November 18, 2026, the Court ORDERS:

1. **Withdrawal.** Movant's request for leave to withdraw, "without adjudication," her requests for annulment of the stay and for a determination that property is not property of the estate [ECF 143 ¶ 6] is DENIED. Fed. R. Bankr. P. 9014(c), 7041; Fed. R. Civ. P. 41(a)(2).

2. **Annulment denied.** The request for annulment of the automatic stay is DENIED WITH PREJUDICE. Retroactive validation of the June 11, 2026 trial and of the June 26, 2026 divorce decree is DENIED.

3. **No non-estate declaration.** The requested declaration excluding property identified in Section 8.C or items W-1 through W-9 from the estate is DENIED. No finding of separate property or sole-management community property is adopted. Neither route under 11 U.S.C. § 541(a)(2)(A) or (B) is foreclosed, and ownership and recovery claims are not adjudicated. The request may not be renewed before production under the Court's order on ECF 97 is complete.

4. **Modification denied.** Movant's request to modify the stay to permit the 301st Judicial District Court to complete or redo the division of property is DENIED. Movant offered no evidence of cause. The estate's interest in the property to be divided has not been determined.

5. **Section 362(b)(2)(A)(iv).** Movant's request for a determination that the stay did not apply to the dissolution provisions of the decree is DENIED. The Court makes no determination of the finality, present legal effect, or operative date of any dissolution. Nothing in this Order authorizes any act to terminate or change the Debtor's health coverage, his access to any health savings or flexible spending account, or his status as a beneficiary.

6. **No revival or carryforward.** This Order does not revive, validate, or adopt any provision of the June 26 decree. The September 18, 2026 vacatur of Sections 8, 9, and 11–15 is undisturbed. This Order gives no additional effect to the interlocutory Sections 1–7 and 10, including marriage-date, characterization, dissolution, and name-change findings. The Debtor's pending request for complete vacatur and a proper new trial is not adjudicated or impaired.

7. **Estate protection and stay.** No authority is granted to obtain in Cause No. DF-24-18010 a division, transfer, turnover, execution against, or disposition of estate property, including through a substitute characterization ruling, the W-9 catch-all, or a successor asset. The automatic stay remains in effect according to 11 U.S.C. § 362; no applicable bankruptcy protection is waived by this Order. The periods in 11 U.S.C. § 362(e) were extended through the entry of this Order with Movant's consent and for good cause: Movant noticed the November 18, 2026 final hearing, did not dispute that setting, and changed the relief she requested on November 12, 2026.

8. **Evidence before merits.** Before adjudication of disputed estate-property interests, necessary source and tracing discovery shall proceed under Rule 2004 or the rules governing an applicable pending matter. The Debtor and the Chapter 7 Trustee shall have at least 14 days after completion of material financial discovery and receipt of all seven identified April 16, 2026 body-camera recordings to review, respond, and supplement the record. This denial does not decide those property interests.

9. **Immediate relief preserved.** Nothing here postpones lawful requests for emergency healthcare, return of essential property, temporary support, housing, transportation, counsel, or litigation funding. Section 362(b)(2) exceptions remain available; collection from or disposition of estate property is not authorized. Immediate relief is not conditioned on completing the accounting or final property division.

10. **Claims preserved.** This Order does not adjudicate the Debtor's claims under 11 U.S.C. § 362(k), enforcement of ECF 57 or other orders, theft or return of his property and drives, benefits or ERISA claims, or the Trustee's avoidance and recovery powers. No inspection, copying, review, or use of the drives, their contents, or derivatives is authorized. No claim outside ECF 110 is released or denied by implication.

11. **Costs.** Movant shall reimburse the Debtor's out-of-pocket costs of responding to her requests for annulment and for a determination that property is not property of the estate. The Debtor shall file a declaration of the amount within 7 days after entry of this Order, and Movant shall pay that amount within 14 days after the declaration is filed.

12. **Show cause.** Within 14 days after entry of this Order, Movant and her counsel shall show cause in writing why the filing of ECF 110 with unresolved drafting notes in the motion and in the sworn declaration [ECF 110 at 10, 14, 21–22, 31, 34] did not violate Fed. R. Bankr. P. 9011(b)(3).

13. **Related requests.** Movant's requests for expedited disposition and for waiver of the stay of this Order under Fed. R. Bankr. P. 4001(a) are DENIED AS MOOT because no stay relief is granted. Requests for fees, costs, or sanctions against the Debtor in connection with ECF 110 are DENIED. No such amount is assessed.

# # # End of Order # # #

Prepared and submitted by:

Jason Emory McKemie
Debtor, pro se
539 W. Commerce St., #2010
Dallas, Texas 75208
(214) 519-8958

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | **CASE NO. 26-30161-mvl7** |
| | § | |
| JASON EMORY McKEMIE, | § | **CHAPTER 7** |
| | § | |
| Debtor. | § | Hearing: Nov. 18, 2026, 9:30 a.m. |

**DEBTOR'S EXHIBIT LIST FOR THE NOVEMBER 18, 2026 HEARING ON THE DEBTOR'S MOTION FOR RULE 2004 SUBPOENAS [ECF 97] AND MOVANT'S STAY MOTION [ECF 110]**

(Relates to ECF 97, 110, 111, 134, 140, and 141)

**TO THE HONORABLE MICHELLE V. LARSON, UNITED STATES BANKRUPTCY JUDGE:**

Under N.D. Tex. L.B.R. 9014-1(c), Jason Emory McKemie, the Debtor, designates the exhibits below for the November 18, 2026 hearing. His witness list is on file at ECF 140. Exhibits D-1 through D-14 are on the docket of this case, where they are available to counsel for Gwendolyn Laura Ulijasz ("Movant"); each is designated with all of its attachments. Page citations are to CM/ECF page numbers.

| Exhibit | Description | Location |
|---|---|---|
| D-1 | Debtor's Motion for Rule 2004 Subpoenas for Third-Party Financial Records | ECF 97 |
| D-2 | Movant's Motion, her Declaration (ECF 110 at 27–34), and every exhibit to it, including her sworn Second Amended Inventory and Appraisement (ECF 110 at 76–95) | ECF 110 |
| D-3 | Movant's Objections to the Rule 2004 motion | ECF 111, 112 |
| D-4 | Debtor's Response in support of Rule 2004 subpoenas, with proposed order | ECF 120, 120-1 |
| D-5 | Debtor's Opposition to ECF 110, with exhibits, including the Debtor's Declaration (Exhibit R-15, ECF 122 at 18–32) | ECF 122 |
| D-6 | Debtor's Reply in support of Rule 2004 subpoenas | ECF 123, 124 |
| D-7 | Debtor's Advance Notice and Motion to Compel In-Person Testimony, with Declaration (ECF 134 at 24–27) and Exhibits A through X | ECF 134, 135 |
| D-8 | Debtor's Notice of State-Court Ruling and Stay Violations, with exhibits, including the June 11, 2026 trial transcript and the affidavit of Jonathan D. Steele | ECF 138, 138-1, 121-1 |
| D-9 | Movant's witness disclosures and exhibit list, with exhibits | ECF 136, 137, 137-1, 137-2, 137-3 |

| Exhibit | Description | Location |
|---|---|---|
| D-10 | Movant's filings of November 12, 2026, including her Declaration (ECF 141 at 23–25) | ECF 141, 141-1, 142, 143 |
| D-11 | Debtor's Opposition to WebEx or Other Remote Testimony, with exhibits | ECF 144 |
| D-12 | Debtor's Supplement of November 13, 2026, with Declaration and Exhibits SUPP-1 and SUPP-2 | Filed with this list |
| D-13 | Chapter 7 Trustee's Form 1, Individual Estate Property Record and Report | ECF 91 |
| D-14 | Debtor's Verified Declaration and Emergency Motion of April 16, 2026, with exhibits, and the Court's orders of April 16 and May 6, 2026 | ECF 51, 55, 57, 76 |
| D-15 | Documents Movant produced to the Debtor in DF-24-18010 under her Bates prefix "GU," including GU000164–167, GU000960–961, GU001669, GU001670, and GU001969–1972, and her productions of January 20, 24, and 25, 2026 and February 17, 2026 | Produced by Movant. Copies of the pages to be offered will be delivered by November 15, 2026. |
| D-16 | Emails between the Debtor and Movant's counsel concerning discovery, dated May 27, 2025; June 23, 2025; September 21 through 25, 2025; October 10, 2025; January 10, 20, 24, and 25, 2026; and February 17, 2026 | Sent to or by Movant's counsel. Copies will be delivered by November 15, 2026. |
| D-17 | Pleadings, orders, and transcripts in DF-24-18010 that are cited in D-1 through D-12 | Of record in the State Court |
| D-18 | Demonstrative summaries of the exhibits above, including the tables in D-12 | D-12 |
| D-19 | Debtor's summary of the credit-card overpayments, credit balances, and missing statements shown in the card statements Movant produced (Chase, American Express, and Citibank accounts), with the statement pages summarized | Summary of D-15. Copies will be delivered by November 15, 2026. |
| D-20 | Preservation demands: the Debtor's Immediate Preservation Demand of May 22, 2026 and the reply of Jonathan D. Steele of May 22, 2026, 5:18 p.m. ("Re: Immediate Preservation Demand – Entire Marital Estate and Property Under Petitioner's Custody or Control"); the emails of Jonathan D. Steele to the Debtor of April 23, 2026, 5:50 p.m. and May 22, 2026, 1:25 p.m. ("Ulijasz v. McKemie"), demanding that the Debtor safeguard Movant's property; Respondent's Emergency Notice of Unaccounted-For Personal Property, Demand for Inventory, Request for Preservation, and Preservation of Rights, filed June 22, 2026 in DF-24-18010; and the Debtor's Property and Evidence Preservation Packet (Packet A) | The emails of Jonathan D. Steele are attached to this list. Copies of the other items will be delivered by November 15, 2026. |
| D-21 | Photographs of the Debtor's residence, of his property, and of Movant taken during and after the April 16 and May 22, 2026 writ executions, including Respondent's Exhibit L-6 ("Writ Aftermath") and the photo exhibit "Writ Aftermath / Medical Harm" in DF-24-18010 | Exhibit L-6 is attached to this list. Copies of the other photographs will be delivered by November 15, 2026. |
| D-22 | Respondent's Request for De Novo Hearing, with exhibits, filed June 4, 2026 in DF-24-18010 | Attached to this list. Filed and served in DF-24-18010 on June 4, 2026. |

| Exhibit | Description | Location |
|---|---|---|
| D-23 | Debtor's summary of the docket of DF-24-18010 through October 16, 2026: Respondent's Exhibit Q-8, "Due Process Collapse / Updated Docket Demonstrative," updated November 13, 2026 | Attached to this list |

1. The Debtor's exhibits are marked "Debtor D-1" through "Debtor D-23." Movant's own filings, declarations, sworn inventory, and testimony in D-2, D-3, D-8, D-9, and D-10 are offered against her as statements of a party opponent. Fed. R. Evid. 801(d)(2)(A). The emails of Movant's counsel in D-20 are offered to show that the demands and the refusal were made, not for the truth of counsel's assertions about the Debtor. Fed. R. Evid. 801(c)(2).

2. The Debtor may offer any exhibit designated by Movant. Exhibits to be used solely for impeachment are not listed. L.B.R. 9014-1(c).

3. The Debtor's witnesses are identified at ECF 140. The Debtor will testify, and he will call Movant as an adverse witness. Fed. R. Evid. 611(c)(2).

Dated: November 13, 2026

Respectfully submitted,

Jason Emory McKemie
Debtor, pro se
539 W. Commerce St., #2010
Dallas, Texas 75208
(214) 519-8958
jmckemie@mckemie.net

**DECLARATION OF JASON EMORY McKEMIE**

(28 U.S.C. § 1746)

I, Jason Emory McKemie, declare as follows:

1. Exhibit SUPP-2 is attached to the Supplement I am filing today. Pages 1 and 2 are true copies of two pages of the copy of Movant's Accenture employment agreement in my possession: its first page and the first page of its Exhibit B. Pages 3, 4, and 5 are true copies of Chase statement pages that Movant produced to me in DF-24-18010 and that bear her Bates numbers GU000960, GU000961, and GU001969. I redacted the account and loan numbers to their last four digits and made no other change.

2. The documents described in Exhibit D-15 are documents Movant produced to me in DF-24-18010 under her Bates prefix "GU." The emails described in Exhibit D-16, and the emails and demands described in Exhibit D-20, are ones I sent to, or received from, Movant's counsel or filed in DF-24-18010.

3. I adopt my filings at ECF 120, 122, 123, and 124 by my signature below. The statements in my declarations at ECF 122 at 18–32 and ECF 134 at 24–27 are true and correct.

4. I hold copies of the Articles of Organization of GLU Distribution Limited Liability Company, filed with the Illinois Secretary of State on July 15, 2020 under File No. 08945586, and of its annual report dated June 20, 2021. Both name Gwendolyn Laura Ulijasz as its registered agent and as its manager, and the Articles name her as its organizer.

5. Exhibit D-23 is attached to this list. It is a summary of the docket of DF-24-18010 through October 16, 2026. I prepared it, and I updated it on November 13, 2026 from the Dallas County online docket.

6. Exhibits D-20, D-21, and D-22 are attached to this list as the table states. The emails in D-20 are copies of emails I received from Jonathan D. Steele on April 23, 2026 and May 22, 2026. His email of May 22, 2026, 5:18 p.m. shows below it the preservation demand I sent him at 5:07 p.m. that day. Exhibit D-21 is a copy of Respondent's Exhibit L-6 in DF-24-18010, which I prepared. Exhibit D-22 is my printed copy of Respondent's Request for De Novo Hearing, which I filed in DF-24-18010 on June 4, 2026.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 13, 2026.

______________________________

Jason Emory McKemie

## CERTIFICATE OF SERVICE

I certify that on November 13, 2026, I served a true and correct copy of this exhibit list, with Exhibits D-20, D-21, D-22, and D-23 attached, by email on the following counsel for the Movant, Gwendolyn Laura Ulijasz:

- Jonathan D. Steele (jsteele@beermannlaw.com), Beermann LLP
- Sara A. Boucher (saboucher@beermannlaw.com), Beermann LLP
- Richard G. Dafoe (rdafoe@wslawpc.com), Waddell Serafino Geary Rechner Jenevein, P.C.
- Rebecca L. Armstrong (rebecca@armstronglawtexas.com), Armstrong Divorce & Family Law, PLLC
- Terra Aguirre (terra@armstronglawtexas.com), Armstrong Divorce & Family Law, PLLC
- Lauren Shaw (lauren@armstronglawtexas.com), Armstrong Divorce & Family Law, PLLC

and on:

- Areya Holder Aurzada, Chapter 7 Trustee (areya@holderlawpc.com)
- Office of the United States Trustee (ustpregion06.da.ecf@usdoj.gov)

On the same date I emailed a copy to the courtroom deputy at mvl_settings@txnb.uscourts.gov. The original, ink-signed paper filing was submitted to the Clerk, United States Bankruptcy Court, Northern District of Texas, 1100 Commerce Street, Room 1254, Dallas, Texas 75242, as follows (one box checked):

[ ] delivered in person to the Clerk's office on November 13, 2026.

[ ] placed in overnight delivery on November 13, 2026, for delivery on the Court's next business day, November 16, 2026.

____________________________________

Jason Emory McKemie

# DEBTOR'S EXHIBIT D-20

Emails of Jonathan D. Steele, counsel for Movant, to the Debtor

1. April 23, 2026, 5:50 p.m. and May 22, 2026, 1:25 p.m. ("Ulijasz v. McKemie"): demands that the Debtor safeguard Movant's property (2 pages)

2. May 22, 2026, 5:18 p.m. ("Re: Immediate Preservation Demand – Entire Marital Estate and Property Under Petitioner's Custody or Control"): reply to the Debtor's preservation demand of 5:07 p.m. that day (5 pages)

In re Jason Emory McKemie, Case No. 26-30161-mvl7 (Bankr. N.D. Tex.)
Attached to the Debtor's Exhibit List of November 13, 2026

**From:** **Jonathan Steele** JSteele@beermannlaw.com
**Subject:** Re: Ulijasz v. McKemie
**Date:** May 22, 2026 at 1:25 PM
**To:** jason@callvital.com

---

Jason,

I am writing again about Gwen's personal property. I am informed that following the latest eviction action, all of her belongings have been placed on the public sidewalk outside the property and are sitting there now.

This is the same conduct addressed in my April 23 email, with greater exposure. The sidewalk is a public way. Her property is now at heightened risk of weather damage, theft, and removal by the City as abandoned.

Whatever the status of the writ, the safekeeping of Gwen's separate property remains your responsibility while it is on or adjacent to a premises you controlled. That includes protection from weather, theft, loss, and deterioration.

If her property is damaged, lost, or removed while it remains where it currently sits, the resulting loss and the now-documented pattern of conduct will be presented to the court.

**Jonathan D. Steele** I Divorce and Family Law Partner
161 N Clark St., Suite 3000 I Chicago, IL 60601
Tel: 312.621.9700 I Fax: 312.621.0909
Mobile: 872.888.6069

2275 Half Day Rd., Suite 350 I Bannockburn, IL 60015
Tel: 847.681.9600 I Fax: 847.681.0909
jsteele@beermannlaw.com I www.beermannlaw.com

**Jonathan Steele** I Divorce and Family Law Partner
161 N Clark St., Suite 3000 I Chicago, IL 60601
Tel: 312.621.9700 I Fax: 312.621.0909

2275 Half Day Rd., Suite 350 I Bannockburn, IL 60015
Tel: 847.681.9600 I Fax: 847.681.0909

jsteele@beermannlaw.com I
www.beermannlaw.com

BEERMANN LLP
EST. 1958

BEST LAW FIRMS 2026

---

**From:** Jonathan Steele <jsteele@beermannlaw.com>
**Date:** Thursday, April 23, 2026 at 5:50 PM
**To:** <jason@callvital.com>
**Subject:** Ulijasz v. McKemie

Jason,
I'm writing to confirm what the Dallas police and the moving company communicated directly to Gwen on Thursday: after you obtained the stay of eviction through April 30, all of her personal belongings and separate property were unloaded from the moving truck at your direction and left on the lawn at the property.

Because the stay keeps you in possession of the premises, the care and safekeeping of Gwen's property now sitting outside is your responsibility. That includes protection from weather, theft, and any other loss or deterioration while it remains there.
Please confirm in writing by end of day Friday that (1) Gwen's belongings have been moved to a secure, covered location on the property, and (2) you will propose two dates and times before April 30 when she can arrange pickup.

**Jonathan D. Steele** I Divorce and Family Law Partner
161 N Clark St., Suite 3000 I Chicago, IL 60601
Tel: 312.621.9700 I Fax: 312.621.0909
Mobile: 872.888.6069

2275 Half Day Rd., Suite 350 I Bannockburn, IL 60015
Tel: 847.681.9600 I Fax: 847.681.0909
jsteele@beermannlaw.com I www.beermannlaw.com

To message me securely, click here.
To send me files securely, click here.
To meet with me now, click here.
To schedule a meeting with me, click here.

**CONFIDENTIAL E-MAIL** This e-mail message is intended only for the named recipient(s) above. It may contain confidential information that is privileged or that constitutes attorney work product. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachment(s) is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by replying to this e-mail and delete the message and any attachment(s) from your system.
**CONFIDENTIAL E-MAIL** This e-mail message is intended only for the named recipient(s) above. It may contain confidential information that is privileged or that constitutes attorney work product. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachment(s) is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by replying to this e-mail and delete the message and any attachment(s) from your system.

**From:** **Jonathan Steele** JSteele@beermannlaw.com
**Subject:** Re: Immediate Preservation Demand – Entire Marital Estate and Property Under Petitioner's Custody or Control
**Date:** May 22, 2026 at 5:18 PM
**To:** Jason McKemie jmckemie@mckemie.net
**Cc:** Terra Aguirre terra@armstronglawtexas.com, rgutuerrez@beermannlaw.com, Sara A. Boucher saboucher@beermannlaw.com, Lauren Shaw lauren@armstronglawtexas.com, Rebecca Armstrong rebecca@armstronglawtexas.com, jason@callvital.com

Mr. McKemie,

Received, in triplicate.

A few observations on the record:

1.
Your property is on the sidewalk because a writ of possession was executed against you today. Petitioner is not the cause of that, and the catalog of speculative grievances in your correspondence does not change it.

2.
Your emails simultaneously claim that Petitioner is paying personnel hundreds of dollars per hour to inventory and control your property, and that Petitioner is allowing your property to be scavenged, destroyed, and discarded. Both cannot be true. Neither is accepted.

3.
Self-styled "notices" reciting facts, listing items, and announcing preservation duties do not create those facts, those items, or those duties. Petitioner is in compliance with the orders that actually exist.

4.
Further duplicative emails on these subjects will not be answered individually. If there is a discrete, substantive matter to raise in Cause No. DF-24-18010, raise it once, clearly, and I will respond.

Best regards,

**Jonathan D. Steele** | Divorce and Family Law Partner
161 N Clark St., Suite 3000 | Chicago, IL 60601
Tel: 312.621.9700 | Fax: 312.621.0909
Mobile: 872.888.6069

2275 Half Day Rd., Suite 350 | Bannockburn, IL 60015
Tel: 847.681.9600 | Fax: 847.681.0909
jsteele@beermannlaw.com | www.beermannlaw.com

To message me securely, click here.
To send me files securely, click here.
To meet with me now, click here.
To schedule a meeting with me, click here.

**Jonathan Steele** | Divorce and Family Law Partner

161 N Clark St., Suite 3000 | Chicago, IL 60601
Tel: 312.621.9700 | Fax: 312.621.0909

2275 Half Day Rd., Suite 350 | Bannockburn, IL 60015
Tel: 847.681.9600 | Fax: 847.681.0909

jsteele@beermannlaw.com |
www.beermannlaw.com

BEERMANN LLP
EST. 1958

On May 22, 2026, at 5:07 PM, Jason McKemie <jmckemie@mckemie.net> wrote:

Counsel,

The entire marital estate, including all personal property, household property, records, electronics, medical items, evidence, storage contents, and remaining possessions, must be immediately preserved and protected from loss, destruction, disposal, scavenging, uncontrolled handling, or selective removal pending court review.

I left the hospital today and returned to the residence only because my property was being exposed, removed, and placed at immediate risk of loss while I was at the courthouse seeking emergency protective and TRO relief. I did not abandon the residence, abandon my property, waive possession, consent to removal, authorize disposal, authorize public taking, or authorize anyone to treat my possessions as abandoned, discarded, or available for scavenging.

Petitioner is paying personnel $500 per hour for someone to simply watch, inventory, control, or manage property sitting at the residence. That same $500 would allow me to preserve my two storage units and create a place to move and protect remaining property, personal effects, evidence, medical items, and legal materials. Petitioner cannot spend substantial resources hourly controlling and inventorying the property while simultaneously refusing to preserve the property itself.

Petitioner cannot have it both ways: either the property is abandoned, or she and her agents are exercising custody, supervision, inventory control, and chain-of-custody management over it. By paying personnel to watch, inventory, manage, move, control, or supervise the property, Petitioner has assumed practical custody and control over the entire property set and must preserve all of it.

This preservation demand is not limited to electronics or litigation evidence. It applies to everything.

Petitioner, her counsel, agents, movers, vendors, contractors, security personnel, inventory personnel, representatives, and all persons acting for her benefit or under her direction must preserve all property in their possession, custody, control, supervision, or direction, including but not limited to: computers, laptops, hard drives, SSDs, flash drives, phones, tablets, cameras, security-system equipment, routers, legal files, pleadings, exhibits, financial records, medical records, medication, medical devices, storage-unit records, mail, IDs, passports, birth/civil documents, credit/debit cards, checkbooks, keys, safes, tools, 3D-printing equipment, professional equipment, music/studio equipment, clothing, shoes, furniture, household goods, sentimental items, wedding gifts, family property, valuables, and all items of unknown or disputed ownership.

I specifically object to any destruction, disposal, donation, sale, transfer, alteration, damage, concealment, loss, inspection, imaging, copying, review, use, disclosure, reliance, selective retention, or public exposure of any property.

No item may be discarded, damaged, donated, sold, transferred, concealed, used, inspected, copied, reviewed, altered, destroyed, scavenged, or allowed to be taken by any third party. If any item is missing, damaged, discarded, destroyed, or unaccounted for after Petitioner or her agents

assumed control, supervision, inventory management, handling, or custody over the property, I will seek sanctions, reimbursement, contempt findings, adverse inferences, exclusion of evidence, and all other relief available.

I also advised counsel present at the scene that mutual injunctions/orders restrict Petitioner's conduct and access relating to the residence and property. The absence of a paper copy at the scene was not consent, waiver, abandonment, surrender of possession, or authorization for Petitioner, counsel, movers, vendors, third parties, or members of the public to proceed as though no court restrictions existed or to treat my property as abandoned, discarded, available for taking, or subject to uncontrolled removal and handling.

