FILED
5/26/2026 11:59 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Belinda Hernandez DEPUTY

NO. DF-24-18010

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| **GWENDOLYN ULIJASZ-MCKEMIE** | § | **301**ST JUDICIAL DISTRICT |
| AND | § | |
| **JASON MCKEMIE** | § | DALLAS COUNTY, TEXAS |

# MOTION FOR ENFORCEMENT, SANCTIONS, CONTINUANCE, AND LEAVE TO ISSUE THIRD-PARTY SUBPOENAS

**TO THE HONORABLE JUDGE OF SAID COURT:**

Jason McKemie files this **Motion for Enforcement, Sanctions, Continuance, and Leave to Issue Third-Party Subpoenas** and respectfully shows the Court as follows:

## I. RELIEF REQUESTED

Trial is set for **June 11, 2026**.

This motion requests multiple forms of relief, but the threshold issue for the June 1 hearing is trial readiness:

**No source records, no estate reconstruction. No estate reconstruction, no final trial.**

Movant requests that the Court:

1. **Continue the June 11, 2026 trial setting;**
2. **Grant leave to issue third-party subpoenas** for source records concerning financial accounts, VEIP/equity, tax records, loans, San Antonio housing/rent, lease payoff, QLE/benefits, Accenture records, legal retainers, third-party contractors, April 16 theft, movers, security contractors, All My Sons, Merritt McClayton, Decisive Resources, Jetty Partners, and all related custodians;
3. **Modify the discovery deadline** for the limited purpose of third-party source-record discovery and related follow-up discovery;
4. **Enforce prior discovery rulings and prior discovery obligations;**
5. **Reserve sanctions, fee shifting, adverse inferences, estate reconstitution, reimbursement, offsets, healthcare enforcement, and April 16 theft remedies** without prejudice pending subpoena returns and further hearing;
6. Set a status/compliance hearing after subpoena returns are received; and
7. Require written rulings on any relief granted, denied, or reserved.



Copy from re:SearchTX

## II. PROCEDURAL AUTHORITY

- **Texas Rule of Civil Procedure 190.5** authorizes the Court to modify a discovery-control plan at any time and requires modification when the interest of justice requires. This rule is directly implicated because new and materially changed circumstances now prevent trial readiness without third-party source records.
- **Texas Rules of Civil Procedure 176 and 205.3** authorize third-party subpoenas and nonparty production of documents and tangible things.
- **Texas Rules of Civil Procedure 215.2 and 215.3** authorize sanctions, fee shifting, adverse findings, evidentiary limits, staying proceedings, and other just orders for failure to comply with discovery orders or abuse of the discovery process.
- **Texas Rules of Civil Procedure 251 and 252** authorize continuance for sufficient cause supported by affidavit or declaration.
- **Texas Family Code §§ 6.501 and 6.502** authorize temporary orders and injunctive relief to preserve property, protect the parties, require production, protect access to resources, and prevent further waste or concealment during a pending divorce.
- **Texas Family Code § 6.708** authorizes attorney's fees, court costs, and expenses in a dissolution suit.
- **Texas Family Code § 7.001** requires a just and right division of the estate. A just and right division is impossible unless the estate is first identified, traced, and reconstructed.
- **Texas Family Code § 7.009** authorizes reconstitution of the estate when actual or constructive fraud on the community has occurred, including appropriate legal and equitable relief.
- **Texas Rule of Evidence 1006** permits summary charts and calculations for voluminous records. Movant intends to attach a visual production-gap chart as a Rule 1006 summary exhibit, with underlying records identified and made available as required.

## III. WHY THIS MOTION IS NECESSARY: SYSTEMIC NONCOMPLIANCE

This is not a routine discovery dispute.

These proceedings are now in their third district, and the discovery record reflects the same pattern across multiple courts: Petitioner avoids source-record production, creates procedural delay, then attempts to declare discovery closed or trial-ready before the estate can be reconstructed.

In the 254th District Court, Respondent served discovery in good faith. Petitioner's legal team then moved to withdraw and remained absent during the discovery period. With approximately one hour remaining before discovery closed, Petitioner's counsel reappeared, filed blanket objections to Respondent's discovery, and approximately one hour later declared discovery closed.

The same pattern repeated in the 302nd District Court. Respondent served discovery. Petitioner responded that Respondent had to identify and label every defect across thousands of pages of production. Respondent did that work. Petitioner then delayed for approximately two months and produced only two pages. Those two pages reflected the same transactions, on the same dates, at the same locations, for the same amounts, for the same account, but with different monthly headers. One or both of those documents are necessarily false, inaccurate, or fabricated. That was not compliance. It was an obvious refusal to provide reliable source records.

In the 302nd District Court, a motion to compel was granted or reflected as granted on or about January 6, 2026. Petitioner was then found noncompliant on or about January 9, January 20, and February 5, 2026. Each time, Petitioner represented with increasing force that she was finally compliant. Between January 6 and February 5, Respondent did not receive a single additional page that cured the defects.

Respondent was instructed to draft a proposed order to bring these proceedings to an expeditious conclusion. Respondent did so. That proposed order still has not been ruled on. Since then, Petitioner still has not produced source records sufficient to cure the defects. The only later production came on the eve of trial and showed further account depletion, not compliance.

That matters because the defect is not a missing page.

The defect is the destruction of traceability.

Petitioner has repeatedly treated financial disclosure as a tactical narrative exercise rather than a source-record obligation. The result is an estate that cannot be reconstructed from Petitioner-controlled production. Third-party source records are now the only available cure.

## IV. THIS IS NOT MISSING STATEMENTS; IT IS ARCHITECTED OBSTRUCTION

This is not merely "missing statements."

It is obstruction by an architect of the financial record.

The available production reflects intentional corruption of tracing data and intentional destruction of practical continuity, including:

1. Approximately **nine credit cards tied to one account relationship;**
2. Card-number flipping approximately every **10 to 14 days;**



Copy from re:SearchTX

3. Credit-card balances paid off **multiple times per month;**
4. Significant overpayments to cards;
5. At least one card with approximately **$67,000 in overpayments;**
6. No reliable way to determine payment source from party-produced statements;
7. No reliable way to determine whether overpayments generated refunds, credits, transfers, or concealed liquidity;
8. No reliable account-lineage records connecting old card numbers, new card numbers, reissued cards, replacement cards, or linked accounts;
9. No single account with contiguous statements from **August 2023 through present;**
10. No sufficient employer-origin records for San Antonio housing reimbursements;
11. No sufficient expense reports for work-paid housing;
12. No legitimate tax transcripts, only emails and printouts;
13. Loan claims without loan origination documents, proof of funds transfer, repayment records, or credible tracing;
14. Large pretrial transfers, including to family members and taxing authorities;
15. Large legal and third-party contractor spend with no source tracing; and
16. Prior production that included two pages showing the same transactions, same dates, same locations, and same account, but different monthly headers.

A further deadline for Petitioner to self-produce is not a remedy.

It is procedural cover.

## V. PARTY PRODUCTION IS IMPOSSIBLE AS A CURE

The Court should not give Petitioner more time to produce financials.

That remedy is impossible.

It cannot cure the defect.

No additional party-controlled production deadline can reconstruct:

1. Account continuity;
2. Replacement-card lineage;
3. Payment-source tracing;
4. Overpayment treatment;
5. Refund and credit history;

6. Payroll deductions;
7. Employer reimbursements;
8. VEIP/equity investment activity;
9. Tax withholding versus equity contribution classification;
10. IRS/tax payments;
11. Loan origination and funding;
12. San Antonio housing reimbursement;
13. Lease payoff/buyout records;
14. Legal retainer payment sources;
15. Third-party contractor payment sources; or
16. April 16 theft chain of custody.

Only third-party source records can do that.

If Petitioner has been fully forthcoming and compliant with discovery, then this will be a simple and painless process. The source records will confirm her position quickly.

If she has not, the source records are the only way to prevent a final trial based on financial fiction.

## VI. VEIP / EQUITY INVESTMENT MISLABELED AS "EXTRA TAX WITHHOLDING"

One of the clearest examples is Petitioner's VEIP/equity investment activity.

Petitioner labeled or allowed a **$130,000 equity investment** to be characterized as "extra tax withholding."

No one can mislabel a **$130,000 equity investment** yielding approximately a **50% return in less than twelve months** -- approximately **$65,000 in gain** -- and honestly claim it was merely a "tax" item.

That is beyond absurd.

The estate impact is massive:

| Item | Amount |
|---|---|
| VEIP/equity investment principal | $130,000 |
| Approximate gain | $65,000 |

| Item | Amount |
|---|---|
| Total liquid asset value | $195,000 |
| Liability Effect of Mislabeling of Asset | -$325,000 |
| Total Variance in Estate Value | $520,000 |

The net effect was the conversion of approximately **$195,000 in liquid asset value** into an apparent **negative $325,000 liability**, creating a more than **half-million-dollar estate distortion.**

This cannot be tried on party summaries, tax emails, or screenshots.

It requires employer-origin, payroll-origin, equity-plan-origin, tax-origin, and bank-origin source records.

## VII. VISUAL GAP CHART / RULE 1006 SUMMARY

Movant intends to attach a visual summary showing missing account-statement continuity and production gaps.

The exhibit should be treated as:

**Exhibit A – Rule 1006 Summary Chart of Financial Production Gaps**

The chart is offered to show the Court the structural record problem: no account has contiguous source-record coverage from August 2023 through present.

Movant will make the underlying statements, productions, and available records supporting the summary available for inspection as required by Texas Rule of Evidence 1006.

The chart is not a substitute for source records.

It proves why source records are necessary.

## VIII. NO CONTIGUOUS ACCOUNT HISTORY EXISTS

Not a single account has contiguous statements from **August 2023 through present**.

That alone prevents final trial.

The Court cannot conduct a final property division where:

1. The accounts cannot be mapped;
2. Account numbers cannot be tied to replacement cards;
3. Payments cannot be sourced;
4. Overpayments cannot be traced;
5. Credits/refunds cannot be located;
6. Loans cannot be authenticated;
7. Tax claims cannot be verified;
8. Employer reimbursements cannot be traced;
9. Legal and contractor spending cannot be allocated; and
10. The estate cannot be reconstructed.

No source records, no estate reconstruction.

No estate reconstruction, no final trial.

## IX. SAN ANTONIO HOUSING / RENT / EXPENSE REPORTS

Petitioner's San Antonio housing records require third-party verification.

Movant requests subpoenas to Accenture, benefits/payroll custodians, expense-report custodians, the landlord, property manager, landlord-side bank/payment custodians, and related entities to determine:

1. Whether San Antonio rent was paid or reimbursed by work;
2. Whether any rental income or reimbursement was omitted from the marital estate;
3. Whether housing reimbursements were deposited into disclosed or undisclosed accounts;
4. Whether Petitioner failed to disclose employer-paid housing or housing-related reimbursements;
5. Whether rent, lease, payoff, or buyout records were concealed;
6. Whether eviction/writ pressure was pursued despite rent or lease obligations being paid, resolved, reimbursed, bought out, or otherwise satisfied; and
7. Whether landlord-side activity was used to create the access window exploited in the April 16 theft.

If the San Antonio housing was paid 100% by work, then the estate requires 100% reimbursement or tracing of those funds.



Copy from re:SearchTX

# X. DISSIPATION, WASTE, AND ADD-BACKS REQUIRING SOURCE RECORDS

Movant requests third-party source-record discovery concerning dissipation, waste, reimbursement, and add-back issues, including:

### A. Elective Cosmetic Surgery

- Petitioner pursued elective cosmetic surgery despite objection from Movant and Movant's prior counsel.
- Movant requests invoices, payment records, financing records, loan documents, card payments, bank payments, and any related communications so those amounts can be added back, reimbursed, offset, or charged to Petitioner's side of the estate.
- Movant is not paying for elective cosmetic surgery through community depletion.

### B. Legal Retainers, Contractors, Security, OSINT, and Reputation Vendors

- Petitioner's legal, security, investigative, risk-mitigation, OSINT, reputational-defense, bodyguard, and third-party contractor spending must be traced.
- These expenses did not benefit Movant.
- They were used to build, support, protect, package, or distribute narratives against Movant, including alleged crimes that did not occur.
- The subpoena scope must include, at minimum:

  1. Hargrave Law Office / Hargrave Family Law;
  2. Sullivan & Cook;
  3. Beerman / Biermann;
  4. Armstrong Law Texas;
  5. Connatser Family Law;
  6. Hughes Socol Piers Resnick & Dym;
  7. Any prior, shadow, consulting, or undisclosed counsel;
  8. Decisive Resources;
  9. Jetty Partners;
  10. Security contractors;
  11. Bodyguards;
  12. OSINT / security tech resources;



Copy from re:SearchTX

13. Risk-mitigation firms;
14. Reputational-defense vendors;
15. Due-diligence vendors;
16. Employment-interference vendors;
17. Investigators;
18. All My Sons;
19. Merritt McClayton;
20. Movers, storage providers, booking entities, and third-party payers; and
21. Any entity paid to investigate, package, transmit, publish, or support claims against Movant.

- Legal fees and legal-adjacent expenditures should be traced and allocated. Movant requests that legal fees be subject to 50% reimbursement/add-back where community funds were used, and that third-party contractors used against Movant be added back 100% to Petitioner's side of the estate unless Petitioner proves by source records that the expenditure was disclosed, necessary, non-wasteful, and beneficial to the community.

**C. San Antonio Rent / Employer-Paid Housing**

- If San Antonio rent was work-paid or reimbursed by Accenture, those funds must be traced and reimbursed 100% to the estate or offset against Petitioner.

**D. Loans**

- Petitioner paid off 100% of her loans before leaving the marriage, then took out multiple "loans" immediately after Movant obtained counsel.
- These loans require source records because the current record lacks:

1. Loan origination documents;
2. Proof of funds transfer;
3. Proof of disbursement;
4. Proof of repayment;
5. Proof of lender capacity;
6. Proof that alleged family loans were actually funded;
7. Proof that Petitioner's sister was actually paid;



Copy from re:SearchTX

8. Proof that any alleged loan was community debt; and
9. Proof that any loan was not used for elective cosmetic surgery, legal warfare, or litigation-adjacent spending.

- Petitioner's January 7 testimony represented that certain loans had already been received. Later claims conflict with that testimony. Source records are required.