Please immediately confirm:

1. where all property has been taken or will be taken;
2. who is controlling, inventorying, loading, storing, transporting, or guarding it;
3. who is paying those persons;
4. what inventory is being created;
5. whether photographs or videos are being taken;
6. whether any property has been discarded, damaged, donated, scavenged, taken by third parties, or left exposed;
7. whether any electronics, storage media, legal files, medical items, or medication have been handled or removed;
8. that all property and all related inventories, photos, videos, communications, payment records, instructions, and chain-of-custody records are being preserved.

Petitioner cannot selectively preserve items useful to her while allowing the remainder of the marital estate to be exposed to destruction, scavenging, weather damage, theft, loss, or uncontrolled public access. The entire marital estate must be preserved, inventoried, photographed, and fully accounted for pending court review.

Jason McKemie
539 W. Commerce St., #2010
Dallas, TX 75208
214-868-4901
jmckemie@mckemie.net

**CONFIDENTIAL E-MAIL** This e-mail message is intended only for the named recipient(s) above. It may contain confidential information that is privileged or that constitutes attorney work product. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachment(s) is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by replying to this e-mail and delete the message and any attachment(s) from your system.
**CONFIDENTIAL E-MAIL** This e-mail message is intended only for the named recipient(s) above. It may contain confidential information that is privileged or that constitutes attorney work product. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachment(s) is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by replying to this e-mail and delete the message and any attachment(s) from your system.

# DEBTOR'S EXHIBIT D-21

Respondent's Exhibit L-6 in Cause No. DF-24-18010
"Photo Exhibit W | Writ Aftermath"
Photographs and camera images of the April 16, 2026 writ execution and its aftermath
(20 pages)

In re Jason Emory McKemie, Case No. 26-30161-mvl7 (Bankr. N.D. Tex.)
Attached to the Debtor's Exhibit List of November 13, 2026

**CAUSE NO. DF-24-18010 — IN THE 301ST JUDICIAL DISTRICT COURT, DALLAS COUNTY, TEXAS**

In the Matter of the Marriage of Gwendolyn Ulijasz-McKemie and Jason Emory McKemie

# RESPONDENT'S EXHIBIT L-6

Writ Aftermath 3 (print)

**NO.**________________________________

**JASON EMORY MCKEMIE** § **IN THE DISTRICT COURTS**
APPLICANT §
§ _____ **JUDICIAL DISTRICT**
**GWENDOLYN LAURA ULIJASZ** §
PETITIONER/ONE RESTRAINED § **DALLAS COUNTY,**
**TEXAS**

# PHOTO EXHIBIT W | WRIT AFTERMATH




## I. PRIOR COURT HISTORY AND NOTICE REGARDING PETITIONER'S ACCESS TO THE RESIDENCE

Petitioner repeatedly requested access to the marital residence through pleadings and during court hearings. On January 6, 2026, during a motion-to-compel hearing, Judge Abendroth initially approved access over Applicant's objections. After reviewing the history, however, the Court stated that Petitioner had already been given more than enough time to retrieve her property and that further personal access was no longer permitted.

Applicant filed repeated objections explaining that Petitioner's prior entries into the residence had resulted in property damage, disorder inside the home, unsupported allegations, planted items, and tracking devices, including three AirTags placed on Applicant's personal property. Applicant did not

object to Petitioner receiving any remaining belongings. Applicant objected to Petitioner personally entering the residence or receiving property directly from Applicant.

Applicant repeatedly stated that any remaining property transfer had to occur through a neutral third party because direct contact or direct transfer created an unacceptable risk of false allegations, planted evidence, property destruction, or further escalation. Petitioner was therefore on notice, both from the hearing record and filed objections, that she was not permitted to personally re-enter the residence and that any remaining retrieval had to occur through a neutral process.




## II. TIMELINE OF KNOWN APRIL 16, 2026, EVENTS

**2:37 p.m.** – Applicant left the residence to go to court after identifying defective service and attempting to stop the writ. Applicant closed the garage before leaving.

**2:39 p.m.** – Petitioner's security personnel backed into the rear driveway. The garage was opened from inside.

**2:39 p.m.** – Security cameras began being disabled, including cameras being ripped from walls. Fifteen cameras on one system were disabled before Petitioner arrived.

**2:46 p.m.** – Petitioner arrived by Uber with luggage, consistent with travel from San Antonio. A constable asked who she was and why she was present. Petitioner presented an outdated driver's license bearing the residence address and Applicant's last name. She represented that she currently lived at the residence, had a right to be there, and had a right to remove property. Those representations were false.

**2:47pm** - Shows ID to Constable Tometillo with 5609 Address and Applicants last name

**2:57 p.m.** – Petitioner was captured on video speaking by phone with multiple outside resources. She stated that Applicant was at the courthouse, that he would likely return, and that she needed to hurry and "grab more of this evidence." The video clip then stopped.

**3:23 p.m.** – The remaining security camera system was discovered and disabled. The internet went down at the same time.

**5:30 p.m.** – Applicant left the courthouse and spoke with the constable. The constable stated that Petitioner had been inside boxing items from the attic, that he told her to stop and unload the SUV, and that Petitioner then got into the SUV and left with her security guards. When Applicant asked why the constable could not recover the property, the constable stated that he did not have authority to chase her.

**Evening of April 16 through approximately 4:00 a.m.** – Applicant worked to recover and secure property that had been left outside, damaged, discarded, commingled with trash, or made inaccessible.

**Approximately 7:00 a.m. the following morning** – After sleeping outside in a lawn chair from physical exhaustion to watch the property, Applicant woke to the same blue Lexus sports sedan stopped approximately 15 to 20 feet away, with the driver photographing Applicant through an open window using a DSLR camera.

## III. COORDINATED ENTRY AND DISABLEMENT OF SURVEILLANCE

April 16, 2026 was not an ordinary writ execution. It was a coordinated evidence grab, asset seizure, property destruction event, and survival destabilization campaign.




At approximately 2:37 p.m., Applicant left the residence to go to court after identifying defective service and attempting to stop the writ. Applicant closed the garage before leaving. Within minutes, Petitioner's security personnel backed into the rear driveway, the garage was opened from inside, and the security cameras began being disabled.

Applicant had two separate security camera systems. Fifteen cameras on one system were disabled before Petitioner arrived. The second system survived until approximately 3:23 p.m., when it was discovered and disabled. The internet went down at the same time.

The speed of the entry, the immediate disabling of cameras, the precision with which the camera locations were identified, and the timing of Petitioner's arrival minutes after Applicant was forced to leave for court establish that this was not spontaneous, incidental, or ordinary. It was coordinated in advance.

## IV. PETITIONER'S FALSE ACCESS REPRESENTATION AND USE OF OUTDATED IDENTIFICATION

At approximately 2:46 p.m., Petitioner arrived by Uber with luggage. A constable asked who she was and why she was present. Petitioner presented an outdated driver's license bearing the residence address and Applicant's last name. She represented that she currently lived at the residence, had a right to be there, and had a right to remove property.

Those representations were false. Petitioner changed her name in December 2024 and had lived in San Antonio since leaving the residence. She used an outdated license to misrepresent current residence, marital identity, access authority, and removal authority.

**2:46PM ARRIVAL FROM SAN ANTONIO VIA UBER**






Petitioner had already been denied further unrestricted personal access through prior court proceedings. She also had notice from Applicant's repeated filed objections that any remaining property transfer had to occur through a neutral process. Her use of outdated identification was not harmless. It was used to create the appearance of authority at the precise moment her physical entry and removal of property were being challenged.

## V. PETITIONER'S RECORDED STATEMENT ABOUT "EVIDENCE"

At approximately 2:57 p.m., Petitioner was captured on video speaking by phone with multiple outside resources. She stated that Applicant was at the courthouse, that he would probably return, and that she needed to hurry and "grab more of this evidence." The clip then stopped.

That statement matters. Petitioner did not describe the activity as retrieving ordinary personal items. She described it as grabbing evidence while Applicant was away at court. That statement is consistent with the timing, the disabled cameras, the third-party coordination, the removal of hard drives and litigation materials, and the destruction or concealment of property necessary for Applicant's survival and litigation access. (Video Link: https://tinyurl.com/ManufacturedEvidence)



## VI. REMOVAL, DESTRUCTION, AND MISCLASSIFICATION OF PROPERTY

Once inside, Petitioner took control of the packing and removal process. Property was divided into "keep" and "dispose" categories. In practice, "dispose" became Applicant's property.

Items necessary for survival, litigation, medical access, identity, and daily functioning were removed, damaged, destroyed, discarded, or left behind in a condition designed to make retrieval nearly impossible. This included medications, auto-injectors, hard drives, litigation files, tax records, passport, identification materials, clothing, underwear, socks, financial records, cash, studio equipment, electronics, and professional property.

The recovered bags contained unrelated property from multiple rooms mixed with trash, liquids, food, broken debris, electronics, legal papers, photographs, books, kitchen items, bathroom items, and fragile property. Purchased small, medium, and large moving boxes were not used. Instead, wardrobe boxes were loaded with non-wardrobe items, including electronics, glass, breakable items, and heavy equipment. Several boxes exceeded reasonable load capacity and could not be safely moved.

This was not ordinary packing. The handling pattern caused foreseeable destruction. Fragile items were placed beneath heavy items. Glassware and family property were broken. Applicant's great-grandmother's approximately 150-year-old crystal was lost, destroyed, or removed. Items were ripped from walls rather than dismounted, leaving structural damage and exposed wires. Power and data cables were separated from equipment, rendering remaining systems unusable and increasing restoration costs.

Applicant's music studio and professional equipment were gutted. Critical equipment was removed. Cables and remaining components were left disconnected and unusable. The loss included professional, creative, litigation-related, and personal property central to Applicant's livelihood and evidence preservation.

## VII. APPLICANT WAS FORCED TO LEAVE ESSENTIAL PROPERTY BEHIND

When Applicant left, he told the constable that he needed to retrieve his hard drives, medication, checkbook, and papers near his printer. He was told there was no time and that he had to leave immediately if he wanted any chance to stop the writ.

No reasonable person would voluntarily leave behind medication, identification, litigation files, passport, tax records, cash, hard drives, and property needed for basic survival unless forced to do so. Applicant was forced to leave because the defective service created the exact emergency that required him to go to the courthouse immediately.

Petitioner knew Applicant would leave. The timing of her arrival and the immediate entry by her security personnel confirm that the court emergency was used as the operational window for entry, camera disablement, property removal, and evidence seizure.

## VIII. CONSTABLE STATEMENT AND PETITIONER LEAVING WITH PROPERTY

When Applicant left the courthouse around 5:30 p.m., he spoke with the constable. The constable stated that Petitioner had been inside boxing items from the attic and that he told her to stop and unload the SUV. The constable stated that Petitioner then got into the SUV and left with her security guards.

When Applicant asked why the constable could not recover the property, the constable stated that he did not have authority to chase her.

This confirms that Petitioner personally removed property from the residence despite prior notice that her personal entry and direct property removal created unacceptable risk and were not permitted through any neutral process.

## IX. ALL MY SONS, CONCEALED THIRD-PARTY PAYMENT, AND PETITIONER'S EFFORT TO KEEP HER NAME OFF THE MOVE

When Applicant returned to the residence, a 26-foot All My Sons moving truck was in front of the residence and unloading had begun. Applicant contacted the moving company manager and told him that the property on the truck was Applicant's property, that Applicant had a shoulder injury, and that Applicant needed assistance returning the property inside.

The manager stated that All My Sons had only been contracted to move items from the front lawn to the truck. When Applicant offered to modify the contract and ensure payment, the manager stated that he could not bill Petitioner because the card on file was not hers. He identified the cardholder as Merritt McClayton Rahilly, one of Petitioner's close friends in Chicago.

The manager also stated that Petitioner was explicit that she did not want her name associated with the move.

That fact is not neutral. It corroborates concealed third-party financing, identity concealment, and coordinated removal of Applicant's property through a third party. A 26-foot moving truck booked under Petitioner's close friend's name, combined with Petitioner's express instruction that her name not be associated with the move, confirms planning, concealment, and consciousness of wrongdoing.

## X. THE PROPERTY WAS NEVER ABANDONED

The property was never abandoned. Applicant remained at or near the residence. A friend arrived shortly after Applicant returned to assist. Applicant worked through the night to recover and secure what remained.

A blue Lexus sports sedan repeatedly circled the residence during the recovery effort. Applicant's friend noticed the vehicle without prompting. Applicant has observed the same individual intermittently since these proceedings began in December 2024.

It took approximately 36 hours to bring the property back inside. By approximately 4:00 a.m., Applicant was physically exhausted and slept outside in a lawn chair to watch the property. At approximately 7:00 a.m., Applicant woke to the same blue Lexus stopped approximately 15 to 20 feet away, with the driver photographing Applicant through an open window using a DSLR camera.

This was continued surveillance during physical vulnerability, not ordinary neighborhood activity.

## XI. BROADER FINANCIAL, LEASE, HEALTHCARE, AND LITIGATION CONTEXT

The April 16 event occurred after months of financial, resource, healthcare, and litigation obstruction.

This coordinated clean-out followed the illegal modification of a Texas state lease through a lease buyout modification that was concealed until Applicant showed contradictions that forced its disclosure during the October 31, 2025 hearing. Petitioner was listed on the lease application as the sole financial guarantor, and only her credit was evaluated for the lease.

Petitioner misrepresented the financial arrangements made with Applicant, produced misleading financial statements, and claimed destitution while Applicant was left with the entire financial burden of the marital residence during recovery from spinal surgery and without income.

Rent was either satisfied, or at least partially satisfied, through the forfeiture of Applicant's $4,999 rent deposit by Petitioner without Applicant's knowledge or consent. That deposit was offered so the landlord would join a call with Petitioner, or with Ethan Scroggins on Petitioner's behalf, to hear an offer that would keep the landlord "out of the crossfire." Related correspondence misrepresented court findings, recast Petitioner as an innocent abused victim, and attempted to buy her name off a lease for which she was the sole financial guarantor.

This was the culmination of a four-month coordinated financial ambush designed to leave Applicant desperate, without income, cut off from marital assets, without practical means of survival, and without adequate access to counsel.

For 16 months, Applicant has fought for survival through more than 110 pleadings and thousands of pages while facing continuing financial, medical, and litigation obstruction. The damage now extends beyond the case itself. Applicant's parents are being forced to sell their retirement home after long-term care needs escalated for Applicant's father following approximately $50,000 loaned to Applicant beginning in December 2024 to defend against Petitioner's false protective order application—an application Applicant warned 911 about seven days before it was filed.

Petitioner has stated that Applicant would never see inside her bank accounts and that he "will die trying" in connection with third-party subpoena rights.

## XII. FIREARM ACQUISITION AND SAFETY RISK

Open records recently produced a police report confirming Petitioner's acquisition of a firearm. Petitioner stated that she needed the firearm in connection with a property dispute at Public Storage on the exact same date as the first bench trial in the 254th District Court. The report states that Petitioner was not licensed for that firearm.

The firearm issue is directly relevant to this request for protective relief and to the requested Rule 204 psychological examination. Petitioner's acquisition of a firearm in connection with a property dispute involving community assets, while simultaneously engaging in escalating property interference, false reporting, financial obstruction, litigation obstruction, and coordinated entry into the marital residence, presents a serious and immediate safety concern.

## XIII. PETITIONER'S FINANCIAL CAPACITY AND THE INFERENCE CREATED BY THE SCALE OF THE OPERATION

Petitioner makes approximately $1.5 million per year, averaging more than $125,000 per month. This is not an ambiguous number and it is not speculation. Her compensation contract is highly detailed and itemized. It provides precise values and ranges for each compensation element, and her own handwritten notes corroborate those numbers.

Petitioner's time is valuable. Her decision to travel from San Antonio, arrive within minutes of Applicant's departure, coordinate multiple third-party resources, use security personnel, use an outdated license, disable surveillance, conceal the moving arrangement through a close friend's payment card, and personally participate in the removal of property confirms that the purpose was significant.

The reason was evidence, control, and destabilization.

## XIV. CONCLUSION

April 16 was not a move. It was not an ordinary writ execution. It was not a normal property retrieval.

It was a coordinated entry, evidence seizure, property destruction event, and survival destabilization campaign.

Applicant had warned the family court repeatedly that Petitioner would use a manufactured eviction, forced absence, or controlled access to seize evidence, destroy property, restrict access to marital resources, and further destabilize him. That is exactly what occurred.

Within minutes of Applicant's compelled departure, Petitioner's security personnel entered, cameras were disabled, Petitioner arrived with outdated identification, property was separated and removed, litigation evidence was taken, critical survival items were removed or made inaccessible, and third-party resources were used to conceal Petitioner's role in the move.



**APRIL 16TH / WRIT DESTRUCTION**
***High-value items were left in residence while other property was removed or destroyed, reflecting selective and non-standard handling.***
**Bazaart_ED3EFD84-CBAB9726BBCAC.JPEG**



**APRIL 16TH / WRIT DESTRUCTION**
***Elliptical machine abandoned.***
**IMG_1896.jpg**



**APRIL 16TH / WRIT DESTRUCTION**
***Closet cleared of all items except Applicant's everyday clothing, which was left behind while other property was removed–depriving him of access to essential daily items. Suits were removed from garment bags, thrown into boxes, and covered with dirt from potted plants.***
**IMG_1937.jpg**



**APRIL 16TH / WRIT DESTRUCTION**
***After providing an invalid ID, Petitioner took control of the property removal; including exclusive choice over everything she desired to keep, of what was disposed, and of what Respondent would be permitted to have after the writ concluded.***
**IMG_1859.jpg**



**APRIL 16TH / WRIT DESTRUCTION**
***Applicant's hand made sports coats & suits were found inside a wardrobe box with lawn tools and potted plants tossed on top of them. They were crumpled up in the bottom of the box, with the protective bag open or removed to expose those items to dirt, greeser,*** **IMG_1896.jpg**



**APRIL 16TH / WRIT DESTRUCTION**

***Electronics and heavy items were placed into wardrobe boxes, creating excessive weight and foreseeable damage. Several wardrobe boxes appeared to be "loaded in place," with glass and breakable items at the bottom and heavier equipment stacked on top, mostly electronics. None of the wardrobe boxes were used for their intended purpose. Of the approximately 60 S/M/L boxes Respondent had purchased for moving , none were used. Those new boxes were instead thrown onto into the same mound as the bags full of the items they intended to preserve.***

**IMG_1873.jpg**




**APRIL 16TH / WRIT DESTRUCTION**

***Glassware, clothing, and household items commingled in trash bags and discarded in piles; fragile items broken.***

***A large pile in the front of the residence was over 5 ft tall, with significant property damage to the items on the bottom due to weight and the impact of the items tossed into the piles.***

**IMG_1884.jpg**



Throughout every room of the house, everything was packed, with the exception of anything critical for day-to-day survival. Those items were identified as not needing packing. These included things such as Files, Passport, Clothes, Underwear, Socks, Shoes, Computer Monitor, Power and Data Cables for Computers all were to remain within the residence.
IMG_1882.jpg

# APRIL 16 WRIT DESTRUCTION

***APRIL 16 WRIT DESTRUCTION***
***ALL MY SONS / THIRD-PARTY PAYMENT***

**When Applicant returned after the writ was stopped, a 26-foot "All My Sons" moving truck was unloading his property. Applicant spoke with the booking manager, who stated the movers were contracted only to move property from the lawn to the truck and could not bill Gwendolyn Ulijasz because they did not have her payment information. The booking manager identified the payment source as Merritt McClayton Rahilly, Gwendolyn's close friend, and stated that Gwendolyn was explicit that she did not want her name associated with the move in any way. This corroborates concealed third-party financing and coordinated removal of Applicant's property.**

**IMG_1882.jpg**



My only remaining pair of prescription glasses due to Healthcare Obstruction were destroyed and found in the trash. I have been unable to get replacements due to HAS/FSA access obstruction.
IMG_1938.jpg

## APRIL 16TH / WRIT DESTRUCTION

**It took approximately 36 hours to bring the property back inside. During that time, a blue Lexus sports sedan with no front plate repeatedly circled the residence. I slept outside for approximately four hours to watch the property and woke to the same driver photographing me beside the unmoved boxes and sofa. I have observed this individual intermittently since December 2024 and believe he is associated with Jetty Partners, a firm employed by my estranged spouse.**



There was no attempt to unscrew anything from walls. Large holes were present where items were ripped off walls including security cameras where the only thing remaining was wires protruding from the wall where they once were. IMG_1935.2.jpg



**APRIL 16 / WRIT AFTERMATH**

**The recovered bags contained unrelated property from multiple rooms mixed with trash, liquids, food, broken debris, electronics, legal papers, photographs, books, kitchen items, and bathroom items. The purchased S/M/L boxes were not used. Instead, wardrobe boxes were packed with non-wardrobe items after my clothing was identified to constables as property to remain in the residence. Fragile items were placed beneath heavy items, including large power supplies, crushing property below, including my great-grandmother's crystal. Several boxes exceeded their load capacity and could not be safely moved.**

**IMG_2073.jpg**



**APRIL 16 / WRIT AFTERMATH**

***Power and data cables separated and left behind, rendering remaining equipment unusable and increasing restoration cost.***

**IMG_2078.jpg**



**APRIL 16 / WRIT AFTERMATH**

***Items forcibly removed from walls without dismounting, causing obvious structural and property damage.***

**IMG_2070.jpg**



**APRIL 16 / WRIT AFTERMATH**
***Applicant's safe remained sitting on a closet shelf.***
**IMG_2197.jpg**



**APRIL 16 / WRIT AFTERMATH**
***Family Crystal & China Lost.***
**IMG_9471635E-B99D-43B8-8504-9E01D9209CFE.JPEG**



**APRIL 16 / WRIT AFTERMATH**
***File cabinet still in residence. Drawers remained full including Passport and Tax Info which would have been rendered unrecoverable.***

**IMG_D6A38F2B-2BA4-4DAD-A005-209B2EA207D8.JPEG**



**APRIL 16 / WRIT AFTERMATH**

**This photograph shows Respondent's clothing still hanging in the residence after the writ was represented as complete and the second floor was treated as cleared. These items were not abandoned; they were left inaccessible.**

**Had the Court not overturned the writ, Respondent would have remained locked out of basic clothing essentials–including underwear, socks, and daily-wear items–needed for hygiene, dignity, and survival and without the funds to replace them.**

**IMG_2198.jpg**



**APRIL 16 / WRIT AFTERMATH**
***Shoe rack remained hanging inside closet. Desk with aftermarket 72" solid wood tabletop left in residence as well.***

**DJDESKWRIT.JPEG**




**APRIL 16 / WRIT AFTERMATH**

***A Photograph taken shortly after our move when I began putting the studio together. Later additions included a dedicated M2 MacBook Pro, Pioneer CDJ3k & DJS1k, IK Multimedia ARC Studio Room Correction System, KRK S8 Subwoofer, Custom Marble Sub Platform on top of ISO Acoustics Sub Platform, (2) Panamax M4315PRO Power Conditioner's with BluBolt, OneAC CB115, Custom Grounding Cabling with Distribution Blocks & Cabling, and an ISO-Acoustics Subwoofer Platform Base among other additions-of which all remain missing or destroyed presently.***

***IMG_37982.JPG***



**APRIL 16 / WRIT AFTERMATH**

***Cabling left disconnected and unusable following removal of associated equipment, evidencing disruption of functional systems.***

**WALLCABLE1.JPEG**



**APRIL 16 / WRIT AFTERMATH**

***Critical equipment removed; only disconnected cabling remains, evidencing selective removal and system disruption.***

**GUTTED2.JPEG**

# PROPERTY REMOVED, DESTROYED, OR MISSING AFTER APRIL 16TH, WRIT

## *High-Value Work Equipment, Audio Equipment, and AI Computing & Network Hardware*

**DESTROYED ELECTRICALLY**



**KRK S8 SUBWOOFER (DESTROYED)**

**STOLEN**



**STOLEN**



**ATTO THUNDERLINK ADAPTOR (DESTROYED)**



**THE AI SYSTEM PICTURED BELOW WAS ALREADY SOLD FOR $4,500 AND I WAS PAID $2,500 DAYS PRIOR. WHEN I RETURNED THE CASH WAS GONE FROM SAFE AND THE COMPUTER WAS TOO, LEAVING WITHOUT THE SOLD CUSTOM COMPUTER AND IN DEBT TO THE CLIENT.**

**STOLEN (X2)**



**THE GPU & PSU WAS STRIPPED FROM THE CASE PICTURED ON THE RIGHT AND STOLEN.**

**STOLEN**



**STOLEN**





***Multiple GPU's, a Custom Configured Minisforum N5 Pro Network Attached Storage with Integrated AI Computer Running Ubuntu with an External eGPU RTX GeForce 4070 Ti Super OC via OcuLink, Running OpenClaw w/ a Host of Agents for Legal Document Creation, Multiple SSD's + Enclosures, 10G Fiber, Switch, & More...***

**STOLEN**



**STOLEN**



**STOLEN**



**STOLEN**











**PAST STALKING EFFORTS ELEVATED CONCERNS: AIRTAGS DISCOVERED ON RESPONDENT'S BELONGINGS AFTER MUILTIPLE TRIPS TO THE MARITAL RESIDENCE ON PRIOR VISITS IN DECEMBER OF 2024**









# DEBTOR'S EXHIBIT D-23

Debtor's summary of the docket of Cause No. DF-24-18010,
301st Judicial District Court, Dallas County, Texas,
through October 16, 2026

(Respondent's Exhibit Q-8, "Due Process Collapse / Updated Docket Demonstrative,"
updated November 13, 2026; 6 pages)

In re Jason Emory McKemie, Case No. 26-30161-mvl7 (Bankr. N.D. Tex.)
Attached to the Debtor's Exhibit List of November 13, 2026

**CAUSE NO. DF-24-18010 — IN THE 301ST JUDICIAL DISTRICT COURT, DALLAS COUNTY, TEXAS**

In the Matter of the Marriage of Gwendolyn Ulijasz-McKemie and Jason Emory McKemie

Updated November 13, 2026 — Live Dallas County docket checked on that date

# RESPONDENT'S EXHIBIT Q-8

Due Process Collapse / Updated Docket Demonstrative

Docket events through October 16, 2026

*Updated demonstrative — classifications are not judicial findings*

# DF-24-18010 - DUE PROCESS COLLAPSE / RESPONDENT FILING DEMONSTRATIVE

Updated through the latest displayed event, 10/16/2026; live Dallas County portal checked 11/13/2026. A '1' means a Respondent filing addresses that issue. Flags classify filing content and allegations for demonstrative purposes; they are not judicial findings.

| CONTROL COUNT | VALUE |
|---|---|
| Official docket events | 300 |
| Respondent-filed docket items | 161 |
| Petitioner-filed docket items | 51 |
| Court / clerk events | 88 |
| Respondent emergency / stabilization filings | 62 |
| Explicit adverse / denied court actions | 9 |
| Respondent-favorable court actions (includes partial) | 7 |
| Indexed pages across Respondent filings* | 2335 |

| ISSUE CATEGORY | COUNT | % RESP |
|---|---|---|
| Healthcare | 72 | 45% |
| Emergency | 62 | 39% |
| Discovery Violations | 83 | 52% |
| Financial Relief | 121 | 75% |
| Due Process | 129 | 80% |
| Parity / Status Quo | 75 | 47% |
| Court Reporter | 32 | 20% |
| False Narratives | 61 | 38% |
| Medical Risk | 82 | 51% |
| Attorney Gamesmanship | 29 | 18% |
| Danger / High Risk | 63 | 39% |
| Stolen Evidence | 35 | 22% |

| ROW COLOR | MEANING |
|---|---|
| WHITE | Petitioner filing |
| GRAY | Court / clerk / administrative event |
| GREEN | Court action favorable to Respondent (may be partial) |
| ROSE | Respondent emergency / stabilization filing |
| ORANGE | Respondent filing; no favorable ruling shown on that row |
| DARK RED | Adverse / denied court disposition |

Method / control: The original 267-event sequence is retained, with source-backed filer/status corrections and recovered issue/page data. Added: 22 indexed filings and 11 hearing/clerk/appellate entries (33 events). Category totals count Respondent filing content, including attached submissions and proposed orders; a proposed order is not a grant. Other historical flags are carried forward from Q-8, not a fresh adjudication of each allegation.