**E. Tax Records**

- Petitioner has not produced legitimate tax transcripts sufficient to verify tax claims, tax liabilities, tax payments, withholding, refunds, or the alleged tax treatment of VEIP/equity.
- Emails and printouts are not enough.
- The Court should authorize subpoenas for IRS transcripts, tax preparer records, employer payroll/tax records, bank-origin tax payments, and records sufficient to determine whether tax claims were legitimate or used to obscure equity investments and estate value.

**F. Gross Overpayments to Cards**

- Credit-card overpayments must be traced to determine whether they created refunds, credits, hidden liquidity, substituted accounts, or undisclosed transfers.
- Card overpayments are not self-explanatory. They require issuer-origin and bank-origin source records.

## XI. PRELIMINARY FUNDS AND CLAIMED SHARES REQUIRING PRESERVATION AND TRACING

Movant identifies the following funds and shares requiring preservation, tracing, and third-party verification:

| Category | Calculation | Amount |
|---|---|---|
| Sign-on bonus | 1/2 of $300,000 | $150,000 |
| Cognizant settlement | 1/2 of $156,045 | $78,022.50 |
| VEIP/equity | 1/2 of $195,000 | $97,500 |



Copy from re:SearchTX

| Category | Calculation | Amount |
|---|---|---|
| Salary | 1/2 of $390,000 | $195,000 |
| Annual bonus | 1/2 of $49,893 | $24,946.50 |
| Rent reimbursement / lease guarantor issue | reimbursement claimed | $30,000 |
| Additional dissipation / add-backs | to be traced | TBD |

Movant also asserts that approximately **$650,000 went missing before the divorce proceedings** and requires source-record reconstruction.

These figures are not the full estate calculation. They are minimum categories proving why the estate cannot be tried without third-party records.

## XII. APRIL 16 THEFT IS PART OF THE SAME PATTERN

The April 16 writ event is more of the same pattern.

Petitioner repeatedly requested access to the residence. Those requests were not granted in the manner she sought. Movant repeatedly stated that if Petitioner wanted property, it should occur only through a neutral third party because direct access created danger, theft risk, destruction risk, allegation risk, and evidence risk.

That is exactly what happened.

On April 16, Petitioner stole Movant's hard drives, litigation evidence, financial records, trial materials, GPUs, network storage, music studio equipment, medication, and livelihood infrastructure.

The stolen hard drives were Movant's separate property owned before the marriage.

Those stolen hard drives contained:

1. Seventeen months of exhibits;
2. Financial reconstruction work;
3. Discovery materials;
4. Records prepared for production;
5. Trial preparation;
6. Accenture-related contribution evidence;



Copy from re:SearchTX

7. Technical work;
8. Network designs;
9. Presentations;
10. Talking points;
11. Research;
12. Music/studio materials;
13. Professional records; and
14. Data necessary to rebut Petitioner's false non-contributor narrative.

Before April 16, party production was already impossible as a cure.

But Movant at least had his own records.

Now he has nothing.

Petitioner stole the records Movant built to reconstruct the estate, prove contribution, respond to discovery, and prepare for trial. She should not be permitted to steal the evidence, obstruct third-party records, and then demand trial before the theft can be addressed.

## XIII. THE APRIL 16 THIRD-PARTY SUBPOENAS ARE NECESSARY

The Court should authorize subpoenas to all third parties involved in the April 16 theft, including:

1. All My Sons;
2. Merritt McClayton;
3. Moving-company booking entities;
4. Third-party payers;
5. Security contractors;
6. Bodyguards;
7. Storage providers;
8. Landlord;
9. Property manager;
10. Landlord-side agents;
11. Locksmith/access vendors;
12. Constable-related custodians;

13. Bodycam/dashcam/open-records custodians;
14. Jetty Partners;
15. Decisive Resources;
16. Any contractor involved in planning, funding, booking, executing, transporting, receiving, storing, accessing, using, or concealing stolen property; and
17. Any person or entity with records concerning stolen hard drives, devices, GPUs, network storage, music studio equipment, medication, financial records, litigation records, safes, briefcases, or other stolen property.

The purpose is source verification, chain of custody, preservation, and trial readiness.

## XIV. VEIP FRAUD, TAX FRAUD, LEASE FRAUD, LOAN FRAUD, QLE FRAUD, AND APRIL 16 WRIT RECORDS

Movant requests subpoena authority for source records concerning:

1. VEIP/equity fraud;
2. Tax fraud;
3. Lease fraud;
4. Loan fraud;
5. QLE fraud;
6. April 16 writ-related records;
7. Healthcare reinstatement and HSA/FSA functionality;
8. Accenture payroll, benefits, equity, reimbursement, and QLE records;
9. Landlord payoff, buyout, rent ledger, and eviction records;
10. Bank and credit-card continuity records; and
11. April 16 theft records.

These are not side issues.

They are the source-record foundation necessary to determine whether the estate exists in the form Petitioner claims, whether liabilities are real, whether assets were concealed, whether reimbursements were omitted, whether healthcare was fraudulently terminated, whether housing pressure was manufactured, and whether trial can proceed.



Copy from re:SearchTX 

## XV. THIS DIVORCE SHOULD HAVE ENDED LONG AGO

This divorce should have ended in March 2025.

It did not end because Petitioner's obstruction, false financial narratives, discovery gamesmanship, healthcare obstruction, lease/eviction manipulation, late production, source-record concealment, and April 16 theft kept expanding the dispute.

Petitioner has wasted Movant's time, the Court's time, and the resources of everyone forced into this litigation.

Petitioner has also caused severe harm to Movant and his parents through financial ambush, manufactured instability, and repeated emergency conditions. Parent-loan issues will be addressed in a separate filing, but the Court should recognize that this litigation posture has imposed collateral financial harm beyond ordinary divorce expense.

This is outright fraud.

It is not an accident.

## XVI. DUE PROCESS REQUIRES THIRD-PARTY SOURCE RECORDS BEFORE TRIAL

- A final trial without source records would be a due process failure.
- The Court cannot divide an estate it cannot identify.
- The Court cannot classify property it cannot trace.
- The Court cannot evaluate dissipation without payment-source records.
- The Court cannot evaluate loans without loan origination and transfer records.
- The Court cannot evaluate VEIP/equity without employer and equity-plan records.
- The Court cannot evaluate tax claims without tax transcripts and bank-origin tax payments.
- The Court cannot evaluate San Antonio housing reimbursement without employer and landlord records.
- The Court cannot evaluate April 16 theft without movers, security, payment, landlord, constable, and chain-of-custody records.
- The Court cannot require Movant to defend against Petitioner's financial narrative after Petitioner stole his litigation hard drives and financial reconstruction materials.
- Proceeding to trial on June 11 without third-party source records would reward obstruction and punish the party seeking verification.



Copy from re:SearchTX 

## XVII. REQUEST TO SEQUENCE THE JUNE 1 HEARING

Movant urgently needs healthcare enforcement. However, Movant requests that the Court first address financial trial readiness because trial is set for June 11.

The June 1 hearing should first decide:

1. Whether trial can proceed without third-party source records;
2. Whether subpoenas should issue;
3. Whether discovery deadlines should be modified;
4. Whether trial should be continued; and
5. Whether sanctions and healthcare enforcement should be reserved or set for immediate follow-up.

Movant does not waive healthcare enforcement by asking the Court to address financial source records first.

## XVIII. PRAYER

Movant respectfully requests that the Court grant this Motion and enter orders:

1. Continuing the June 11, 2026 trial setting;
2. Granting leave to issue third-party subpoenas;
3. Modifying discovery deadlines for source-record discovery;
4. Authorizing subpoenas concerning financial, VEIP/equity, tax, loan, San Antonio housing, lease/payoff, QLE/benefits, healthcare, Accenture, legal-retainer, contractor, and April 16 theft records;
5. Setting a status hearing after subpoena returns;
6. Reserving sanctions, fee shifting, adverse inferences, estate reconstitution, reimbursement, offsets, healthcare enforcement, property return, compensation, and April 16 theft remedies without prejudice;
7. Requiring written rulings; and
8. Granting all other relief to which Movant is entitled.

Respectfully Submitted,

Jason McKemie



Copy from re:SearchTX

**Jason McKemie**
539 W. Commerce St., #2010
Dallas, Texas 75208
214-868-4901
jmckemie@mckemie.net



Copy from re:SearchTX

## VERIFICATION / UNSWORN DECLARATION

My name is Jason McKemie. I am over eighteen years of age, of sound mind, and competent to make this declaration. I have personal knowledge of the facts stated in this Motion, and they are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Dallas County, Texas, on **May 26, 2026.**

Jason McKemie

**Jason McKemie**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Motion was served through the Texas eFile and Serve system on all counsel of record and all parties entitled to service on **May 26, 2026.**

Jason McKemie

**Jason McKemie**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 115362137
Filing Code Description: Motion - Mod/Enf Other (Sapcr) (Oca Pja)
Filing Description: MOTION FOR ENFORCEMENT, SANCTIONS, CONTINUANCE, AND LEAVE TO ISSUE THIRD-PARTY SUBPOENAS
Status as of 5/28/2026 11:47 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kim Jones | | kjones@sullivancook.com | 5/26/2026 11:59:10 PM | SENT |
| Tiffany Castenada | | tcastenada@sullivancook.com | 5/26/2026 11:59:10 PM | SENT |
| William CCook | | wcook@sullivancook.com | 5/26/2026 11:59:10 PM | SENT |
| Rebecca LArmstrong | | rebecca@armstronglawtexas.com | 5/26/2026 11:59:10 PM | SENT |
| Terra Aguirre | | terra@armstronglawtexas.com | 5/26/2026 11:59:10 PM | SENT |
| Lauren N.Shaw | | lauren@armstronglawtexas.com | 5/26/2026 11:59:10 PM | SENT |
| Jason McKemie | | jmckemie@mckemie.net | 5/26/2026 11:59:10 PM | SENT |
| Gwendolyn Ulijasz McKemie | | GUlijasz@gmail.com | 5/26/2026 11:59:10 PM | SENT |
| Gwendolyn Ulijasz | | gulijasz@gmail.com | 5/26/2026 11:59:10 PM | SENT |
| JONATHAN STEEL | | jsteele@beermannlaw.com | 5/26/2026 11:59:10 PM | SENT |
| JASON EMORYMCKEMIE | | jason@callvital.com | 5/26/2026 11:59:10 PM | SENT |

Copy from re:SearchTX

FILED
5/29/2026 3:42 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Donna Hall DEPUTY

**NO. DF-24-18010**

| | |
|---|---|
| IN THE MATTER OF<br>THE MARRIAGE OF | IN THE DISTRICT COURT |
| | 301ST JUDICIAL DISTRICT |
| GWENDOLYN ULIJASZ-MCKEMIE<br>AND<br>JASON MCKEMIE | DALLAS COUNTY, TEXAS |

**PETITIONER'S RESPONSE TO RESPONDENT'S MOTION FOR ENFORCEMENT, SANCTIONS, CONTINUANCE, AND LEAVE TO ISSUE THIRD-PARTY SUBPOENAS, AND COUNTER-MOTION FOR PROTECTIVE ORDER AND FOR OTHER APPROPRIATE RELIEF**

TO THE HONORABLE JUDGE OF SAID COURT:

Petitioner Gwendolyn Ulijasz-McKemie ("Petitioner" or "Gwen") files this Response to Respondent Jason McKemie's May 26, 2026 Motion for Enforcement, Sanctions, Continuance, and Leave to Issue Third-Party Subpoenas (the "Motion") and this Counter-Motion for Protective Order, and respectfully shows the Court as follows:

**I. Preliminary Statement**

Discovery in this case is closed. Respondent had the entire discovery period to ask this Court to issue third-party subpoenas through the procedure the Texas Rules provide. He did not. Nothing prevented him from serving Rule 205 notices, applying for subpoenas to banks, to Accenture, to the taxing authorities, or to any other custodian during the months this case was pending. He chose not to use the tools available to him, and he now asks the Court to continue a final-trial setting so he can begin that work sixteen days before trial.

That is not trial readiness. It is a request to reopen and reset a case that has been pending for roughly eighteen months over a marriage that lasted roughly five. Respondent asks the Court to continue the June 11, 2026 trial because he says he lacks proof today. He asks for third-party



Copy from re:SearchTX

subpoenas because he says the records he wants are not in his hands today. He asks to reserve sanctions, adverse inferences, estate reconstitution, property-return remedies, and April 16 remedies because he says those issues should be revisited after subpoena returns that do not yet exist. A party who sat on the discovery tools available to him cannot manufacture a continuance by pointing to the discovery he chose not to pursue.

Granting the Motion would transform a final-trial setting into a new third-party investigation, without proposed subpoenas, without custodian-specific requests, without account identifiers, without date ranges, without a Rule 252 diligence showing, and without a present evidentiary predicate for sanctions, adverse findings, forensic relief, or bankruptcy-related property remedies. The discovery period has run. This five-month marriage has consumed eighteen months of litigation across multiple courts. It is time to try the case on June 11 on the record the parties developed during the discovery period, and the Motion should be denied.

Petitioner does not oppose mutual preservation of relevant records. She opposes the continuance. She opposes blanket subpoena leave. She opposes any order that would authorize new nonparty discovery on the eve of trial, because any such discovery would furnish the very reason for the continuance the Motion seeks. And she opposes any order adjudicating April 16 theft, spoliation, stay violation, turnover, estate-property damages, property ownership, or forensic relief on the present record.

**II. Relief Respondent Requests**

Respondent's Motion states that the threshold issue is trial readiness and uses the phrase: "No source records, no estate reconstruction. No estate reconstruction, no final trial." He asks the Court to:



Copy from re:SearchTX

1. continue the June 11, 2026 trial setting;
2. grant leave to issue third-party subpoenas for financial accounts, VEIP/equity, tax records, loans, San Antonio housing/rent, lease payoff, QLE/benefits, Accenture records, legal retainers, third-party contractors, April 16 theft, movers, security contractors, All My Sons, Merritt McClayton, Decisive Resources, Jetty Partners, and all related custodians;
3. modify the discovery deadline for third-party source-record discovery and related follow-up discovery;
4. enforce alleged prior discovery rulings and obligations;
5. reserve sanctions, fee shifting, adverse inferences, estate reconstitution, reimbursement, offsets, healthcare enforcement, property return, compensation, and April 16 theft remedies pending subpoena returns and further hearing;
6. set a status/compliance hearing after subpoena returns; and
7. require written rulings on any relief granted, denied, or reserved.