Source / page key: C = original certified docket page as cited in Q-8 (printed 08/06/2026); U = physical page of county portal report printed 10/16/2026; L = live portal entry checked 11/13/2026. Pages = matched filing PDF length, including attachments; blank means not matched/not applicable. *Four pages for pleading #249 are index-only; its PDF link remains unresolved. Updated material is not represented as a newly certified clerk record.

Stolen evidence safeguard: This demonstrative creates no access, inspection, imaging, copying, testing, authentication, review, use, derivative use, or benefit pathway for Petitioner, counsel, experts, vendors, agents, or anyone acting for her with respect to Jason McKemie's stolen hard drives or evidence repositories.

## Appendix A - Complete Docket Alignment / Updated through 10/16/2026

| Seq | Date | Pg | Event | Filer | Status | Docket description / matched filing title | Pages | HC | [illegible] | DISC | FIN | [illegible] | PAR | CR | FALSE | [illegible] | ATTY | [illegible] | STOL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 12/16/2024 | C1 | NEW CASE FILED (OCA) - FAMILY | COURT | COURT | NEW CASE FILED (OCA) - FAMILY | | | | | | | | | | | | | |
| 2 | 12/16/2024 | C1 | ORIGINAL PETITION | PETITIONER | PETITIONER | ORIGINAL PETITION | | | | | | | | | | | | | |
| 3 | 12/16/2024 | C1 | ISSUE CITATION | COURT | COURT | ISSUE CITATION | | | | | | | | | | | | | |
| 4 | 12/18/2024 | C1 | APPLICATION - PROTECTIVE ORDER | PETITIONER | PETITIONER | APPLICATION - PROTECTIVE ORDER | | | | | | | | | | | | | |
| 5 | 12/18/2024 | C1 | APPLICATION - TEMPORARY RESTRAINING ORDER | PETITIONER | PETITIONER | APPLICATION - TEMPORARY RESTRAINING ORDER | | | | | | | | | | | | | |
| 6 | 12/18/2024 | C1 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | TEMPORARY EX PARTE PROTECTIVE ORDER | | | | | | | | | | | | | |
| 7 | 12/18/2024 | C1 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | TEMPORARY EXPARTE TRO AND ORDER SETTING HEARING FOR TEMPORARY ORDERS | | | | | | | | | | | | | |
| 8 | 12/18/2024 | C1 | JUDGE DOCKET ENTRY | COURT | COURT | Temporary ex parte protective order and ex parte Restraining Order signed and given to Attorney to bring to clerk | | | | | | | | | | | | | |
| 9 | 12/18/2024 | C1 | TEMPORARY EX PARTE PROTECTIVE ORDER | COURT | COURT | Vol /Book 0, Page 0, 0 pages | | | | | | | | | | | | | |
| 10 | 12/18/2024 | C1 | ORDER - TEMPORARY RESTRAINING ORDER | COURT | COURT | AND ORDER SETTING HEARING FOR TEMPORARY ORDERS | | | | | | | | | | | | | |
| 11 | 12/18/2024 | C1 | ORDER - NOTICE OF HEARING | COURT | COURT | PROTECTIVE ORDER | | | | | | | | | | | | | |
| 12 | 12/18/2024 | C1 | ISSUE TEMPORARY PROTECTIVE ORDER | COURT | COURT | ISSUE TEMPORARY PROTECTIVE ORDER | | | | | | | | | | | | | |
| 13 | 12/18/2024 | C1 | ISSUE TRO AND NOTICE | COURT | COURT | ISSUE TRO AND NOTICE | | | | | | | | | | | | | |
| 14 | 12/18/2024 | C2 | TEMPORARY PROTECTIVE ORDER | COURT | COURT | JASON MCKEMIE - Unserved: anticipated server: ATTORNEY | | | | | | | | | | | | | |
| 15 | 12/18/2024 | C2 | TRO / NOTICE | COURT | COURT | MCKEMIE, JASON Unserved JASON MCKEMIE | | | | | | | | | | | | | |
| 16 | 12/18/2024 | C2 | JUDGE DOCKET ENTRY | COURT | COURT | Amended TRO signed and sent to clerk by email | | | | | | | | | | | | | |
| 17 | 12/18/2024 | C2 | ORDER - TEMPORARY RESTRAINING ORDER | COURT | COURT | Vol./Book 1, Page 1, 1 pages AMEND EMERGENCY EX PARTE TRO AND SETTING HEARING FOR TEMP ORDER | | | | | | | | | | | | | |
| 18 | 12/19/2024 | C2 | NOTICE OF APPEARANCE | RESPONDENT | RESP-FILING | Party: ATTORNEY [illegible] GRANT MARTIN | 5 | | | | | | | | | | | | |
| 19 | 12/20/2024 | C2 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | AMENDED TEMPORARY EX PARTE ORDER | | | | | | | | | | | | | |
| 20 | 12/20/2024 | C2 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | PETITIONER AMENDED EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER SETTING HERING FOR TEMPORARY ORDERS | | | | | | | | | | | | | |
| 21 | 12/20/2024 | C2 | AMENDED MOTION | PETITIONER | PETITIONER | APPLICATION FOR AMENDED TEMPORARY EX PARTE PROTECTIVE ORDER | | | | | | | | | | | | | |
| 22 | 12/20/2024 | C2 | AMENDED MOTION | PETITIONER | PETITIONER | AMENDED REQUEST FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER | | | | | | | | | | | | | |
| 23 | 12/20/2024 | C2 | ORDER - TEMPORARY RESTRAINING ORDER | COURT | COURT | AMENDED EMERGENCY EX PARTE TRO AND ORDER SETTING HEARING FOR TEMPORARY ORDERS | | | | | | | | | | | | | |
| 24 | 12/20/2024 | C2 | ISSUE TRO AND NOTICE | COURT | COURT | ISSUE TRO AND NOTICE | | | | | | | | | | | | | |
| 25 | 12/20/2024 | C2 | TRO / NOTICE | COURT | COURT | MCKEMIE, JASON Unserved JASON MCKEMIE | | | | | | | | | | | | | |
| 26 | [illegible] | C2 | COUNTER CLAIM | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON ORIGINAL COUNTERPETITION FOR DIVORCE | 31 | | | | 1 | 1 | 1 | | | | | | |
| 27 | [illegible] | C2 | NOTICE OF HEARING / FIAT | RESPONDENT | RESP-FILING | REQUEST FOR TEMPORARY ORDERS | 3 | | | | 1 | 1 | 1 | | | | | | |
| 28 | 12/31/2024 | C2 | PROTECTIVE ORDER - FAM VIOLENCE (1:30 PM) (Judicial Officer: BEDARD, | COURT | COURT | LORNA) | | | | | | | | | | | | | |
| 29 | 12/31/2024 | C2 | TRO HEARING (1:30 PM) (Judicial Officer: BEDARD, LORNA) | COURT | COURT | TRO HEARING (1:30 PM) (Judicial Officer: BEDARD, LORNA) | | | | | | | | | | | | | |
| 30 | 12/31/2024 | C3 | MOTION - EXTEND TRO | PETITIONER | PETITIONER | AND ORDER SETTING HEARING FOR TEMPORARY ORDERS | | | | | | | | | | | | | |
| 31 | 12/31/2024 | C3 | MOTION - EXTEND MISC | PETITIONER | PETITIONER | TEMPORARY EX PARTE PROTECTIVE ORDERS | | | | | | | | | | | | | |
| 32 | 12/31/2024 | C3 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | ORDER MODIFYING AND EXTENDING TEMPORARY EX PARTE PROTECTIVE ORDER AND ORDER SETTING HEARING | | | | | | | | | | | | | |
| 33 | 12/31/2024 | C3 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | ORDER MODIFYING AND EXTENDING TRO AND ORDER SETTING HEARING FOR TEMPORARY ORDERS | | | | | | | | | | | | | |
| 34 | 12/31/2024 | C3 | ORDER - TEMPORARY RESTRAINING ORDER | COURT | COURT | EXTENDING AND ORDER SETTING HEARING FOR TEMPORARY ORDERS | | | | | | | | | | | | | |

| Seq | Date | Pg | Event | Filer | Status | Docket description / matched filing title | Pages | HC | EM | DISC | FM | [illegible] | PAR | CR | FALSE | NEO | ATTY | [illegible] | STOL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 35 | 12/31/2024 | C3 | ORDER - EXPARTE (TEMP) PROTECTIVE ORDER | COURT | COURT | ORDER SETTING HEARING | | | | | | | | | | | | | |
| 36 | 12/31/2024 | C3 | AMENDED PETITION | RESPONDENT | RESP-FILING | FIRST AMENDED COUNTERPETITION FOR DIVORCE | 1 | | | | 1 | | | | | | | | |
| 37 | 12/31/2024 | C3 | NOTICE OF HEARING / EVENT | RESPONDENT | RESP-FILING | NOTICE OF COURT PROCEEDING REQUEST FOR TEMPORARY ORDERS | 3 | | | | | | | | | | | | |
| 38 | 01/03/2025 | C3 | MOTION - WITHDRAW ATTORNEY | PETITIONER | PETITIONER | Party: ATTORNEY TOMLINSON, DONNA R ; PETITIONER ULIASZ MCKEMIE, GWENDOLYN | | | | | | | | | | | | | |
| 39 | 01/05/2025 | C3 | MOTION - CONTINUANCE | PETITIONER | PETITIONER | Party: PETITIONER ULIASZ MCKEMIE, GWENDOLYN | | | | | | | | | | | | | |
| 40 | 01/06/2025 | C3 | MOTION - EXTEND TRO | PETITIONER | PETITIONER | MOTION TO EXTEND EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER SETTING HEARING FOR TEMPORARY ORDERS | | | | | | | | | | | | | |
| 41 | 01/06/2025 | C3 | MOTION - EXTEND MISC | PETITIONER | PETITIONER | MOTION TO EXTEND TEMPORARY EX PARTE PROTECTIVE ORDERS | | | | | | | | | | | | | |
| 42 | 01/06/2025 | C3 | MOTION - WITHDRAW ATTORNEY | PETITIONER | PETITIONER | Party: ATTORNEY TOMLINSON, DONNA R ; PETITIONER ULIASZ MCKEMIE, GWENDOLYN | | | | | | | | | | | | | |
| 43 | 01/07/2025 | C3 | PROTECTIVE ORDER - FAM VIOLENCE (1:30 PM) (Judicial Officer BEDARD, | COURT | COURT | LORNA) set at 2:30pm | | | | | | | | | | | | | |
| 44 | 01/07/2025 | C3 | TRO HEARING (1:30 PM) (Judicial Officer BEDARD, LORNA) | COURT | COURT | set at 2:30pm | | | | | | | | | | | | | |
| 45 | 01/07/2025 | C3 | ORDER - WITHDRAW ATTORNEY | COURT | COURT | Party: ATTORNEY TOMLINSON, DONNA R | | | | | | | | | | | | | |
| 46 | 01/07/2025 | C4 | ASSOCIATE JUDGES REPORT | COURT | COURT | Vol./Book 1, Page 1, 1 pages | | | | | | | | | | | | | |
| 47 | 01/21/2025 | C4 | NOTICE OF APPEARANCE | PETITIONER | PETITIONER | NOTICE OF APPEARANCE | | | | | | | | | | | | | |
| 48 | 03/03/2025 | C4 | VACATION LETTER | PETITIONER | PETITIONER | ATTORNEY WILLIAM COOK | | | | | | | | | | | | | |
| 49 | 03/05/2025 | C4 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | NOTICE OF HEARING - PRE TRIAL | 3 | | | | | | | | | | | | |
| 50 | 03/12/2025 | C4 | ORDER - NOTICE OF HEARING | COURT | COURT | ORDER - NOTICE OF HEARING | | | | | | | | | | | | | |
| 51 | 03/14/2025 | C4 | MOTION - WITHDRAW ATTORNEY | RESPONDENT | RESP-FILING | AGREED - BRANT WEBB | 4 | | | | | | | | | | | | |
| 52 | 03/17/2025 | C4 | ORDER - WITHDRAW ATTORNEY | COURT | COURT | Vol./Book 0, Page 0, 2 pages Party: ATTORNEY WEBB, BRANT MARTIN | | | | | | | | | | | | | |
| 53 | 03/28/2025 | C4 | VACATION LETTER | PETITIONER | PETITIONER | AMENDED - WILLIAM COOK | | | | | | | | | | | | | |
| 54 | 03/28/2025 | C4 | MOTION - CONTINUANCE | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON NOTICE OF FAILED MEDIATION AND MOTION FOR CONTINUANCE OF APRIL 7th, 2025, PRETRIAL HEARING | 2 | | | | | | | | | | | | |
| 55 | 04/02/2025 | C4 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | FOR CONTINUANCE OF APRIL 7th, 2025, PRE-TRIAL HEARING | 2 | | | | | | | | | | | | |
| 56 | 04/07/2025 | C4 | PRETRIAL (2:30 PM) | COURT | COURT | PRETRIAL (2:30 PM) | | | | | | | | | | | | | |
| 57 | 04/07/2025 | C4 | PRETRIAL STATUS INFORMATION | COURT | COURT | PRETRIAL STATUS INFORMATION | | | | | | | | | | | | | |
| 58 | 04/14/2025 | C4 | MOTION - STRIKE | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON | 5 | | | | 1 | | | | | | | | |
| 59 | 04/24/2025 | C4 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON MOTION FOR NOTICE PRIOR TO ANY DISMISSAL | 2 | | | | 1 | | | | | | | | |
| 60 | 04/24/2025 | C4 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER ON MOTION FOR NOTICE PRIOR TO ANY DISMISSAL | 4 | | | | 1 | | | | | | | | |
| 61 | 04/24/2025 | C4 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-FILING | MOTION TO DESIGNATE PRO SE REPRESENTATION AND REQUEST FOR EQUAL ACCESS | 1 | | | | | | | | | | | | |
| 62 | 04/24/2025 | C4 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER ON MOTION TO DESIGNATE PRO SE REPRESENTATION AND REQUEST FOR EQUAL ACCESS | 3 | | | | 1 | | | | | | | | |
| 63 | 04/28/2025 | C5 | MOTION - WITHDRAW ATTORNEY | PETITIONER | PETITIONER | MOTION - WITHDRAW ATTORNEY | | | | | | | | | | | | | |
| 64 | 04/29/2025 | C5 | ORDER - WITHDRAW ATTORNEY | COURT | COURT | Party: ATTORNEY COOK, JEFFREY, ESQ; PETITIONER ULIASZ MCKEMIE, GWENDOLYN | | | | | | | | | | | | | |
| 65 | 05/17/2025 | C5 | DISCOVERY | PETITIONER | PETITIONER | PETITIONER NOTICE OF FORMAL DISCOVERY SERVED | | | | | | | | | | | | | |
| 66 | 06/23/2025 | C5 | NOTICE OF APPEARANCE | PETITIONER | PETITIONER | Party: ATTORNEY SCROGGINS, ETHAN L | | | | | | | | | | | | | |
| 67 | 06/23/2025 | C5 | AMENDED PETITION | PETITIONER | PETITIONER | FIRST AMENDED PETITION FOR DIVORCE | | | | | | | | | | | | | |
| [redacted] | 06/24/2025 | C5 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | EMERGENCY MOTION FOR TEMPORARY FINANCIAL RELIEF DUE TO IMMINENT HOUSING LOSS, MEDICAL HARDSHIP | 6 | | 1 | 1 | 1 | | 1 | | 1 | 1 | 1 | [illegible] | |
| 69 | 06/27/2025 | C5 | OBJECTIONS - MISC | RESPONDENT | RESP-FILING | NOTICE OF OBJECTION TO PROCEDURAL REENTRY AND MOTION FILING BY RESPONDENT'S COUNSEL | 4 | | | | 1 | | | | 1 | | | | |
| 70 | 06/27/2025 | C5 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON MOTION TO PRESERVE DISCOVERY RIGHTS AND COMPELL DISCOVERY RESPONSES | 4 | | | 1 | 1 | | 1 | | 1 | [illegible] | | | |
| 71 | 07/09/2025 | C5 | MOTION - CONTINUANCE | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON OF BENCH TRIAL | 6 | 1 | | | 1 | | | | 1 | 1 | | 1 | |
| 72 | 07/10/2025 | C5 | MOTION - CONTINUANCE | RESPONDENT | RESP-FILING | FINANCIAL RELIEF, ENFORCEMENT OF STANDING ORDERS, PROTECTION AGAINST PROCEDURAL ABUSE, AND HEARING ON SPOUSAL SUPPORT, LEGAL FEES, MARITAL DEBT AND EARLY LOAN REPAYMENT DUE TO MEDICAL HARDSHIP | 28 | | | 1 | 1 | | 1 | | 1 | 1 | 1 | 1 | |
| 73 | 07/10/2025 | C5 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER ON MOTION TO COMPELL DISCOVERY AND REQUEST FOR SANCTIONS | 2 | | | 1 | | | | | | | | | |
| 74 | 07/10/2025 | C5 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER TO REOPEN A LIMITED DISCOVERY DUE TO PROCEDURAL MISCONDUCT AND OBSTRUCTION | 1 | | | 1 | 1 | | | | | | | | |
| 75 | 07/10/2025 | C5 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER TO PREVENT ANY FURTHER OBSTRUCTION AND TO COMPEL ACCESS TO HSA CARD/ FUNDS | 2 | 1 | | 1 | 1 | | 1 | | | | | | |
| 76 | 07/10/2025 | C5 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER TO ENFORCE STANDING ORDERS AND PREVENT LITIGATION INTERFERENCE | 2 | | | 1 | 1 | | 1 | | | | | | |
| 77 | 07/10/2025 | C5 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER FOR EMERGENCY FINANCIAL RELIEF AND RELATED REQUESTS | 1 | | 1 | 1 | 1 | | | | | | | | |
| 78 | 07/10/2025 | C5 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER GRANTING EMERGENCY MOTION TO STAY EXECUTION OF WRIT OF POSSESSION | 1 | | 1 | | 1 | | | | | | | | |
| 79 | 07/10/2025 | C5 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | FINDING OF FACT AND FRAUD UPON THE COURT | 1 | | | | | | | | | | | | |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | | | | | | | | | | | |
| 81 | 07/11/2025 | C6 | CANCELED "DISMISSAL FOR WANT OF PROSECUTION (9:00 AM) (Judicial | COURT | COURT | Officer: BROWN, KIM) REQUESTED BY ATTORNEY/PRO SE | | | | | | | | | | | | | |
| 82 | 07/11/2025 | C6 | NOTICE OF FILING | RESPONDENT | RESP-EMERG | REQUEST FOR EMERGENCY HEARING TO PREVENT EVICTION DURING MEDICAL HARDSHIP WITH DECLARATION AND WITNESS STATEMENTS | 96 | 1 | 1 | | 1 | | | | 1 | [illegible] | | 1 | |
| 83 | 07/11/2025 | C6 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | GRANTING REQUEST FOR EMERGENCY HEARING | 43 | 1 | 1 | | 1 | | | | 1 | 1 | | 1 | |
| 84 | 07/15/2025 | C6 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | EMERGENCY MPRESERVE EVIDENCE AND CONTINUE TRIAL DUE TO PROCEDURAL SABOTAGE AND BREAKDOWN IN JUDICIAL OVERSIGHT | 12 | | 1 | 1 | 1 | | 1 | | 1 | 1 | 1 | 1 | 1 |
| 85 | 07/16/2025 | C6 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER GRANTING M/SANCTIONS AND REFERRAL | 4 | | | | | | | | | | | | |
| 86 | 07/16/2025 | C6 | MOTION - SANCTIONS | RESPONDENT | RESP-FILING | MOTION - SANCTIONS | 4 | | | | 1 | | | | 1 | | | | |
| 87 | 07/17/2025 | C6 | NOTICE OF FILING | RESPONDENT | RESP-FILING | NOTICE OF MATERIAL DISCOVERY | 2 | | | 1 | 1 | | | | 1 | | | | |
| 88 | 07/17/2025 | C6 | NOTICE OF INTENT | RESPONDENT | RESP-FILING | TO SEEK DISPROPORTIONATE DIVISION OF MARITAL ESTATE | 4 | | | | 1 | | 1 | | 1 | | | | |
| 89 | 07/17/2025 | C6 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | EMERGENCY NOTICE OF COUNSEL MISCONDUCT, PRIOR COMMUNICATIONS, AND DEMAND FOR IMMEDIATE COURT REVIEW | 12 | | 1 | 1 | 1 | | 1 | | 1 | 1 | 1 | [illegible] | 1 |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | | | | | | | | | | | |
| 91 | 07/22/2025 | C6 | EXHIBITS | RESPONDENT | RESP-FILING | EXHIBITS | 4 | | | | 1 | | 1 | | | | | | |
| 92 | 07/23/2025 | C6 | BENCH TRIAL (1:30 PM) (Judicial Officer BROWN, KIM) | COURT | COURT | BENCH TRIAL (1:30 PM) (Judicial Officer: BROWN, KIM) | | | | | | | | | | | | | |
| 93 | 07/23/2025 | C6 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | GRANTING RESPONDENT'S EMERGENCY MOTION FOR CONTINUANCE | 1 | | 1 | | | | | | | | | | |
| 94 | 07/23/2025 | C7 | ORDER - RECUSAL | COURT | FAVORABLE | Vol./Book 1, Page 1, 1 pages | | | | | | | | | | | | | |
| 95 | 07/23/2025 | C7 | MOTION - RECUSE | RESPONDENT | RESP-FILING | RESPONDENT VERIFIED M/RECUSE | 8 | 1 | | 1 | 1 | | | | | | | | |
| 96 | 07/23/2025 | C7 | MOTION - RECUSE | PETITIONER | PETITIONER | Party: PETITIONER ULIASZ MCKEMIE, GWENDOLYN | | | | | | | | | | | | | |
| 97 | 07/24/2025 | C7 | AFFIDAVIT | RESPONDENT | RESP-EMERG | DECLARATION OF RESPONDENT'S DISASSOCIATION FROM BINDER INTRODUCED BY PETITIONER'S COUNSEL | 9 | | 1 | | 1 | | | | | | | | |
| 98 | 07/24/2025 | C7 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | EMERGENCY MOTION FOR IMMEDIATE RELIEF, OBJECTION TO TRIAL, AND REQUEST FOR ACKNOWLEDGEMENT | 11 | 1 | 1 | 1 | 1 | | 1 | | | | | | |
| 99 | 07/24/2025 | C7 | ORDER - TRANSFER (NOT CHANGE OF VENUE) | COURT | FAVORABLE | TO 302ND COURT | | | | | | | | | | | | | |
| 100 | 07/24/2025 | C7 | MOTION - SEAL | RESPONDENT | RESP-EMERG | Party: RESPONDENT MCKEMIE, JASON ERRONEOUS PUBLIC FILING AND EMERGENCY MOTION TO SEAL PREVIOUSLY SUBMITTED DECLARATION | 3 | | 1 | | | | | | | | | | |
| 101 | 07/29/2025 | C7 | E-SERVED COPY OF ORDER | COURT | COURT | E-SERVED COPY OF ORDER TRANSFERRING | | | | | | | | | | | | | |
| 102 | 07/29/2025 | C7 | RULE 11 | RESPONDENT | RESP-FILING | RULE 11A SUPPLEMENTAL CERTIFICATE OF SERVICE | 12 | 1 | | 1 | 1 | 1 | 1 | | | | | | |
| 103 | 07/30/2025 | C7 | OBJECTIONS - MISC | RESPONDENT | RESP-FILING | COVER PAGE OBJECTION INVENTORY PROCEDURAL NOTIFICATION 18010) | 5 | | | | 1 | 1 | 1 | | | | | | |
| 104 | 08/06/2025 | C7 | PLEA IN ABATEMENT | RESPONDENT | RESP-EMERG | EMERGENCY MOTION TO ABATE TRIAL SETTING AND WITHHOLD FINAL ORDERS PENDING RESOLUTION OF OUTSTANDING MOTIONS, PROCEDURAL VIOLATIONS, AND DISCOVERY COLLAPSE | 7 | 1 | 1 | 1 | 1 | 1 | 1 | | [illegible] | 1 | 1 | 1 | 1 |
| 105 | 08/07/2025 | C7 | MISCELLANEOUS EVENT | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON JUDICIAL NOTICE OF UNRULED MOTIONS REQUIRING DETERMINATION PRIOR TO ANY PRETRIAL HEARING, TRIAL, OR FINAL ORDERS | 11 | 1 | | 1 | 1 | 1 | 1 | | 1 | 1 | 1 | 1 | 1 |
| 106 | 08/08/2025 | C7 | MISCELLANEOUS EVENT | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON NOTICE OF PROCEDURAL BAR TO PRETRIAL OR TRIAL SETTING AND PRESERVATION OF OBJECTION | 4 | | | | 1 | [illegible] | 1 | | | 1 | | 1 | 1 |
| 107 | 08/12/2025 | C7 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | NOTICE OF HEARING | | | | | | | | | | | | | |
| 108 | 08/14/2025 | C7 | ORDER - NOTICE OF HEARING | COURT | COURT | ORDER - NOTICE OF HEARING | | | | | | | | | | | | | |
| 109 | 08/20/2025 | C8 | E-SERVED COPY OF ORDER | COURT | COURT | E-SERVED COPY OF NOTICE OF HEARING | | | | | | | | | | | | | |
| 110 | 09/08/2025 | C8 | PRETRIAL (1:30 PM) (Judicial Officer JACKSON, SANDRA) | COURT | COURT | PRETRIAL (1:30 PM) (Judicial Officer: JACKSON, SANDRA) | | | | | | | | | | | | | |