The Notice of Hearing likewise frames June 1 as a financial trial-readiness hearing and previews proposed orders for financial, lease, QLE, and benefits subpoenas, April 16 theft, mover, security, and contractor subpoenas, and reservation of sanctions, fee shifting, estate reconstitution, adverse inferences, and healthcare enforcement. Every category Respondent now seeks was available to him through ordinary discovery procedure during the discovery period.

**III. Procedural History and Record Summary**

**A. A short marriage and a long-pending case.**



Copy from re:SearchTX

The parties' ceremonial marriage occurred on or about June 22, 2024. The parties separated within months. The original petition was filed December 16, 2024 and served by eService on December 18, 2024. This case has now been pending for roughly eighteen months and has moved through multiple settings and courts. It is set for final trial on June 11, 2026.

A marriage of roughly five months has generated roughly eighteen months of litigation. The discovery period has run its course. Rather than try the case on the developed record, Respondent's May 26 Motion seeks to reopen discovery and reset the trial so he can begin a new third-party investigation, without proposed subpoenas, without custodian-specific requests, and without the diligence showing the Rules require. The interest of finality, the age of this case relative to the length of the marriage, and the closed discovery period all weigh in favor of proceeding to trial on June 11.

**B. Record summary.**

The following summary identifies, for each category of relief Respondent seeks, the defect in his request and the ruling Petitioner requests:

| Respondent's request / allegation | Record problem | Requested ruling |
|---|---|---|
| Continuance of June 11 trial | No Rule 252-compliant showing identifying specific missing witnesses, residences, expected testimony, materiality, diligence, or inability to obtain the evidence earlier. Discovery period has closed. | Deny continuance; preserve trial setting. |
| Blanket subpoena leave | No proposed subpoenas attached; no custodian, account, date-range, or category specificity; broad categories include "all related custodians," law firms, vendors, and contractors. Records were obtainable during the discovery period. | Deny leave; no new nonparty discovery on the eve of trial. |
| Prior discovery rulings / enforcement | Motion references rulings as "granted or reflected as granted" and alleges January and | Deny enforcement absent signed orders, exact |



Copy from re:SearchTX

| | | |
|---|---|---|
| | February noncompliance without attaching signed orders establishing exact obligations. | obligations, and proof of violation. |
| "No source records" slogan | Petitioner has produced records. Respondent's complaint is alleged incompleteness, not zero production. The Rule 1006 chart referenced in the Motion is not a substitute for authenticated underlying records. | Reject slogan; require chart and underlying records before any Rule 1006 reliance. |
| VEIP/equity theory | No custodian declaration, CPA opinion, forensic accounting report, payroll-origin record, equity-plan-origin record, or tax-origin record attached supporting the alleged gain or estate-variance claim. | Treat as trial merits issue, not continuance predicate. |
| April 16 / alleged device theft | No serial-number inventory, make/model/capacity list, receipt, warranty record, police report, insurance claim, chain-of-custody document, photograph, or forensic declaration. | Mutual preservation only; no theft, spoliation, non-use, forensic, or adverse-inference findings. |
| Law firms / litigation vendors | Requests reach opposing counsel, law firms, legal retainers, consultants, investigators, and security, reputation, cyber, and OSINT vendors, plus witness-preparation materials and work product. | Protect privilege and work product; deny. |
| Sanctions / adverse inference / reconstitution | Respondent expressly seeks reservation pending subpoena returns and further hearing; predicate evidence is not before the Court. | Deny present relief without prejudice. |
| Bankruptcy / April 16 / property-return | Chapter 7 is pending; trustee is Areya Holder; the bankruptcy orders attached as exhibits reserve rent, expense, damage, and stay-violation issues; estate-property rights are not before this Court for adjudication on June 1. | No family-court findings on stay violation, theft, spoliation, estate-property damages, turnover, or property return now. |
| PHV-objection financial figures | Respondent's PHV-objection briefing references alleged overpayments and missing funds, including alleged $67,000 and $650,000 figures, without tying them to any produced source document. | Exclude or disregard absent foundation, authentication, relevance, and competent source proof. |

## IV. Governing Standards

### A. Continuance and diligence.

A continuance may not be granted except for sufficient cause supported by affidavit, consent, or operation of law. Tex. R. Civ. P. 251. When the continuance is sought for want of testimony, Rule 252 requires the affidavit to state the missing testimony's materiality, the diligence used to procure



Copy from re:SearchTX

it, the cause of failure, that the testimony cannot be obtained from any other source, the witness's name and residence if the continuance is based on an absent witness, the expected testimony, and that the continuance is not sought for delay. Tex. R. Civ. P. 252.

Diligence is the heart of the inquiry. A party who failed to use the discovery tools available during the discovery period has not shown the diligence Rule 252 requires, and a continuance motion that does not set forth the evidence sought, its materiality, and the due diligence used to obtain it is properly denied. Wal-Mart Stores Tex., L.P. v. Crosby, 295 S.W.3d 346, 356 (Tex. App.-Dallas 2009, pet. denied); Garner v. Fidelity Bank, N.A., 244 S.W.3d 855, 858 (Tex. App.-Dallas 2008, no pet.). Respondent's failure to pursue available nonparty discovery during the discovery period is not good cause to continue the trial.

**B. Discovery, nonparty subpoenas, and protective orders.**

Rule 190.5 permits modification of a discovery control plan only when the interest of justice requires it. Rule 191.2 requires a meaningful effort to resolve discovery disputes before court intervention. Rules 192.3 and 192.4 require discovery to be relevant, nonprivileged, reasonably tailored, and proportional. Rule 192.6 authorizes protective orders to prevent undue burden, unnecessary expense, harassment, annoyance, and invasion of personal, constitutional, or property rights.

Nonparty discovery under Rules 176 and 205.3 requires an actual notice and subpoena identifying the nonparty, the time and place for production, and the items or categories sought with reasonable particularity. Rule 176.7 requires the issuing party to take reasonable steps to avoid undue burden or expense on the person served and requires the Court to protect nonparties from undue burden, expense, and privilege invasion. Texas Supreme Court authority rejects category-level discovery



Copy from re:SearchTX

that functions as investigation rather than targeted discovery. See Texaco, Inc. v. Sanderson, 898 S.W.2d 813, 815 (Tex. 1995); In re American Optical Corp., 988 S.W.2d 711, 713 (Tex. 1998); In re CSX Corp., 124 S.W.3d 149, 152-53 (Tex. 2003); In re State Farm Lloyds, 520 S.W.3d 595, 599-610 (Tex. 2017).

**C. Litigation-vendor, law-firm, and work-product protection.**

Rule 192.5 protects work product, including material prepared and communications made in anticipation of litigation or for trial by or for a party or a party's representatives, including attorneys, consultants, investigators, agents, and other representatives. Requests for counsel's files, law-firm billing records, litigation consultants, investigators, security vendors, cyber and OSINT vendors, reputation vendors, and witness-preparation materials are presumptively privilege-sensitive and require heightened protection. See National Union Fire Ins. Co. v. Valdez, 863 S.W.2d 458 (Tex. 1993); In re National Lloyds Ins. Co., 532 S.W.3d 794 (Tex. 2017).

**D. Sanctions and adverse findings.**

Sanctions must be just, directly related to the proven misconduct, and no more severe than necessary. TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917-18 (Tex. 1991); Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 849 (Tex. 1992); Cire v. Cummings, 134 S.W.3d 835, 839-42 (Tex. 2004). Newkirk Logistics reaffirms the same proportionality framework for discovery sanctions. In re Newkirk Logistics, Inc., 718 S.W.3d 240 (Tex. 2025). Spoliation and adverse-inference relief require an evidentiary record and are not appropriate on conclusory allegations. Brookshire Bros., Ltd. v. Aldridge, 438 S.W.3d 9, 23-26 (Tex. 2014). Forensic imaging is intrusive and requires a predicate showing of specific devices, device characteristics,



Copy from re:SearchTX

examiner familiarity, and a reasonable likelihood that the proposed methodology will yield relevant information. In re Weekley Homes, L.P., 295 S.W.3d 309, 317-22 (Tex. 2009).

**E. Bankruptcy overlay.**

Respondent is a Chapter 7 debtor. He filed his Chapter 7 petition on January 12, 2026. The Chapter 7 trustee is Areya Holder. True and correct copies of the relevant bankruptcy orders are attached to the Affidavit of Jonathan D. Steele, and Petitioner describes them functionally here rather than by docket number alone. Those orders include an order terminating the automatic stay to permit the landlord to pursue eviction remedies; an order entered the afternoon of April 16, 2026 reinstating the automatic stay and directing that writ enforcement cease; and a later order extending Respondent's move-out deadline and expressly reserving claims for rent, expenses, damages, and automatic-stay violations for separate motion or adversary proceeding.

The Bankruptcy Code excepts certain domestic-relations matters from the automatic stay, including dissolution proceedings, but excludes from that exception proceedings to determine division of property that is property of the estate. 11 U.S.C. § 362(b)(2)(A)(iv). Section 541 includes property interests of the debtor and, in appropriate circumstances, community-property interests, and § 541(a)(5)(B) includes property the debtor becomes entitled to acquire within 180 days after filing as a result of a property settlement agreement or divorce decree. Because Respondent filed Chapter 7 on January 12, 2026, any property awarded to Respondent by decree entered before July 11, 2026 falls within that 180-day window.

The Texas family court can manage this case and proceed on dissolution and other matters expressly excepted from the automatic stay while preserving trustee and bankruptcy-court rights. What the family court should not do at this June 1 trial-readiness hearing is adjudicate theft,



Copy from re:SearchTX

spoliation, turnover, stay violations, damages, or ownership of allegedly removed estate property on Respondent's conclusory record.

**V. Argument**

**A. The continuance should be denied because discovery is closed and Respondent was not diligent.**

The dispositive point is the simplest one. Discovery closed. During the discovery period, Respondent could have served Rule 205 notices and applied to this Court for leave to subpoena any bank, Accenture, the taxing authorities, the landlord, the moving company, or any other custodian he now claims he needs. Nothing prevented him from following that procedure. He did not. A continuance sought to conduct discovery that the movant could have pursued earlier, through available procedure, is not supported by the diligence Rule 252 requires.

Respondent does not identify a single missing bank witness by name, residence, or expected testimony. He does not identify an Accenture witness by name, residence, or expected testimony. He does not attach a subpoena return showing any missing witness failed to appear. He does not attach a forensic-accounting affidavit, a digital-forensic affidavit, an Accenture custodian declaration, a bank custodian declaration, IRS transcripts, or a tax-preparer affidavit. This is not a Rule 252 showing. It is a request to continue trial so Respondent can conduct, after the discovery period, the nonparty discovery he chose not to pursue during it. The Motion should be denied and the June 11 trial setting preserved.

**B. Blanket subpoena leave should be denied, and no new nonparty discovery should issue on the eve of trial.**



Copy from re:SearchTX 

Respondent did not attach the proposed subpoenas or Rule 205.3 notices. The Court therefore cannot evaluate actual text, burden, privilege, proportionality, timing, return date, date range, account identifiers, or document categories. Instead, Respondent asks for category-level permission first and actual subpoenas later. Texas law does not require the Court to authorize an undefined investigation.

More fundamentally, authorizing new nonparty discovery now would furnish the very ground for the continuance the Motion seeks. If the Court authorizes subpoenas sixteen days before trial, Respondent will return and argue that the trial must be reset so the subpoenas can issue and the returns can come back. The records Respondent seeks were obtainable during the discovery period through ordinary procedure. Allowing him to begin that process now, on the eve of trial, would reward the failure to pursue it earlier and would convert the final-trial setting into the new investigation the Rules do not permit. The request for blanket subpoena leave should be denied.

**C. Discovery-deadline modification should be denied.**

Rule 190.5 permits modification of the discovery control plan only when the interest of justice requires it. Absent a Level 3 or custom discovery-control order changing the deadline, default Level 2 discovery in a Family Code suit ends thirty days before trial. With trial set June 11, 2026, Respondent's May 26 request is facially outside ordinary nonparty-discovery timing. Petitioner is confirming whether a September 8, 2025 302nd District Court pretrial order modified the default schedule; either way, Respondent has not supplied the proposed subpoenas or the diligence record required to reopen discovery on the eve of trial. The interest of justice does not favor reopening discovery for a party who declined to use it when it was open.

**D. Respondent cannot import unsupported financial figures from PHV-objection briefing.**



Copy from re:SearchTX

Respondent has previously included characterizations of Petitioner's finances in PHV-objection or related briefing, including alleged credit-card overpayments and alleged missing funds, such as $67,000 and $650,000 figures. Those figures appear only in Respondent's PHV-objection briefing and are not tied to any produced source document in the May 26 Motion. To the extent Respondent attempts to introduce those characterizations at this hearing, Petitioner objects on grounds including foundation, authentication, hearsay, relevance, Rule 403, and lack of competent source proof.

**E. The Rule 1006 chart reference is not proof.**

The Motion states that Respondent "intends" to attach a visual summary or that the chart "should be treated" as Exhibit A. A missing or unsupported chart is not evidence. Even a proper Rule 1006 summary requires underlying records to be made available and a sponsoring witness competent to explain the summary. The Court should not continue a final trial because Respondent says he intends to prepare a summary of records he has not attached and subpoenas he has not served.

**F. The VEIP theory is not a continuance predicate.**

Respondent alleges a $130,000 VEIP/equity investment was mislabeled as extra tax withholding, a $65,000 gain, and a $520,000 estate distortion. The Motion attaches no custodian declaration, expert report, CPA letter, tax-origin document, bank-origin tracing, or equity-plan-origin record proving that theory. Respondent's own Motion states that source records would be required to test his theory. That is a trial merits dispute, not a basis to continue trial, and certainly not a basis to reopen discovery the movant declined to pursue when it was available.

**G. The April 16 and bankruptcy issues do not justify theft, spoliation, turnover, stay-violation, damages, or property-return findings.**



Copy from re:SearchTX

The bankruptcy orders attached to the Steele Affidavit speak for themselves. One order terminated the automatic stay to permit the landlord to pursue forcible-detainer remedies. A second order, entered the afternoon of April 16, 2026, reinstated the automatic stay and directed that writ enforcement cease. A third order extended Respondent's move-out deadline and expressly reserved claims for rent, expenses, damages, and automatic-stay violations for separate motion or adversary proceeding. No bankruptcy order adjudicated theft, spoliation, stay violation, damages, property ownership, or turnover against Petitioner.