DF-24-18010 - Updated O-8 | Original certified alignment + county update report, live portal checked 11/13/2026

| Seq | Date | Pg | Event | Filer | Status | Docket description / matched filing title | Pages |
|---|---|---|---|---|---|---|---|
| 111 | 09/08/2025 | C8 | ORDER - PRETRIAL | COURT | COURT | (DIVORCE) | |
| 112 | [illegible] | C8 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party: RESPONDENT MCKEMIE, JASON EMERGENCY EX PARTE MOTION TO AUTHORIZE WITHDRAWAL FROM IRA | 10 |
| 113 | 10/06/2025 | C8 | TEMPORARY ORDERS HEARING (9:00 AM) (Judicial Officer: ABENDROTH, TAMIKA | COURT | COURT | JONES) | |
| 114 | 10/15/2025 | C8 | MISCELLANEOUS EVENT | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON LETTER | 1 |
| 115 | 10/20/2025 | C8 | TEMPORARY ORDERS HEARING (9:00 AM) (Judicial Officer: ABENDROTH, TAMIKA | COURT | COURT | JONES) | |
| 116 | [illegible] | C8 | ORDER - WITHDRAW MISC | COURT | FAVORABLE | AGREED ORDER TO WITHDRAW FUNDS | |
| 117 | [illegible] | C8 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-FILING | WAITING FOR $80.00 | 5 |
| 118 | 10/23/2025 | C8 | NOTICE OF HEARING / FIAT | PETITIONER | PETITIONER | NOTICE OF HEARING / FIAT | |
| 119 | [illegible] | C8 | MOTION - REINSTATE | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON WAITING ON $80 | 5 |
| 120 | 10/28/2025 | C8 | MOTION HEARING (9:00 AM) (Judicial Officer: ABENDROTH, TAMIKA JONES) | COURT | COURT | MOTION HEARING (9:00 AM) (Judicial Officer: ABENDROTH, TAMIKA JONES) | |
| 121 | [illegible] | C8 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party: RESPONDENT MCKEMIE, JASON MOTION TO OBTAIN CERTIFIED TRANSCRIPT OF JANUARY 7, 2025, HEARING AND REQUEST FOR PAYMENT FROM COMMUNITY FUNDS UNDER PETITIONER'S CONTROL | 6 |
| 122 | [illegible] | C8 | NOTICE OF FILING | RESPONDENT | RESP-FILING | STANDING REQUEST FOR COURT REPORTER FOR OCTOBER 31, 2025 HEARING AND ALL SUBSEQUENT PROCEEDINGS | 3 |
| 123 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | |
| 124 | 11/03/2025 | C8 | E-SERVED COPY OF ORDER | COURT | COURT | ESERVE COVER LETTER - ORDER DENY JASON MCKEMIE'S RELIEF | |
| 125 | 11/03/2025 | C8 | MOTION - WITHDRAW ATTORNEY | PETITIONER | PETITIONER | AGREED | |
| 126 | 11/03/2025 | C9 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | ORDER FOR WITHDRAWAL OF COUNSEL | |
| 127 | [illegible] | C9 | OBJECTIONS - MISC | RESPONDENT | RESP-EMERG | EMERGENCY OBJECTION TO MOTION TO WITHDRAW AS COUNSEL AND REQUEST FOR EXPEDITED HEARING (INCLUDES PROPOSED ORDER) | 8 |
| 128 | [illegible] | C9 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | PROPOSED ORDER SUPPLEMENTAL OBJECTION TO MOTION TO WITHDRAW OF PETITIONER COUNSEL | 3 |
| 129 | [illegible] | C9 | OBJECTIONS - MISC | RESPONDENT | RESP-FILING | SUPPLEMENTAL OBJECTION TO MOTION TO WITHDRAW OF PETITIONER COUNSEL | 1 |
| 130 | 11/14/2025 | C9 | NOTICE OF HEARING / FIAT | RESPONDENT | RESP-FILING | NOTICE OF HEARING / FIAT | 3 |
| 131 | 11/18/2025 | C9 | ORDER - WITHDRAW ATTORNEY | COURT | COURT | Party: ATTORNEY SCROGGINS, ETHAN L | |
| 132 | 11/19/2025 | C9 | MOTION HEARING (1:30 PM) (Judicial Officer: ABENDROTH, TAMIKA JONES) | COURT | COURT | Events: 11/03/2025 MOTION - WITHDRAW ATTORNEY | |
| 133 | [illegible] | C9 | MOTION - VACATE | RESPONDENT | RESP-EMERG | Party: RESPONDENT MCKEMIE, JASON EMERGENCY M/ VACATE SETTING BEFORE ASSOCIATE JUDGE AND RESET ENFORCE | 14 |
| 134 | [illegible] | C9 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party: RESPONDENT MCKEMIE, JASON MOTION FOR DE NOVO DISTRICT JUDGE REVIEW OF PRIOR RULINGS AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER | 6 |
| 135 | [illegible] | C9 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER FOR DE NOVO REVIEW AND TRO | 2 |
| 136 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | |
| 137 | [illegible] | C9 | NOTICE OF FILING | RESPONDENT | RESP-FILING | NOTICE OF FILING OF SWORN AFFIDAVIT - CORRECTING FALSE RECORDING ALLEGATIONS AND EX PARTE PREJUDICE | 9 |
| 138 | [illegible] | C9 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party: RESPONDENT MCKEMIE, JASON EMERGENCY MOTION FILING SEEKING IMMEDIATE RELIEF REQUIRING MEDICAL ACCESS | 25 |
| 139 | 12/12/2025 | C9 | ORDER - NOTICE OF HEARING | COURT | COURT | ORDER - NOTICE OF HEARING | |
| 140 | 12/15/2025 | C9 | MISCELLANEOUS EVENT | RESPONDENT | RESP-FILING | NOTICE OF SERVICE - MOTION FOR THE REINSTATEMENT OF HEALTHCARE - CERT MAIL | 2 |
| 141 | 12/17/2025 | C10 | MOTION HEARING (1:30 PM) (Judicial Officer: ABENDROTH, TAMIKA JONES) | COURT | COURT | Events: 12/12/2025 MOTION - MISCELLANEOUS | |
| 142 | [illegible] | C10 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER ON EMERGENCY REINSTATEMENT OF HEALTHCARE | 3 |
| 143 | 12/17/2025 | C10 | RENDITION/MEMORANDUM RULING | COURT | COURT | ASSOCIATE JUDGE RULING | |
| 144 | [illegible] | C10 | MOTION - COMPEL | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON | 38 |
| 145 | [illegible] | C10 | ORDER - MISC | COURT | FAVORABLE | EMERGENCY ENFORCEMENT ORDER FOR MEDICAL PRESERVATION | |
| 146 | [illegible] | C10 | NOTICE OF FILING | RESPONDENT | RESP-FILING | NOTICE OF NONCOMPLIANCE WITH 24-HOUR HEALTHCARE REINSTATEMENT ORDER | 2 |
| 147 | [illegible] | C10 | NOTICE OF FILING | RESPONDENT | RESP-FILING | NOTICE REGARDING OF HEALTH COVERAGE, QUALIFYING LIFE EVENT AND REQUEST FOR LEAVE TO ISSUE SUBPOENA TO EMPLYER HR | 4 |
| 148 | [illegible] | C10 | MISCELLANEOUS EVENT | RESPONDENT | RESP-FILING | NOTICE OF SERVICE OF SIGNED ORDER - GWENDOLYN ULLIASZ-MCKEMIE | 7 |
| 149 | 12/19/2025 | C10 | MOTION - CLARIFY | PETITIONER | PETITIONER | Party: PETITIONER ULLIASZ MCKEMIE, GWENDOLYN | |
| 150 | [illegible] | C10 | CORRESPONDENCE - LETTER TO FILE | RESPONDENT | RESP-FILING | WAITING ON $8.00 Motion for Leave to Issue Third-Party Subpoena to Accenture HR Concerning Asserted Qualifying Life Event (FILED UNDER SEAL) - | 5 |
| 151 | [illegible] | C10 | MOTION - TEMPORARY ORDERS | RESPONDENT | RESP-FILING | APPLICATION | 13 |
| 152 | [illegible] | C10 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | TEMPORARY RESTRAINING ORDER | 2 |
| 153 | [illegible] | C10 | MOTION - LEAVE | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON TO ISSUE SUBPOENA REGARDING LEASE BUYOUT AND ASSOCIATED PAYMENTS | 3 |
| 154 | [illegible] | C10 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER GRANTING LEAVE TO SERVE SUBPOENAS | 2 |
| 155 | [illegible] | C10 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | TEMPORARY RESTRAINING ORDER HEALTHCARE REINSTATEMENT & CONTINUITY | 2 |
| 156 | [illegible] | C10 | NOTICE OF FILING | RESPONDENT | RESP-FILING | SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION TO COMPEL (REQUEST FOR CUSTODIAN CONTINUITY RECORDS / SUBPOENA LEAVE) | 13 |
| 157 | [illegible] | C11 | MOTION - SEAL | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON MOTION - SEALED SUBMISSION FOR IN CAMERA REVIEW ONLY (CONFIDENTIAL) | 181 |
| 158 | 12/31/2025 | C11 | MOTION - MISCELLANEOUS | PETITIONER | PETITIONER | Party: PETITIONER ULLIASZ MCKEMIE, GWENDOLYN MOTION TO APPEAR REMOTELY VIA ZOOM | |
| 159 | [illegible] | C11 | NOTICE OF FILING | RESPONDENT | RESP-EMERG | NOTICE REGARDING ORDER FOR HEALTHCARE REINSTATEMENT AND IMMINENT ESCALATION DUE TO MEDICAL NECESSITY AND NON-COMPLIANCE | 16 |
| 160 | [illegible] | C11 | MISCELLANEOUS EVENT | RESPONDENT | RESP-FILING | NOTICE REGARDING ORDER FOR HEALTHCARE | 18 |
| 161 | 01/05/2026 | C11 | MOTION - LEAVE | PETITIONER | PETITIONER | Party: PETITIONER ULLIASZ MCKEMIE, GWENDOLYN | |
| 162 | [illegible] | C11 | NOTICE OF FILING | RESPONDENT | RESP-FILING | NOTICE OF PRIOR STANDING REQUEST FOR COURT REPORTER/ OFFICIAL RECORD | 8 |
| 163 | 01/06/2026 | C11 | MOTION HEARING (9:00 AM) (Judicial Officer: ABENDROTH, TAMIKA JONES) | COURT | COURT | MOTION HEARING (9:00 AM) (Judicial Officer: ABENDROTH, TAMIKA JONES) | |
| 164 | [illegible] | C11 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER ON MOTION TO COMPEL | 4 |
| 165 | [illegible] | C11 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER ON EMERGENCY TRO | 3 |
| 166 | [illegible] | C11 | APPLICATION - TEMPORARY RESTRAINING ORDER | RESPONDENT | RESP-EMERG | EMERGENCY TRO | 13 |
| 167 | [illegible] | C11 | MISCELLANEOUS EVENT | RESPONDENT | RESP-FILING | NOTICE OF VOL COMPLIANCE & OBJ TO POST-CUTOFF SUBPOENA WITHOUT PRIOR REQUEST | 4 |
| 168 | [illegible] | C11 | [illegible] | [illegible] | [illegible] | [illegible] | |
| 169 | 01/12/2026 | C11 | ASSOCIATE JUDGE'S REPORT | COURT | COURT | Vol /Book 0, Page 0, 0 pages | |
| 170 | 01/12/2026 | C11 | DOCKET SHEET | COURT | COURT | DOCKET SHEET | |
| 171 | [illegible] | C11 | AFFIDAVIT | RESPONDENT | RESP-FILING | AFFIDAVIT ON PUBLIC STORAGE THEFT ACCUSATIONS AND PETITIONERS ACQUISITION OF WEAPON DURING PROCEEDINGS | 8 |
| 172 | [illegible] | C11 | MOTION - STAY | RESPONDENT | RESP-EMERG | EMERGENCY MOTION TO STAY EVICTION PROCEEDINGS | 4 |
| 173 | [illegible] | C11 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | PROPOSED ORDER ON EMERGENCY MOTION TO STAY EVICTION PROCEEDINGS | 4 |
| 174 | [illegible] | C12 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party: RESPONDENT MCKEMIE, JASON EMERGENCY MOTION TO TEMPORARY STAY OR IN THE ALTERNATIVE, IMPOSE PROTECTIVE CONDITIONS ON COURT-AUTHORIZED PROPERTY RETRIEVAL DUE TO MEDICAL INCAPACITY | 10 |
| 175 | [illegible] | C12 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER ON EMERGENCY MOTION TO TEMPORARILY STAY OR IMPOSE PROTECTIVE CONDITIONS ON PROPERTY RETRIEVAL DUE TO MEDICAL INCAPACITY | 6 |
| 176 | [illegible] | C12 | APPLICATION - TEMPORARY RESTRAINING ORDER | RESPONDENT | RESP-EMERG | EMERGENCY | 14 |
| 177 | [illegible] | C12 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER ON EMERGENCY TRO | 14 |
| 178 | [illegible] | C12 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER ON EMERGENCY MOTION FOR MEDICAL PRESERVATION, INTERIM MAKE-WHOLE RELIEF, JUDICIAL FINDINGS MISREPRESENTATION/IMPOSSIBILITY, CONDITIONAL SANCTIONS, AND THIRD-PARTY SUBPOENA AUTHORITY (CLE RECORDS) | 16 |
| 179 | [illegible] | C12 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER ON EMERGENCY MOTION TO STAY EVICTION PROCEEDINGS EXTEND RENT REGISTRY DEADLINE AND PRESERVE PROPERTY | 7 |
| 180 | 01/12/2026 | C12 | OBJECTIONS - MISC | RESPONDENT | RESP-EMERG | AND EMERGENCY MOTION TO STRIKE | 4 |
| 181 | 01/12/2026 | C12 | AFFIDAVIT | RESPONDENT | RESP-FILING | AFFIDAVIT ON MANUFACTURED ALLEGATIONS & CONCERN FOR PROPERTY RETRIEVAL / CLEAN OUT | 4 |
| 182 | 01/12/2026 | C12 | APPLICATION - TEMPORARY RESTRAINING ORDER | RESPONDENT | RESP-EMERG | EMERGENCY | 14 |
| 183 | [illegible] | C12 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party: RESPONDENT MCKEMIE, JASON EMERGENCY MOTION ON MEDICAL HARM | 14 |

DF-24-18010 - Updated Q-8 | Original certified alignment + county update report; live portal checked 11/13/2026