Petitioner's primary position is that the June 11 trial setting should be preserved and the Court should proceed on all matters properly before it, including dissolution, characterization of property, and any property division the Court can conduct with appropriate coordination with the trustee and the bankruptcy court. Respondent cannot use unadjudicated bankruptcy issues to manufacture a continuance.

In the alternative, if the Court determines that the property division portion of the June 11 trial requires coordination with the Chapter 7 trustee or further bankruptcy-court action beyond what is available at this setting, Petitioner does not oppose severance and reservation of the property division portion only, with the dissolution of marriage and any matters expressly excepted from the automatic stay under § 362(b)(2) proceeding on June 11 as scheduled.

Trustee Areya Holder's rights, bankruptcy-court jurisdiction, and any party's right to seek appropriate relief in the bankruptcy court are expressly preserved. Petitioner does not waive, and expressly reserves, any right to seek appropriate relief in the bankruptcy court or through the Chapter 7 trustee if Respondent asks this Court to adjudicate estate-property issues, alleged stay violations, or damages arising from property alleged to be property of the bankruptcy estate.



Copy from re:SearchTX

**H. Sanctions, adverse inference, reconstitution, and related remedies are premature.**

Respondent asks to reserve sanctions, fee shifting, adverse inferences, estate reconstitution, reimbursement, offsets, healthcare enforcement, property return, and April 16 remedies pending subpoena returns and further hearing. That request concedes that the current record is not the record on which those remedies can be decided. The Court should deny those requests without prejudice to properly noticed, evidence-supported motion practice if a proper record is later developed.

**VI. Petitioner's Counter-Motion for Protective Order**

Petitioner moves under Rules 192.6, 176.7, and 215.3 for a protective order. The requested order is necessary to prevent undue burden, unnecessary expense, harassment, annoyance, invasion of privacy and property rights, and invasion of attorney-client privilege, attorney work product, consulting-expert protections, and litigation strategy. Petitioner requests that the protective order issue regardless of the Court's disposition of Respondent's Motion, including in the event the Court grants any portion of Respondent's requested relief.

**A. Protection against renewed or expanded subpoena practice.**

Because discovery has closed and trial is imminent, Respondent should not be permitted to serve, or to apply for leave to serve, any nonparty subpoena absent a separate, properly supported motion demonstrating diligence, materiality, proportionality, and good cause to reopen discovery, and absent service of the actual proposed subpoena and Rule 205 notice identifying the named custodian, the account or precise subject matter, the date range, the document categories, and the return date. No subpoena should issue on open-ended terms such as "all related custodians," "any person," "any entity," "any contractor," "all communications," or "all documents." All objections,



Copy from re:SearchTX

motions to quash, motions for protection, privilege and work-product claims, confidentiality objections, cost and proportionality objections, and bankruptcy-estate objections are preserved.

**B. Litigation-vendor and law-firm protection.**

No subpoena should issue to any opposing counsel, law firm, legal-retainer custodian, litigation consultant, investigator, security vendor, communications vendor, reputation vendor, OSINT or cyber vendor, witness-preparation participant, consulting expert, or litigation-support vendor absent prior leave of Court, a specific nonprivileged relevance showing, and an express privilege and work-product protocol.

**C. Mutual preservation.**

Petitioner does not oppose mutual preservation with no findings of wrongdoing. Petitioner does oppose a continuance, blanket subpoena leave, any new nonparty discovery on the eve of trial, privilege-invasive discovery, and any order adjudicating April 16 theft, spoliation, stay violation, turnover, estate-property damages, property ownership, or forensic relief on the present record.

**VII. Attorney's Fees, Costs, and Protective Expenses**

Petitioner requests an award of reasonable attorney's fees, court costs, expenses, and protective expenses incurred in responding to the Motion and prosecuting this Counter-Motion for Protective Order under Texas Rule of Civil Procedure 215.3, the Court's discovery and protective-order authority, and applicable Family Code fee provisions, including Family Code §§ 6.502 and 6.708. Petitioner requests that any award be made to Petitioner or her counsel as the Court may direct. Petitioner will submit lodestar proof by separate affidavit or at a later prove-up if the Court requires additional evidence as to amount, rate, hours, task descriptions, reasonableness, necessity, and

segregation. Petitioner requests that entitlement to fees and expenses be granted or reserved and that the amount be determined by further submission or hearing.

**VIII. Prayer**

Petitioner respectfully requests that the Court:

1. deny Respondent's request to continue the June 11, 2026 trial setting;
2. deny Respondent's request for leave to issue third-party subpoenas;
3. deny Respondent's request to modify discovery deadlines;
4. deny Respondent's request to enforce alleged prior discovery rulings absent signed orders, exact obligations, service, deadlines, and proof of violation;
5. deny Respondent's requests for sanctions, fee shifting, adverse inferences, estate reconstitution, reimbursement, offsets, healthcare enforcement, property return, compensation, April 16 theft remedies, forensic seizure, non-use relief, and spoliation findings on the current record;
6. enter a protective order prohibiting overbroad, privileged, harassing, and litigation-vendor discovery, and prohibiting renewed or expanded nonparty subpoena practice absent a separate, properly supported motion, service of actual proposed subpoenas, and a privilege protocol;
7. enter mutual preservation language with no findings of wrongdoing, theft, spoliation, property theft, evidence suppression, or stay violation;
8. preserve the June 11, 2026 trial setting;



Copy from re:SearchTX

8A. in the alternative, if the Court determines that the property division portion of the June 11, 2026 trial requires coordination with the Chapter 7 trustee or further bankruptcy-court action, sever and reserve the property division portion only, with the dissolution of marriage and any matters expressly excepted from the automatic stay under 11 U.S.C. § 362(b)(2) proceeding on June 11, 2026 as scheduled;

9. award Petitioner reasonable attorney's fees, court costs, expenses, and protective expenses incurred in responding to the Motion and obtaining protective relief, with the amount reserved for later prove-up if necessary; and

10. grant Petitioner all further relief to which she may be justly entitled.

Respectfully submitted,

Jonathan D. Steele
BEERMANN LLP
161 N. Clark Street, Suite 3000
Chicago, Illinois 60601
ARDC No. 6308171
jsteele@beermannlaw.com

By: /s/ Jonathan D. Steele

JONATHAN D. STEELE
Admitted Pro Hac Vice
Counsel for Petitioner

**Certificate of Conference**

I certify that a reasonable effort has been made to resolve the issues addressed in this Counter-Motion for Protective Order without the necessity of court intervention, and the parties have been unable to resolve those issues.

By: /s/ Jonathan D. Steele

JONATHAN D. STEELE



Copy from re:SearchTX

**Certificate of Service**

I certify that a true and correct copy of the foregoing document was served in accordance with the Texas Rules of Civil Procedure through the Texas eFile and Serve system on all counsel of record and all parties entitled to service on the same date this document is filed.

By: /s/ Jonathan D. Steele

JONATHAN D. STEELE



Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Terra Aguirre on behalf of Rebecca Armstrong
Bar No. 24062589
terra@armstronglawtexas.com
Envelope ID: 115516576
Filing Code Description: Response
Filing Description: TO MOTION FOR ENFORCEMENT AND COUNTER MOTION FOR PROTECTIVE ORDER
Status as of 6/1/2026 10:16 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kim Jones | | kjones@sullivancook.com | 5/29/2026 3:42:21 PM | SENT |
| Jeffrey ECook | | jcook@sullivancook.com | 5/29/2026 3:42:21 PM | SENT |
| Tiffany Castenada | | tcastenada@sullivancook.com | 5/29/2026 3:42:21 PM | SENT |
| William CCook | | wcook@sullivancook.com | 5/29/2026 3:42:21 PM | SENT |
| Rebecca LArmstrong | | rebecca@armstronglawtexas.com | 5/29/2026 3:42:21 PM | SENT |
| Terra Aguirre | | terra@armstronglawtexas.com | 5/29/2026 3:42:21 PM | SENT |
| Chandler Alt | | calt@sullivancook.com | 5/29/2026 3:42:21 PM | SENT |
| Lauren N.Shaw | | lauren@armstronglawtexas.com | 5/29/2026 3:42:21 PM | SENT |
| Jason McKemie | | jmckemie@mckemie.net | 5/29/2026 3:42:21 PM | SENT |
| Gwendolyn Ulijasz McKemie | | GUlijasz@gmail.com | 5/29/2026 3:42:21 PM | SENT |
| Gwendolyn Ulijasz | | gulijasz@gmail.com | 5/29/2026 3:42:21 PM | SENT |
| JONATHAN STEEL | | jsteele@beermannlaw.com | 5/29/2026 3:42:21 PM | SENT |
| Ethan Scroggins | | escroggins@sullivancook.com | 5/29/2026 3:42:21 PM | SENT |
| JASON EMORYMCKEMIE | | jason@callvital.com | 5/29/2026 3:42:21 PM | SENT |

NO. DF-24-18010

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| GWENDOLYN ULIJASZ-MCKEMIE | § | 301st JUDICIAL DISTRICT |
| & | § | |
| JASON MCKEMIE | § | DALLAS COUNTY, TEXAS |

# RESPONDENT'S REPLY IN SUPPORT OF ENFORCEMENT, SANCTIONS, CONTINUANCE, AND LEAVE; OBJECTION TO PETITIONER'S BAD-FAITH PROTECTIVE ORDER AND FEE REQUEST; AND REQUEST FOR SANCTIONS, SHOW-CAUSE, COUNSEL CERTIFICATION, FEE SHIFTING, FORENSIC ACCOUNTING, ESTATE RECONSTITUTION, DISPROPORTIONATE DIVISION, AND SOURCE-RECORD VERIFICATION

**TO THE HONORABLE JUDGE OF SAID COURT:**

Jason McKemie files this Reply in Support of his Motion for Enforcement, Sanctions, Continuance, and Leave to Issue Third-Party Subpoenas, and objects to Petitioner's Counter-Motion for Protective Order and fee request.

## I. PETITIONER'S RESPONSE IS NOT A DEFENSE. IT IS THE SAME OBSTRUCTION IN A NEW FORMAT.

Petitioner's response confirms the emergency.

Jason McKemie came before this Court seeking source-record verification because Petitioner's production cannot reconstruct the marital estate. Petitioner responded by asking the Court to protect her from the exact source records required to test whether her financial disclosures are truthful.

- That is not compliance.
- That is obstruction.

Petitioner's protective-order request is not protection from improper discovery. It is protection from verification. It asks this Court to bless 17 months of missing statements, missing months, missing pages, missing account continuity, missing payroll records, missing VEIP/equity records, missing tax records, missing loan funding records, missing GLU Distribution LLC records, missing source documents, and missing third-party records – then force Jason to trial while the books remain closed.

- Petitioner wants the Court to treat Bates numbers as compliance.
- Bates numbers are not bank statements.
- A production index is not account continuity.
- A PDF range is not a payroll register.

- A screenshot is not a source record.
- A tax email is not an IRS transcript.
- A family note is not a funded loan.
- A "fraud/no access" claim is not a financial disclosure.

And a protective order filed after repeated noncompliance is not good-faith litigation. It is concealment with a certificate of service.

## II. THIS IS NOT PETITIONER'S "ABUSE" OR "STALKING" CASE. IT IS A FRAUD CASE DISGUISED AS A VICTIM NARRATIVE.

Petitioner wants this Court to evaluate this case through the frame she created: abuse, stalking, fear, and victimhood. That frame is not the case. It is the mechanism used to divert attention away from the financial records.

The issue before this Court is not whether Jason McKemie should be punished for demanding source-record verification. The issue is why Petitioner and her counsel have spent seventeen months resisting it.

This is a fraud case. This is a source-record concealment case. This is a discovery-obstruction case. This is a financial-sabotage case. This is a healthcare-interference case. This is an evidence-theft case.

Petitioner's narrative collapses the moment the Court asks objective questions.

Where are the complete account statements? Where are the account-continuity records? Where are the replacement-card records? Where are the payroll registers? Where are the VEIP records? Where are the myHoldings records? Where are the tax transcripts? Where are the funded loan transfers? Where are the QLE records? Where are the HSA/FSA access records? Where are the third-party contractor payment records? Where are the April 16 chain-of-custody records?

Petitioner does not want those questions answered.

That is why she seeks a protective order.

The problem is not merely that records are missing. The problem is that Petitioner's conduct is fundamentally inconsistent with the narrative she asks this Court to accept.

- A person genuinely seeking protection does not need missing account statements, missing payroll records, unsupported loan claims, disguised equity investments, rotating credit-card accounts, missing tax records, or source-record concealment.

- A person genuinely seeking protection does not report a legal retainer as fraud, cut off access to counsel, and then escalate into protective-order litigation.

- A person genuinely seeking protection does not testify that she has not and will not interfere with healthcare and then submit a Qualifying Life Event terminating coverage before a scheduled surgery.

- A person genuinely seeking protection does not report a Health Savings Account card lost or stolen while the other party is hospitalized and actively seeking medical treatment.

- A person genuinely seeking protection does not register AirTags to her own phone and iCloud account and later present those same devices as evidence that someone else was tracking her.

- A person genuinely seeking protection does not request that surveillance cameras remain active so property retrieval can be documented and then attack the existence of those same recordings when they become inconvenient.

- A person genuinely seeking protection does not take possession of another party's devices, electronics, hard drives, litigation materials, financial records, and evidence repositories and then characterize the location of those items as evidence of stalking.

- A person genuinely seeking protection does not ask her husband to leave cameras running so he can "see what she is taking and feel safe," then enter his office, speak directly into those cameras, taunt him, and later accuse him of unlawfully recording her.

Most importantly, a person genuinely seeking protection does not spend seventeen months fighting to prevent independent verification of her own financial disclosures.

That is not protection.

That is concealment.

That is why Petitioner's response to source-record verification is so revealing.

- Jason McKemie sought the books. Petitioner sought a protective order.
- Jason McKemie sought verification. Petitioner sought fees.
- Jason McKemie sought third-party records. Petitioner sought to prevent them.

The pattern is consistent.