| Seq | Date | Pg | Event | Filer | Status | Docket description / matched filing title | Pages | HC | [illegible] | DISC | FIN | [illegible] | PAR | CR | FALSE | [illegible] | ATTY | [illegible] | STOL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 184 | 01/13/2026 | C12 | NOTICE OF FILING | PETITIONER | PETITIONER | PETITIONER'S NOTICE OF COMPLIANCE WITH COURT ORDER | | | | | | | | | | | | | |
| 185 | 01/14/2026 | C12 | MOTION - ENFORCE MISC | RESPONDENT | RESP-FILING | MOTION TO ABATE, ENFORCE DISCOVERY AND HEALTHCARE WAITING ON $65 FEE | 11 | | | | | | | | | | | | |
| 186 | 01/15/2026 | C12 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON RESPONDENT'S MOTION TO ESTABLISH CONDITIONS FOR RE-ENTRY OF COUNSEL AND TO PRESERVE FAIR TRIAL PROCEDURES | 4 | | | | | | | | | | | | |
| 187 | 01/15/2026 | C13 | NOTICE OF HEARING / FIAT | RESPONDENT | RESP-FILING | NOTICE OF HEARING (CONSOLIDATED) | 4 | | | | | | | | | | | | |
| 188 | 01/20/2026 | C13 | MOTION HEARING (9:00 AM) (Judicial Officer: ABENDROTH, TAMIKA JONES) | COURT | COURT | MOTION HEARING (9:00 AM) (Judicial Officer: ABENDROTH, TAMIKA JONES) | | | | | | | | | | | | | |
| 189 | 01/20/2026 | C13 | MISCELLANEOUS EVENT | RESPONDENT | RESP-FILING | RESPONDENT'S NOTICE OF DISCOVERY AND HEALTHCARE COMPLIANCE, REQUEST FOR REMOTE APPEARANCE, REQUEST FOR ACESS TO PERSONAL PROPERTY, REQUEST FOR CONSOLIDATION & HEARING LIMITS AND CASE MANAGEMENT CLARIFICATION | 34 | | | | | | | | | | | | |
| 190 | [illegible] | C13 | NOTICE OF FILING | RESPONDENT | RESP-FILING | NOTICE OF PRIOR STANDING REQUEST FOR COURT REPORTER/VERBATIM RECORD | 3 | | | | | | | | | | | | |
| 191 | 01/22/2026 | C13 | CANCELED MOTION HEARING (9:00 AM) (Judicial Officer: ABENDROTH, TAMIKA | COURT | COURT | JONES) AGREEMENT BY PARTIES | | | | | | | | | | | | | |
| 192 | [illegible] | C13 | NOTICE OF FILING | RESPONDENT | RESP-FILING | NOTICE OF PRESERVATION OF WITNESSES & LARGE DISCOVERY PRODUCTION IN FINAL HOUR | 5 | | | | | | | | | | | | |
| 193 | [illegible] | C13 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party: RESPONDENT MCKEMIE, JASON EMERGENCY MOTION TO ABATE PROCEEDINGS, PRESERVE LIFE-SAFETY, COMPEL A WRITTEN RECORD & AUTHORIZE SUBPOENAS | 6 | | | | | | | | | | | | |
| 194 | 02/05/2026 | C13 | MOTION HEARING (1:30 PM) (Judicial Officer: ABENDROTH, TAMIKA JONES) | COURT | COURT | Compel - Via Zoom | | | | | | | | | | | | | |
| 195 | [illegible] | C13 | NOTICE OF FILING | RESPONDENT | RESP-EMERG | NOTICE ON STATUS OF PROPOSED ORDER, IMMINENT LIKELIHOOD OF IMMINENT LITIGATIVE ESCALATION/FALSE THREAT NARRATIVE & BENEFITS CANCELLATION | 38 | | | | | | | | | | | | |
| 196 | 02/10/2026 | C13 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | PROPOSED UNIFIED ORDER REGARDING MATERIAL DEVELOPMENTS-3RD PARTY VER-HSA/FSA FUNCTIONALITY | 7 | | | | | | | | | | | | |
| 197 | 02/10/2026 | C13 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER ON STATUS, VERIFICATION, INTERIM RELIEF, AND PRETRIAL MANAGEMENT | 8 | | | | | | | | | | | | |
| 198 | 02/17/2026 | C13 | OBJECTIONS - MISC | RESPONDENT | RESP-FILING | RESPONDENT'S - TO ANY PURPORTED SEALING OF RECORDS | 28 | | | | | | | | | | | | |
| 199 | 02/17/2026 | C13 | WITNESS LIST | PETITIONER | PETITIONER | PLAINTIFF'S FINAL WITNESS LIST | | | | | | | | | | | | | |
| 200 | 02/17/2026 | C13 | MISCELLANEOUS EVENT | PETITIONER | PETITIONER | PROPOSED PROPERTY DIVISION | | | | | | | | | | | | | |
| 201 | [illegible] | C13 | NOTICE OF BANKRUPTCY | RESPONDENT | RESP-FILING | RESPONDENT'S NOTICE OF BANKRUPTCY AUTOMATIC STAY | 3 | | | | | | | | | | | | |
| 202 | [illegible] | C13 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party: RESPONDENT MCKEMIE, JASON EMERGENCY VERIFIED MOTION TO CONTINUE OR ABATE BENCH TRIAL | 8 | | | | | | | | | | | | |
| 203 | 02/20/2026 | C14 | MOTION - MISCELLANEOUS | PETITIONER | PETITIONER | Party: PETITIONER ULIJASZ MCKEMIE, GWENDOLYN PETITIONER'S MOTION IN LIMINE REGARDING AUDIO AND VIDEO RECORDING | | | | | | | | | | | | | |
| 204 | [illegible] | C14 | WITNESS LIST | RESPONDENT | RESP-FILING | WITNESS LIST | 4 | | | | | | | | | | | | |
| 205 | [illegible] | C14 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON FOR REMOTE TESTIMONY OF WITNESS CHRISTOPHER MCNALLY BY VIDEOCONFERENCE AND TO OVERRULE WITNESS-STRIKE OBJECTION 3RD PTY PO | 5 | | | | | | | | | | | | |
| 206 | [illegible] | C14 | RETURN OF SERVICE | RESPONDENT | RESP-FILING | EXECUTED ATTORNEY ISSUED SUBPOENA - CHRISTOPHER MCNALLY | 2 | | | | | | | | | | | | |
| 207 | [illegible] | C14 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER AUTHORIZING THE REMOTE TESTIMONY OF CHRISTOPHER MCNALLY & OVERRULING WITNESS-STRIKE OBJECTIONS | 3 | | | | | | | | | | | | |
| 208 | 02/23/2026 | C14 | NOTICE OF FILING | PETITIONER | PETITIONER | PETITIONER'S AMENDED PROPOSED PROPERTY DIVISION | | | | | | | | | | | | | |
| 209 | 02/24/2026 | C14 | BENCH TRIAL (9:00 AM) (Judicial Officer: JACKSON, SANDRA) | COURT | COURT | BENCH TRIAL (9:00 AM) (Judicial Officer: JACKSON, SANDRA) | 0 | | | | | | | | | | | | |
| 210 | [illegible] | C14 | MOTION - RECUSE | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON | 18 | | | | | | | | | | | | |
| 211 | 02/24/2026 | C14 | OBJECTIONS - MISC | PETITIONER | PETITIONER | TO UNFILED AND UNSERVED MOTION TO RECUSE AND REQUEST FOR IMMEDIATE RESET | | | | | | | | | | | | | |
| 212 | [illegible] | C14 | AFFIDAVIT INABILITY TO PAY | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON | 13 | | | | | | | | | | | | |
| 213 | [illegible] | C14 | ORDER - RECUSAL | COURT | FAVORABLE | ORDER - RECUSAL | | | | | | | | | | | | | |
| 214 | [illegible] | C14 | ORDER - TRANSFER/CONSOLIDATE | COURT | FAVORABLE | 301ST DISTRICT COURT | | | | | | | | | | | | | |
| 215 | 03/24/2026 | C14 | MOTION - MISCELLANEOUS | PETITIONER | PETITIONER | REBECCA ARMSTRONG'S MOTION IN SUPPORT OF JONATHAN DRAKE STEELE'S MOTION PRO HAC VICE | | | | | | | | | | | | | |
| 216 | 03/24/2026 | C14 | MOTION - MISCELLANEOUS | PETITIONER | PETITIONER | SWORN MOTION OF JONATHAN DRAKE STEELE TO APPEAR PRO HAC VICE | 6 | | | | | | | | | | | | |
| 217 | 03/24/2026 | C14 | 10 DAY LETTER | PETITIONER | PETITIONER | 10 DAY LETTER | | | | | | | | | | | | | |
| 218 | 03/24/2026 | C14 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | ORDER GRANTING PRO HAC VICE ADMISSION OF JONATHAN DRAKE STEELE | 2 | | | | | | | | | | | | |
| 219 | 04/02/2026 | C15 | OBJECTIONS - MISC | RESPONDENT | RESP-FILING | RESPONDENT'S OBJECTION TO PRO HAC VICE ADMISSION | 2 | | | | | | | | | | | | |
| 220 | 04/05/2026 | C15 | NOTICE OF FILING | RESPONDENT | RESP-FILING | NOTICE OF SUPPLEMENTAL FILING TO BE SUBMITTED TODAY AND MOTION FOR LEAVE | 4 | | | | | | | | | | | | |
| 221 | 04/07/2026 | C15 | OBJECTIONS - MISC | RESPONDENT | RESP-FILING | RESPONDENT'S OBJECTION TO SWORN MOTION OF JONATHAN DRAKE STEELE TO APPEAR PRO HAC VICE, AND REQUEST PRIORITIZE ENFORCEMENT & STABILIZATION | 18 | | | | | | | | | | | | |
| 222 | 05/07/2026 | C15 | NOTICE OF HEARING / FIAT | COURT | COURT | NOTICE OF HEARING / FIAT | | | | | | | | | | | | | |
| 223 | [illegible] | C15 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party: RESPONDENT MCKEMIE, JASON EMERGENCY MOTION FOR WRITTEN DISCOVERY RULINGS, SUBPOENA LEAVE, EVIDENCE PRESERVATION AND IMMEDIATE HEARING | 12 | | | | | | | | | | | | |
| 224 | 05/12/2026 | C15 | MOTION HEARING (1:30 PM) (Judicial Officer: DUNLOP, | COURT | COURT | STACY Location: 301ST ASSOCIATE JUDGE) Events: 03/24/2026 MOTION - MISCELLANEOUS JASON CALLED HE IS RUNNING LATE, HE THOUGHT HIS HEARING WAS ON ZOOM | | | | | | | | | | | | | |
| 225 | [illegible] | C15 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party: RESPONDENT MCKEMIE, JASON SUPPLEMENTAL EMERGENCY MOTION FOR INTERIM STABILIZATION, HEALTH CARE ENFORCEMENT CASE MGMT, AND OBJECTION TO PHV ADMISSION | 42 | | | | | | | | | | | | |
| 226 | [illegible] | C15 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party: RESPONDENT MCKEMIE, JASON MOTION TO PRESERVE DISCOVERY AND TRIAL RIGHTS | 13 | | | | | | | | | | | | |
| 227 | [illegible] | [illegible] | [illegible] | [illegible] | ADVERSE | [illegible] | | | | | | | | | | | | | |
| 228 | 05/15/2026 | C15 | NOTICE OF HEARING / FIAT | RESPONDENT | RESP-FILING | SUPPLEMENTAL NOTICE FOR MAY 21 HEARING | 14 | | | | | | | | | | | | |
| 229 | 05/20/2026 | C15 | MOTION - CONTINUANCE | PETITIONER | PETITIONER | Party: PETITIONER ULIJASZ MCKEMIE, GWENDOLYN PETITIONER'S MOTION FOR CONTINUANCE | | | | | | | | | | | | | |
| 230 | 05/21/2026 | C15 | MOTION HEARING (1:30 PM) (Judicial Officer: DUNLOP, | COURT | COURT | STACY Location: 301ST ASSOCIATE JUDGE) ZOOM APPEARANCE | | | | | | | | | | | | | |
| 231 | [illegible] | C15 | APPLICATION - PROTECTIVE ORDER | RESPONDENT | RESP-EMERG | Party: RESPONDENT MCKEMIE, JASON | 94 | | | | | | | | | | | | |
| 232 | 05/26/2026 | C15 | NOTICE OF HEARING / FIAT | COURT | COURT | MOTIONS | | | | | | | | | | | | | |
| 233 | 05/26/2026 | C16 | MOTION - MOD/ENF OTHER (SAPCR) (DCA FLM) | RESPONDENT | RESP-FILING | MOTION FOR ENFORCEMENT, SANCTIONS, CONTINUANCE, AND LEAVE TO ISSUE THIRD-PARTY SUBPOENAS | 18 | | | | | | | | | | | | |
| 234 | 05/25/2026 | C16 | RESPONSE | PETITIONER | PETITIONER | TO MOTION FOR ENFORCEMENT AND COUNTER MOTION FOR PROTECTIVE ORDER | 18 | | | | | | | | | | | | |
| 235 | 05/29/2026 | C16 | AFFIDAVIT | PETITIONER | PETITIONER | Affidavit of Jonathan Steele | | | | | | | | | | | | | |
| 236 | 06/01/2026 | C16 | TEMPORARY ORDERS HEARING (1:30 PM) (Judicial Officer: DUNLOP, | COURT | COURT | STACY Location: 301ST ASSOCIATE JUDGE) AwaitingRespondent to set motions 1 hour per side (AJ Dunlop) | | | | | | | | | | | | | |
| 237 | 06/01/2026 | C16 | RESPONSE | RESPONDENT | RESP-FILING | RESPONDENT'S REPLY IN SUPPORT OF ENFORCEMENT, SANCTIONS, CONTINUANCE, AND LEAVE; OBJECTION TO PETITIONER???S BAD-FAITH PROTECTIVE ORDER AND FEE REQUEST; AND REQUEST FOR SANCTIONS, SHOW CAUSE, COUNSEL CERTIFICATION, FEE SHIFTING, FORENSIC ACCOUNTING, ESTATE RECONSTITUTION, DISPROPORTIONATE DIVISION, AND SOURCE-RECORD VERIFICATION | 111 | | | | | | | | | | | | |
| 238 | 06/01/2026 | C16 | EXHIBITS LIST | RESPONDENT | RESP-FILING | PROPOSED ORDERS AND SUBPOENA TARGETS: MOTION TO ENFORCE, SANCTIONS, LEAVE | 26 | | | | | | | | | | | | |
| 239 | 06/01/2026 | C16 | ASSOCIATE JUDGE'S REPORT | COURT | COURT | Vol./Book 0, Page 0, 0 pages | | | | | | | | | | | | | |
| 240 | 06/02/2026 | C16 | E-SERVED COPY OF ORDER | COURT | COURT | ASSOCIATE JUDGE'S REPORT | | | | | | | | | | | | | |
| 241 | [illegible] | [illegible] | REQUEST FOR DE NOVO HEARING | RESPONDENT | RESP-EMERG | REQUEST FOR DE NOVO HEARING | 194 | | | | | | | | | | | | |
| 242 | 06/11/2026 | C16 | BENCH TRIAL (1:30 PM) (Judicial Officer: WYSOCKI, ASHLEY) | COURT | COURT | BENCH TRIAL (1:30 PM) (Judicial Officer: WYSOCKI, ASHLEY) | | | | | | | | | | | | | |
| 243 | 06/11/2026 | C16 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | VERIFIED EMERGENCY MOTION TO ABATE, STAY OR CONTINUE TRIAL | 10 | | | | | | | | | | | | |
| 244 | 06/11/2026 | C16 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER ON RESPONDENT'S VERIFIED EMERGENCY MOTION TO ABATE, STAY, OR CONTINUE TRIAL | 10 | | | | | | | | | | | | |
| 245 | 06/11/2026 | C16 | MOTION - RECUSE | RESPONDENT | RESP-FILING | VERIFIED MOTION TO RECUSE AND REQUEST FOR REFERRAL | 7 | | | | | | | | | | | | |
| 246 | 06/11/2026 | C16 | MISCELLANEOUS EVENT | RESPONDENT | RESP-EMERG | RESPONDENT'S SUPPLEMENTAL VERIFIED NOTICE OF CURRENT MEDICAL EMERGENCY, INABILITY TO SAFELY APPEAR AFTER TRIAL SETTING, REQUEST TO HALT PROCEEDINGS, REQUEST FOR REMOTE APPEARANCE, AND NON-WAIVER OF ALL OBJECTIONS | 8 | | | | | | | | | | | | |
| 247 | 06/11/2026 | C16 | NOTICE OF FILING | RESPONDENT | RESP-FILING | NOTICE OF NON-WAIVER OF SANCTIONS, CIVIL CLAIMS, ATTORNEY MISCONDUCT CLAIMS, AND OBJECTION | 7 | | | | | | | | | | | | |
| 248 | 06/12/2026 | C17 | OBJECTIONS - MISC | RESPONDENT | RESP-EMERG | RESPONDENT'S EMERGENCY OBJECTION TO PROPOSED FINAL DECREE, NOTICE OF PENDING RECUSAL MATTERS, REQUEST TO WITHHOLD SIGNATURE AND ENTRY, AND NOTICE OF MANDAMUS | 15 | | | | | | | | | | | | |
| 249 | 06/15/2026 | C17 | MOTION - RECUSE | RESPONDENT | RESP-EMERG | RESPONDENT'S EMERGENCY SUPPLEMENT TO PENDING RECUSAL | 30 | | | | | | | | | | | | |
| 250 | 06/16/2026 | C17 | NOTICE OF FILING | RESPONDENT | RESP-EMERG | RESPONDENT'S EMERGENCY SUPPLEMENTAL EXHIBIT MAP AND FILING INDEX | 196 | | | | | | | | | | | | |
| 251 | 06/16/2026 | C17 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | RESPONDENT'S EMERGENCY RULE 18A STATUS NOTICE REGARDING PENDING VERIFIED RECUSAL, REQUEST FOR WRITTEN RULING OR REFERRAL, AND OBJECTION TO DECREE ACTION | 6 | | | | | | | | | | | | |

| Seq | Date | Pg | Event | Filer | Status | Docket description / matched filing title | Pages | [illegible] | [illegible] | DRG | FIN | DF | PAR | CR | FALSE | MED | ATTY | PRK | STOL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 252 | 06/15/2026 | C17 | MOTION - ENFORCE MISC | PETITIONER | PETITIONER | SIGN & ENTER FINAL DECREE OF DIVORCE | | | | | | | | | | | | | |
| 253 | 06/15/2026 | C17 | COA - CORRESPONDENCE LETTER | COURT | COURT | OPINION ISSUED LETTER | | | | | | | | | | | | | |
| 254 | [illegible] | C17 | [illegible] | COURT | [illegible] | [illegible] | | | | | | | | | | | | | |
| 255 | 06/17/2026 | C17 | OBJECTIONS - MISC | RESPONDENT | RESP-EMERG | EMERGENCY OBJECTION TO ENTRY OF FINAL DECREE AND RESPONDENT'S LIFE, SAFETY AND MEDICAL HARM BRIEF | 20 | [illegible] | [illegible] | | 1 | 1 | | | 1 | 1 | | 1 | 1 |
| 256 | 06/22/2026 | C17 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party: RESPONDENT MCKEMIE, JASON EMERGENCY VERIFIED MOTION TO PRESERVE AND PRODUCE | 5 | | [illegible] | | 1 | 1 | | 1 | | | | | |
| 257 | 06/22/2026 | C17 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | RESPONDENT'S EMERGENCY NOTICE OF UNACCOUNTED-FOR PERSONAL PROPERTY, DEMAND FOR INVENTORY, REQUEST FOR PRESERVATION AND PRESERVATION OF RIGHTS | 6 | | 1 | 1 | | | | | | | | | |
| 258 | 06/24/2026 | C17 | RESPONSE | RESPONDENT | RESP-FILING | IN OPPOSITION TO PETITIONER'S MOTION TO SIGN AND ENTER FINAL DECREE OF DIVORCE, AND MOTION TO SEVER AND RESERVE ALL DIVISION OF BANKRUPTCY ESTATE PROPERTY | 16 | 1 | | 1 | 1 | 1 | | 1 | 1 | 1 | 1 | 1 | 1 |
| 259 | [illegible] | C17 | [illegible] | [illegible] | [illegible] | FATHER'S [illegible] | | | | | | | | | | | | | |
| 260 | [illegible] | C17 | [illegible] | COURT | ADVERSE | [illegible] | | | | | | | | | | | | | |
| 261 | 06/29/2026 | C18 | E-SERVED COPY OF ORDER | COURT | COURT | ORDER DENYING FATHER'S MOTION TO RECUSE & FINAL DECREE | | | | | | | | | | | | | |
| 262 | 07/06/2026 | C18 | NOTICE OF FILING | RESPONDENT | RESP-FILING | RESPONDENT'S W-8 SWORN DECLARATION RE PROPERTY ITEMS | 52 | | | | | | | | | | | | |
| 263 | 07/09/2026 | C18 | MISCELLANEOUS EVENT | RESPONDENT | RESP-EMERG | EMERGENCY NOTICE OF UNHEARD DE NOVO REQUEST AND TRIAL DISPOSITIVE OBJECTIONS | 11 | | 1 | | | 1 | | | | | | | |
| 264 | 07/16/2026 | C18 | FINDINGS OF FACT/CONCLUSIONS OF LAW | RESPONDENT | RESP-FILING | RESPONDENT'S FIRST AMENDED AND SUPPLEMENTAL REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW | 9 | 1 | | 1 | 1 | 1 | | | | 1 | | | 1 |
| 265 | 07/27/2026 | C18 | MOTION - NEW TRIAL | RESPONDENT | RESP-EMERG | MOTION - NEW TRIAL | 27 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| 266 | 07/27/2026 | C18 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | PROPOSED ORDER GRANTING NEW TRIAL, VACATING FINAL DECREE, SUSPENDING ENFORCEMENT, ENTERING TEMPORARY PROTECTIVE AND STABILIZATION ORDERS, AUTHORIZING SOURCE-RECORD RECONSTRUCTION, AND SETTING EXPEDITED | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| 267 | 07/29/2026 | C18 | NOTICE OF FILING | RESPONDENT | RESP-EMERG | RESPONDENT'S NOTICE OF FILING WITH THE UNITED STATES DEPARTMENT OF LABOR, EMPLOYEE BENEFITS SECURITY ADMINISTRATION | 53 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| 268 | 08/07/2026 | U22 | NOTICE PAST DUE FINDING OF FACT&COL | RESPONDENT | RESP-FILING | NOTICE PAST DUE FINDING OF FACT&COL I Notice of Past Due Findings of Fact and Conclusions of Law | 11 | 1 | | 1 | 1 | 1 | | | | 1 | | | 1 |
| 269 | 08/14/2026 | U22 | NOTICE OF FILING | RESPONDENT | RESP-FILING | RESPONDENT'S VERIFIED MOTION TO SET EXPEDITED HEARING | 13 | | | | | 1 | | 1 | | 1 | | | |
| 270 | 08/14/2026 | U22 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER SETTING EVIDENTIARY HEARING ON RESPONDENT'S VERIFIED MOTION FOR NEW TRIAL AND MOTION TO VACATE | 2 | | | | | 1 | | 1 | | | | | |
| 271 | 08/19/2026 | U22 | MOTION - SET HEARING | RESPONDENT | RESP-FILING | RESPONDENT'S MOTION TO SET THE EVIDENTIARY HEARING BEFORE THE 09-09-26 OPERATION-OF-LAW-DATE, AND ACCEPTANCE OF THE 09-02-26 SETTING UNDER OBJECTION | 33 | | | | | 1 | | | | | 1 | | |
| 272 | 08/19/2026 | U22 | RESPONSE | PETITIONER | PETITIONER | PETITIONER'S LIMITED RESPONSE TO RESPONDENT'S MOTION TO SET THE EVIDENTIARY HEARING BEFORE 09-09-26 OPERATION -OF LAW DATE | 6 | | | | | | | | | | | | |
| 273 | 08/19/2026 | U22 | RESPONSE | RESPONDENT | RESP-FILING | RESPONDENT'S VERIFIED REPLY TO PETITIONER'S LIMITED RESPONSE AND CLARIFIED REQUEST FOR AN EXPEDITED PRE-SEPTEMBER 9 EVIDENTIARY SETTING | 40 | | | | | 1 | | 1 | 1 | 1 | | 1 | |
| 274 | 08/21/2026 | U22 | OBJECTIONS - MISC | RESPONDENT | RESP-FILING | RESPONDENT'S - TO REMOTE APPEARANCE AND TESTIMONY OF PETITIONER AND MATERIAL FACT | 9 | | | | | 1 | | 1 | | | | | |
| 275 | 08/21/2026 | U22 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ON VERIFIED OBJECTION TO REMOTE APPEARANCE AND TESTIMONY | 5 | | | | | 1 | | 1 | | | | | |
| 276 | 08/26/2026 | U22 | MOTION HEARING | COURT | COURT | MOTION HEARING (9:00 AM), WYSOCKI, ASHLEY - CANCELED BY COURT ADMINISTRATOR | | | | | | | | | | | | | |
| 277 | 08/31/2026 | U23 | OBJECTIONS - MISC | RESPONDENT | RESP-EMERG | TO PROCEEDING WITHOUT DUE PROCESS, RENEWED MOTION FOR EXISTING EVIDENTIARY RECORD | 23 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| 278 | 08/31/2026 | U23 | REQUEST REPORTER RECORD | RESPONDENT | RESP-FILING | RESPONDENT'S RENEWED I Renewed Request and Designation for Complete Reporter's Record and Special Clerk's Record Items | 7 | 1 | | | 1 | 1 | | 1 | | 1 | | | 1 |
| 279 | 09/03/2026 | U23 | MOTION HEARING | COURT | COURT | MOTION HEARING (1:30 PM), WYSOCKI, ASHLEY - HEARING HELD; Petitioner counsel and Respondent listed present | | | | | | | | | | | | | |
| 280 | 09/03/2026 | U23 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | GRANTING MOTION FOR NEW TRIAL TO VACATE FINAL DECREE OF DIVORCE | 4 | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | 1 |
| 281 | 09/11/2026 | U23 | BRIEF FILED | PETITIONER | PETITIONER | PETITIONERS BRIEF ON THE EFFECT OF THE BANKRUPTCY AUTOMATIC STAY ON THE FINAL DECREE OF DIVORCE | 133 | | | | | | | | | | | | |
| 282 | 09/11/2026 | U23 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | EMERGENCY REQUEST TO WITHHOLD RULING PENDING SAME DAY RESPONSE TO PETITIONER'S SEPT. 11, 2026 BRIEF | 3 | | 1 | | | 1 | | | | | | | |
| 283 | 09/11/2026 | U23 | NOTICE OF FILING | RESPONDENT | RESP-FILING | NOTICE OF FORTHCOMING SUPPLEMENTAL BRIEF AND RESPONSE TO PETITIONER'S BRIEF ON THE EFFECT OF THE BANKRUPTCY AUTOMATIC STAY | 2 | | | | 1 | 1 | | | | | | | |
| 284 | 09/14/2026 | U23 | BRIEF FILED | RESPONDENT | RESP-FILING | SUPPLEMENTAL BRIEF ON THE BANKRUPTCY AUTOMATIC STAY IN SUPPORT OF COMPLETE VACATUR AND A NEW TRIAL | 83 | 1 | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| 285 | 09/18/2026 | U23 | ORDER - NEW TRIAL/SET ASIDE/ VACATE (OCA and REOPEN CASE) | COURT | PARTIAL | ORDER - NEW TRIAL/SET ASIDE/ VACATE (OCA and REOPEN CASE) I Memorandum Ruling on Motion for New Trial I Memorandum: new trial granted in part; property provisions vacated; remaining provisions interlocutory | 1 | | | | | | | | | | | | |
| 286 | 09/24/2026 | U23 | MOTION - VACATE | RESPONDENT | RESP-EMERG | MOTION - VACATE I Motion to Vacate Remaining Decree Provisions, for Sanctions and Written Ruling | 17 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| 287 | 09/24/2026 | U23 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | PROPOSED ORDER/JUDGMENT I Proposed Order on Motion to Vacate Remaining Decree Provisions | 6 | 1 | | 1 | 1 | 1 | 1 | 1 | | | 1 | | 1 |
| 288 | 09/26/2026 | U23 | NOTICE OF APPEAL - CT. OF APPEALS | RESPONDENT | RESP-FILING | RESPONDENT I Protective Notice of Appeal | 3 | 1 | | | 1 | 1 | | | | | | | |
| 289 | 09/26/2026 | U24 | NOTICE OF FILING | RESPONDENT | RESP-FILING | RESPONDENT'S SUPPLEMENTAL NOTICE REGARDING THE INTERLOCUTORY POSTURE, APPELLATE TIMETABLE, AND SEPTEMBER 24, 2026, MOTION TO MODIFY | 3 | 1 | | | 1 | 1 | 1 | | | | | | |
| 290 | 09/26/2026 | U24 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | PROPOSED ORDER CLARIFYING INTERLOCUTORY POSTURE AND NONPRECLUSIVE EFFECT ON SECTION 6 | 2 | | | | 1 | 1 | 1 | | | | | | |
| 291 | 09/29/2026 | U24 | MOTION - MISCELLANEOUS | PETITIONER | PETITIONER | PETITIONER'S MOTION TO CLARIFY AND MODIFY THE MEMORANDUM OF SEPT. 18-2026 | 18 | | | | | | | | | | | | |
| 292 | 09/30/2026 | U24 | NOTE - CLERKS | COURT | COURT | PREPARING CLERK'S RECORD | | | | | | | | | | | | | |
| 293 | 10/05/2026 | U24 | COA - POST CARD | COURT | COURT | 05-26-01443-CV | | | | | | | | | | | | | |
| 294 | 10/05/2026 | U24 | APPELLATE RECORD | COURT | COURT | 05-26-01443-CV CLERK'S RECORD SUBMITTED TO 5TH COA WITH TRACE #83039 | | | | | | | | | | | | | |
| 295 | 10/06/2026 | U24 | COA - POST CARD | COURT | COURT | 05-26-01443-CV | | | | | | | | | | | | | |
| 296 | 10/15/2026 | U24 | COA - POST CARD | COURT | COURT | 05-26-01443-CV | | | | | | | | | | | | | |
| 297 | 10/16/2026 | L | COA - CORRESPONDENCE LETTER | COURT | COURT | 5TH COA LETTER ISSUED I Corrected June 16 mandamus records, No. 05-26-00854-CV: case-number typo correction | | | | | | | | | | | | | |
| 298 | 10/16/2026 | L | COA - CORRESPONDENCE LETTER | COURT | COURT | CORRECTED OPINION AND ORDER I Corrected June 16 mandamus records, No. 05-26-00854-CV, case-number typo correction. | | | | | | | | | | | | | |
| 299 | 10/16/2026 | L | ORDER - MISC. | COURT | COURT | 5TH COA - ORDER DISMISS I Corrected June 16 mandamus records, No. 05-26-00854-CV case-number typo correction. | | | | | | | | | | | | | |
| 300 | 10/16/2026 | L | OPINION | COURT | COURT | 5TH COA MEMORANDUM I Corrected June 16 mandamus records, No. 05-26-00854-CV case-number typo correction. | | | | | | | | | | | | | |

**Update notes**

September 18 (row 285): the memorandum grants a new trial in part and vacates decree §§8, 9, 11-15; §§1-7 and 10 remain interlocutory. The green row records partial relief, not complete vacatur. Source: DF24 pleading #254 / internal 249, physical PDF p. 1.

October 16 (rows 297-300): corrected records in mandamus No. 05-26-00854-CV fix the trial-cause number on the June 16 disposition. These are not a new October dismissal of appeal No. 05-26-01443-CV and are not counted as additional adverse rulings.