When Jason approaches the money trail, Petitioner changes the subject. When Jason seeks records, Petitioner claims fear. When Jason identifies missing statements, Petitioner points to Bates numbers. When Jason identifies contradictions, Petitioner demands protection from verification.

- The Court should reject that frame.
- This is not an abuse case.
- This is not a stalking case.
- This is a fraud case.
- And counsel are now inside it.

Jonathan Drake Steele voluntarily placed his review and certification process at issue through his affidavit. He did not identify a single complete continuous institution-origin account. He did not identify complete payroll records. He did not identify complete VEIP records. He did not identify complete myHoldings records. He did not identify complete tax records. He did not identify complete loan-funding records. He did not identify the source of card overpayments. He did not identify the source records necessary to reconstruct the estate.

- He identified a Bates range.
- A Bates range is not compliance.
- A production index is not truth.
- A lawyer's affidavit cannot transform incomplete financial fragments into source-record production.

If Mr. Steele certified, defended, presented, or relied upon Petitioner's production as complete without verifying account continuity, source-record continuity, and estate traceability, then he certified a false financial position to this Court. That is sanctionable. Rebecca L. Armstrong sponsored and supported his admission and remains counsel of record. Sullivan & Cook previously defended the same structurally defective production. Any attorney who certified, sponsored, presented, defended, relied upon, or failed to correct this production belongs in the sanctions inquiry.

Petitioner's protective order is the tell.

She is not seeking protection from improper discovery.

She is seeking protection from the records that will determine whether her disclosures are true.

The books either reconcile or they do not. The loans either have funded transfers or they do not. The VEIP records either exist or they do not. The tax transcripts either support her position or they do not. The April 16 records either explain what happened or they do not.

That is why source-record verification matters.

And that is why Petitioner is fighting so hard to stop it.

## III. THE RECORD SHOWS REPEATED NOTICE, REPEATED COMPEL EFFORTS, REPEATED NONCOMPLIANCE, AND NO COMPLETE ACCOUNT.

Petitioner's "he waited until trial" argument is false by omission.

Jason did not wait. Jason repeatedly raised these defects. Jason repeatedly sought financial discovery, subpoena authority, source-record verification, written rulings, and enforcement. The record includes, among other filings and hearing entries:

- June 27, 2025 – Motion to Preserve Discovery Rights and Compel Discovery Responses;
- July 16, 2025 – Motion for Sanctions / fraud-upon-the-court track;
- July 17, 2025 – Notice of Material Discovery Concealment and reservation of rights;
- July 17, 2025 – Notice of Intent to Seek Disproportionate Division;
- December 19, 2025 – Motion to Compel;
- December 23, 2025 – Motion for Leave and Proposed Order Granting Leave to Serve Subpoenas;
- December 29, 2025 – Supplemental Submission in Support of Motion to Compel;
- January 8, 2026 – Proposed Order on Motion to Compel;
- January 20, 2026 – noncompliance concerning certified financial production;
- February 2, 2026 – Motion to Compel Complete Financials;
- February 5, 2026 – repeated noncompliance concerning certified financial production;
- February 10, 2026 – proposed verification/status orders;
- May 26, 2026 – present Motion for Enforcement, Sanctions, Continuance, and Leave.
- Petitioner and counsel were told exactly what was missing.
- Petitioner and counsel were given repeated opportunities to cure.
- Petitioner and counsel did not cure.

Instead, Petitioner and counsel defended the defective production, demanded trial, sought fees against the party harmed by the obstruction, and now ask for a protective order to prevent third-party source verification.

That is not a procedural defect by Jason.

That is the litigation strategy Petitioner has used from the beginning: obstruct, accuse, delay, manufacture collapse, then blame Jason for the collapse Petitioner created.

## IV. STEELE'S AFFIDAVIT DOES NOT PROVE COMPLIANCE. IT CERTIFIES THE FALSEHOOD.

Jonathan Drake Steele voluntarily placed counsel review and certification directly at issue.

His affidavit states that he was actively involved in the preparation and review of Petitioner's discovery production. He identifies a production index and Bates range. He does not identify a single complete continuous institution-origin account. He does not identify a single account/month/source-record chart proving continuity. He does not identify the missing replacement-card lineage. He does not identify payroll registers. He does not identify VEIP election records. He does not identify myHoldings source records. He does not identify tax transcripts. He does not identify loan funding transfers. He does not identify GLU Distribution LLC source records. He does not identify the payment source for card overpayments. He does not identify the destination of equity liquidation or replacement liquidity.

Mr. Steele's affidavit proves exactly one thing: counsel has now attached his name to the false premise that a Bates range equals compliance.

That is a flat-out false certification narrative.

- A lawyer may advocate.
- A lawyer may object.
- A lawyer may argue burden.

But a lawyer may not certify or defend a financial production as adequate when the record cannot identify even one complete continuous institution-origin account sufficient to reconstruct the marital estate.

Mr. Steele has stepped into the record. He is no longer merely arguing from the sideline. He has sworn into the record that he reviewed the production and production index. That makes his certification, his review process, and his factual basis proper subjects for Rule 191.3 certification review and Rule 215 sanctions.

Local counsel Rebecca L. Armstrong is not ceremonial wallpaper. She is counsel of record. She sponsored, supported, presented, relied upon, or failed to correct the same defective production position. Sullivan & Cook and any attorney who certified, sponsored, presented, defended, relied upon, or failed to correct Petitioner's defective financial production are likewise within the sanctions inquiry to the extent their conduct contributed to this fraud, concealment, and delay.



Copy from re:SearchTX

Jason expressly seeks sanctions against Petitioner, Jonathan Drake Steele, Rebecca L. Armstrong, Sullivan & Cook, and any attorney who certified, sponsored, presented, defended, relied upon, or attempted to shield materially incomplete financial production from verification.

## V. PETITIONER'S PROTECTIVE ORDER IS BAD-FAITH DISCOVERY OBSTRUCTION.

Petitioner's protective order should be denied in full.

Petitioner is not asking the Court to protect privileged communications. She is asking the Court to protect missing source records from being tested. She wants protection from banks, payroll custodians, Accenture, equity administrators, VEIP records, tax records, loan records, lease records, landlord records, benefits records, HSA/FSA records, contractor payment records, and April 16 chain-of-custody records.

That is not privilege.

That is the crime scene tape around financial fraud.

The requested source records are not exotic. They are ordinary divorce records:

- complete monthly bank statements;
- credit-card statements;
- account continuity records;
- replacement-card lineage;
- payment-source records;
- overpayment/refund records;
- payroll registers;
- bonus worksheets;
- VEIP election and transaction records;
- myHoldings equity records;
- RSU grant/release/withholding records;
- tax transcripts;
- loan origination and funding records;
- employer reimbursement records;
- lease payoff and rent ledgers;
- QLE/benefits records;
- HSA/FSA functionality records;
- vendor invoices and payment records;
- April 16 chain-of-custody records.

If Petitioner's production is truthful, complete, and defensible, third-party records will prove it.

If Petitioner's production is false, incomplete, and fraudulent, third-party records will expose it.



Copy from re:SearchTX

That is why she seeks protection.

## VI. THE VEIP / "EXTRA TAX WITHHOLDING" ISSUE IS FRAUD, NOT CONFUSION.

Petitioner labeled or allowed equity investment activity to be treated as "extra tax withholding."

**That is fraud.**

The Accenture compensation record shows the compensation structure was not ambiguous. Petitioner's compensation included salary, sign-on bonuses, annual bonus, VEIP/equity deductions, RSUs, taxable RSU activity, and equity-plan benefits. VEIP is not "extra tax withholding." VEIP is an elective stock-purchase/equity program. RSU share withholding is not ordinary tax withholding. A net paycheck is not the full compensation record.

Petitioner's paystubs show "Federal 2c/Extra Withholding: No/$0.00," while separately showing VEIP deductions and RSU activity. If Petitioner disclosed VEIP/equity activity as "extra tax withholding," that was a false characterization of marital asset movement.

- This was not a typo.
- This was not accounting noise.
- This was a half-million-dollar estate distortion.
- The present record identifies the VEIP/equity problem as follows:

VEIP/equity investment principal: approximately $130,000;
approximate 50% employer/equity gain or match: approximately $65,000;
total liquid/equity value: approximately $195,000;
mischaracterization effect: converting asset value into supposed tax/liability pressure;
estate distortion: more than $500,000.

That cannot be tried on emails, screenshots, annual summaries, or counsel argument. It requires Accenture payroll records, myHoldings records, VEIP plan records, equity custodian records, RSU release records, share-withholding records, W-2 support records, and bank-origin tracing.

Petitioner's attempt to block those records is not a burden objection. It is fraud protection.

## VII. PETITIONER'S LOAN CLAIMS ARE NOT LOANS WITHOUT TRACEABLE FUNDS TRANSFERS.

Petitioner cannot simultaneously claim financial hardship, claim the need for undocumented family loans, funnel five-figure sums into VEIP equity investments, accumulate employer-matched stock compensation, and schedule elective cosmetic procedures at a luxury aesthetic clinic. Those positions are mutually incompatible. If sufficient funds existed for equity accumulation and elective cosmetic

spending, then the alleged hardship underlying the claimed loan did not exist. If the hardship did exist, then the equity purchases and elective expenditures become evidence of dissipation and waste. Either way, absent source records proving the loan was actually funded, received, and used for a legitimate community purpose, the alleged obligation fails as a credible community debt claim.

- A claimed loan is not a loan because Petitioner says so.
- A promissory note without traceable funding is not proof of a loan.
- A tax "prediction" email is not a tax transcript.
- A claimed sister loan without funds transfer is not a community liability.
- A loan without proof of funds entering Petitioner's account from a traceable account number is not a debt Jason should carry.

Petitioner paid off her own obligations, moved money, claimed hardship, then attempted to burden Jason with debts and liabilities while shielding the source records needed to test whether those debts were real, separate, community, reimbursable, fabricated, litigation-funded, or used to replace liquidity from equity investment.

The AIG loan began before the August 2023 common-law marriage date asserted by Jason. It cannot be dumped wholesale onto the community without tracing. If Petitioner insists the marriage was a "five-month fling" with no commingled assets, then she cannot simultaneously use pre-marriage loans and opaque pre-marriage liabilities to burden Jason.

The $50,000 Advantigen investment – one-half of the total $100,000 investment – was a joint investment event. Attempts to recast it and other joint investment activity as Petitioner's separate property while using incomplete records and missing source proof is bad faith.

Petitioner cannot have it both ways:
no marriage when assets must be shared,
marriage when debts must be shifted,
privacy when records expose fraud,
and fees when her obstruction causes the hearing.

## VIII. THE APRIL 16 THEFT IS PART OF THE SAME OBSTRUCTION PATTERN.

April 16 was not "property removal."

It was theft.

Petitioner stole Jason's hard drives, evidence repositories, litigation materials, financial reconstruction records, trial materials, medical/legal records, computer equipment, GPUs, network storage, music studio equipment, medication, and livelihood infrastructure.

Those stolen hard drives were Jason's separate property owned before the marriage.



Copy from re:SearchTX

They contained 17 months of exhibits, financial reconstruction work, discovery materials, trial preparation, Accenture contribution evidence, professional records, music/studio materials, technical work, and evidence necessary to rebut Petitioner's false non-contributor narrative.

Petitioner then attempted to transform her possession of Jason's stolen property into a victim narrative. She stole devices and property from Jason's residence, took them to her own residence or into her control, and then treated the presence/location of Jason's devices as evidence that Jason was stalking her. If Petitioner does not want Jason's Apple TV, AirTags, electronics, or device identifiers appearing in her house, she should stop stealing Jason's property from his house.

That is not stalking.

That is possession of stolen property.

If Petitioner fled after being told not to leave, that is fleeing the scene.

If Petitioner stole evidence repositories and then seeks trial while Jason lacks the records she stole, that is evidence theft and litigation sabotage.

Petitioner cannot steal Jason's evidence, block third-party source records, claim he lacks proof, demand trial, and ask the Court to make Jason pay her fees for the privilege of being ambushed. That is not due process. That is procedural arson followed by an invoice for smoke damage.

Jason requests categorical relief: Petitioner, her counsel, experts, vendors, contractors, movers, security personnel, investigators, consultants, agents, and anyone acting for her shall have no access to, no use of, and no benefit from Jason's stolen hard drives, evidence repositories, litigation files, source records, or derivative materials. They shall preserve all external chain-of-custody records, communications, payment records, dispatch records, photographs, video, location data, inventory records, possession records, and storage records. The stolen evidence repositories and stolen property shall be returned to Jason.

1. No inspection.
2. No imaging.
3. No copying.
4. No in-camera workaround.
5. No expert workaround.
6. No derivative use.
7. No benefit from theft.

## IX. PETITIONER'S FEE REQUEST IS OBSCENE AND SHOULD BE DENIED IN FULL.

Petitioner now asks the Court to shift fees, costs, protective expenses, and litigation expenses against Jason.

That request is offensive.

Petitioner has stretched this divorce across 17 months of financial concealment, discovery obstruction, healthcare obstruction, false narratives, protective-order gamesmanship, late production, source-record concealment, housing destabilization, forced bankruptcy pressure, and April 16 theft.

- Jason is homeless.
- Jason has been denied functional healthcare access.
- Jason has been blocked from heart medication and surgical care.
- Jason has been forced into bankruptcy.
- Jason is facing loss of transportation.
- Jason has had his residence destroyed, his property stolen, his hard drives stolen, his evidence repositories stolen, his tools stolen, and his ability to litigate crippled.

Now Petitioner asks him to pay her fees because he demanded the books.

No.

Petitioner's request for attorney's fees, costs, protective expenses, expert/vendor expenses, and any cost shifting against Jason should be denied in full. No later prove-up. No reservation. No "without prejudice." No deferred entitlement. Petitioner caused this hearing through obstruction. Petitioner and the responsible counsel should pay the cure.

## X. THE COURT SHOULD ORDER COUNSEL CERTIFICATION AND SHOW-CAUSE SANCTIONS BEFORE TRIAL.

Jason requests that the Court order Petitioner, Jonathan Drake Steele, Rebecca L. Armstrong, Sullivan & Cook, and any attorney who certified, sponsored, presented, defended, relied upon, or attempted to shield Petitioner's financial production to appear and show cause why sanctions should not issue for:

1. false certification;
2. discovery obstruction;
3. source-record concealment;
4. protective-order misuse;
5. bad-faith resistance to verification;
6. fraud on the community;
7. fraud upon the Court;
8. counsel-assisted concealment;
9. failure to correct false completeness representations;

10. litigation conduct designed to convert missing records into trial advantage.