# DEBTOR'S EXHIBIT D-22

Respondent's Request for De Novo Hearing, with exhibits
Filed June 4, 2026 in Cause No. DF-24-18010

In re Jason Emory McKemie, Case No. 26-30161-mvl7 (Bankr. N.D. Tex.)
Attached to the Debtor's Exhibit List of November 13, 2026

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | **CASE NO. 26-30161-mvl7** |
| | § | |
| JASON EMORY McKEMIE, | § | **CHAPTER 7** |
| | § | |
| Debtor. | § | Hearing: Nov. 18, 2026, 9:30 a.m. |

# DEBTOR'S SUPPLEMENT IN RESPONSE TO MOVANT'S NOVEMBER 12, 2026 FILINGS [ECF 141, 142, 143], IN OPPOSITION TO MODIFICATION OF THE STAY [ECF 110], AND IN SUPPORT OF RULE 2004 SUBPOENAS [ECF 97]

(Relates to ECF 97, 110, 111, 134, 136, 137, 141, 142, 143, and 144)

**TO THE HONORABLE MICHELLE V. LARSON, UNITED STATES BANKRUPTCY JUDGE:**

Jason Emory McKemie, the Debtor, files this supplement to address matters raised for the first time in the three papers that Gwendolyn Laura Ulijasz ("Movant") filed on November 12, 2026 (ECF 141, 142, 143). He gave notice on November 10 that he would do so by today. ECF 141 at 12. Page citations are to CM/ECF page numbers. "Decl." is the Debtor's declaration at the end of this supplement.

## I. WHAT CHANGED ON NOVEMBER 12

1. Six days before the final evidentiary hearing that she requested and noticed (ECF 110 ¶ 4; ECF 128), Movant changed what the hearing is about. She now (a) asks leave to withdraw, "without adjudication," her requests to annul the stay and to determine that her accounts are not property of the estate; (b) states that she "does not intend to offer her declaration or to testify"; and (c) asks to attend only by WebEx. ECF 143 ¶¶ 1, 6 at 2, 4; ECF 141 ¶ 1 at 2. She still asks the Court to modify the stay so that the divorce court can divide the marital estate, and to declare that the stay never applied to the dissolution. She intends to prove both by judicial notice of two orders. ECF 143 ¶ 7 at 4–5.

2. Three things follow:

   a) **THE RULE 2004 MOTION (ECF 97) SHOULD BE GRANTED NOW.**

Movant's procedural objection was that the records "pertain to" her contested matter because it asked the Court to decide whether her accounts "were property of this estate on January 12, 2026." ECF 111 ¶ 14 at 6. She has withdrawn that request. She also concedes that any division must remain subject "to this Court's determination of the estate's interest in any property." ECF 143 ¶ 7 at 4. That determination cannot be made without the institutions' records. The Trustee's Form 1 carries each of these interests at "Unknown." ECF 91.

b) **THE STAY SHOULD NOT BE MODIFIED.**

ECF 110 asked for modification only as to "property that this Court determines to be property of the estate." ECF 110 ¶ 2(c) at 3. Movant has withdrawn her request for that determination, and she offers no evidence of cause.

c) **MOVANT MUST TESTIFY.**

She states that she "will be available by WebEx for the entire hearing." ECF 141 ¶ 1 at 2. She has put her own conduct in issue, including her June 26, 2026 change to the Debtor's health coverage, on which she designates the Debtor as her witness (ECF 136) while declining to be his.

3. The sworn record of how the parties got here is at ECF 134 at 24–26 and ECF 122 at 18–32. In the months before she left, Movant told the Debtor the household had a short-term cash shortage, directed him to carry its expenses on his own credit cards, and talked him out of a $250,000 position. She received the first half of a $300,000 signing bonus, in the amount of $150,000, on November 21, 2024, while telling the Debtor that the sign-on bonus had been moved to mid-December and instructing him to think of, create, and purchase thoughtful, generous, and meaningful Christmas gifts for her family members on his personal credit cards. She assured him that they would clear all of the balances as soon as the sign-on bonus was received and would then resume paying every credit card in full each month, as they had since January 2024. ECF 138-1 at 19; ECF 134 at 24 ¶ 3; ECF 122 at 18 ¶ 1A. The Debtor had spinal surgery on December 10, 2024. On December 11, 2024, after finding substantial documentation of Movant's past weaponization of victim narratives, of her civil and criminal filings against past romantic partners, the spouses of former spouses, neighbors, and a landlord, and of settlements extracted from at least three prior employers, the Debtor called 911 and reported that his wife was trying to set him up and that false police reports and a fraudulent protective order would be filed against him. The police call log records: "caller thinks is being set up by wife." ECF 134 ¶ 19 at 4; *id.* at 25 ¶ 6. The following day, Movant reported as fraud, and had cancelled, the retainer he had paid a lawyer and the funds he had set aside to live on. Those funds were three months of living expenses for the marital

residence and not a dollar more, which is what his counsel had directed him to transfer. ECF 134 ¶ 66 at 16; *id.* at 25 ¶ 7.

On January 7, 2025, Movant's counsel, Donna Tomlinson, who had filed the application for protective order, withdrew before the temporary orders and protective order hearing, stating that to proceed with her representation of Movant would violate her ethical oath as an officer of the court. Movant then represented herself, assisted by her out-of-state sister, Pamela Woodman, who served as her only witness. Together they staged a stalking narrative. The court ultimately denied the protective order in full, but not before their coordinated aggravated perjury stripped the Debtor of access to all marital assets and burdened him with approximately $25,000 a month in expenses for the entire marital estate and legal fees. That burden fell after his credit had been maxed out at Movant's direction over the prior months, and while he was recovering from emergency invasive spinal surgery following a six-day hospitalization. ECF 134 ¶ 40 at 9–10; ECF 51 at 67.

Movant, opposing temporary support, testified, "I don't have any more money." ECF 134 ¶ 74 at 18. That testimony was false, and it was aggravated perjury. Tex. Penal Code § 37.03. The temporary orders entered on it left the Debtor responsible for approximately $25,000 a month with no income and no access to any marital account. He lives in his parents' home, and they have lent him approximately $50,000. ECF 134 at 26 ¶ 12.

On April 16, 2026, while the Debtor was in this courtroom, Movant and movers she paid took his possessions, records, computers, and drives from his residence. ECF 134 ¶ 71 at 17; id. at 26 ¶ 13. That was theft, Tex. Penal Code § 31.03, and a violation of the stay and of this Court's order of that day, ECF 57.

Movant terminated the Debtor's health coverage on October 31, 2025. The plan has since admitted that the coverage was dropped because of a participant-reported, divorce-based qualifying life event when no divorce had occurred, that the Debtor remained an eligible dependent, and that no COBRA qualifying event occurred. That termination blocked his surgery for a torn rotator cuff and ruptured bicep and caused more than $30,000 in medical billing to be denied or clawed back and billed against him. Decl. ¶ 14. It was the final blow that drove the Debtor into this very courtroom. His benefits were partially reinstated in February 2026. Life, Supplemental Life, AD&D, Critical Illness, and FSA coverage were never restored, and his access to the HSA card was relentlessly obstructed, which blocked his access to surgeries and prescriptions once all copays and deductibles reset for the year following Movant's delay of the restoration. The reinstated benefits were then terminated again effective June 30, 2026. ECF 134 at 25–26 ¶¶ 8, 10–12; ECF 110 at 33 ¶ 13. His access to healthcare has been relentlessly obstructed since December 18, 2024, when his HSA card was cut off for allegedly failing to upload a medical receipt. The HSA administrator has

confirmed that no such policy exists and that receipt uploads are optional and kept only for tax purposes. He has never had unobstructed access to his benefits, nor received a dollar of marital assets, since. Decl. ¶ 10.

4. November 18 would be the first time Movant has had to answer the Debtor's questions under oath. ECF 134 ¶ 23 at 5; Decl. ¶ 10. In the motion he served on November 10, the Debtor told the Court that "a claim framed as danger, emergency, or inability to appear is foreseeably likely before that hearing." ECF 134 ¶ 23 at 5. On November 10 at 11:24 a.m. her counsel announced the WebEx motion and stated no reason she could not attend. ECF 144 at 119. Counsel "learned of the medical circumstances" on November 11. ECF 141 at 13.

**Where the rest of the record is.** This supplement does not repeat what is already on file. (1) The violations of the automatic stay, 11 U.S.C. § 362(a), are set out in the Debtor's signed Notice of State-Court Ruling and Stay Violations, ECF 138, with the June 11, 2026 trial transcript and the affidavit of Movant's counsel at ECF 138-1. They include the June 11, 2026 trial and division of property while the stay was in effect and the April 16, 2026 removal of the Debtor's property. (2) The Debtor's Advance Notice of Anticipated Safety-Based Allegations and Motion to Compel In-Person Testimony, ECF 134, with Exhibits A through X at ECF 135, told the Court on November 10 that "a claim framed as danger, emergency, or inability to appear is foreseeably likely before that hearing," and set out the pattern behind that warning. Two days later Movant moved to attend only by WebEx. ECF 141. (3) The Debtor's Opposition to WebEx or Other Remote Appearance or Testimony, ECF 144, answers that motion. (4) The Debtor's Opposition to ECF 110, with his sworn declaration, is ECF 122. (5) His Rule 2004 motion, response, and reply are ECF 97, 120, and 124. The proposed orders at ECF 126 and ECF 127 are replaced by the updated orders submitted today. (6) His witness list is ECF 140, and his exhibit list is filed with this supplement.

## II. RULINGS REQUESTED

5. The Debtor requests a separate written ruling, **GRANTED** or **DENIED**, on each of the following. Updated proposed orders are submitted with this supplement.

(1) ECF 97 is **GRANTED** and ECF 111 is **OVERRULED**. The Clerk shall issue subpoenas under Fed. R. Bankr. P. 9016 and Fed. R. Civ. P. 45 on the Debtor's request, and each custodian shall produce to the Debtor and the Chapter 7 Trustee at the same time.

(2) Movant's request for leave to withdraw "without adjudication" is **DENIED**. Her request for annulment of the stay is **DENIED WITH PREJUDICE**. Her request for a

determination that property is not property of the estate is **DENIED** and may not be renewed before production under ECF 97 is complete.

(3) Movant's request to modify the stay is **DENIED**.

(4) Movant's request for a determination under 11 U.S.C. § 362(b)(2)(A)(iv) is **DENIED**, and the Court makes no determination of the finality, present effect, or operative date of any dissolution.

(5) ECF 141 is **DENIED** and ECF 134 is **GRANTED**. Movant shall appear in person on November 18, 2026.

(6) Whatever the manner of her appearance, the Debtor may call Movant as an adverse witness. She shall be sworn, shall answer, and shall remain in attendance until excused by the Court.

(7) The automatic stay remains in effect, and the periods in 11 U.S.C. § 362(e) are extended through the Court's ruling on ECF 110.

(8) Movant shall reimburse the Debtor's out-of-pocket costs of responding to the withdrawn requests. The Debtor's claims under 11 U.S.C. § 362(k)(1) are preserved. All requests for fees, costs, or sanctions against the Debtor are **DENIED**.

## III. THE RULE 2004 MOTION SHOULD BE GRANTED NOW [ECF 97, 111]

### A. MOVANT'S LOCAL-RULE OBJECTION RESTED ON A REQUEST SHE HAS WITHDRAWN.

6. Local Bankruptcy Rule 2004-1(b) provides that "[i]f a contested matter or an adversary proceeding is pending, the adversary discovery rules (Bankruptcy Rules 7027 - 7036), not Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004-1, govern discovery pertaining to such contested matter or adversary proceeding." Movant's objection rested on one proposition: that what ECF 110 "asks this Court to decide is whether the interests the Debtor now wishes to document ... were property of this estate on January 12, 2026," so that discovery about those accounts "is discovery pertaining to that contested matter." ECF 111 ¶ 14 at 6.

7. On November 12 Movant withdrew that request. ECF 143 ¶ 6 at 4. What remains, by her account, is a request for modification that she will support with "court records" alone and a request that "turns on the text of the statute." ECF 143 ¶ 7 at 5. On her own description, the

account records no longer pertain to anything pending in ECF 110, and Rule 2004 governs. Her alternative request to "defer consideration of the 2004 Motion until the Court has resolved Movant's motion under 11 U.S.C. § 362 concerning the status of the property from which records are sought" (ECF 111 ¶ 43(b) at 16) is moot. She no longer asks the Court to resolve the status of the property.

8. If the Court instead treats any of the records as still pertaining to ECF 110, the local rule changes the vehicle, not the result. Rule 9014(c) applies Rule 7034 in a contested matter. Civil Rule 34(c) provides that a nonparty may be compelled to produce documents "[a]s provided in Rule 45." Rule 9016 applies Rule 45 in cases under the Code. Movant's own objection says that such discovery is "to proceed, if at all, under Bankruptcy Rules 7027 through 7036." ECF 111 ¶ 43(c)(i) at 17. Under either rule the Clerk "must issue a subpoena ... to a party who requests it." Fed. R. Civ. P. 45(a)(3). The Debtor asks the Court to authorize the subpoenas under both, so that no party or custodian can litigate the label.

## B. MOVANT CONCEDES THAT THIS COURT MUST DETERMINE THE ESTATE'S INTEREST. ONLY THE RECORDS PERMIT IT.

9. Movant's request for modification is premised on the division remaining "subject to the rights of the Chapter 7 Trustee and to this Court's determination of the estate's interest in any property." ECF 143 ¶ 7 at 4. Property of the estate is within this Court's exclusive jurisdiction, 28 U.S.C. § 1334(e)(1), and community property comes into the estate under 11 U.S.C. § 541(a)(2). The matters Rule 2004 reaches are these: "the debtor's acts, conduct, or property," "the debtor's liabilities and financial condition," and "any matter that may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b)(1). Movant concedes that the Debtor is a party in interest (ECF 111 ¶ 36 at 14) and that "Rule 2004 contains no exceptions" (ECF 111 ¶ 18 at 8). The Debtor's stake is direct. Movant's motion reports that the claims register "contains a single claim." ECF 110 ¶ 14 at 14. After allowed claims are paid, the surplus of the estate is the Debtor's. 11 U.S.C. § 726(a)(6).

10. Movant's own motion states the tracing problem. Her payroll account was "overdrawn" on October 14, 2025. That fact "does not by itself exclude earlier withdrawals having been placed in another asset or later redeposited." And "[n]o one has identified an asset into which any earlier funds can be traced." ECF 110 ¶ 13 at 12. No one has identified it because no institution has produced a record. The transfer, wire, and receiving-account records are the only documents that answer the question. They are what ECF 97 seeks.

## C. MOVANT'S SWORN STATEMENTS IDENTIFY WHAT THE RECORDS MUST EXPLAIN.

11. The following comes from Movant's September 10, 2026 declaration (ECF 110 at 27–34), her motion (ECF 110 at 12), her July 22, 2025 sworn inventory (ECF 110 at 76–95), her January 7, 2025 testimony (ECF 134 ¶ 29 at 7), and her June 11, 2026 trial testimony (ECF 138-1 at 7–53).

| Date | What Movant swore or stated | Record |
|---|---|---|
| Nov. 2024 and Nov. 2025 | She received a cash signing bonus in two payments of $150,000. "Does any of that money still exist today?" "No." | ECF 138-1 at 19–20 |
| Jan. 7, 2025 | Opposing temporary support, she testified that Accenture had paid her a signing bonus of about $150,000, then told the court, "I don't have any more money." | ECF 134 ¶ 29 at 7 |
| July 22, 2025 | Her sworn inventory lists one Accenture "Signing Bonus": "Anticipated amount of bonus: $150,000," "expected to be paid: November 2025," source "Contract, signing bonus." The $150,000 she received in November 2024 is not in that entry. | ECF 110 at 80, 95 |
| Dec. 11, 2024 | She paid $25,513 on a SoFi loan, the day after the Debtor's spinal surgery. | ECF 110 at 33 ¶ 14 |
| Jan. 2025 | She opened a new Chase account and moved her balance into it. She withdrew $5,103 and $5,000 and "redeposited them." | ECF 110 at 29–30 ¶ 10 |
| Oct. 14, 2025 | Her payroll account was overdrawn after a $13,000 payment on her own credit card. | ECF 110 at 12 ¶ 13 |
| Jan. 2, 2026 | She paid $85,522 to the Internal Revenue Service, ten days before the petition. | ECF 110 at 33 ¶ 14 |
| Jan. 5, 2026 | A wire from her UBS account was deposited into her payroll account. | ECF 110 at 12 ¶ 13 |
| Jan. 23, 2026 | She paid $17,163.30 to LightStream, eleven days after the petition. | ECF 110 at 33 ¶ 14 |
| Feb. 28, 2026 | She traded in the BMW, the dealer paid a $54,500 lien, and she financed a replacement. This was ten days after the date she swears she learned of this case. | ECF 110 at 27, 31 ¶¶ 4, 11 |

| Date | What Movant swore or stated | Record |
|---|---|---|
| June 11, 2026 | She testified at trial that she owned a BMW and owed "BMW Finance" $60,000. She did not mention the trade-in. | ECF 138-1 at 38–40 |
| Aug. 2026 | She paid about $6,000 on the SoFi loan. | ECF 110 at 34 ¶ 14 |

12. The Debtor has identified a further $62,549.84 wire, labeled "Loan Repayment," sent five days before the petition. ECF 134 ¶ 74 at 18. A post-petition payment made with community funds held on the petition date is a transfer of property of the estate, made without authority. 11 U.S.C. §§ 362(a)(3), 549. The February 28, 2026 trade-in disposed of a vehicle Movant held on the petition date, ten days after the date she swears she learned of this case. Which funds paid for each transfer, and whether the Trustee will avoid and recover it, cannot be determined while the estate's interest is carried at "Unknown."

13. At the June 11, 2026 trial Movant swore that her income is "$390,000 a year" exclusive of annual bonuses, that "I never have gotten a bonus," and that the "entirety" of her community property is "about $40,000" in an equity-purchase account and "a couple thousand dollars" in a health savings account. ECF 138-1 at 22, 26, 28–29. Her Accenture contract sets her total target compensation at approximately $1,500,000 a year. ECF 134 ¶ 75 at 18. The divorce court told her counsel that what it had been given "for separate and for community" was "pretty limited." ECF 138-1 at 40. Counsel answered that he "came to the case late" and that "it seemed simple on its face." *Id.* at 43. The property division entered on that record has been vacated. ECF 122 at 17.

The records the Debtor does hold confirm it. Exhibit SUPP-2 is Movant's Accenture agreement and three Chase statement pages she produced in the divorce. The agreement provides a "Signing Bonus in the amount of $300,000.00," "paid in 2 installments." SUPP-2 at 2. Her Chase account ending 3898 received Accenture payroll deposits of $106,407.03 and $10,448.03 on November 21, 2024, and held $78,343.72 on November 27, 2024. SUPP-2 at 3–4. That was while she was telling the Debtor the bonus had been moved to mid-December (paragraph 3 above), and 41 days before she testified, "I don't have any more money." Her Chase account ending 9259 received $171,990.36 from Accenture between October 28 and November 28, 2025, including $113,475.00 on November 21, 2025, and held $126,335.18 on November 28, 2025. SUPP-2 at 5. That was 45 days before the petition. At trial she testified that none of the signing bonus exists. ECF 138-1 at 19–20. She has produced no financial record since February 17, 2026, and what she did produce includes a fabricated statement page. Decl. ¶¶ 6, 8. The Debtor cannot show the Court where the $126,335.18 went between

November 28, 2025 and January 12, 2026, or after. Accenture and JPMorgan Chase can. ECF 97 ¶ 10(a), (c) at 3–4.

### D. THE DIVORCE COURT IS NOT AN ALTERNATIVE SOURCE OF THESE RECORDS.

14. Movant's answer to the Rule 2004 motion is that "the Debtor had the Texas discovery rules available to him throughout the divorce" (ECF 111 ¶ 27 at 11) and that these matters "are for the court that will divide" the estate (ECF 143 ¶ 15 at 9). The record of that forum is the reason the subpoenas are needed. Decl. ¶¶ 2–9.

| Date | Event |
|---|---|
| Apr. 28–29, 2025 | Movant's counsel moves to withdraw, and the order is signed. |
| May 27, 2025 | The Debtor serves requests for disclosure, requests for production, and interrogatories on Movant. |
| June 23, 2025 | Last day of the discovery period. At 11:08 p.m. new counsel files a notice of appearance. At 11:15 p.m. he emails, "We have been re-retained by Gwendolyn," with blanket objections and a link to 1,266 pages. Counsel then treats discovery as closed. |
| Sept. 21–25, 2025 | The Debtor demands complete statements. Counsel requires him to identify "specific instances of missing pages." He sends a page-by-page inventory. |
| Oct. 10, 2025 | Counsel's response is two pages, labeled "Dec 2024 page 3" and "Nov 2024 page 3," that show the same transactions on the same dates in the same amounts. |
| Nov. 3, 2025 | The Debtor files a motion to compel. Movant's counsel moves to withdraw the same day. |
| Jan. 20–25, 2026 | Movant sends links to files, the last at 11:55 p.m. on the day discovery closes. |
| Feb. 17, 2026 | Movant sends a link titled "Released After CutOff-Supplement 3," twenty-three days after discovery closed and seven days before the trial setting. She has produced nothing since. |
| May 29, 2026 | Movant's lead counsel swears that "ordinary nonparty discovery is not open on the eve of the June 11, 2026 trial" and requests fees against the Debtor for seeking subpoena leave. ECF 138-1 at 3–4 ¶¶ 8, 10. |

| Date | Event |
|---|---|
| June 1 and 8, 2026 | Subpoena leave is denied, and the Debtor is told no hearing on review can be set before trial. ECF 122 at 29 ¶ 16. |
| June 11, 2026 | The trial proceeds in the Debtor's absence on Movant's testimony alone. |

15. Between November 19, 2025 and July 27, 2026 the Debtor filed at least nineteen papers in the divorce asking for leave to subpoena these institutions. No subpoena was authorized. Decl. ¶ 9. The docket in that case exceeds 250 filings. Since December 2024 the Debtor has also had to defend three eviction suits in the justice court and an appeal in the county court, to file a protective appeal in the Fifth Court of Appeals, to litigate this case and Adversary No. 26-03034-mvl, and to pursue the Accenture plan and the Department of Labor to restore the health coverage Movant terminated. Decl. ¶ 11; ECF 138 ¶ 25 at 14–15. In none of those forums has one institution been required to produce a record of where the community's money went.

16. Movant has taken three positions that together close every door. In the divorce court, through counsel under oath, nonparty discovery "is not open" and the Debtor should pay fees for asking. ECF 138-1 at 3–4. In this Court on September 11, Rule 2004 is unavailable, the Debtor should use the state rules, and anything produced should go to the Trustee alone and be barred from use "in Cause No. DF-24-18010 or in any other proceeding." ECF 111 ¶¶ 27, 43(c)(v)–(vi) at 11, 17. In this Court on November 12, the estate-property question is withdrawn, the stay should be lifted, and the division should return to the first forum. ECF 143 ¶¶ 6–7, 15. *Snyder*, on which Movant relies, rested on the premise that "an ordinary discovery route was open to the movant in the other forum." ECF 111 ¶ 27 at 11. Her own counsel's affidavit says it was not.

## E. TERMS OF PRODUCTION.

17. The Debtor asks for the terms in his updated proposed order, which carries forward ECF 126 and adds the following.

a) *Production to the Debtor and the Trustee at the same time.* Movant herself proposed that "the Court may direct that they be produced to" the Trustee. ECF 111 ¶ 36 at 14. Section 542(e) independently authorizes the Court to order a person holding recorded information "relating to the debtor's property or financial affairs" to disclose it to the Trustee. The Debtor does not object to production to the Trustee.

He objects to being excluded from it. He is the only person other than Movant who knows these accounts, and his own records were stolen on April 16, 2026.

b) *Three custodians that Movant's declaration identified after ECF 97 was filed:* LightStream (the January 23, 2026 payoff), and BMW of San Antonio and BMW Financial Services (the February 28, 2026 trade-in, payoff, and financing), limited to those transactions. ECF 110 at 31, 33.

c) *Benefits records, limited to economic and administrative data, including the health care flexible spending account.* On November 12, 2026 the Plan Administrator wrote that "Ms. Ulijasz is able to seek reimbursement under the healthcare FSA for eligible expenses incurred by you from January 1, 2026 through December 31, 2026," and that the Debtor's access "can only be secured through the accountholder." Ex. SUPP-1 at 1. Movant's own hearing Exhibit 3 shows the same account as "Coverage Terminated," with a term date of June 30, 2026. ECF 137-3 at 3. Who has been reimbursed from that account, and for whose expenses, is in the administrator's records.

d) *Employer payments and further custodians.* The order should also let the estate follow the money once the institutions' records arrive. Movant's own papers already identify payees and custodians that are not financial institutions. Jetty Partners LLC invoiced her $24,227.94 on January 9, 2025, two days after she testified, "I don't have any more money." ECF 134 at 7. Her Cognizant settlement paid $104,000 to her and $52,015 to her lawyers. On January 7, 2025, three months after retaining those lawyers, she denied under oath that she was waiting on a settlement from any former employer. ECF 134 ¶ 31 at 7. Her July 22, 2025 settlement with the landlord, Skweres Properties, LLC, surrendered the $4,999 security deposit and released her alone. ECF 134 ¶ 55 at 14; ECF 110, Ulijasz Decl. ¶ 12 & Ex. 2. She swears that "[t]wo movers from All My Sons Moving, booked for me by a friend and paid for by me," loaded their truck at the Debtor's residence on April 16, 2026. ECF 110, Ulijasz Decl. ¶ 12. Movant is also the organizer, registered agent, and manager of GLU Distribution Limited Liability Company, an Illinois company (Secretary of State File No. 08945586). Debtor's Exhibit List, Decl. ¶ 4. The Debtor asks that the order (1) include Accenture's expense, housing, and rental reimbursements and Cognizant's payments to Movant; (2) reach every account in the name of GLU Distribution; and (3) permit a subpoena, on seven days' notice to Movant and the Trustee, to any entity that the records identify as having received a payment from Movant's accounts or as having moved, stored, or held the property removed from his residence. Updated proposed order ¶¶ 3, 5–6.