Jason further requests that the Court require sworn counsel certification within three calendar days identifying:

1. every financial account known to Petitioner or counsel;
2. every account number, replacement account number, replacement card number, closed account, successor account, and related account lineage;
3. every month for which a complete institution-origin statement was produced;
4. every month missing or incomplete;
5. every document Petitioner claims is a source record;
6. every document that is merely a screenshot, annual summary, account overview, one-day report, attorney summary, party-created spreadsheet, tax email, or non-source record;
7. whether counsel reviewed institution-origin records or only client-selected PDFs;
8. whether counsel reviewed Accenture payroll records, myHoldings records, VEIP plan records, equity custodian records, tax transcripts, loan funding records, GLU Distribution LLC records, and Chase account-continuity records;
9. the factual basis for any representation that the production is complete;
10. the factual basis for any request to prevent third-party verification.

If counsel cannot certify complete source-record compliance at the account/month/source-record level, the Court should not accept counsel's production index as compliance.

## XI. RECONSTITUTION, DISPROPORTIONATE DIVISION, FORENSIC ACCOUNTING, AND STABILIZATION ARE NOW REQUIRED.

This is no longer ordinary discovery enforcement.

Petitioner's conduct directly affects the Court's ability to determine the true composition and value of the marital estate. The Court cannot make a just and right division of an estate that cannot be identified. The Court cannot reject reconstitution while source records are blocked. The Court cannot decide disproportionate division while Petitioner's financial production remains structurally defective.

Jason requests preservation and active enforcement of remedies for:

1. fraud on the community;
2. fraud upon the Court;
3. reconstitution of the estate under Texas Family Code § 7.009;
4. disproportionate division under Texas Family Code § 7.001;
5. fee shifting against Petitioner and responsible counsel;
6. sanctions against Petitioner and counsel;
7. adverse inferences;
8. reimbursement/add-backs;

9. healthcare enforcement;
10. stabilization relief;
11. neutral court-appointed forensic accounting;
12. source-record subpoenas;
13. trial continuance or abatement until the estate can be reconstructed.

The forensic accountant must be court-appointed and neutral, but the accountant's work must be limited to third-party source records, Petitioner's financial production, institutional records, payroll records, equity records, tax records, bank records, loan records, lease records, and vendor/payment records. Nothing in this request permits Petitioner, counsel, experts, vendors, agents, or anyone acting for her to access, inspect, image, copy, use, or benefit from Jason's stolen hard drives or evidence repositories.

## XII. THE COURT SHOULD NOT CONVERT OBSTRUCTION INTO FINAL JUDGMENT.

Petitioner wants the Court to proceed to trial while the estate cannot be reconstructed.

That would reward obstruction.

A final trial without source records would force Jason to defend against a financial narrative built from missing statements, rotated accounts, unexplained overpayments, unsupported loans, mislabeled equity, missing tax transcripts, missing payroll records, missing VEIP records, missing myHoldings records, missing loan funding records, missing contractor payment records, and stolen evidence repositories.

- Petitioner created the evidentiary collapse.
- Petitioner now seeks protection from the cure.
- The Court should not permit that.

## XIII. PRAYER

Jason McKemie respectfully requests that the Court:

1. DENY Petitioner's Counter-Motion for Protective Order in full;

2. DENY Petitioner's request for attorney's fees, costs, protective expenses, expert/vendor expenses, and any cost shifting against Jason McKemie in full, with no later prove-up and no reservation;

3. FIND that Petitioner's protective-order request is a bad-faith attempt to block source-record verification after prolonged noncompliance;

4. GRANT Jason McKemie's request for leave to issue third-party subpoenas for source records concerning financial accounts, credit cards, overpayments, payment sources, account continuity, replacement-card lineage, VEIP/equity, Accenture payroll, myHoldings, RSUs, tax records, loans, GLU Distribution LLC, San Antonio housing, lease payoff, rent ledgers, QLE/benefits, HSA/FSA functionality, legal retainers, third-party contractors, vendors, April 16 theft, movers, security, bodyguards, All My Sons, Merritt McClayton, Decisive Resources, Jetty Partners, landlord records, constable records, and related source-record custodians;

5. MODIFY discovery deadlines for the limited purpose of third-party source-record verification and related follow-up;

6. CONTINUE or ABATE the June 11, 2026 trial setting until the marital estate can be reconstructed from complete, continuous, source-verifiable records;

7. ORDER Petitioner, Jonathan Drake Steele, Rebecca L. Armstrong, Sullivan & Cook, and any counsel who certified, sponsored, presented, defended, relied upon, or attempted to shield Petitioner's financial production to appear and show cause why sanctions should not issue;

8. ORDER sworn Rule 191.3 certification identifying every account, every missing statement month, every incomplete record, every replacement account/card number, every source record reviewed, and the factual basis for any representation of completeness;

9. APPOINT a neutral court-appointed forensic accountant to reconstruct the estate from third-party source records and non-stolen financial records, with fees advanced or paid by Petitioner and/or responsible counsel as sanctions, fee shifting, or discovery-cure expenses;

10. PRESERVE and SET FOR HEARING Jason McKemie's requests for fraud-on-the-community findings, fraud-upon-the-Court findings, estate reconstitution under Texas Family Code § 7.009, disproportionate division under Texas Family Code § 7.001, adverse inferences, reimbursement, offsets, add-backs, fee shifting, sanctions, healthcare enforcement, stabilization relief, and April 16 theft remedies;

11. ORDER that Petitioner, her counsel, experts, vendors, contractors, movers, security personnel, investigators, consultants, agents, and anyone acting for her shall have no access to, no use of, and no benefit from Jason McKemie's stolen hard drives, evidence repositories, litigation files, digital storage devices, source files, or derivative materials;

12. ORDER preservation of all April 16 chain-of-custody evidence, including communications, photographs, videos, inventories, booking records, dispatch records, payment records, location records, storage records, possession records, and records concerning stolen hard drives, devices, GPUs, network storage, music studio equipment, medication, financial records, litigation records, safes, briefcases, and other stolen property;

13. ORDER return of Jason McKemie's stolen evidence repositories and stolen property;

14. ENFORCE healthcare/HSA/FSA functionality and stabilization relief necessary to prevent further medical and financial harm;

15. REQUIRE written rulings on every item granted, denied, or reserved;

16. GRANT all other relief to which Jason McKemie is entitled.

## XVI. SUPPLEMENTAL UNSWORN DECLARATION OF JASON MCKEMIE

My name is **Jason McKemie**. My date of birth is April 8, 1976. My address is **539 W. Commerce St., Suite 2010, Dallas, Texas 75208.** I declare under penalty of perjury that the following is true and correct based on my personal knowledge and review of the records referenced in this filing.

1. I have repeatedly sought complete financial discovery, source-record verification, subpoena authority, and enforceable compliance throughout this case.

2. I served deficiency notices and identified missing pages, missing months, missing accounts, missing VEIP records, missing GLU Distribution LLC records, missing Chase continuity records, missing overpayment tracing, missing payroll records, missing equity records, and missing source records.

3. Counsel demanded specific defects. I identified them. Counsel then responded with Bates ranges and prior production references instead of producing complete source records.

4. I still do not have one complete, continuous, institution-origin account sequence sufficient to reconstruct the marital estate.

5. Petitioner's production contains missing months, missing pages, mixed-year page inserts, out-of-sequence statements, one-day snapshots, summaries, redacted account identifiers, replacement card/account discontinuities, and incomplete records that prevent tracing.

6. The missing source records are material because they are necessary to reconstruct the marital estate, verify income, trace payments, test claimed debts, verify VEIP/equity classification, determine whether "extra tax withholding" was actually tax withholding or elective equity investment, identify RSU taxable events, verify employer reimbursements, verify HSA/FSA functionality, verify QLE/benefits actions, and determine the April 16 chain of custody.

7. Petitioner's Fraud Budget / sworn financial materials identify "Extra monthly Tax Withholding" in the amount of $13,300. Based on the Accenture compensation records and payroll/equity materials, this requires verification because VEIP equity investment cannot be accepted as tax withholding without source records.

8. Paystubs, payroll records, VEIP records, RSU records, myHoldings records, equity-custodian records, and tax records are necessary to determine the truth.

9. The requested continuance and subpoenas are not sought for delay. They are necessary because trial without source records would convert Petitioner's noncompliance, false certification, discovery obstruction, and evidence theft into litigation advantage.

10. I request denial of Petitioner's protective order, denial of all fees/costs/protective expenses against me, authorization of third-party subpoenas, sworn counsel certification, trial continuance, and a sanctions/show-cause hearing.

Executed in Dallas County, Texas on June 1st, 2026.

Jason McKemie

**Jason McKemie**
539 W. Commerce St., Suite 2010
Dallas, Texas 75208
214-868-4901
jmckemie@mckemie.net

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this filing and all attached exhibits was served on all counsel of record and/or parties entitled to notice through the Texas e-filing service provider and/or email in accordance with the Texas Rules of Civil Procedure on June ___, 2026.

Jason McKemie

Jason McKemie

## EXHIBIT INDEX

| Exhibit | Title | Purpose |
|---|---|---|
| Exhibit A | Motion to Recuse – Pleading History | Procedural history demonstrating repeated filings, unresolved motions, discovery disputes, and case-management failures. |
| Exhibit B | Discovery Email | Notice to Petitioner and counsel regarding discovery deficiencies, missing records, and requests for compliance. |
| Exhibit C | Sworn Budget | Demonstrates Respondent's financial condition, expenses, inability to absorb continued delay, and need for relief. |
| Exhibit D | High Liquidity While Declaring Destitution | Contradicts claims of financial hardship by showing significant available funds or liquidity. |
| Exhibit E | AMEX Annual Summaries | Credit card spending analysis and reconstruction of financial activity. |
| Exhibit F | "Worthless" Investments | Petitioner statements minimizing value of assets later shown to have material value. |
| Exhibit F-1 | No Intouch Statements | Demonstrates missing account continuity, missing statements, and inability to trace transactions. |
| Exhibit G | $0 HSA | Evidence relating to HSA depletion, healthcare interference, and lack of available medical funds. |
| Exhibit G-1 | Tax Transcripts | IRS-source tax records used to verify income, tax liability, withholding, and financial disclosures. |
| Exhibit K | Card Flipping | Demonstrates repeated account/card number changes, continuity issues, and tracing obstacles. |
| Exhibit L | Annual Snapshots Without Inflows or Outflows | Illustrates production of summary balances without underlying transactional support. |
| Exhibit M | Associate Judge's Report | Court findings, procedural history, and prior discovery-related determinations. |
| Exhibit N | Gwen Financial Discovery Compliance Matrix | Visual compliance chart showing discovery requests, deficiencies, missing records, and production failures. |
| Exhibit J | Overpayments / Missing Statements | Analysis of excessive card overpayments, missing statement periods, and inability to trace source funds. |



Copy from re:SearchTX

NO. DF-24-18010 NOTICE: CONTAINS SENSITIVE DATA

| | | |
|---|---|---|
| IN THE MATTER OF<br>THE MARRIAGE OF | §<br>§<br>§ | IN THE DISTRICT COURT |
| GWENDOLYN ULIJASZ-MCKEMIE<br>&<br>JASON MCKEMIE | §<br>§<br>§ | 302nd JUDICIAL DISTRICT<br><br>DALLAS COUNTY, TEXAS |

# VERIFIED MOTION TO RECUSE

## (CONDITIONAL UPON DENIAL OF A STRUCTURAL CURE)

**TO THE HONORABLE JUDGE OF SAID COURT:**

Respondent, **Jason McKemie**, files this ***Verified Motion to Recuse*** not as an opening position, but only as a procedural safeguard.

Respondent does not seek recusal if the structural defects presently before this Court are acknowledged and cured. Respondent seeks only the minimum procedural relief necessary to make a fair trial legally possible:

- A continuance sufficient to allow meaningful review;
- Leave for narrowly tailored **third-party subpoena authority for certified, institution-origin financial records;**
- Leave to subpoena the **Accenture QLE submission and audit trail;**
- Leave to subpoena the **lease buyout contract and related landlord ledger;**
- Enforcement of the **Court's December 17 Reinstatement of Healthcare Order** which orders the reactivation of all of Respondent's benefits which were terminated on **October 31st, 2026,** through the submission of a false Qualifying Life Event (QLE) and a sworn attestation affirming that divorce proceedings had been finalized and that a divorce decree had been signed by a Judge of this Court. **No such decree exists.**
- **This order, if enforced by the District Judge, will provide Respondent with access back to critically needed Healthcare services & Prescription's which have been continually obstructed since December, 18, 2024.** This enforcement additionally reimburses Respondent for the lost Flexible Spending Account Benefits; and the allocated Health Spending Account funds; and removes Petitioner's control over benefits enrollment, card cancellations, and/or delays. This will permit Respondent to (1) resume the critically needed medications he has been obstructed from since December 18, 2024; (2) gain access to the needed MRI's so that he can reschedule the missed surgery from December 2025; and (3) will significant diminish Petitioner's ability to delay and obstruct Respondent's access to care and prescriptions; as the lump sum sill cover deductibles sufficient to proceed with surgical care.

If those structural defects are remedied through written rulings and enforceable compliance mechanisms, Respondent will proceed.

If they are not remedied, then there exists no procedural pathway to a fair adjudication, and recusal becomes mandatory to preserve due process.

This Motion is therefore filed in advance of the hearing to preserve Respondent's rights should the Court decline to cure the structural failures outlined below.

## I. PRIOR RECUSAL & STRUCTURAL DISCOVERY COLLAPSE IN DISTRICT 254

This case arrived in District 302 after a judicial recusal in District 254 precipitated by structural discovery failure.

In District 254:

- Respondent served discovery in good faith.
- Petitioner's legal team withdrew during the discovery period citing financial difficulty.
- Petitioner did not declare herself pro se.
- With approximately forty minutes remaining in discovery, counsel reappeared at 11:08 p.m., filed blanket objections to nearly every request, and declared discovery closed approximately one hour later.

Despite Respondent's Protests:

- Trial was forced despite discovery being completely skipped.
- Respondent was denied meaningful enforcement.
- Recusal followed.