# IV. THE STAY SHOULD NOT BE MODIFIED [ECF 110]

## A. THE MODIFICATION MOVANT NOW REQUESTS IS NOT THE ONE SHE PLEADED.

18. ECF 110 requested modification, in the alternative, only "to permit the State Court to complete or redo the division of any property that this Court determines to be property of the estate." ECF 110 ¶ 2(c) at 3; *see id.* ¶ 20 at 24, Prayer (3) at 25. Movant told the Court that "no determination has been made" and asked the Court "to make that determination now, with the Trustee before it." *Id.* ¶ 15 at 15. She has withdrawn that request. What she asks for now is the reverse: division first, in the divorce court, with "this Court's determination of the estate's interest" to follow. ECF 143 ¶ 7 at 4.

19. The Code runs the other way. Property of the estate is within this Court's exclusive jurisdiction. 28 U.S.C. § 1334(e)(1). The Trustee must collect it and investigate the Debtor's financial affairs. 11 U.S.C. § 704(a)(1), (4). The divorce exception to the stay stops at "the division of property that is property of the estate." 11 U.S.C. § 362(b)(2)(A)(iv). A division made before anyone knows what the estate owns either divides estate property or must be done again. The June 11, 2026 trial is the example. It divided the estate on Movant's word, and the division has been vacated.

## B. MOVANT OFFERS NO EVIDENCE OF CAUSE.

20. Movant accepts that she bears the initial burden to show cause. ECF 143 ¶ 7 at 4–5. She will offer two orders, noticed for "the entry and terms of those orders and filings, not the truth of disputed assertions made in them." *Id.* at 5. Those orders establish that the divorce court tried the property division while the stay was in effect and then vacated it. They do not establish cause. Movant identifies no harm to herself from the stay. She holds every account, and she has continued to pay debts from them before and after the petition. ECF 110 at 33–34 ¶ 14.

21. Movant's papers do not put the September 18 ruling before the Court. Her WebEx motion and her response both state that the ruling "is attached as Exhibit C" or "is Exhibit C to the WebEx Motion." ECF 141 ¶ 2 at 3; ECF 143 ¶ 3 at 3. The document attached is the June 26, 2026 Decree. ECF 141 at 26–34. Her exhibit list describes the Decree as "entered June 11, 2026" and does not list the ruling that vacated its property division. ECF 137 at 1.

22. The stay should not be modified. The sequence matters: records first, then this Court's determination of the estate's interest with the Trustee heard, then division. Section 362(d)

authorizes relief "by terminating, annulling, modifying, or conditioning" the stay, and any order that modifies it over this opposition must contain at least these conditions:

a) no modification takes effect until production under ECF 97 is complete, the Trustee has filed a statement of the estate's interest, and the Court has determined that interest;
b) Movant files in Cause No. DF-24-18010 a written stipulation that discovery is open for the retrial, that she will not assert that any discovery period has closed, and that records produced under this Court's order may be used there;
c) no award, transfer, turnover, or enforcement against any property takes effect without further order of this Court;
d) Movant takes no act to terminate or change the Debtor's health coverage, HSA or FSA access, or beneficiary status, and she submits the Debtor's eligible expenses to the health care FSA and remits each reimbursement to him;
e) Movant and anyone acting for her have no access to, and make no inspection, imaging, copying, or use of, the Debtor's computers and drives; and
f) the fourteen-day stay of the order under Fed. R. Bankr. P. 4001(a) is not waived.

## C. THE REQUEST FOR A DETERMINATION UNDER § 362(B)(2)(A)(IV) SHOULD BE DENIED.

23. Movant asks the Court to declare that the stay "did not apply to the Decree's dissolution provisions." ECF 143 ¶ 6 at 4. That is not a pure question of law. The exception reaches a proceeding "for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate." 11 U.S.C. § 362(b)(2)(A)(iv). The June 11, 2026 trial was one proceeding that determined dissolution and division together, in the Debtor's absence, in little more than an hour. ECF 138-1 at 10–52. Whether any part of it survives is contested, and the Debtor's motion to vacate the remaining sections is pending in the divorce court. ECF 138 ¶ 26 at 15.

24. The question Movant actually wants answered is one of Texas law that she has already put to the divorce court. That court ruled that the remaining sections of the Decree "remain in full force and effect but are interlocutory." ECF 122 at 17. On September 29, 2026 Movant asked it for briefing on "the present legal effect" of the dissolution, "including the operative date," because her employer's plan "reads the Ruling as leaving the parties married" and "will reinstate Respondent as her dependent retroactive to July 1, 2026." ECF 138 ¶¶ 28–29 at 15–16. The Plan Administrator did so on October 6, 2026, determining that the Debtor "remain[s] legally married to Gwendolyn Ulijasz under Texas law." Ex. SUPP-1 at 3. A declaration from this Court about the scope of § 362 would be used to terminate the Debtor's coverage again. It is not needed to decide anything pending here.

25. Movant has also put the termination in issue as a matter of fact. She designates the Debtor as her adverse witness on "the end of that coverage on June 30, 2026 after Gwendolyn's enrollment change of June 26, 2026" (ECF 136 at 1) and lists two benefits documents as exhibits (ECF 137 at 1). Those documents raise questions only she can answer. Her Exhibit 3 was "Generated On 06/26/2026 At 05:31:28 CDT" and already shows "Dependents - 0." ECF 137-3 at 1. She has sworn that she made the change "[i]n reliance on the Decree, on June 26, 2026, the day it was signed." ECF 110 at 33 ¶ 13. She swore to reliance on an order that had not been signed at 5:31 a.m. That is a false declaration. 18 U.S.C. §§ 152(3), 1623(a); ECF 134 ¶ 72 at 17. Her Exhibit 2 is a COBRA notice dated June 26, 2026 and addressed to the La Foy Boulevard house. ECF 137-2 at 1. The notice the Debtor received is dated August 4, 2026 and addressed to his mailing address. Decl. ¶ 12. A determination cannot rest on judicial notice when the movant's own exhibits are disputed.

## V. MOVANT MUST TESTIFY, AND SHOULD DO SO IN THE COURTROOM [ECF 134, 141, 143, 144]

### A. WHETHER MOVANT TESTIFIES AND HOW SHE TESTIFIES ARE SEPARATE QUESTIONS.

26. Movant's papers answer only the second question. Her proposed order says that it "does not determine whether Movant will be called as a witness." ECF 141 at 21. She acknowledges that she may testify "because the Court permits the Debtor to call her or wishes to hear from her." ECF 141 ¶ 9 at 7. The Debtor asks the Court to decide the first question now. He may call her.

27. A subpoena compels a witness to attend. It is not a condition of examining a party who does attend. Movant states that she "will be available by WebEx for the entire hearing" (ECF 141 ¶ 1 at 2; *id.* at 24 ¶ 7), and her own proposed order requires her to "remain available by WebEx until excused by the Court" (*id.* at 21). A party in attendance may be called by her adversary, Fed. R. Evid. 611(c)(2), and by the Court, Fed. R. Evid. 614(a). Movant's own witness list shows she understands this. She designates the Debtor as her adverse witness (ECF 136 at 1) and has served no subpoena on him. Decl. ¶ 13.

28. *GFI Computer Industries, Inc. v. Fry*, on which Movant relies, reversed a default judgment entered against a defendant who lived outside the court's subpoena jurisdiction. ECF 143 ¶ 10 at 6. Movant is the party asking this Court for relief. She concedes that she "is within the reach of a subpoena for a hearing in Dallas." *Id.* at 6–7. She states that she "will comply with any order" the Court enters. ECF 143 ¶ 2 at 2. The Debtor does not ask for a default. He asks that a party who is before the Court on her own motion be sworn and examined.

29. To remove the objection entirely, the Debtor also requests that the Clerk issue a hearing subpoena to Movant under Fed. R. Civ. P. 45(a)(3) and that the Court direct her counsel of record to accept service of it on her behalf, with the fee and mileage required by Rule 45(b)(1) tendered to counsel. Service through counsel requires no contact with Movant, and the Debtor will not initiate any. The address she uses in the record is a private mailbox (ECF 137-3 at 1), and her police reports concerning him are summarized at ECF 144 at 121.

**B. THE ISSUES ON WHICH MOVANT'S TESTIMONY IS MATERIAL.**

30. Movant asks the Court to "identify the issue" on which her testimony is required. ECF 143 ¶ 16 at 9. Rule 9014(d) requires that testimony on a disputed material factual issue "be taken in the same manner as testimony in an adversary proceeding." The disputed material issues on which she is the only witness are:

a) *Cause for modification and its conditions:* her transfers of community funds before and after the petition (paragraph 11 above), where the two $150,000 bonus payments went, and whether she will treat discovery as open in the divorce court.

b) *Her § 362(b)(2)(A)(iv) request:* what she reported to the Plan on June 26, 2026 and at what time, and her Exhibits 2 and 3 (paragraph 25 above). She cannot designate the Debtor to testify about her enrollment change and decline to testify about it herself.

c) *ECF 97 and ECF 111:* what accounts exist, what she produced and when, and the factual statements in her objection, which is unsworn.

d) *The terms of withdrawal:* why requests supported by her sworn declaration are withdrawn six days before the hearing.

e) *Her September 10 declaration,* which the Debtor will offer against her under Fed. R. Evid. 801(d)(2)(A), as she agrees he may. ECF 143 ¶ 16 at 9.

**C. MOVANT HAS NOT SHOWN "GOOD CAUSE IN COMPELLING CIRCUMSTANCES."**

31. Testimony "must be taken in open court." Fed. R. Civ. P. 43(a); Fed. R. Bankr. P. 9017. Remote testimony requires "good cause in compelling circumstances." Movant's showing fails on her own papers.

a) *The request came before the reason.* On November 7 her counsel wrote that she "will comply with whatever the Court directs" and gave no reason she could not attend. ECF 134 ¶ 11 at 2–3. On November 10 counsel announced the WebEx motion, again

with no reason. ECF 144 at 119. Counsel "learned of the medical circumstances" on November 11, and the provider's letter is dated that day. ECF 141 at 13, 35.

b) *The advice is described three ways.* The letter recommends that she "refrain from travel" for two months. ECF 141 at 35. Her application says she was advised "not to fly until she is reassessed." ECF 142 ¶ 2 at 2. Her response says "advice against air travel." ECF 143 ¶ 2 at 2. Dallas is a four-and-a-half-hour drive from her home, and her declaration treats driving as an option whose cost is that she "would miss the full workday." ECF 141 at 23–24 ¶¶ 4–5.

c) *The letter does not show that she cannot attend.* It is unsworn. It comes from a family nurse practitioner. It identifies no condition, no limitation, and no reason a car trip is unsafe. It says only that travel "would pose an increased risk" and "could interfere with the continuity and effectiveness of current treatment," and it runs "through approximately January 11, 2027." ECF 141 at 35.

d) *Movant works full time, and her treatment is the day before the hearing, not the day of it.* ECF 141 at 23 ¶¶ 3, 5.

e) *She concedes the point.* On distance her circumstances are "closer to *Herrmann* than to *Katzin*," and she has had six weeks' notice. ECF 141 ¶ 9 at 8.

32. Credibility is the issue. Movant's only sworn testimony on these subjects was given on June 11, 2026, in the Debtor's absence. He had filed a verified emergency motion at 1:17 p.m. stating that he was suffering chest pain and shortness of breath on the way to court and asking to appear remotely. The trial began at 1:34 p.m. ECF 122 ¶ 8 at 3; ECF 138-1 at 10. The Debtor will be in the courtroom on November 18. Decl. ¶ 13. Any order that permits video over this opposition must still require that Movant remain on camera for the entire hearing, be sworn, and be examined by the Debtor on the issues in paragraph 30.

## VI. WITHDRAWAL, COSTS, SANCTIONS, AND RESERVED CLAIMS

33. **WITHDRAWAL.** Rule 7041 applies in contested matters. Fed. R. Bankr. P. 9014(c). After a response has been served, a request may be withdrawn "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The Fifth Circuit holds that the court may deny such a request or impose conditions that cure the prejudice to the other side, including that the dismissal be with prejudice. *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314 (5th Cir. 2002). The prejudice here is concrete. Movant obtained a final evidentiary setting on a sworn declaration. The Debtor answered it (ECF 122), moved to examine her on it (ECF 134), and prepared for trial. Six days before the hearing she withdrew the declaration and the requests

it supported "without adjudication," which would leave her free to seek annulment again whenever the Debtor's claims for her stay violations are heard. The terms should be: (a) annulment is denied with prejudice; (b) the request for a determination that property is not property of the estate is denied and may not be renewed until production under ECF 97 is complete; (c) Movant reimburses the Debtor's out-of-pocket costs of responding to the withdrawn requests, in the amount shown by a declaration he will file within seven days; and (d) the September 10 declaration and the exhibits to ECF 110 are not received on Movant's behalf. If Movant declines those terms, the requests remain pending, she has offered no evidence, and they should be denied on the merits.

34. **RULE 9011.** ECF 110 was filed with its drafting notes still in it. The motion states: "[Counsel: this bracket stands or falls with the trade-in sentence in declaration ¶ 11, and both wait on the answer to the W-5 question in the cover note (fifteenth pass).]" ECF 110 at 10. It states: "[Confirm the identity of the Chase account referred to in Section 8.F before filing; see the cover note.]" *Id.* at 14. And: "[Counsel: confirm against the certified matrix and Schedule E/F; add the La Foy service fact if Gwen identifies the document.]" *Id.* at 21–22. The sworn declaration contains bracketed sentences about the February 28, 2026 vehicle transaction and about the Debtor's payments. *Id.* at 31, 34. The paper shows on its face that identified facts were unconfirmed when it was signed and sworn. Movant has now withdrawn the declaration rather than be examined on it. The Debtor asks the Court to enter an order under Fed. R. Bankr. P. 9011(c)(3) directing Movant and her counsel to show cause why ECF 110 did not violate Rule 9011(b)(3).

35. **SECTION 362(e).** The stay remains in effect. Movant noticed the November 18 final hearing herself (ECF 128), "does not dispute the setting" (ECF 143 ¶ 4 at 3), and continues to ask the Court to modify a stay that she treats as in force. The Debtor asked on October 2 that the periods in § 362(e) be extended (ECF 122 at 11–12), and he asks that the order on ECF 110 so find.

36. **RESERVED CLAIMS.** The Debtor's claims under 11 U.S.C. § 362(k)(1) for the stay violations of record (ECF 138) are preserved, as Movant agrees (ECF 143 ¶ 14 at 8), and he asks that they be set for hearing. No fees, costs, or sanctions should be assessed against the Debtor on any of these matters.

## VII. PRAYER

37. The Debtor asks the Court to enter the rulings in paragraph 5 by separate written orders on (1) ECF 134 and ECF 141, (2) ECF 97 and ECF 111, and (3) ECF 110, in the forms submitted with this supplement, and to grant all other relief to which he is entitled.

Dated: November 13, 2026

Respectfully submitted,

**Jason Emory McKemie**
Debtor, pro se
539 W. Commerce St., #2010
Dallas, Texas 75208
(214) 519-8958
jmckemie@mckemie.net

# DECLARATION OF JASON EMORY McKEMIE

(28 U.S.C. § 1746)

I, **Jason Emory McKemie**, declare as follows:

1. I am the Debtor in this case and the Respondent in Cause No. DF-24-18010 (the "divorce"). I am over eighteen and competent to make this declaration. The facts below are within my personal knowledge, including my knowledge of the emails and documents I sent and received and the papers I filed.

2. The divorce was filed in December 2024 in the 254th Judicial District Court of Dallas County. It was transferred to the 302nd and then to the 301st. The discovery period in the 254th ended on June 23, 2025, thirty days before the July 23, 2025 trial setting.

3. On April 28, 2025 Movant's counsel moved to withdraw, and the order was signed on April 29, 2025. On May 27, 2025, at 4:33 p.m., I served requests for disclosure, requests for production, and interrogatories on Movant by email.

4. On June 23, 2025, at 11:08 p.m., Ethan Scroggins of Sullivan & Cook filed a notice of appearance for Movant. At 11:15 p.m. he emailed me, "We have been re-retained by Gwendolyn," with her discovery responses, which asserted blanket objections, and a link to documents that her index numbers GU000403 through GU001668. After that night Movant's counsel took the position that discovery was closed.

5. The production consisted of bundled PDF files of statements with missing pages and unreadable text. I audited it page by page. In the 302nd, the pretrial order of September 8, 2025 set trial for February 24, 2026 and closed discovery on January 25, 2026. On September 21, 2025 I demanded complete statements. On September 23, 2025 Mr. Scroggins answered that I must identify "specific instances of missing pages." On September 24 and 25, 2025 I sent him a page-by-page inventory of the missing pages.

6. On October 10, 2025, at 1:33 p.m., Mr. Scroggins sent me two pages in response: GU001669, labeled "Dec 2024 page 3," and GU001670, labeled "Nov 2024 page 3," for a Chase card ending 2372. The two pages show the same transactions, on the same dates, in the same amounts, in the same positions on the page. The same transactions cannot appear on page 3 of two different monthly statements. One or both pages are fabricated. The same two pages were sent to me again on January 10, 2026.

7. On November 3, 2025 I filed a motion to compel. Movant's counsel moved to withdraw the same day, and the order was signed on November 18, 2025.

8. On January 20, 24, and 25, 2026 Movant sent me links to additional files, the last at 11:55 p.m. on the day discovery closed. On February 17, 2026, at 10:33 p.m., twenty-three days after discovery closed and seven days before the trial setting, she sent a link titled "Released After CutOff-Supplement 3." That is the last production of any kind I have received from Movant. I have received no financial record from her since February 17, 2026.

9. Between November 19, 2025 and July 27, 2026 I filed at least nineteen papers in the divorce asking for leave to subpoena records from the institutions that hold these accounts. No subpoena was authorized. On June 1, 2026 my request for subpoena leave was denied, and on June 8, 2026 I was told that no hearing on my request for review could be set before the June 11 trial.

10. I have never questioned Movant under oath. November 18, 2026 would be the first time. Since Movant filed the divorce I have not received a dollar of marital assets.

11. Since December 2024 I have had to litigate in the following forums, without counsel since my last attorney withdrew in 2025: (a) the 254th, 302nd, and 301st Judicial District Courts of Dallas County, Cause No. DF-24-18010, in which more than 250 papers have been filed; (b) the Justice Court, Precinct 5, Place 1, Dallas County, in three eviction suits, including Nos. JPC-25-06838-51 and JPC-25-12755-51; (c) the County Court at Law, Dallas County, on appeal of an eviction judgment, No. CC-26-01092-A; (d) the Fifth Court of Appeals at Dallas, No. 05-26-01443-CV; (e) this Court, in this case and in Adversary No. 26-03034-mvl; and (f) the United States Department of Labor, Employee Benefits Security Administration, File No. 202630-18882, and the claims process of the Accenture US Group Health Plan.

12. Exhibit SUPP-1 is a true copy of three pages of an email chain I received from the Accenture US Group Health Plan. Page 1 is the Plan's email to me of November 12, 2026, 4:07 p.m. Page 2 is the Plan's letter of October 14, 2026. Page 3 is the Plan's determination of October 6, 2026. I redacted one member identification number on page 1 and made no other change. The COBRA election notice I received is dated August 4, 2026 and is addressed to my mailing address, 539 W. Commerce St., #2010, Dallas, Texas 75208. I did not receive a notice dated June 26, 2026.

13. Movant has not served me with a subpoena for the November 18, 2026 hearing. I will be in the courtroom on November 18, 2026.

14. The member portal of the plan's medical carrier shows three denied claims for care I received on November 26, 2025 and December 2, 2025. The amounts it lists as my share

are $28,501.20, $2,602.99, and $200.00, a total of $31,304.19. The portal lists me as "Spouse."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in **Brazos County** on **November 13, 2026.**

______________________________
Jason Emory McKemie

## INDEX OF EXHIBITS

Exhibit SUPP-1 — Emails of the Accenture US Group Health Plan to the Debtor dated November 12, 2026, October 14, 2026, and October 6, 2026 (3 pages; one identification number redacted).

Exhibit SUPP-2 — Two pages of Movant's Accenture employment agreement and three Chase statement pages Movant produced in DF-24-18010 (GU000960, GU000961, GU001969) (5 pages; account and loan numbers redacted to the last four digits). Authenticated in the Debtor's declaration at the end of his Exhibit List filed today.

Updated proposed orders are submitted separately on (1) ECF 134 and ECF 141; (2) ECF 97 and ECF 111; and (3) ECF 110.

# CERTIFICATE OF SERVICE

I certify that on November 13, 2026, I served a true and correct copy of this supplement, with its declaration and exhibits and the three updated proposed orders, by email on the following counsel for the Movant, Gwendolyn Laura Ulijasz:

- Jonathan D. Steele (jsteele@beermannlaw.com), Beermann LLP
- Sara A. Boucher (saboucher@beermannlaw.com), Beermann LLP
- Richard G. Dafoe (rdafoe@wslawpc.com), Waddell Serafino Geary Rechner Jenevein, P.C.
- Rebecca L. Armstrong (rebecca@armstronglawtexas.com), Armstrong Divorce & Family Law, PLLC
- Terra Aguirre (terra@armstronglawtexas.com), Armstrong Divorce & Family Law, PLLC
- Lauren Shaw (lauren@armstronglawtexas.com), Armstrong Divorce & Family Law, PLLC

and on:

- Areya Holder Aurzada, Chapter 7 Trustee (areya@holderlawpc.com)
- Office of the United States Trustee (ustpregion06.da.ecf@usdoj.gov)

On the same date I emailed a copy to the courtroom deputy at mvl_settings@txnb.uscourts.gov. Counsel of record will also receive electronic notice through the Court's CM/ECF system upon docketing.

The original, ink-signed paper filing was submitted to the Clerk, United States Bankruptcy Court, Northern District of Texas, 1100 Commerce Street, Room 1254, Dallas, Texas 75242, as follows (one box checked):

[ ] delivered in person to the Clerk's office on November 13, 2026.

[ ] placed in overnight delivery on November 13, 2026, for delivery on the Court's next business day, November 16, 2026.

______________________________
Jason Emory McKemie

# EXHIBIT SUPP-1

Emails of the Accenture US Group Health Plan to the Debtor:
November 12, 2026 (page 1); October 14, 2026 (page 2); October 6, 2026 (page 3).

Three pages of the email chain as received by the Debtor.
One member identification number on page 1 is redacted. No other change was made.

In re Jason Emory McKemie, Case No. 26-30161-mvl7 (Bankr. N.D. Tex.)
Debtor's Supplement of November 13, 2026

**From:** **USBenefits** USBenefits@accenture.com
**Subject:** RE: [External] Status request — Health Care Flexible Spending Account and UnitedHealthcare Vision Plan access / Response Requested by Monday, Nov 2nd
**Date:** November 12, 2026 at 4:07 PM
**To:** Jason McKemie jmckemie@mckemie.net
**Cc:** Pott, Wynn E. wynn.e.pott@accenture.com, info@businessolver.com, Boone, Nathan T. nboone@littler.com, Juarez, Lizeth lgjuarez@littler.com, DHerring@littler.com dherring@littler.com

---

Dear Mr. McKemie,

As you know, you are a dependent spouse covered under the Accenture US Group Health Plan and your coverage under the plan was restored retroactive to July 1, 2026. With respect to the FSA, the restoration of your coverage means that Ms. Ulijasz is able to seek reimbursement under the healthcare FSA for eligible expenses incurred by you from January 1, 2026 through December 31, 2026 (or such earlier date if your coverage is terminated in accordance with plan rules). As a covered dependent, you do not have independent entitlement to establish or access an Accenture FSA account. The FSA Plan permits, but does not require, that you be provided a right to seek reimbursement for eligible claims. However, your ability to seek reimbursement of expenses under the FSA can only be secured through the accountholder and Accenture has no involvement in that process.

We provide the following information with respect to your vision coverage. Documentation related to your vision coverage is available using the information below.

- Member/subscriber ID - [redacted]
- Member-services number - +1 800 940 5711

Your eligibility for, and entitlement to, any benefits remains subject to the applicable Plan terms. The Plan Administrator expressly reserves all rights, defenses, and positions.