These facts are reflected in the discovery-collapse submission .

## II. SEPTEMBER 8 PRETRIAL CONFERENCE – DISTRICT 302

At the September 8 pretrial conference, Respondent advised Judge Jackson that this case did not resemble a routine divorce matter and that meaningful discovery had never occurred in District 254.

Respondent explained that in District 254:

- He served discovery in good faith;
- Petitioner's counsel moved to withdraw citing financial hardship;
- Petitioner did not formally proceed pro se, creating service ambiguity;
- With less than one hour remaining in the discovery period, counsel reappeared at 11:08 p.m., filed a notice of appearance, and simultaneously lodged blanket objections to nearly every discovery request;
- Approximately one hour later, discovery was declared closed;
- Trial proceeded despite unresolved discovery disputes and without complete financial disclosure.

Respondent further advised Judge Jackson that there could be no fair trial absent:

1. Third-party subpoena authority;
2. Institution-origin certified financial statements;
3. A neutral forensic accountant to reconstruct the estate.

Judge Jackson stated she could not grant subpoena authority at that procedural setting but assured Respondent that he would have ninety (90) days with certified financials to prepare. When Respondent expressed concern that prior counsel had obstructed discovery in District 254, Judge Jackson replied, "That was not my courtroom," and directed Ethan Scroggins to release the certified financials. Counsel agreed.

Respondent relied upon that representation.

## III. ON OCTOBER 31, 2026, RESPONDENT APPEARED BEFORE ASSOCIATE JUDGE TAMIKA ABENDROTH SEEKING REIMBURSEMENT FOR FINANCIAL BURDENS IMPOSED THROUGH FALSE FINANCIAL REPRESENTATIONS AND RELATED PROCEEDINGS.

At that hearing, Respondent informed the Court that Petitioner had produced less than fifteen percent of the necessary certified financial documentation. Respondent further stated that if he filed a Motion to Compel, Petitioner's counsel would again move to withdraw, and that if withdrawal were permitted prior to compliance, discovery would collapse once more.

The following business day, Respondent filed his Motion to Compel. Petitioner's legal team filed a Motion to Withdraw. Respondent objected, arguing that:

- The District Judge had already directed release of certified financials;

- Oral directives are binding;
- Withdrawal prior to compliance would nullify enforcement;
- There was no path to a fair trial without third-party custodian subpoena authority;
- Statement-only production cannot reconstruct accounts involving layered transfers and rotating credit facilities;
- A neutral forensic tracing mechanism remained necessary.

The Associate Judge permitted withdrawal. No complete certified financial production followed.

## III. WHAT OCCURRED AFTER THE NINETY-DAY ASSURANCE

What followed was not compliance with a directive for complete, certified financials.

Instead, the production record reflects:

- Monthly statements missing transaction-detail pages (see Exhibit A deficiency chart);
- Editable CSV or activity exports substituted for institution-issued monthly statements;
- Duplicate documents containing identical transactions labeled as separate months;
- Promised "substantive responses" followed by recycled Bates productions;
- Production delivered in inaccessible format;
- Counsel withdrawal immediately after filing of the Motion to Compel;
- No uninterrupted sequence of institution-origin monthly statements sufficient for tracing.

These deficiencies are not isolated clerical errors. They are structural defects that prevent meaningful estate reconstruction.

## IV. PRESENT STRUCTURAL IMPOSSIBILITY

The estate cannot be evaluated because:

- There is no uninterrupted monthly sequence for any account;
- Institution-origin statements have not been produced;

- Accounts have been rotated, renamed, and layered;
- Funds conceded in mediation were not escrowed;
- Healthcare enforcement remains incomplete;
- An active bankruptcy stay exists under Trustee oversight.

**These facts are extensively documented and;**

**Proceeding to trial under these conditions would:**

- Convert discovery collapse into adjudication;
- Freeze dissipation into final division;
- Render third-party verification impossible;
- Permanently impair Respondent's ability to challenge false or incomplete production.

## V. CONDITIONAL NATURE OF THIS MOTION

Respondent does not seek recusal if:

1. The Court grants limited third-party subpoena rights;
2. The Court enforces its December 17 healthcare order through verified plan-administrator confirmation or escrow replacement;
3. The Court sets a sanctions/compliance hearing prior to trial;
4. The Court enters written rulings clarifying compliance.

If those actions occur, Respondent will proceed.

If they do not, Respondent has no procedural remedy remaining within this Court, and recusal becomes necessary to preserve due process and appellate review.

## VI. VERIFIED UNSWORN DECLARATION (TEX. CIV. PRAC. & REM. CODE § 132.001)

My name is Jason McKemie. My date of birth is **April 8th, 1976**. My address is **539 W. Commerce St., Suite 2010, Dallas, Texas 75208**. I declare under penalty of perjury that the factual statements in this Motion are true and correct based on my personal knowledge and review of the documents referenced herein.

Executed in **Dallas County, Texas** on **February 24, 2026.**

Jason McKemie

**Jason McKemie**
539 W. Commerce St., Suite 2010
Dallas, TX 75208
214-868-4901
jmckemie@mckemie.net

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Motion and proposed order were served on all counsel of record and/or parties entitled to notice in accordance with the Texas Rules of Civil Procedure and applicable e-service rules on the date of filing.

Jason McKemie

Jason McKemie

## EXHIBIT LIST (TO BE ATTACHED)

- Exhibit A: Respondent/Movant Pleadings Index by Category (100 filings / 1,110 pages).
- Exhibit B: Motion to Compel with Color Production Grid
- Exhibit D: Credit Card Over Payment
- Exhibit E: Signed Order to Reinstate Healthcare
- Exhibit F: Motion to Compel Docket Sheet
- Exhibit G: Benefits Summary generated February 2, 2026, reflecting multiple coverages waived.
- Exhibit H: Motion to Obtain Certified Transcript of January 7, 2025 Hearing (with proposed order).
- Exhibit I: Motion to Establish Conditions for Re-Entry of Counsel and Preserve Fair Trial.
- Exhibit K: Unified Proposed Order drafted at the Associate Judge's direction following the February 5 compliance hearing (pending).

## RESPONDENT'S HISTORICAL PLEADINGS REQUESTING MEDICAL STABILIZATION, HOUSING STABILITY, ENFORCEABLE RELIEF, AND THIRD-PARTY VERIFICATION

| Category | Count | Pages |
|---|---|---|
| 1. Affidavits / Declarations / Character-type statements | 7 | 135 |
| 2. Motions (all) | 61 | 807 |
| 3. Motions seeking to "compel" | 7 | 50 |
| 4. Healthcare / Medical / HSA / Abatement or Stay / Standing or Temporary Orders | 41 | 507 |
| 5. Financial relief / reimbursements / fraud / rent / stabilization / Standing or Temporary Orders | 39 | 354 |
| 6. Discovery obstruction / compel / subpoenas / enforcement | 24 | 199 |
| 7. Due process / record / ex parte / court reporter / verbatim record / procedural fairness | 43 | 516 |
| 8. Eviction / housing stability | 10 | 108 |

## 1. AFFIDAVITS / DECLARATIONS / CHARACTER REFERENCES

### 2025

- **07/10/2025** (Entry 81) — **43 pages** — FINANCIAL RELIEF, ENFORCEMENT OF STANDING ORDERS, PROTECTION AGAINST PROCEDURAL ABUSE, AND HEARING ON SPOUSAL SUPPORT, LEGAL FEES, MARITAL DEBT AND EARLY LOAN REPAYMENT DUE TO MEDICAL HARDSHIP – DECLARATION OF CHRISTINA SEGURA IN SUPPORT OF JASON MCKEMIE
- **07/11/2025** (Entry 83) — **66 pages** — REQUEST FOR EMERGENCY HEARING TO PREVENT EVICTION DURING MEDICAL HARDSHIP WITH DECLARATION AND WITNESS STATEMENTS REQUEST FOR ER HEARING TO PREVENT EVICTION DURING MED. HARDSHIP WITH DECLARATION AND STATEMENTS
- **07/24/2025** (Entry 99) — **5 pages** — DECLARATION OF RESPONDENT'S DISASSOCIATION FROM BINDER INTRODUCED BY PETITIONER'S COUNSEL

- **07/24/2025** (Entry 96) — **3 pages** — ERRONEOUS PUBLIC FILING AND EMERGENCY MOTION TO SEAL PREVIOUSLY SUBMITTED DECLARATION
- **11/25/2025** (Entry 134) — **6 pages** — NOTICE OF FILING OF SWORN AFFIDAVIT - CORRECTING FALSE RECORDING ALLEGATIONS AND EX PARTE PREJUDICE

### 2026

- **01/12/2026** (Entry 176) — **8 pages** — AFFIDAVIT ON PUBLIC STORAGE THEFT ACCUSATIONS AND PETITIONERS ACQUISITION OF WEAPON DURING PROCEEDINGS AFFIDAVIT ON PUBLIC STORAGE THEFT ACCUSATIONS AND PETITIONERS ACQUISITION OF WEAPON DURING PROCEEDIN
- **01/12/2026** (Entry 166) — **4 pages** — AFFIDAVIT ON MANUFACTURED ALLEGATIONS & CONCERN FOR PROPERTY RETRIEVAL / CLEAN OUT AFFIDAVIT - MANUFACTURED ALLEGATIONS

## 2. Motions (all Respondent motions & motion-like applications)

### 2025

- **03/14/2025** (Entry 48) — **4 pages** — MOTION - AGREED - WITHDRAW ATTORNEY - BRANT WEBB
- **03/28/2025** (Entry 51) — **2 pages** — NOTICE OF FAILED MEDIATION AND MOTION FOR CONTINUANCE OF APRIL 7th, 2025, PRE-TRIAL HEARING MOTION FOR CONTINUANCE-NOTICE OF FAILED MEDIATION AND OF APRIL 7th, 2025, PRE-TRIAL HEARING
- **04/14/2025** (Entry 55) — **5 pages** — MOTION TO STRIKE IMPROPER EXPERT DESIGNATIONS AND TO LIMIT TESTIMONY OF OPPOSING COUNSEL
- **04/24/2025** (Entry 56) — **1 page** — MOTION FOR NOTICE PRIOR TO ANY DISMISSAL PROPOSED ORDER ON MOTION FOR NOTICE PRIOR TO ANY DISMISSAL
- **04/24/2025** (Entry 60) — **3 pages** — MOTION TO DESIGNATE PRO SE REPRESENTATION AND REQUEST FOR EQUAL ACCESS
- **04/24/2025** (Entry 57) — **4 pages** — MOTION FOR NOTICE PRIOR TO ANY DISMISSAL NOTICE PRIOR TO ANY DISMISSAL
- **04/24/2025** (Entry 58) — **1 page** — ORDER ON MOTION TO DESIGNATE PRO SE REPRESENTATION AND REQUEST FOR EQUAL ACCESS PROPOSED ORDER ON MOTION TO DESIGNATE PRO SE REPRESENTATION AND REQUEST FOR EQUAL ACCESS
- **04/24/2025** (Entry 59) — **1 page** — MOTION TO DESIGNATE PRO SE REPRESENTATION AND REQUEST FOR EQUAL ACCESS PROPOSED ORDER ON MOTION TO DESIGNATE PRO SE REPRESENTATION AND REQUEST FOR EQUAL ACCESS

- **06/24/2025** (Entry 66) — **8 pages** — EMERGENCY MOTION FOR TEMPORARY FINANCIAL RELIEF DUE TO IMMINENT HOUSING LOSS, MEDICAL HARDSHIP EMERGENCY M/FINANCIL
- **06/27/2025** (Entry 67) — **4 pages** — MOTION TO PRESERVE DISCOVERY RIGHTS AND COMPEL DISCOVERY RESPONSES MOTION TO PRESERVE DISCOVERY RIGHTS AND COMPELL DISCOVERY RESPONSES
- **06/27/2025** (Entry 69) — **5 pages** — OBJECT IN MATERIAL DISCOVERY NOTICE OF MATERIAL DISCOVERY NOTICE OF MATERIAL DISCOVERY
- **07/10/2025** (Entry 70) — **1 page** — FINANCIAL RELIEF, ENFORCEMENT OF STANDING ORDERS, PROTECTION AGAINST PROCEDURAL ABUSE, AND HEARING ON SPOUSAL SUPPORT, LEGAL FEES, MARITAL DEBT AND EARLY LOAN REPAYMENT DUE TO MEDICAL HARDSHIP – ESERVED COPY OF ORDER DENYING JASON MCKEMIE'S RELIEF
- **07/10/2025** (Entry 79) — **26 pages** — FINANCIAL RELIEF, ENFORCEMENT OF STANDING ORDERS, PROTECTION AGAINST PROCEDURAL ABUSE, AND HEARING ON SPOUSAL SUPPORT, LEGAL FEES, MARITAL DEBT AND EARLY LOAN REPAYMENT DUE TO MEDICAL HARDSHIP – FINANCIAL RELIEF, CONTINUANCE, ENFORCEMENT OF STANDING ORDERS
- **07/10/2025** (Entry 80) — **149 pages** — FINANCIAL RELIEF, ENFORCEMENT OF STANDING ORDERS, PROTECTION AGAINST PROCEDURAL ABUSE, AND HEARING ON SPOUSAL SUPPORT, LEGAL FEES, MARITAL DEBT AND EARLY LOAN REPAYMENT DUE TO MEDICAL HARDSHIP – EVIDENCE AND EXHIBITS
- **07/10/2025** (Entry 71) — **2 pages** — FINANCIAL RELIEF, ENFORCEMENT OF STANDING ORDERS, PROTECTION AGAINST PROCEDURAL ABUSE, AND HEARING ON SPOUSAL SUPPORT, LEGAL FEES, MARITAL DEBT AND EARLY LOAN REPAYMENT DUE TO MEDICAL HARDSHIP – ESERVE COVER LETTER (ORDER DENYING JASON MCKEMIE'S RELIEF)
- **07/10/2025** (Entry 76) — **1 page** — ORDER TO ENFORCE STANDING ORDERS AND PREVENT LITIGATION INTERFERENCE PROPOSED ORDER/JUDGMENT
- **07/10/2025** (Entry 77) — **1 page** — ORDER GRANTING EMERGENCY MOTION TO STAY EXECUTION OF WRIT OF POSSESSION PROPOSED ORDER/JUDGMENT
- **07/10/2025** (Entry 78) — **1 page** — FINDING OF FACT AND FRAUD UPON THE COURT PROPOSED ORDER/JUDGMENT
- **07/10/2025** (Entry 75) — **2 pages** — ORDER TO PREVENT ANY FURTHER OBSTRUCTION AND TO COMPEL ACCESS TO HSA CARD/ FUNDS PROPOSED ORDER/JUDGMENT
- **07/10/2025** (Entry 81) — **43 pages** — FINANCIAL RELIEF, ENFORCEMENT OF STANDING ORDERS, PROTECTION AGAINST PROCEDURAL ABUSE, AND HEARING ON SPOUSAL SUPPORT, LEGAL FEES, MARITAL DEBT AND EARLY LOAN REPAYMENT DUE TO MEDICAL HARDSHIP – DECLARATION OF CHRISTINA SEGURA IN SUPPORT OF JASON MCKEMIE
- **07/11/2025** (Entry 83) — **66 pages** — REQUEST FOR EMERGENCY HEARING TO PREVENT EVICTION DURING MEDICAL HARDSHIP WITH DECLARATION AND WITNESS STATEMENTS REQUEST FOR ER HEARING TO PREVENT EVICTION DURING MED. HARDSHIP WITH DECLARATION AND STATEMENTS