Sincerely,
ACCENTURE US GROUP HEALTH PLAN

Wynn E. Pott
On behalf of the Plan Administrator
***NOTE: Accenture reserves the right, in its sole discretion, to amend, modify or terminate any of its benefit plans at any time.***

---

**From:** Jason McKemie <jmckemie@mckemie.net>
**Sent:** Friday, October 30, 2026 7:34 PM
**To:** Pott, Wynn E. <wynn.e.pott@accenture.com>
**Cc:** USBenefits <USBenefits@accenture.com>; info@businessolver.com; NA.HR.Questions <NA.HR.Questions@accenture.com>; NBoone@littler.com; LGJuarez@littler.com; DHerring@littler.com
**Subject:** [External] Status request — Health Care Flexible Spending Account and UnitedHealthcare Vision Plan access / Response Requested by Monday, Nov 2nd

Wynn E. Pott, on behalf of the Plan Administrator,

Two items. Please answer in writing.

1. Health Care Flexible Spending Account. This is an ERISA employee welfare benefit plan. ERISA § 3(1), 29 U.S.C. § 1002(1). My enrollment in it was terminated on October 31, 2025 by an erroneous qualifying life event submission — a divorce-based QLE submitted when no divorce had occurred. The Plan has represented that all of my benefits have been restored. Where is my Health Care Flexible Spending Account?

State in writing: (a) my current status under that account; (b) if it was restored after the October 31, 2025 erroneous QLE submission, the date it was restored and the proof of restoration; (c) if it was not restored, confirm that; and (d) the exact process by which I submit a claim against that account and receive reimbursement.

This item concerns the Health Care Flexible Spending Account, not the Dependent Care Flexible Spending Account.

2. UnitedHealthcare Vision Plan. Your October 14, 2026 letter states that my vision coverage under the Participating Vision Plan was restored retroactive to July 1, 2026. I cannot log in to UnitedHealthcare Vision and cannot use the coverage. Provide my member or subscriber ID, the group number, the member services number, and a copy of any vision ID card on file for me.

I cannot obtain either of these from the Benefits Center. Every time I call, I am told I am not authorized to speak to anyone about the account. That is why I am requesting this in writing from you.

Please respond by Monday, Nov 2nd

Jason Emory McKemie
Covered Dependent Spouse, Accenture US Group Health Plan
(214) 519-8958 | jmckemie@mckemie.net
539 W. Commerce St., Ste. 2010, Dallas, TX 75208

On Oct 14, 2026, at 3:07 PM, Pott, Wynn E. <wynn.e.pott@accenture.com> wrote:

Dear Mr. McKemie:

For the specific reason recited in our communication dated October 6, 2026, the Plan Administrator confirms that your active prescription drug coverage under the Participating Medical Plan and your vision coverage under the Participating Vision Plan, both under the Accenture US Group Health Plan, have been restored retroactive to July 1, 2026, with no gap in coverage. We are also working with Aetna to ensure that claims affected during the period beginning July 1 are reprocessed under the Participating Medical Plan.

In response to the additional benefit-administration matters identified in your October 9 correspondence, we provide the following:

1. All claims and reimbursements will be administered in accordance with the terms of the applicable plan; no separate channels or single points of contact will be created.
2. Benefits administration records do not indicate that you were enrolled in dependent life insurance or critical illness coverage in 2026.
1. The Plan Administrator's position on your rights to coverage under the HSA as a covered dependent remains as previously communicated.
2. You are not permitted to make beneficiary designations as a covered dependent under any of the Accenture plans, so no information is available to you regarding beneficiary designations.

Your eligibility for, and entitlement to, any benefits remains subject to the applicable Plan terms. The Plan Administrator expressly reserves all rights, defenses, and positions.

Sincerely,
ACCENTURE US GROUP HEALTH PLAN

Wynn E. Pott
On behalf of the Plan Administrator

Wynn E. Pott
Accenture – North America Benefits Director
Phone: 727-897-4230
Email: wynn.e.pott@accenture.com

**Please note our new Benefits administrators:**
**Health & Insurance – benefitscenter.accenture.com or 888 259 6059**
**401(k) – www.benefits.ml.com/login/accenture or 888 401 8258**

**From:** Jason McKemie <jmckemie@mckemie.net>
**Sent:** Friday, October 9, 2026 4:39 PM
**To:** Pott, Wynn E. <wynn.e.pott@accenture.com>
**Cc:** USBenefits <USBenefits@accenture.com>; info@businessolver.com; NA.HR.Questions <NA.HR.Questions@accenture.com>; Unruch, Joel <joel.unruch@accenture.com>; kate.clifford@accenture.com; NBoone@littler.com; LGJuarez@littler.com; DHerring@littler.com
**Subject:** Re: [External] URGENT / LIFE-SAFETY — Prescription Access Required TODAY — Full Demand Attached (EBSA File No. 202630-18882)

Mr. Pott,

My previous message crossed with yours — I sent it before I had seen your reply.

I will be heading to the pharmacy shortly to fill prescriptions and will confirm once they are in hand; if the pharmacy cannot fill, I will contact you and CVS Customer Care immediately, and I ask that you remain reachable today until the fill is confirmed.

So that I can actually fill today, please send me in writing everything the pharmacy needs to process the claim: my RxBIN, RxPCN, RxGroup, Member/Cardholder ID, my person/dependent code, and the coverage effective date. If you have a prescription or medical ID card on file for me — or for any benefit that has been restored so far — please email me a copy of it; a single card image showing those fields is the fastest way for the pharmacy to run the claim and for me to confirm what is active.

Today's action on prescriptions addresses the first and most urgent item in my demand. It does not address the rest of it. The following remain outstanding, on the schedule and the deadlines stated in the demand, each of which continues to run:

1. Full Aetna medical reinstatement with all accumulated deductibles, copayments, and out-of-pocket maximums credited, and reprocessing of every claim clawed back on or after October 31, 2025 and between June 30 and July 9, 2026 (Monday, October 12);
1. An independent claims-submission and direct-reimbursement channel in my name, and a full accounting of reimbursements paid to the participant (October 13–14);

On Oct 6, 2026, at 9:10 AM, USBenefits <USBenefits@accenture.com> wrote:

Dear Mr. McKemie,

The Plan Administrator has reviewed your email correspondence dated September 18, 2026, and the memorandum ruling entered in Cause No. DF-24-18010 on the same date.

The Plan Administrator has determined that the information provided indicates that you remain legally married to Gwendolyn Ulijasz under Texas law. You are therefore an eligible dependent spouse of Ms. Ulijasz under the Plan, and your active coverage will be restored retroactive to July 1, 2026. The Plan Administrator will process its notification to appropriate vendors in due course.

This determination does not constitute any determination by the Plan Administrator as to your entitlement to any particular benefit under the Plan. The Plan Administrator expressly reserves all rights, defenses, and positions, and nothing in this correspondence should be construed as an admission of any factual allegation, legal conclusion, or characterization contained in your correspondence. Your current eligibility, future eligibility, and entitlement to any benefits from the Plan remains subject to the Plan's governing documents.

Sincerely,

**ACCENTURE US GROUP HEALTH PLAN**

Wynn E. Pott
On behalf of the Plan Administrator

*NOTE: Accenture reserves the right, in its sole discretion, to amend, modify or terminate any of its benefit plans at any time.*

---

**From:** jmckemie@mckemie.net <jmckemie@mckemie.net>
**Sent:** Friday, September 18, 2026 1:45 PM
**To:** USBenefits <USBenefits@accenture.com>
**Cc:** Pott, Wynn E. <wynn.e.pott@accenture.com>; info@businessolver.com; NA.HR.Questions <NA.HR.Questions@accenture.com>
**Subject:** [External] URGENT — Demand for Immediate Reinstatement of Medical and Prescription Coverage — Jason McKemie, Dependent Spouse — Divorce Not Final (Interlocutory) — DF-24-18010
**Importance:** High

**To the Plan Administrator, Accenture US Group Health Plan, and Businessolver:**

1. I am Jason McKemie, the dependent spouse of Accenture employee Gwendolyn Ulijasz under the Accenture US Group Health Plan. **I demand immediate reinstatement of my active medical and prescription-drug coverage today. Treat this as a formal claim for benefits and a request for an eligibility determination under the Plan and 29 C.F.R. § 2560.503-1.**

2. On July 9, 2026, USBenefits wrote that my coverage would "cease effective June 30, 2026" because "the parties are divorced pursuant to the signed divorce decree executed on June 26, 2026, and there is not documentation to the contrary." **That predicate is now false.**

3. On September 18, 2026, the 301st District Court, Dallas County (Cause No. DF-24-18010), signed a ruling vacating the property-division and finality provisions of the June 26, 2026 decree and making the remaining divorce provisions interlocutory. Under controlling Texas authority — Gathe v. Gathe, 376 S.W.3d 308, and Vautrain v. Vautrain, 646 S.W.2d 309 — a partial new trial on the property division renders the divorce interlocutory and the parties remain married until the property issues are finally disposed of. **The divorce is not final. I remain a married, eligible dependent spouse. The signed ruling is attached. This is the documentation to the contrary.**

4. **Accenture has already applied this exact rule to me.** On January 21, 2026, USBenefits wrote that when "the qualifying event that triggered Cobra notice wasn't final yet, and therefore you were still an eligible dependent, we directed them to negate the life event," restored coverage with "no gap in coverage," and "reached out to both your medical carrier and pharmacy benefit manager to correct their records." The identical correction is required now.

5. **I demand, today: (a) reverse the June 30, 2026 termination and restore my active medical and prescription coverage with no gap; (b) direct Aetna and CVS Caremark to correct their records to reflect active coverage so my prescriptions can be dispensed today; and (c) confirm in writing the effective**

# EXHIBIT SUPP-2

Movant's Accenture employment agreement (two pages) and
Chase statements Movant produced in DF-24-18010 (three pages).

Page 1: Employment Agreement, first page.
Page 2: Exhibit B to the Employment Agreement, "Signing Bonus."
Pages 3–4: Chase account ending 3898, October 26 – November 27, 2024 (GU000960–961).
Page 5: Chase account ending 9259, October 28 – November 28, 2025 (GU001969).

Account and loan numbers are redacted to the last four digits (Fed. R. Bankr. P. 9037).
No other change was made.

In re Jason Emory McKemie, Case No. 26-30161-mvl7 (Bankr. N.D. Tex.)
Debtor's Supplement of November 13, 2026

# U.S. MANAGING DIRECTOR EMPLOYMENT AGREEMENT (LLP)

## Employment Agreement

This Employment Agreement ("Agreement") is between Accenture LLP ("Accenture") and Gwendolyn Ulijasz ("You" and all similar references) as of 10/02/2024 (the "Effective Date.")

In consideration of the promises and mutual covenants herein and for other good and valuable consideration, the parties agree as follows:

### 1. Certain Definitions

For purposes of this Agreement and its incorporated Exhibits, the following definitions shall apply. The plural forms of the following terms may also be used in this Agreement.

**(a)** The term "Accenture" means Accenture LLP.

**(b)** The term "Affiliate" means any other Legal Entity which Controls, is Controlled by or is under common Control with Accenture which includes Accenture Plc (a company incorporated in the Republic of Ireland) and any other Affiliate to or successor entity of Accenture Plc, and any successor in title or assign of any such Legal Entity.

**(c)** The term "Alliance Entity" means any Legal Entity with whom Accenture and/or any Affiliate has entered into an alliance agreement, joint venture agreement, or any other legally binding go-to-market agreement, resale agreement or any agreement to combine offerings, products and/or services, or (without limiting the foregoing) any Legal Entity in which Accenture and/or any Affiliate has an interest, whether or not a Controlling interest; provided always that the term "Alliance Entity" shall not include: (1) any Competitive Enterprise, (2) any contractor and/or sub-contractor of Accenture and/or any Affiliate, and/or (3) any sales, buying and/or marketing agent of Accenture and/or any Affiliate.

**(d)** The term "Competitive Enterprise" shall mean a business enterprise that engages in or owns or controls a significant interest in any entity that engages in the performance of services of the type conducted, authorized, offered, or provided by Accenture or any of its Affiliates. Without limiting the generality of the preceding sentence, "Competitive Enterprise" shall include, without limitation, the entities set forth on Accenture's current list of Accenture's competitors. Accenture maintains the current list on the "myHoldings" page on the Accenture portal (located under "Departure Considerations" in the "Frequently Asked Questions" document on the Resources section of the site). Accenture may update this list from time-to-time.

**(e)** The term "Control" means (1) ownership by a Legal Entity of at least a majority of the voting interest of another Legal Entity or (2) the right or ability of a Legal Entity, whether directly or indirectly, to direct the affairs of another by means of ownership, contract or otherwise, and "Controls," "Controlled" and "Controlling" shall be construed accordingly.

**(f)** The term "Knowledge Capital" means any reports, documents, templates, studies, software programs, delivery methods, specifications, business methods, tools, methodologies, inventions,

**EXHIBIT B**
**ADDITIONAL TERMS RELATED TO COMPENSATION AND EQUITY**

The following are additional terms and conditions related to your compensation, bonuses, and equity grants. Accenture retains the right, in its discretion, to modify or remove components that currently comprise Accenture Leadership compensation or Accenture Leadership equity programs.

**SIGNING BONUS**

You will receive a Signing Bonus in the amount of $300,000.00. Your Signing Bonus will be paid in 2 installments, if you are an employee in good standing as of each payment date.

Within two years of your start date, should you for any reason decide to leave the Company or your employment is terminated by us for "cause" as defined in your employment agreement, you will be required to remit to Accenture a pro-rata amount of your Signing Bonus based on the following calculation, and no subsequent bonus payments will be made to you:

- If you depart or are asked to leave in the first 12 months—1/12th of the total installment payments made in the first 12 months times each full month of the 12-month period running from the date of your resignation or the date you are given notice to terminate by the Company until the end of the 12-month period, whether you are asked to work all or part of your notice period.

- If you depart or are asked to leave after 12 months but before 24 months—1/24th of the total net payment (Y1 and Y2) times each full month of the 24-month period running from the date of your resignation or the date you are given notice to terminate by the Company until the end of the 24-month period, whether you are asked to work all or part of your notice period.

You will not be required to remit the sign-on bonus on a pro rata basis if you are terminated for reasons other than "cause."

Your signature below authorizes the Company to deduct any payments due under this provision from any monies due to you on termination of your employment to the extent permitted by applicable law. Any shortfalls will still require remittance from you and shall be recoverable as a debt.

**GLOBAL ANNUAL BONUS**

Accenture's global annual bonus (GAB) determines payouts based on individual achievements as well as overall company performance. To be eligible for the GAB, you must join Accenture by August 31 of the current fiscal year (our fiscal year ends on August 31) and must also be employed with Accenture on August 31 of each fiscal year for which a bonus is declared. In your first year, the amount of your GAB will be pro-rated based on your start date with the Company. Your GAB will be paid out at the end of the calendar year once your achievements and Company performance for the fiscal year are known. Your bonus is determined as a percentage of earned base pay in the fiscal year, based upon:

- Accenture's achievement of its earnings objectives; and
- Individual contributions and achievements

**CHASE**

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

October 26, 2024 through November 27, 2024
Account Number: [redacted]3898

**CUSTOMER SERVICE INFORMATION**

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-888-262-4273** |
| Para Espanol: | 1-888-262-4273 |
| International Calls: | 1-713-262-1679 |

We accept operator relay calls

00222170 DRE 111 212 33324 NNNNNNNNNNN 1 000000000 18 0000
MS GWENDOLYN L ULIJASZ
539 WEST COMMERCE STREET
#2010
DALLAS TX 75208

**Please review our overdraft service options at the end of this statement**

We've included an overview of our overdraft services and fees that are available for personal checking account(s) at the end of this statement.

Please note, the following overdraft services are not available for certain accounts:

- Standard Overdraft Practice and Chase Debit Card Coverage℠ are not available for Chase High School Checking℠, Chase Secure Checking℠ and Chase First Checking℠.
- Overdraft Protection is not available for Chase Secure Checking℠ and Chase First Checking℠.

If you have questions, please visit **chase.com/overdraft** or call us at the number on this statement. We accept operator relay calls.

## CHECKING SUMMARY

Chase Sapphire Checking

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$14,504.24** |
| Deposits and Additions | 134,199.71 |
| ATM & Debit Card Withdrawals | -500.00 |
| Electronic Withdrawals | -69,835.23 |
| Fees | -25.00 |
| **Ending Balance** | **$78,343.72** |

| | |
|---|---|
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.23 |
| Interest Paid Year-to-Date | $2.30 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/28 | Remote Online Deposit 1 | $3,084.16 |
| 10/29 | Mspbna ACH Trnsfr PPD ID: 1391321258 | 0.11 |
| 11/06 | Accenture Llp Payroll PPD ID: 1720542904 | 10,607.36 |
| 11/06 | Accenture Llp Payments PPD ID: 8975729001 | 70.00 |
| 11/12 | Online Transfer From Chk ...6893 Transaction#: 22695263377 | 3,400.00 |
| 11/20 | Payoneer 7362 EDI Paymnt 366184728596456 CCD ID: 1352254039 | 123.79 |
| 11/21 | Accenture Llp Payroll PPD ID: 1720542904 | 106,407.03 |



GU000960

CHASE

October 26, 2024 through November 27, 2024
Account Number: [redacted]8898

## DEPOSITS AND ADDITIONS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/21 | Accenture Llp Payroll PPD ID: 1720542904 | 10,448.03 |
| 11/26 | State of Ill Ilsttaxrfd PPD ID: 1376002057 | 59.00 |
| 11/27 | Interest Payment | 0.23 |
| **Total Deposits and Additions** | | **$134,199.71** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/25 | ATM Withdrawal 11/23 5220 W Lovers Ln Dallas TX Card 0416 | $500.00 |
| **Total ATM & Debit Card Withdrawals** | | **$500.00** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/28 | 10/27 Online Transfer To Chk ...6893 Transaction#: 22516949333 | $500.00 |
| 10/28 | American Express ACH Pmt W3000 Web ID: 2005032111 | 174.00 |
| 10/31 | Zelle Payment To Travis Jpm99Aqathrj | 5,000.00 |
| 11/04 | 11/04 Payment To Chase Card Ending IN 4005 | 1,000.00 |
| 11/06 | 11/06 Payment To Chase Card Ending IN 4005 | 5,000.00 |
| 11/07 | Amex Epayment ACH Pmt A6336 Web ID: 6133133497 | 683.04 |
| 11/07 | Sofi Bank Pl Pl Pymt T52510340 Web ID: 3452499527 | 2,782.26 |
| 11/12 | Intouch Credit U Ck-Wth PPD ID: 311079474 | 1,161.70 |
| 11/13 | 11/12 Payment To Chase Card Ending IN 4005 | 12,053.39 |
| 11/15 | Zelle Payment To Housekeeperfiras Jpm99AR8Jme1 | 40.00 |
| 11/18 | American Express ACH Pmt M8164 Web ID: 2005032111 | 15.00 |
| 11/18 | Venmo Payment 1038312877401 Web ID: 3264681992 | 158.00 |
| 11/22 | 11/22 Online Transfer To Chk ...6893 Transaction#: 22796750628 | 1,500.00 |
| 11/22 | 11/22 Payment To Chase Card Ending IN 4005 | 37,571.87 |
| 11/22 | Zelle Payment To Jason Mckemie 22806450937 | 1,500.00 |
| 11/25 | Loan-Aig [redacted]100 Web ID: 1132592361 | 695.97 |
| **Total Electronic Withdrawals** | | **$69,835.23** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/27 | Monthly Service Fee | $25.00 |
| **Total Fees** | | **$25.00** |

Did you know you can waive your Chase Sapphire Checking Monthly Service Fee by keeping an average daily balance of at least $75,000 in qualifying linked deposits and investments? During this statement period, your combined average daily balance was $26,181.

CHASE

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

October 28, 2025 through November 28, 2025
Account Number: [redacted]9259

**CUSTOMER SERVICE INFORMATION**

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-935-9935** |
| Para Espanol: | 1-877-312-4273 |
| International Calls: | 1-713-262-1679 |

We accept operator relay calls

00191151 DRE 111 212 33325 NNNNNNNNNNN 1 000000000 18 0000
MS GWENDOLYN L ULIJASZ
11703 HUEBNER RD STE 106 PMB 499
SAN ANTONIO TX 78230-1211

01911510201000000022

## CHECKING SUMMARY

Chase Total Checking

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$10,663.69** |
| Deposits and Additions | 171,990.36 |
| ATM & Debit Card Withdrawals | -1,387.00 |
| Electronic Withdrawals | -54,931.87 |
| **Ending Balance** | **$126,335.18** |
| Interest Paid Year-to-Date | $0.27 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/06 | Accenture Llp Payroll PPD ID: 1720542904 | $11,071.79 |
| 11/06 | Accenture Llp Payments PPD ID: 8975729001 | 654.65 |
| 11/14 | Accenture Llp Payroll PPD ID: 1720542904 | 34,225.57 |
| 11/20 | Accenture Llp Payments PPD ID: 8975729001 | 1,268.66 |
| 11/21 | Accenture Llp Payroll PPD ID: 1720542904 | 113,475.00 |
| 11/21 | Accenture Llp Payroll PPD ID: 1720542904 | 11,294.69 |
| **Total Deposits and Additions** | | **$171,990.36** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/29 | Recurring Card Purchase 10/29 Kasa Yoga Dallas Mindbodyonlin TX Card 3022 | $227.00 |
| 11/03 | Payment Sent 11/02 Cash App*Joe Dominguez Oakland CA Card 3022 | 60.00 |
| 11/03 | ATM Withdrawal 11/02 815 Evans Rd San Antonio TX Card 3022 | 300.00 |
| 11/24 | ATM Withdrawal 11/23 7959 Fredericksburg Rd San Antonio TX Card 3022 | 500.00 |
| 11/28 | ATM Withdrawal 11/28 5258 De Zavala Rd San Antonio TX Card 3022 | 300.00 |
| **Total ATM & Debit Card Withdrawals** | | **$1,387.00** |

GU001969

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 26-30161-mvl7** |
| JASON EMORY McKEMIE, | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

**ORDER ON DEBTOR'S MOTION TO COMPEL MOVANT'S IN-PERSON APPEARANCE AND TESTIMONY [ECF 134] AND ON MOVANT'S MOTION FOR LEAVE TO TESTIFY BY WEBEX [ECF 141]**

Before the Court are (a) the Debtor's Advance Notice and Motion to Compel Movant's In-Person Appearance and Testimony at the November 18, 2026 Evidentiary Hearing [ECF 134], his opposition to remote testimony [ECF 144], and his supplement filed November 13, 2026; and (b) the Motion of Gwendolyn Laura Ulijasz ("Movant") for Leave to Give Any Testimony at the November 18, 2026 Hearing by WebEx Videoconference [ECF 141], her application to shorten time [ECF 142], and her response [ECF 143]. Having considered the papers and the record, the Court ORDERS:

1. **Expedited consideration.** The requests for expedited consideration are GRANTED.

2. **WebEx motion.** ECF 141 is DENIED. Movant has not shown good cause in compelling circumstances for testimony by contemporaneous transmission from a different location. Fed. R. Civ. P. 43(a); Fed. R. Bankr. P. 9017.

3. **Appearance.** ECF 134 is GRANTED as stated in this Order. Movant shall appear in person at the hearing on November 18, 2026, at 9:30 a.m., at 1100 Commerce Street, Dallas, Texas, in the courtroom of the undersigned, and shall remain in attendance until excused by the Court.

4. **Testimony.** The Debtor may call Movant as an adverse witness. Fed. R. Evid. 611(c)(2), 614(a). Movant shall be sworn and shall answer. No subpoena is required to examine a party who is in attendance.

5. **Issues.** The examination may address: (a) cause for modification of the automatic stay and the conditions of any modification, including Movant's transfers of funds and property before and after January 12, 2026; (b) Movant's request under 11 U.S.C. § 362(b)(2)(A)(iv), including her June 26, 2026 enrollment change and her Exhibits 2 and 3; (c) the accounts, compensation, and records that are the subject of ECF 97 and ECF 111, including Movant's productions; (d) the terms of Movant's requested withdrawal; and (e) the statements in Movant's September 10, 2026 declaration.

6. **Declaration.** Movant's September 10, 2026 declaration and the exhibits to ECF 110 are not received as evidence on Movant's behalf. Her statements in them may be offered against her. Fed. R. Evid. 801(d)(2).

7. **Subpoena.** On the Debtor's request the Clerk shall issue a subpoena under Fed. R. Civ. P. 45(a)(3) commanding Movant to attend the hearing. Movant's counsel of record shall accept service of the subpoena on her behalf by email. Tender of the attendance fee and mileage to counsel satisfies Fed. R. Civ. P. 45(b)(1).

8. **Failure to appear.** If Movant does not appear and submit to examination as ordered, the Court will decide ECF 110, ECF 111, and ECF 97 on the evidence received, may draw adverse inferences from her absence, and will hear any request for further relief.

9. **Other requests.** Any request concerning Movant's safety or her ability to attend shall be made by sworn motion filed and served on the Debtor before the hearing. All requests for fees, costs, or sanctions against the Debtor in connection with ECF 134, 141, 142, 143, or 144 are DENIED.

10. **Separate rulings.** ECF 97, ECF 110, and ECF 111 will be decided by separate written orders.

# # # End of Order # # #

Prepared and submitted by:

Jason Emory McKemie
Debtor, pro se
539 W. Commerce St., #2010
Dallas, Texas 75208
(214) 519-8958