- **07/16/2025** (Entry 84) — **4 pages** — ORDER GRANTING M/SANCTION AND REFERRAL PROPOSED MOTION SANCTION FOR AGGRAVATED PERJURY AND FRAUD UPON THE COURT
- **07/16/2025** (Entry 86) — **75 pages** — EMERGENCY M/PRESERVE EVIDENCE AND CONTINUE TRIAL DUE TO PROCEDURAL SABOTAGE AND BREAKDOWN IN JUDICIAL OVERSIGHT
- **07/16/2025** (Entry 87) — **4 pages** — TO SEEK DISPROPORTIONATE DIVISION OF MARITAL ESTATE NOTICE OF INTENT SEEK DISPROPORTIONATE DIVISION OF
- **07/17/2025** (Entry 85) — **5 pages** — ORDER GRANTING M/SANCTIONS AND REFERRAL PROPOSED MOTION SANCTION FOR AGGRAVATED PERJURY AND FRAUD UPON THE OCURT AGAINST
- **07/17/2025** (Entry 88) — **2 pages** — EMERGENCY NOTICE OF COUNSEL MISCONDUCT, PRIOR COMMUNICATIONS, AND DEMAND FOR IMMEDIATE COURT ACTION
- **07/24/2025** (Entry 91) — **8 pages** — RESPONDENT VERIFIED M/RECUSE
- **07/24/2025** (Entry 97) — **1 page** — RESPONDENT'S EMERGENCY MOTION FOR CONTINUANCE PROPOSED ORDER/JUDGMENT
- **07/24/2025** (Entry 96) — **3 pages** — ERRONEOUS PUBLIC FILING AND EMERGENCY MOTION TO SEAL PREVIOUSLY SUBMITTED DECLARATION
- **07/24/2025** (Entry 97) — **1 page** — RESPONDENT'S EMERGENCY MOTION FOR CONTINUANCE PROPOSED ORDER/JUDGMENT
- **07/24/2025** (Entry 99) — **5 pages** — DECLARATION OF RESPONDENT'S DISASSOCIATION FROM BINDER INTRODUCED BY PETITIONER'S COUNSEL
- **07/24/2025** (Entry 100) — **11 pages** — EMERGENCY MOTION FOR IMMEDIATE RELIEF, OBJECTION TO TRIAL, AND REQUEST FOR ACKNOWLEDGEMENT
- **07/30/2025** (Entry 103) — **5 pages** — COVER PAGE OBJECTION INVENTORY PROCEDURAL NOTIFICATION 1801(b) COVER PAGE OBJECTION INVENTORY PROCEDURAL NOTIFICATION
- **08/06/2025** (Entry 104) — **7 pages** — EMERGENCY MOTION TO ABATE TRIAL SETTING AND WITHHOLD FINAL ORDERS PENDING RESOLUTION OF OUTSTANDING MOTIONS, PROCEDURAL VIOLATIONS, AND DISCOVERY COLLAPSE
- **08/07/2025** (Entry 105) — **11 pages** — JUDICIAL NOTICE OF UNRULED MOTIONS REQUIRING DETERMINATION PRIOR TO ANY PRETRIAL HEARING, TRIAL, OR FINAL JUDICIAL NOTICE OF UNRULED MOTIONS
- **10/02/2025** (Entry 119) — **6 pages** — MOTION FOR REINSTATEMENT OF WRONGFULLY REPORTED AND WITHHELD MARITAL FUNDS
- **10/02/2025** (Entry 120) — **6 pages** — WAITING FOR $80.00- REQUEST
- **10/02/2025** (Entry 121) — **6 pages** — MOTION TO OBTAIN CERTIFIED TRANSCRIPT FOR JANUARY 7, 2025, HEARING AND REQUEST FOR PAYMENT FROM

- **10/31/2025** (Entry 124) — **1 page** — JASON MCKEMUE'S RELIEF ORDER - DENYING JASON MCKEMIE'S RELIEF
- **11/04/2025** (Entry 125) — **8 pages** — EMERGENCY OBJECTION TO MOTION TO WITHDRAW AS COUNSEL AND REQUEST FOR EXPEDITED HEARING (INCLUDES
- **11/10/2025** (Entry 130) — **4 pages** — EMERGENCY M/ VACATE SETTING BEFORE ASSOCIATE JUDGE AND RESET ENFORCE EMERGENCY MOTION TO VACATE
- **11/21/2025** (Entry 133) — **6 pages** — MOTION FOR DE NOVO DISTRICT JUDGE REVIEW OF PRIOR RULINGS AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER MOTION - MISCELLANEOUS
- **12/12/2025** (Entry 136) — **25 pages** — EMERGENCY MOTION FILING SEEKING IMMEDIATE RELIEF REQUIRING MEDICAL ACCESS
- **12/19/2025** (Entry 143) — **26 pages** — MOTION TO COMPEL (ENVELOPE #109297794 DOC001)
- **12/19/2025** (Entry 145) — **18 pages** — EMERGENCY ENFORCEMENT ORDER FOR MEDICAL PRESERVATION ORDER - MISC.
- **12/23/2025** (Entry 146) — **2 pages** — TEMPORARY RESTRAINING ORDER PROPOSED ORDER/JUDGMENT
- **12/23/2025** (Entry 148) — **2 pages** — TEMPORARY RESTRAINING ORDER HEALTHCARE REINSTATEMENT & CONTINUITY PROPOSED ORDER/JUDGMENT
- **12/23/2025** (Entry 150) — **3 pages** — TO ISSUE SUBPOENA REGARDING LEASE BUYOUT AND ASSOCIATED PAYMENTS MOTION - LEAVE
- **12/23/2025** (Entry 151) — **181 pages** — MOTION - SEALED SUBMISSION FOR IN CAMERA REVIEW ONLY (CONFIDENTIAL) MOTION SEAL SUBMISSION FOR CAMERA REVIEW
- **12/29/2025** (Entry 152) — **13 pages** — SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION TO COMPEL (REQUEST FOR CUSTODIAN CONTINUITY RECORDS / SUBPOENA LEAVE) SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION TO COMPEL

## 2026

- **01/12/2026** (Entry 164) — **6 pages** — EMERGENCY MOTION ON MEDICAL HARM
- **01/12/2026** (Entry 175) — **7 pages** — EMERGENCY MOTION TO STAY EVICTION PROCEEDINGS
- **01/12/2026** (Entry 173) — **10 pages** — EMERGENCY MOTION TO TEMORARY STAY OR IN THE ALTERNATIVE, IMPOSE PROTECTIVE CONDITIONS ON COURT-AUTHORIZED PROPERTY RETRIEVAL DUE TO MEDICAL INCAPACITY
- **01/12/2026** (Entry 180) — **11 pages** — MOTION TO ABATE TRIAL, ENFORCE DISCOVERY ORDERS AND HEALTHCARE REINSTATEMENT

- **01/15/2026** (Entry 182) — **4 pages** — RESPONDENT'S MOTION TO ESTABLISH CONDITIONS FOR RE-ENTRY OF COUNSEL AND TO PRESERVE FAIR TRIAL
- **01/26/2026** (Entry 185) — **5 pages** — NOTICE OF PRESERVATION OF WITNESSES, & LARGE DISCOVERY PRODUCTION IN FINAL HOUR NOTICE OF PRESERVATION OF WITNESSES, & LARGE DISCOVERY PRODUCTION IN FINAL HOUR

## 3. Motions seeking to "compel" something

### 2025

- **06/27/2025** (Entry 67) — **4 pages** — MOTION TO PRESERVE DISCOVERY RIGHTS AND COMPEL DISCOVERY RESPONSES MOTION TO PRESERVE DISCOVERY RIGHTS AND COMPELL DISCOVERY RESPONSES
- **07/10/2025** (Entry 75) — **2 pages** — ORDER TO PREVENT ANY FURTHER OBSTRUCTION AND TO COMPEL ACCESS TO HSA CARD/ FUNDS PROPOSED ORDER/JUDGMENT
- **07/10/2025** (Entry 72) — **1 page** — ORDER ON MOTION TO COMPELL DISCOVERY AND REQUEST FOR SANCTIONS PROPOSED ORDER/JUDGMENT
- **07/10/2025** (Entry 73) — **1 page** — ORDER ON MOTION TO COMPEL DISCOVERY AND REQUEST FOR SANCTIONS PROPOSED ORDER/JUDGMENT
- **12/19/2025** (Entry 143) — **26 pages** — MOTION TO COMPEL (ENVELOPE #109297794 DOC001)
- **12/29/2025** (Entry 152) — **13 pages** — SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION TO COMPEL (REQUEST FOR CUSTODIAN CONTINUITY RECORDS / SUBPOENA LEAVE) SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION TO COMPEL

### 2026

- **01/08/2026** (Entry 159) — **4 pages** — ORDER ON MOTION TO COMPEL PROPOSED ORDER ON MOTION TO COMPEL

## 4. Healthcare / medical / HSA / abatement or stay to stabilize / standing or temporary orders

### 2024

- **12/27/2024** (Entry 24) — **3 pages** — REQUEST FOR TEMPORARY ORDERS NOTICE OF COURT PROCEEDING - REQUEST FOR TEMPORARY ORDERS

## 2025

- **06/24/2025** (Entry 66) — **8 pages** — EMERGENCY MOTION FOR TEMPORARY FINANCIAL RELIEF DUE TO IMMINENT HOUSING LOSS, MEDICAL HARDSHIP EMERGENCY M/FINANCIL

- **07/10/2025** (Entry 70) — **1 page** — FINANCIAL RELIEF, ENFORCEMENT OF STANDING ORDERS, PROTECTION AGAINST PROCEDURAL ABUSE, AND HEARING ON SPOUSAL SUPPORT, LEGAL FEES, MARITAL DEBT AND EARLY LOAN REPAYMENT DUE TO MEDICAL HARDSHIP – ESERVED COPY OF ORDER DENYING JASON MCKEMIE'S RELIEF

- **07/10/2025** (Entry 71) — **2 pages** — FINANCIAL RELIEF, ENFORCEMENT OF STANDING ORDERS, PROTECTION AGAINST PROCEDURAL ABUSE, AND HEARING ON SPOUSAL SUPPORT, LEGAL FEES, MARITAL DEBT AND EARLY LOAN REPAYMENT DUE TO MEDICAL HARDSHIP – ESERVE COVER LETTER (ORDER DENYING JASON MCKEMIE'S RELIEF)

- **07/10/2025** (Entry 75) — **2 pages** — ORDER TO PREVENT ANY FURTHER OBSTRUCTION AND TO COMPEL ACCESS TO HSA CARD/ FUNDS PROPOSED ORDER/JUDGMENT

- **07/10/2025** (Entry 76) — **1 page** — ORDER TO ENFORCE STANDING ORDERS AND PREVENT LITIGATION INTERFERENCE PROPOSED ORDER/JUDGMENT

- **07/10/2025** (Entry 77) — **1 page** — ORDER GRANTING EMERGENCY MOTION TO STAY EXECUTION OF WRIT OF POSSESSION PROPOSED ORDER/JUDGMENT

- **07/10/2025** (Entry 79) — **26 pages** — FINANCIAL RELIEF, ENFORCEMENT OF STANDING ORDERS, PROTECTION AGAINST PROCEDURAL ABUSE, AND HEARING ON SPOUSAL SUPPORT, LEGAL FEES, MARITAL DEBT AND EARLY LOAN REPAYMENT DUE TO MEDICAL HARDSHIP – FINANCIAL RELIEF, CONTINUANCE, ENFORCEMENT OF STANDING ORDERS

- **07/10/2025** (Entry 80) — **149 pages** — FINANCIAL RELIEF, ENFORCEMENT OF STANDING ORDERS, PROTECTION AGAINST PROCEDURAL ABUSE, AND HEARING ON SPOUSAL SUPPORT, LEGAL FEES, MARITAL DEBT AND EARLY LOAN REPAYMENT DUE TO MEDICAL HARDSHIP – EVIDENCE AND EXHIBITS

- **07/10/2025** (Entry 81) — **43 pages** — FINANCIAL RELIEF, ENFORCEMENT OF STANDING ORDERS, PROTECTION AGAINST PROCEDURAL ABUSE, AND HEARING ON SPOUSAL SUPPORT, LEGAL FEES, MARITAL DEBT AND EARLY LOAN REPAYMENT DUE TO MEDICAL HARDSHIP – DECLARATION OF CHRISTINA SEGURA IN SUPPORT OF JASON MCKEMIE

- **07/11/2025** (Entry 83) — **66 pages** — REQUEST FOR EMERGENCY HEARING TO PREVENT EVICTION DURING MEDICAL HARDSHIP WITH DECLARATION AND WITNESS STATEMENTS REQUEST FOR ER HEARING TO PREVENT EVICTION DURING MED. HARDSHIP WITH DECLARATION AND STATEMENTS

- **07/24/2025** (Entry 99) — **5 pages** — DECLARATION OF RESPONDENT'S DISASSOCIATION FROM BINDER INTRODUCED BY PETITIONER'S COUNSEL