FILED
NOV 25 2026
CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re:<br>JASON EMORY McKEMIE,<br>Debtor. | §<br>§<br>§ | Case No. 26-30161-mvl7<br>Chapter 7<br><br>Emergency consideration requested; no hearing set. |

## SUPPLEMENTAL MEMORANDUM SUPPORTING ELECTRONIC FILING ACCESS AND PROCEDURAL PROTECTIONS

This memorandum supports the additional, independently decidable requests in paragraphs 41–42 of the Amended Emergency Motion. It is part of that motion's supporting papers, not a separate motion.

## PART A. ELECTRONIC FILING ACCESS

Jason Emory McKemie, the Chapter 7 Debtor, requests individual authorization under Federal Rule of Bankruptcy Procedure 5005(a)(3)(B)(i) to file electronically in this bankruptcy case. He requests prompt, separate determination of this access motion because every further paper filing imposes expense and transportation barriers described in his accompanying declaration.

## I. ACCESS BARRIERS AND THE REQUESTED AUTHORIZATION

1. Debtor is indigent, unemployed, without his own housing, and without a vehicle following its surrender. He is proceeding without counsel because he cannot afford counsel. He can prepare PDFs and communicate by email, but has no CM/ECF filing privileges. Declaration ¶¶ 2–4.

2. Debtor incurred $256.91 in documented filing-related gas and UPS charges during November 9–16, 2026, including $76.67 for the November 16 shipment. The UPS owner and driver waited after closing. These costs consume funds needed for food, housing, clothing, medication, and other essentials. Supporting Declaration ¶¶ 2–5; Exhibits A–D.

3. Debtor requests authorization to file his own documents through CM/ECF in Case No. 26-30161-mvl7; remote completion of any registration, identity-verification, security, or training requirements; and receipt of electronic notices associated with that registration. He will protect his credentials, comply with signature and redaction requirements, and use the authorization only for filings on his own behalf. Declaration ¶ 6.

## II. GOVERNING AUTHORITY AND PRACTICAL IMPLEMENTATION

4. Rule 5005(a)(3)(B)(i) expressly permits an unrepresented individual to file electronically when authorized by court order or local rule. The Court's published FAQ describes routine registration as limited to attorneys, trustees, and creditors filing for a company. Debtor therefore requests an individualized order under the national rule, together with any case-specific modification of administrative requirements needed to implement it. N.D. Tex. L.B.R. 1001-1(b)(3).

5. The Court's Electronic Document Submission system already identifies an emergency requiring filing while the clerk's office is closed as a permissible use. Its published terms state that submission is not filing until a deputy clerk reviews and enters the document. Debtor requests a continuing, expressly authorized method; he does not ask that an unapproved email be treated as a filed paper.

6. Debtor requests that the Clerk provide registration instructions within two business days after entry of the order and activate access promptly upon completion. Pending activation, he requests leave to submit signed PDFs through a method designated in writing by the Clerk, with an acknowledgment identifying the submission and its filing status. If direct CM/ECF privileges are technically unavailable, Debtor requests that

this designated method remain available in this case rather than requiring repeated travel or overnight shipment.

7. Electronic filing privileges, PACER viewing access, and Debtor Electronic Bankruptcy Noticing are different functions. Debtor seeks filing privileges and associated electronic notices. Enrollment in DeBN alone would not provide the requested filing ability or substitute for opposing parties' required service.

8. This motion concerns the main bankruptcy case only. It does not request an order in Adversary Proceeding No. 26-03034-mvl. Debtor requests a separate written disposition of electronic filing access, without deferring that decision until resolution of his case-management requests in this Emergency Motion.

## III. PRAYER

Debtor requests an order granting individual electronic filing authorization, directing prompt remote implementation, authorizing an interim Clerk-designated submission method, and granting the case-specific administrative relief necessary to make that access functional.

## PART B. SERVICE, CONFERRAL, DISCLOSURE, AND ESTATE PROTECTION

Jason Emory McKemie requests enforceable procedures that provide complete service, accurate reporting of his positions, fair notice of the relief to be heard, and a meaningful opportunity to present evidence. He seeks a case-management order under 11 U.S.C. § 105(a), (d), Federal Rules of Bankruptcy Procedure 9006, 9007, 9013, 9014, and 9036, and N.D. Tex. L.B.R. 1001-1(b)(3), 7007-1(a)–(c), 9013-1(a), and 9014-1.

## I. A DOCUMENTED NEED FOR ENFORCEABLE PROCEDURES

1. Debtor came to bankruptcy court on January 12, 2026 after seeking emergency housing, financial, and healthcare protection in state court. Judge Sandra Jackson directed him to bankruptcy court that day. His accompanying declaration recounts that conversation from personal recollection and explains the filing and transportation barriers he now faces. Declaration ¶¶ 2–16. The referral explains his reliance on this forum; the requested relief rests on this Court's own statutory and procedural authority.

2. On November 11, 2026 at 12:39 p.m. Central, Debtor transmitted his Statement of Positions, expressly replacing his November 10 email. At 1:42 p.m., Jonathan D. Steele committed in writing that Ms. Ulijasz would attach the statement in full to her WebEx motion and response to Debtor's motion to compel, report his positions in the conference certificates, and email both filings when filed. Appendix pp. 2–7; Declaration ¶¶ 20–21.

3. ECF 141 instead reproduces the November 10 email in its certificate of conference. Its certificate states that the motion and Exhibits A–D were served by email and first-class mail on November 12. ECF 142 and ECF 143 also certify November 12 service. The service email from counsel's office in Debtor's records is dated November 13 at 9:45:03 a.m. Central. Appendix pp. 8–12; ECF 141, pp. 12–13; ECF 142, p. 5; ECF 143, p. 13. Debtor declares that he did not receive the filings by email on November 12. Declaration ¶¶ 22–24.

4. ECF 142 sought a November 13, 5:00 p.m. response deadline. The November 13 delivery left less than eight hours that day. Debtor had requested coordinated consideration of the testimony motions, but did not authorize omission of his replacement statement or delayed delivery of the filed documents. He requests verification of the service discrepancy and correction of any inaccurate certification after the relevant transmission and mailing evidence is produced. ECF 142, pp. 2, 4–5; Appendix pp. 2, 8, 11.

## II. THE COURT CAN ORDER SPECIFIC SAFEGUARDS

5. Rule 9014(a) requires reasonable notice and an opportunity to be heard. Rule 9014(b) distinguishes service of an initiating motion under Rule 7004 from service of later papers under Civil Rule 5(b). A docket filing alone does not establish service on a person who is not an authorized electronic-service recipient. Rule 9036 and the Court's ECF service procedures govern electronic service. Debtor requests an additional direct-delivery requirement, without dispensing with any required formal service.

6. Local Rule 7007-1(c), applicable through Local Rule 9013-1(a), already requires signatures of the attorneys or parties to an agreed proposed order. Debtor seeks an express case-specific prohibition against representing his agreement without his signed approval of the exact matter represented. His silence, receipt of an email, agreement to discuss dates, or agreement to a limited procedural point cannot be expanded into agreement to substantive relief.

7. Local Rule 9014-1(c) ordinarily requires exchange of exhibits and filing and delivery of witness and exhibit lists at least three calendar days before a hearing. Debtor requests seven calendar days for contested evidentiary hearings scheduled sufficiently after entry of the proposed order, with particularized disclosure of witness topics and the relief to be adjudicated. This is a requested enlargement by case-specific order, not a representation that the existing local rule already requires seven days. Existing earlier disclosure deadlines remain effective.

## III. REQUESTED SERVICE AND HEARING PROTECTIONS

8. For each paper filed or submitted for judicial consideration that must be served on Debtor, require the filing party to email a complete readable PDF and every attachment to jmckemie@mckemie.net on the same day, promptly after filing, in addition to legally required service. Require identification of the docket entry, filing date, document title, and each attachment; a paywall, expiring link, or inaccessible folder is not a substitute. If size requires multiple messages, require sequentially numbered parts.

9. Require certificates to identify the papers served, service date and method, and recipient addresses. For direct email delivery, require the actual transmission time and time zone. Require preservation of sent messages, attachment lists, rejection notices, and existing mailing records. On a specific service dispute, require the sender to produce the contemporaneous proof within two business days and correct an inaccurate certificate within one business day after discovering the inaccuracy.

10. Require actual notice of every hearing, continuance, and material change in the requested relief, including identification of the motions, disputed issues, whether testimony will be taken, and the participation instructions. Require copies to Debtor of nonprivileged communications with court staff concerning settings, proposed orders, or the scope of relief. Apply Rule 9003's prohibition on unauthorized ex parte communications concerning the case.

11. Before an ordinary motion affecting Debtor, require delivery of the specific proposed relief and at least three business days for a written position. The certificate must accurately report the current position on each material request, identify any conditions, and attach the substantive conferral exchange on which a claimed agreement relies. If no response is received, report that fact; do not label the request agreed or affirmatively unopposed. A genuine emergency must be explained to the Court, with the actual efforts to confer disclosed.

12. Require Debtor's express signature approving the exact relief before describing a motion, proposed order, stipulation, withdrawal, waiver, or material amendment as agreed by him. A signed agreement on scheduling alone shall not establish consent to the merits, withdrawal of an objection, waiver of testimony, or fees. Prohibit presentation of an altered version as the version he approved.

13. Require a shortened-time application to identify the ordinary deadline, requested deadline, facts creating the emergency, actual delivery time, and Debtor's current position. Require any order shortening time to state a definite response deadline and an opportunity to respond to newly supplied material. Debtor requests restoration of a meaningful response period upon a proven service failure. He does not request automatic alteration of a statutory deadline or permission to disregard an existing order while a correction request is pending.

14. For contested evidentiary hearings, require witness identities, topics, anticipated duration, separately numbered exhibit lists with complete exhibits, and deposition designations at least seven calendar days before the hearing when the schedule permits. Preserve the local rule's exception for material used solely for impeachment. Require a written request showing good cause before adding substantive relief, a witness, or non-impeachment evidence after the deadline; allow a response and an appropriate cure before reliance on the late material.

15. Require a clean copy and redline of materially revised proposed orders. Prohibit representing unrequested indemnity, fee shifting, releases, estate-property determinations, or waivers as previously agreed or already adjudicated. Before entry, require notice and an opportunity to object to disputed provisions; request express written rulings on each disputed procedural protection and any unresolved objection material to the ruling.

## IV. THEFT OF ESTATE PROPERTY, CONCEALMENT, AND RECOVERY

16. Debtor alleges theft of bankruptcy-estate property, theft of his separate property and evidence, deliberate concealment and siphoning of hundreds of thousands of dollars from the marital estate before the divorce filing, and the loading of community debt onto him under a false short-term-budget-crunch narrative. The evidence includes the April 16 prohibition in ECF 57, the official September 3 testimony about continued taking and the return instruction, and the pre-divorce account 3898 records. Supporting Declaration ¶¶ 17, 26, 38–40; Exhibits F, G, I. Theft under Texas Penal Code § 31.03(a), (b)(1) requires unlawful appropriation with intent to deprive the owner; Debtor identifies nonconsensual taking and retention of his property and evidence. His bankruptcy claims invoke §§ 362(a)(3), 362(k)(1), and 541(a)(1), (2), and (6), and enforcement of this Court's own order. He requests written rulings on the specific property, acts, estate interests, and recovery procedure, rather than dismissal of the theft as merely a divorce dispute.

17. ECF 110, p. 12, expressly acknowledges that an overdraft does not itself exclude earlier withdrawals having been placed in another asset or later redeposited. ECF 111, p. 12, advances temporal objections to tracing, while p. 17 seeks production to the Trustee without dissemination to Debtor. Appendix pp. 13–15. Debtor opposes those restrictions and seeks institution-origin transfer and destination records. He does not adopt Movant's account balances, marriage date, ownership claims, or characterization of the funds. The fact that funds were siphoned before a filing or that an account was later overdrawn is not a substitute for tracing the identified transfers and determining recoverable interests. Exhibit I establishes that account 3898 existed before the divorce filing; its statement and wire instruction are not adopted as a complete accounting.

18. The Court should promptly determine the authorized discovery route for the records sought in ECF 97 and the objections in ECF 111. If particular discovery must proceed in the stay contested matter under Rule 9014(c), Debtor requests identification of that route and a concrete schedule, rather than a procedural dead end. This motion does not request adjudication in, or consolidation with, the separately docketed adversary proceeding.

19. Under 11 U.S.C. §§ 105(d) and 704(a)(7), Debtor requests a status conference and that the Trustee provide, within fourteen days after entry of the order, a written status identifying the estate interests and recovery claims being evaluated, whether any identified property has been abandoned by an effective order or statutory abandonment, the discovery route contemplated, and the next steps and target dates. Any request to withhold responsive information should identify its legal basis for decision by the Court. Debtor does not seek to assume the Trustee's authority or to distribute unadministered estate assets through this procedural motion.

## V. ENFORCEMENT AND SEPARATE RULINGS

20. Require prospective compliance and prompt correction. For a demonstrated violation, Debtor requests a hearing and a written ruling on appropriate relief, including restoration of response time, an evidentiary cure, and, where separately noticed and legally established, compensatory costs, sanctions, or contempt. Any Rule 9011 relief will follow its separate-motion and safe-harbor procedure. Debtor opposes any award of fees against him.

Debtor requests entry of the accompanying procedural order, a separate prompt ruling on electronic filing access, a status conference addressing estate investigation, and distinct written grant-or-deny rulings on the material protections requested above.

Dated: November 17, 2026.

/s/ Jason Emory McKemie

Jason Emory McKemie
Debtor, pro se
539 W. Commerce St., #2010, Dallas, TX 75208
(214) 519-8958 | jmckemie@mckemie.net

## CASE NO. 26-30161-mvl7 · EVIDENCE APPENDIX

| | |
|---|---|
| 2 | November 11 replacement email to counsel |
| 3-6 | November 11 Statement of Positions |
| 7 | Steele reply promising inclusion and service |
| 8 | November 13 delivery email |
| 9-10 | ECF 141 pages 12-13 |
| 11 | ECF 142 page 5 |
| 12 | ECF 143 page 13 |
| 13 | ECF 110 page 12 |
| 14-15 | ECF 111 pages 12 and 17 |
| 16 | Stay declaration |
| 17 | Stay Exhibit A reset email |
| 18-22 | Supporting declaration |
| 23-27 | Declaration Exhibits A-E |
| 28-30 | Exhibit F: April 16 order ECF 57 |
| 31-32 | Exhibit G: official September 3 testimony pp.24-25 |
| 33-38 | Exhibit H: participant-reported divorce QLE |
| 39-40 | Exhibit I: pre-divorce account 3898 |

November 11, 2026 email from Debtor — replacement statement

---

**From:** Jason McKemie <jmckemie@mckemie.net>

**Subject:** Re: Case No. 26-30161-mvl7: Debtor's Response with Statement of Position Regarding Movant's Forthcoming Motion to Appear Remotely

**Date:** November 11, 2026 at 12:39:02 PM CST

**To:** Jonathan Steele <JSteele@beermannlaw.com>

**Cc:** saboucher@beermannlaw.com, rgutierrez@beermannlaw.com, rdafoe@wslawpc.com, rebecca@armstronglawtexas.com, terra@armstronglawtexas.com, lauren@armstronglawtexas.com, areya@holderlawpc.com, trustee@holderlawpc.com, ustpregion06.da.ecf@usdoj.gov, mvl_settings@txnb.uscourts.gov

**Attachment: McKemie Statement of Position - Nov 18 Hearing V3.pdf**

Mr. Steele:

Attached is the Debtor's Statement of Positions on the Movant's anticipated WebEx motion and the November 18, 2026 evidentiary hearing on ECF 110 and ECF 97. It responds to your conferral request of November 10, 2026, 11:24 a.m., and replaces my email response of November 10, 2026. Please attach the Statement, in full, to the WebEx motion and to your response to the Debtor's Motion to Compel, and report each position in your certificate of conference. Please state in writing by 9:00 a.m. Central on Thursday, November 12, 2026 whether the Movant AGREES or DOES NOT AGREE to items 6, 7, 8, 9, and 10.

Please serve both filings on me by email when filed. Both sides have asked that the WebEx motion be decided together with the Debtor's Motion to Compel on or before Monday, November 16, 2026. The courtroom deputy is copied for that reason. The ink-signed original of this Statement will follow to the Clerk in Thursday's overnight delivery.

PLEASE ATTACH THE ATTACHED STATEMENT, IN FULL, TO THE FORTHCOMING WEBEX MOTION AND TO THE RESPONSE TO THE DEBTOR'S MOTION TO COMPEL, AND TO REPORT EACH POSITION BELOW IN THE CERTIFICATE OF CONFERENCE.

Jason Emory McKemie, Debtor, pro se
539 W. Commerce St., #2010, Dallas, Texas 75208
(214) 519-8958
jmckemie@mckemie.net

---

reproduced below as sent, in four pages. Mr. Steele's 1:42 p.m. email is Exhibit D.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

In re Jason Emory McKemie, Debtor | Case No. 26-30161-mvl7 | Chapter 7

# DEBTOR'S STATEMENT OF POSITIONS ON MOVANT'S ANTICIPATED WEBEX MOTION AND THE NOVEMBER 18, 2026, EVIDENTIARY HEARING (ECF 110 AND ECF 97)

Provided to Movant's counsel on November 11, 2026, in response to the conferral request of Jonathan D. Steele dated November 10, 2026, 11:24 a.m. This statement replaces the Debtor's email response of November 10, 2026.

**MOVANT'S COUNSEL HAS BEEN ASKED TO ATTACH THIS STATEMENT, <u>IN FULL</u>, TO THE WEBEX MOTION AND TO THE RESPONSE TO THE DEBTOR'S MOTION TO COMPEL, AND TO REPORT EACH POSITION BELOW IN THE CERTIFICATE OF CONFERENCE.**

The Debtor will be in the Dallas courtroom on November 18, 2026, and will cross-examine Gwendolyn Laura Ulijasz in person, as she has been called as an adverse witness in both ECF 110 and ECF 97 set by the court to be heard that day. Movant's predicted Motion for Remote Appearance via WebEx has not yet been served nor filed with the Court at this time. (Prediction: Debtor's Motion to Compel ¶¶ 5, 14). These positions respond to the motion as described by counsel and waive no objection to the motion, declaration, exhibits, proposed order, or schedule as filed. No position is agreed, waived, or resolved except where this statement says **AGREES**.

---

1. **REMOTE OR HYBRID TESTIMONY BY MS. ULIJASZ:............................................................................<u>OPPOSED</u>**

   The hearing is set in person; her own Notice of Final Hearing (served October 7, 2026) says in person. The Debtor is indigent, has had to surrender his vehicle, and is making all necessary arrangements to travel to Dallas to be in the courtroom for these two hearings as set by Judge Larson on Oct 6, 2026; if the Debtor can be there, Movant can be there too. Fed. R. Bankr. P. 9014(d) requires testimony on disputed material facts to be taken as in an adversary proceeding; Fed. R. Civ. P. 43(a), through Rule 9017, allows remote testimony only for good cause in compelling circumstances. The Debtor does not consent and asks that any ruling state the compelling circumstance found.

2. **THE LISTED WEBEX "SAFEGUARDS": ......................................................................................................<u>OPPOSED</u>**

   Camera on, alone in a room, sworn remotely, counsel in the courtroom: none is a compelling circumstance. They are conditions on remote testimony, not a reason for it.

3. **DECLARATION, AFFIDAVIT, OR COUNSEL PROFFER IN PLACE OF HER TESTIMONY: ...................................<u>OPPOSED</u>**

   Material statements in her ECF 110 declaration are disputed. The Debtor will cross-examine her on them in the courtroom.

4. **EXCUSING HER, OR COUNSEL-ONLY PRESENTATION:..................................................................................<u>OPPOSED</u>**

   Counsel's argument is not evidence. The Debtor will call and examine Ms. Ulijasz as an adverse party under Fed. R. Evid. 611(c)(2).

5. **LIMITS ON THE SCOPE OR TIME OF EXAMINATION:......................................................................................<u>OPPOSED</u>**

   The hearing is a reserved half day on ECF 110 and ECF 97 together. Examination covers every fact she put in issue: her knowledge of the bankruptcy and the stay; the property removals; the health-coverage, HSA, and FSA actions;

the vehicle; account activity, transfers, and tracing; and credibility. If a question is excluded, the Debtor will state its relevance and make an offer of proof on the record.

6. **OFF-THE-RECORD COMMUNICATION WITH THE WITNESS:......................................................OPPOSED**

No communication by any person with Ms. Ulijasz, by any means, while a question is pending, while she is answering, or while cross-examination is in progress, and no discussion of her testimony during any recess until cross-examination is complete.

7. **PRIVATE SECURITY AND OTHER NONPARTIES IN THE COURTROOM:......................................................OPPOSED**

Fed. R. Evid. 615 applies to any person who is or may be a witness. No security personnel or other nonparty who may testify, or who has given a statement in any matter between the parties, remains in the courtroom during testimony.

Private security at the hearing: **OPPOSED**, and to be given no weight. Any private security, bodyguards, or escorts accompanying the Movant into a federal courtroom staffed by Court Security Officers and the United States Marshals Service is a charade, not a safety measure (Motion to Compel ¶¶ 48, 53; 28 U.S.C. §§ 151, 566(a)). No court has ever found that the Debtor poses a danger to the Movant. The Movant's protective-order application of December 18, 2024 was predicted by the Debtor in his call to the Dallas Police Department on December 11, 2024, seven days before she filed it; the call log records "caller thinks is being set up by wife" (CAD 24-2241556; Motion ¶ 19, Ex. A). On January 7, 2025, after an evidentiary hearing, the state court found no evidence of family violence and denied that application in full, and awarded the Debtor exclusive possession of the residence and its contents (Motion ¶¶ 19, 35; Debtor's Opposition, Ex. 6). In the Movant's own words the Debtor is "non violent" (Dec. 15, 2024 text, Motion ¶ 32; Opposition, Ex. 7), and on April 16, 2026 she told deputies on body camera "he never hit me" and that she hires private security because her attorney advised against a protective order (Motion ¶ 36, Ex. I). The Debtor has never been charged with, arrested for, or convicted of any violent offense against anyone; police have never been called to any incident of violence involving him; and he has never been ordered to any anger-management program (Motion ¶ 24). Thirty-three declarants have sworn under penalty of perjury that the Debtor is not a violent person, and not one withdrew when the Movant's former counsel contacted them (Motion ¶ 25, Ex. N; Opposition, Ex. 5). The Debtor asks that the presence of any private security, escort, or other personnel accompanying the Movant be given no weight as evidence of any fact, and that Fed. R. Evid. 615 apply to any such person who is or may be a witness, or who has given a statement in any matter between the parties, so that none remains in the courtroom during testimony.

This includes any reference to security during the hearing, whether by requesting a recess to confer with or check on security personnel, by stating on the record that security is present or waiting, or by any other remark that places unverified danger before the Court without evidence. The Debtor asks that no such reference be made in the presence of the Court, that any genuine security concern be raised with the Court Security Officers or the United States Marshals Service outside the presence of the Court, and that any request for a recess state no reason other than that a recess is requested.

8. **SEALING, CLOSING THE COURTROOM, OR REDACTING TESTIMONY:......................................................OPPOSED**

11 U.S.C. § 107(a) makes the record public. Every word of testimony is on the record and in the Court's official recording, continuously from call to adjournment. No portion sealed, closed, or omitted.

9. **ANY PROTECTIVE ORDER, CONFIDENTIALITY ORDER, ATTORNEYS'-EYES-ONLY DESIGNATION, HIPAA OR GLBA OBJECTION, OR "TRUSTEE ONLY / NOT DISSEMINATED TO DEBTOR" CONDITION ON RECORDS: ……………OPPOSED**

The medical records concern the obstruction and wrongful termination of **THE DEBTOR'S OWN MEDICAL COVERAGE**, related benefits, and community funds; and **DOES NOT INCLUDE ANY MEDICAL RECORDS OF MOVANT'S.** The Debtor will review every record produced.

**10. ANY RESTRICTION ON LATER USE OF THE TESTIMONY, RECORDING, TRANSCRIPT, OR ADMITTED EXHIBITS: ................................................................................................................................OPPOSED**

The Debtor will use them in DF-24-18010 and its appeal; the Justice Court matters including JPC-25-12755-51 and any appeal; Adversary No. 26-03034-mvl; EBSA File No. 202630-18882 and any ERISA action; any criminal or regulatory referral; and any other proceeding. The Debtor does not consent to any order limiting that use.

**11. LIMITS ON THE RULE 2004 REQUEST TO FORM 1 ACCOUNTS, ACCOUNT-BY-ACCOUNT, PETITION DATE ONLY, OR CONDITIONED ON THE DEBTOR FIRST IDENTIFYING THE DESTINATION OF FUNDS: ..................OPPOSED**

Any such limitation makes estate tracing impossible.

**12. DEFERRAL, BIFURCATION, STATUS CONFERENCE, OR CONTINUANCE OF NOVEMBER 18: ......................OPPOSED**

The Debtor asks for separate written rulings on ECF 110, ECF 97, the Motion to Compel, and the WebEx motion.

**13. QUESTIONING THROUGH COUNSEL, STANDBY COUNSEL, OR A NO-DIRECT-QUESTIONING CONDITION: ......OPPOSED**

No court has found the Debtor to be a threat. The protective order Ms. Ulijasz sought was denied and the Debtor was awarded exclusive possession of the residence (Debtor's Opposition, Ex. 6). The Debtor will question her directly, in person.

**14. EX PARTE OR INFORMAL COMMUNICATION TO THE COURT ON SAFETY OR HER ABILITY TO ATTEND: .......OPPOSED**

Any such communication to be disclosed to the Debtor before the Court relies on it.

**15. DECIDING THE WEBEX MOTION BEFORE THE CLERK DOCKETS THE DEBTOR'S PAPER OPPOSITION: ..........OPPOSED**

The Debtor cannot e-file. The Opposition, served by email November 10, 2026, is in overnight delivery to the Clerk for November 12, 2026.

**16. SCHEDULE:**

The Debtor <u>**AGREES**</u> that:

- the **DEBTOR'S MOTION TO COMPEL MOVANT'S IN-PERSON APPEARANCE AND TESTIMONY AND IN OPPOSITION TO ANY REMOTE TESTIMONY OF GWENDOLYN ULIJASZ** (Served and Delivered to the Court on Tuesday, Nov 10, 2026 at 10:23am - UPS 1Z063EE40110728310),
- the **DEBTOR'S OPPOSITION TO ANY REQUEST THAT THE MOVANT APPEAR OR TESTIFY BY WEBEX OR OTHER REMOTE MEANS AT THE NOVEMBER 18, 2026, EVIDENTIARY HEARING ON ECF 110 AND ECF 97** (Filed in support of the Debtor's Motion to Compel Movant's In-Person Appearance and Testimony and in Opposition to Any Remote Testimony of Gwendolyn Ulijasz), with Exhibits 1 through 10 (Served Nov 10, 2026, with Guaranteed Delivery Thursday, Nov 12th by 10:30am due to Federal Holiday – UPS 1z50v1140774225038),
- and the **Movant's**, previously anticipated (see Motion to Compel ¶¶ 5, 14) and forthcoming, **Motion to Appear Remotely by Webex;**

... should **all be considered and decided together** on or before **Monday, November 16, 2026,** as the Debtor's Motion for Expedited Consideration has already requested for the Motion to Compel.

The Debtor <u>**DOES NOT AGREE**</u> that a short WebEx hearing is needed and asks for a ruling on the papers before the court.

The Debtor has no CM/ECF access. The Opposition served November 10 is his response to the WebEx motion. If your filing raises matter not addressed there, he will serve a supplement by email on counsel and the courtroom deputy by 5:00 p.m. Central on Friday, November 13, 2026, with the ink-signed original to follow to the Clerk.

Please serve your response to the Motion to Compel and your WebEx motion on me by email when you file them, and once again, **PLEASE INCLUDE THIS RESPONSE IN FULL IN YOUR FORTHCOMING FILING WITH THE COURT.**

---

Dated: November 11, 2026

Transmitted via email to Movant's counsel of record, the Chapter 7 Trustee, and the Office of the United States Trustee on **November 11, 2026, at (12:40pm) Central** to:

**Counsel for Movant:**

- Jonathan D. Steele, Beermann LLP (jsteele@beermannlaw.com)
- Sara A. Boucher, Beermann LLP (saboucher@beermannlaw.com)
- Rosa Gutierrez, Beermann LLP (rgutierrez@beermannlaw.com)
- Richard C. Dafoe, Waddell Serafino Geary Rechner Jenevein, P.C. (rdafoe@wslawpc.com)
- Rebecca L. Armstrong, Armstrong Divorce & Family Law, PLLC (rebecca@armstronglawtexas.com)
- Terra Aguirre, Armstrong Divorce & Family Law, PLLC (terra@armstronglawtexas.com)
- Lauren Shaw, Armstrong Divorce & Family Law, PLLC (lauren@armstronglawtexas.com)

**Trustee Areya Holder:**

- Areya Holder Aurzada, Chapter 7 Trustee (areya@holderlawpc.com; trustee@holderlawpc.com)
- Office of the United States Trustee (ustpregion06.da.ecf@usdoj.gov)

**And Judge Larson's Courtroom Deputy:**

- Dawn Harden, Courtroom Deputy to the Honorable Michelle V. Larson (mvl_settings@txnb.uscourts.gov)

Respectfully submitted,

Jason McKemie

**Jason Emory McKemie,** Debtor, pro se
539 W. Commerce St., #2010
Dallas, Texas 75208
(214) 519-8958
jmckemie@mckemie.net

November 11, 2026 reply from Jonathan D. Steele, 1:42 p.m.

JS Jonathan Steele    Inbox - iCloud    November 11, 2026 at 1:42 PM

**Re: Case No. 26-30161-mvl7: Debtor's Response with Statement of Position Regarding Movant's Forthcoming Motion to Appear Remotely**    Hide

To: jmckemie@mckemie.net,

Cc: Sara A. Boucher, Rosa Gutierrez, rdafoe, rebecca, Terra Aguirre, lauren, areya@holderlawpc.com, trustee@holderlawpc.com, ustpregion06.da.ecf@usdoj.gov, mvl_settings@txnb.uscourts.gov

Mr. McKemie,

Thank you for the Statement of Position. Ms. Ulijasz will attach it in full as an exhibit to her WebEx motion and to her response to the Motion to Compel, and each certificate of conference will report your positions as stated in it. Her positions on items 6 through 10 are:

Item 6: AGREES that no one will communicate with Ms. Ulijasz about the substance of her testimony while a question is pending or during any recess, until her cross-examination is complete. A break that her provider calls for is not a communication about her testimony.

Item 7: AGREES that Rule 615 applies to nonparty witnesses. DOES NOT AGREE to the remainder of item 7.

Item 8: DOES NOT AGREE. Ms. Ulijasz reserves the right to seek sealing or redaction of her medical information under Bankruptcy Rules 9018 and 9037.

Item 9: DOES NOT AGREE.

Item 10: DOES NOT AGREE. Any later use of the record is governed by applicable law and any order of the Court.

Both filings will be served on you by email when filed.

Jonathan D. Steele

**CONFIDENTIAL E-MAIL** This e-mail message is intended only for the named recipient(s) above. It may contain confidential information that is privileged or that constitutes attorney work product. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachment(s) is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by replying to this e-mail and delete the message and any attachment(s) from your system.

Jonathan Steele | Divorce and Family Law Partner

161 N Clark St., Suite 3000 | Chicago, IL 60601
Tel: 312.621.9700 | Fax: 312.621.0909

2275 Half Day Rd., Suite 350 | Bannockburn, IL 60015
Tel: 847.681.9600 | Fax: 847.681.0909

jsteele@beermannlaw.com | www.beermannlaw.com

BEERMANN LLP EST 1958

BEST PLACES TO WORK 2026

**CONFIDENTIAL E-MAIL** This e-mail message is intended only for the named recipient(s) above. It may contain confidential information that is privileged or that constitutes attorney work product. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachment(s) is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by replying to this e-mail and delete the message and any attachment(s) from your system.

November 13, 2026 delivery email from Sara A. Boucher

---

**From:** "Sara A. Boucher" <saboucher@beermannlaw.com>
**Subject: RE: Case No. 26-30161-mvl7: Debtor's Response with Statement of Position Regarding Movant's Forthcoming Motion to Appear Remotely**
**Date: November 13, 2026 at 9:45:03 AM CST**
**To:** Jason McKemie <jmckemie@mckemie.net>, Jason McKemie <jason@callvital.com>
**Cc:** Rosa Gutierrez <rgutierrez@beermannlaw.com>, rdafoe <rdafoe@wslawpc.com>, "areya@holderlawpc.com" <areya@holderlawpc.com>, "trustee@holderlawpc.com" <trustee@holderlawpc.com>, "ustpregion06.da.ecf@usdoj.gov" <ustpregion06.da.ecf@usdoj.gov>, "mvl_settings@txnb.uscourts.gov" <mvl_settings@txnb.uscourts.gov>, Jonathan Steele jsteele@beermannlaw.com

Mr. McKemie:

Attached please find the following:

1) Movant Gwendolyn Ulijasz's Motion for Leave to Give Any Testimony at the NOvember 18, 2016 Hearing by Webex Videoconference.

2) Movant Gwendolyn Ulijasz's Application for Order Shortening Time and Request for Expedited Consideration of Her Webex Motion.

3) Movant Gwenolyn Ulijasz's Response to the Debtor's Motion to Compel her In-Person Appearance and Testimony and to the Debtor's Motion for Expedited Consideration and proposed Order regarding the same.

Should you have any questions or concerns, please do not hesitate to contact our office.

**Sara A. Boucher (she/her)** | Paralegal
161 N Clark St., Suite 3000 | Chicago, IL 60601
Tel: 312.621.9700 | Fax: 312.621.0909

2275 Half Day Rd., Suite 350 | Bannockburn, IL 60015
Tel: 847.681.9600 | Fax: 847.681.0909
saboucher@beermannlaw.com | www.beermannlaw.com

BEERMANN LLP · BEST PLACES TO WORK 2026

**CONFIDENTIAL E-MAIL** This e-mail message is intended only for the named recipient(s) above. It may contain confidential information that is privileged or that constitutes attorney work product. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachment(s) is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by replying to this e-mail and delete the message and any attachment(s) from your system.

**2026-11-12 (GU) Application for...**

**2026-11-12 (GU) Response to...**

**2026-11-12 (GU) Proposed Ord...**

**2026-11-12 (GU) Motion for Lea...**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Bankruptcy Rules 7007-1(b) and 9014-1(b), the undersigned certifies as follows. On November 7, 2026, the Debtor, who represents himself, emailed the undersigned and Movant's local counsel, Richard G. Dafoe, stating that he intended to file a motion to compel Movant's in-person appearance at the November 18, 2026 hearing and asking whether Movant opposed that relief. The undersigned responded by email the same day that Movant opposes it. The Debtor's motion, served on November 10, 2026, states that he "objects now to any remote appearance or remote testimony by the Movant." On November 10, 2026, the undersigned emailed the Debtor and the Chapter 7 Trustee, Areya Holder Aurzada, describing the relief requested in this Motion and the proposed safeguards and asking for their positions by 9:00 a.m. Central Time on November 12, 2026. The Debtor responded by email on November 10, 2026 and asked that his response be included in full. It reads:

> Mr. Steele:
>
> This responds to your email of November 10, 2026, 11:24 a.m.
>
> (a) WebEx motion. OPPOSED.
>
> The Debtor opposes any request that Ms. Ulijasz give testimony by WebEx or other remote means at the November 18, 2026 evidentiary hearing. The grounds are stated in the Debtor's Opposition to Movant's Request to Testify by WebEx, with exhibits, which was served on you by email on November 10, 2026 and is in overnight delivery to the Clerk for November 12, 2026. I do not attach it again.
>
> (b) Expedited schedule.
>
> The Debtor AGREES that:
>
> - the Debtor's Motion to Compel Movant's In-Person Appearance and Testimony,
>
> - the Debtor's Opposition to Movant's Request to Testify by WebEx at the November 18, 2026 Evidentiary Hearing (served November 10, 2026), and
>
> - the Movant's anticipated (see Motion to Compel ¶¶ 5, 14) and forthcoming motion to testify remotely by WebEx
>
> should be considered and decided together on or before Monday, November 16, 2026, as the Debtor's Motion for Expedited Consideration has already requested for the Motion to Compel.
>
> The Debtor DOES NOT AGREE that a short WebEx hearing is needed and asks for a ruling on the papers before the court.
>
> The Debtor has no CM/ECF access. The Opposition served November 10 is his response to the WebEx motion. If your filing raises matter not addressed there, he will serve a supplement by email on counsel and the courtroom deputy by 5:00 p.m. Central on Friday, November 13, 2026, with the ink-signed original to follow to the Clerk.
>
> Please serve your response to the Motion to Compel and your WebEx motion on me by email when you file them, and PLEASE INCLUDE THIS RESPONSE IN FULL IN YOUR FORTHCOMING FILING WITH THE COURT.

Jason Emory McKemie, Debtor, pro se

No response had been received from the Chapter 7 Trustee when this Motion was filed. The undersigned learned of the medical circumstances described in Movant's declaration on November 11, 2026. The Debtor and the Chapter 7 Trustee receive the declaration describing them with this Motion, and the Debtor's stated deadline of 5:00 p.m. Central Time on November 13, 2026 for any supplement allows him to address them. The undersigned will advise the Court promptly of any position received.

/s/ Jonathan D. Steele
Jonathan D. Steele

**CERTIFICATE OF SERVICE**

The undersigned certifies that on November 12, 2026, a true and correct copy of this Motion, with Exhibits A through D, was served (a) on the Debtor, Jason Emory McKemie, pro se, by email at jmckemie@mckemie.net and by first-class United States mail at his address of record on the Court's docket, 539 W. Commerce St., #2010, Dallas, Texas 75208; and (b) on the Chapter 7 Trustee, Areya Holder Aurzada, the United States Trustee, and all other parties receiving electronic notice in this case, through the Court's CM/ECF system.

/s/ Jonathan D. Steele
Jonathan D. Steele

**CERTIFICATE OF SERVICE**

The undersigned certifies that on November 12, 2026, a true and correct copy of this Application was served (a) on the Debtor, Jason Emory McKemie, pro se, by email at jmckemie@mckemie.net and by first-class United States mail at his address of record on the Court's docket, 539 W. Commerce St., #2010, Dallas, Texas 75208; and (b) on the Chapter 7 Trustee, Areya Holder Aurzada, the United States Trustee, and all other parties receiving electronic notice in this case, through the Court's CM/ECF system.

/s/ Jonathan D. Steele
Jonathan D. Steele

Respectfully submitted,

BEERMANN LLP

By: /s/ Jonathan D. Steele
Jonathan D. Steele (admitted pro hac vice)
Illinois ARDC No. 6308171
161 N. Clark Street, Suite 3000
Chicago, Illinois 60601
Telephone: 312.621.9700
jsteele@beermannlaw.com

Local counsel: Richard G. Dafoe (Texas Bar No. 05309500)
Waddell Serafino Geary Rechner Jenevein, P.C., Dallas, Texas

COUNSEL FOR MOVANT GWENDOLYN ULIJASZ

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 12, 2026, a true and correct copy of this Response was served (a) on the Debtor, Jason Emory McKemie, pro se, by email at jmckemie@mckemie.net and by first-class United States mail at his address of record on the Court's docket, 539 W. Commerce St., #2010, Dallas, Texas 75208; and (b) on the Chapter 7 Trustee, Areya Holder Aurzada, the United States Trustee, and all other parties receiving electronic notice in this case, through the Court's CM/ECF system.

/s/ Jonathan D. Steele
Jonathan D. Steele



[redacted]



**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 26-30161-mvl7 |
| JASON EMORY McKEMIE, | § | Chapter 7 |
| Debtor. | § | |
| | | Emergency consideration requested; no hearing set. |

## DECLARATION OF JASON EMORY McKEMIE IN SUPPORT OF THE AMENDED EMERGENCY MOTION

1. My name is Jason Emory McKemie. I am the Debtor in this Chapter 7 case. I am over eighteen years old and competent to make this declaration. I state my own experiences and recollections below. When describing a document or a statement by another person, I identify that source.

2. I am unemployed, indigent, and without my own housing. I do not have a vehicle; I surrendered it. I am representing myself because I cannot afford an attorney. I have congestive heart failure, have been hospitalized repeatedly, and have continuing medical needs.

3. I do not have CM/ECF filing privileges. Preparing a PDF or sending an email does not give me the ability to file it directly on this Court's docket. Printing, signing, arranging transportation, and paying for shipment consume resources I need for housing, food, medication, and other essentials.

4. Between November 9 and November 16, 2026, I incurred $181.91 in expedited UPS shipping charges for papers addressed to the Bankruptcy Clerk in Dallas: $66.25 on November 9, $38.99 on November 10, and $76.67 on November 16. Exhibits A, B, and D are copies of those shipment receipts with my street address redacted. On November 16, I called the UPS store owner and driver, and they waited after the store closed so my signed emergency packet could go out.

5. I also spent $75.00 on gas for the round trip to Dallas to file my emergency opposition after I did not timely receive opposing counsel's filings. Exhibit C is a screenshot from my transaction history showing $75.00, dated November 14, 2026, marked pending when captured. The note identifying the trip is my own. Together, these four records show $256.91 in filing-related gas and shipping charges over eight days. They cover only part of what I spent. I have included the records I had available for this declaration.

6. I can use email and prepare and transmit PDF documents. I am willing to complete the Court's registration, identity-verification, security, and training requirements remotely and to comply with its rules governing electronic signatures, redaction, and service. My email is jmckemie@mckemie.net; my telephone number is (214) 519-8958.

## JANUARY 12, 2026: WHY I SOUGHT BANKRUPTCY PROTECTION

7. On January 12, 2026, I sought emergency relief to prevent eviction and loss of housing and to restore my healthcare. Gwendolyn Laura Ulijasz cut off my health coverage effective October 31, 2025 through a fraudulent participant-reported, divorce-based qualifying life event when no divorce had occurred. Accenture Benefits acknowledged that a participant-reported life event caused the termination; the COBRA notice identified Divorce as the event; and the Plan Administrator later acknowledged that no COBRA qualifying event had occurred. Exhibit H contains these communications. The termination prevented my scheduled surgery. I was in pain, my vehicle was at risk of repossession, and I needed functioning healthcare access.

8. I first presented my requests to Associate Judge Tamika Abendroth. She denied the relief I requested and permitted me to take the emergency requests to District Judge Sandra Jackson that same day.

9. I went to Judge Jackson's courtroom and waited quietly in the seating area until the bailiff told me I could

approach. Judge Jackson came down from the bench toward the low partition in front of the courtroom seating and asked how she could help.

10. I handed Judge Jackson my emergency motions. I explained that I faced eviction, loss of housing, repossession of my vehicle, and loss of healthcare access before surgery. I explained my congestive heart failure and hospitalizations, that I was proceeding without counsel because I could not afford counsel, and that significant assets were involved in the marital estate.

11. Judge Jackson asked me to stop speaking while she read the papers. She read them for a period that felt lengthy to me. She asked whether I could take guidance, and I answered that I could.

12. Judge Jackson directed me to the bankruptcy court on Commerce Street, near the McDonald's. As I remember the substance of her statement, she told me that if circumstances of the kind described in my papers and account were occurring at that level, the bankruptcy court was the court with the ability to provide the immediate protections I needed.

13. I began to ask another question. Judge Jackson again asked whether I could take guidance, and I answered that I could. She told me there was no time and that I needed to run.

14. I left immediately and hurried to the bankruptcy courthouse. I completed the initial paperwork as quickly as I could and filed my Chapter 7 petition on January 12, 2026. I was seeking immediate protection from the threatened loss of housing, transportation, healthcare, and the assets needed to survive.

15. The petition was prepared in that emergency. My schedules still require review and amendment to accurately and completely identify the property and claims involved. I am seeking the source records needed to complete that work, and I do not intend the original emergency paperwork to conceal or relinquish any estate interest.

16. My account of the conversation with Judge Jackson describes what I personally heard and did that day. I sought bankruptcy protection immediately in reliance on her direction.

## SUBSEQUENT LOSSES AND THE NEED FOR A FAIR PROCESS

17. On April 16, 2026, Gwendolyn Laura Ulijasz and persons acting with her stole and destroyed my property, including bankruptcy-estate property, my separately owned drives containing evidence and my lifetime of work, work equipment, identification documents, and medication. I did not receive notice of the hearing authorizing the writ relief. Judge Larson ordered the taking stopped and the property put back. ECF 57, page 3, expressly barred any other party from removing possessions from the premises. At the residence, a constable directed her to unload my property from her vehicle. She pretended to comply, entered the vehicle, and fled with the property. When I asked why he did not pursue her, he told me he had called it in but lacked authorization to pursue. I did not consent to this theft.

18. When I later presented the theft of medication to a court, I explained that other refrigerator contents were undisturbed but my refrigerated auto-injectors were gone from the bottom drawer. They were kept there because they required refrigeration. Gwendolyn Laura Ulijasz knew where they were because we had been married and lived together.

19. Across the related litigation, I have faced opposing attorneys from six law firms. I have tried to reach the Chapter 7 Trustee concerning the property and claims, but have not been able to obtain the substantive assistance I have sought. I want the estate's property identified and recovered for creditors and my lawful interests. I need a workable process through which I can obtain and present the relevant records.

## WRITTEN CONFERRAL AND SERVICE EVENTS

20. On November 11, 2026 at 12:39 p.m. Central, I emailed Mr. Steele a Statement of Positions and expressly said it replaced my November 10 email response. I asked him to attach the statement in full to the WebEx motion and his response to my motion to compel, report each position, and email both filings when filed. Appendix pp. 2–6 reproduce that message and the statement.

21. At 1:42 p.m. that day, Mr. Steele replied that Ms. Ulijasz would attach my statement in full to both filings and that each certificate of conference would report my positions as stated. He also said the filings would be served on me by email when filed. Appendix p. 7 reproduces that reply.

22. The court copies of ECF 141 and ECF 143 do not attach my November 11 Statement of Positions. ECF 141 reproduces my earlier November 10 email instead. I had replaced that earlier email and had not authorized it to be presented as the complete, current statement of my positions.

23. I did not receive ECF 141, 142, or 143 by email on November 12, 2026. The email from Sara A. Boucher transmitting those papers was received on November 13 at 9:45:03 a.m. Central. Appendix p. 8 reproduces that message. The filed certificates state that email and first-class-mail service occurred on November 12. Appendix pp. 10–12. I request the contemporaneous sending and mailing records to resolve that discrepancy.

24. The shortened schedule described in ECF 142 called for a response or supplement by 5:00 p.m. on November 13. The November 13 email left less than eight hours that day to address the delivered papers. My request for coordinated rulings did not authorize withholding the papers or omitting the replacement statement counsel promised to attach.

25. The email and statement reproductions in Appendix pp. 2–8 are true copies of the communications and statement described above. I seek complete service, accurate certificates of conference and service, disclosure of witnesses and exhibits, and an order preventing anyone from claiming my agreement without my express signed approval of the exact matter. I need a fair opportunity to present my evidence and objections.

26. Gwendolyn Laura Ulijasz has had attorneys from six law firms in the related litigation, while I have no lawyer. Before filing for divorce, she siphoned hundreds of thousands of dollars away from the marital estate while burying me in community debt. She repeatedly told me we were broke and experiencing a short-term budget crunch. She directed me to keep charging household and family expenses, including Christmas gifts, to my cards and to front-load expense accounts, while promising that the first half of her $300,000 signing bonus would pay off the cards and restore monthly payoffs. She cut off my access to marital assets and left me to carry the household expenses while she lived rent-free. She manufactured the eviction. I lost my housing and vehicle, and now must find transportation or pay expedited shipping to get time-sensitive papers to this Court.

27. Counsel's late delivery of filings and shortened response requests are part of this bad-faith procedural gamesmanship. They force me to draft in the middle of the night, print and sign on short notice, and rush to arrange shipping or transportation. Each emergency takes time from finding work and prevents me from maintaining the hours and availability a job requires. The documented costs consume the limited money I need for food, housing, transportation, and medication.

28. CM/ECF filing access would let me file directly when a response is due without having to pay for an overnight shipment or find a ride to Dallas. It would still leave me dependent on timely service of complete papers. I also need accurate conference and service certifications, timely disclosure of witnesses and exhibits, and enough time after service to prepare and be heard. When a filing is sent late, I ask the Court to give me a fair opportunity to respond measured from actual service. Without these protections, I cannot reliably get my evidence and objections before the Court.

29. In November 2024, a former AT&T colleague offered me a position paying approximately $250,000 annually. When I discussed it with Gwendolyn Laura Ulijasz, she strongly opposed my taking it. She wanted more international travel with me, did not want both of us working W-2 jobs, and wanted me to continue pursuing entrepreneurial work. She told me that my continued investment in her career would yield more than that job. I had devoted substantial work to her career, and the stolen hard drives contain proof of my marital contributions. This conversation is part of why I dispute any portrayal of my present unemployment as an unwillingness to work.

30. At her urging, I did not take the approximately $250,000 position. Later, I obtained work with Advanced Calls, LLC. After she cut off my access to marital assets, I could not afford my vehicle payment and insurance. I

repeatedly sought authorization to withdraw $6,500 from an IRA in my name to restore insurance, make the vehicle payment, and keep my job. Her text had confirmed that the IRA remained available to me.

31. Exhibit E is Ron Nations's October 9, 2025 letter confirming my employment, the insurance lapse that prevented field work, and the need for transportation to retain me. My recollection is that I had until Friday to resolve the problem. I brought the letter to the judge and explained repeatedly that waiting until Monday would cost me the job. I sent opposing counsel a proposed agreed withdrawal order. I was told counsel could not appear until Monday. Despite my returning on Friday and again asking for immediate relief, the court deferred the matter.

32. By Monday, the job was gone. Opposing counsel then appeared, and the proposed withdrawal order was accepted without changes. I allege that Gwendolyn Laura Ulijasz and her counsel deliberately delayed access to destroy my employment and prevent me from funding representation. I had identified the amount, account, need, and consequence before the loss. The later relief did not restore my job.

33. On December 11, 2024, I called the police and warned that she would make false police reports and pursue a fraudulent protective order against me. I had found documentation of her use of criminal and civil proceedings against former spouses, romantic partners, multiple neighbors, and a landlord, and of settlements obtained from at least three former employers. I warned my attorney that she would ambush us in court with material we had never seen. The false reports, protective-order proceeding, and litigation ambushes I warned about followed. I describe this as a coordinated destabilization campaign because I identified and reported the danger before these events occurred.

34. On December 18, 2024, she cut off my HSA card. She later terminated my healthcare through the fraudulent participant-reported divorce-based QLE described in paragraph 7. She failed to provide functioning healthcare access after the December 17, 2025 reinstatement order despite my enforcement efforts. For approximately twenty-three months, I have received no support payment. She stole my work and evidence drives, identification and passport, safes, cash, and family heirlooms. I have no suit, dress shoes, or belt for an interview. I need three surgeries and am trying to obtain care delayed by the October 31, 2025 termination. My parents cannot sustain my needs; they face bankruptcy themselves and cannot currently afford their bankruptcy attorney.

35. During this period, I have fought three justice-court eviction proceedings and an eviction appeal, a divorce approaching 300 docket entries, and this bankruptcy approaching 150. I have also had to respond to false police reports and criminal investigations while pursuing federal employee-benefits relief. These overlapping proceedings consume the hours I need to recover medically and obtain employment. I cannot rebuild my life while repeatedly having to abandon everything to answer papers delivered at the last moment.

36. I came here for protection after Judge Jackson directed me to this Court. When I later presented photographs of the theft and destruction, I recall being told in substance that I had a potentially significant claim but that it belonged in another forum. I seek this Court's protection against theft of bankruptcy-estate property and violation of its own April 16 order, as well as recovery of my separate property and stolen evidence. Repeated referrals among forums have not restored my housing, healthcare, property, or ability to work. I need enforceable protection and a fair opportunity to present the evidence.

37. My immediate needs are functioning benefits and prescriptions, production of the qualifying-life-event source records, and usable funds for necessities. I am seeking payment of the $20,000 she owes me and assistance from the Trustee in obtaining funds lawfully payable to me. Meanwhile, I need CM/ECF access, complete and timely service before rulings, and a meaningful opportunity to respond from another city without a vehicle or money for repeated emergency trips. I ask the Court to prohibit representations that I agreed to a matter without my express signed approval. These protections are essential to my ability to participate while I pursue the underlying relief.

38. At the September 3, 2026 motion-for-new-trial hearing, Deputy Marcelo Hernandez testified that she continued taking items after the bankruptcy stop instruction and that Judge Larson directed everything to be put back in the house. He also explained that he was no longer at the residence when the judge called and

that he relayed the instruction to Deputy Jonathan Banda. Exhibit G reproduces the official reporter's record, pages 24–25. My account of her fleeing and the on-scene constable's explanation is separate from Hernandez's testimony.

39. I reviewed the April 16 law-enforcement body-camera footage. In it, a deputy states that her security guards took the computer and asks whether she approved it; another portion discusses the hard drives and taking them to San Antonio. I also recognize her in footage discussing my presence at the courthouse, my expected return, and her need to obtain more of my evidence. These events explain why I identify the taking as deliberate theft of my work and evidence, not an authorized exchange of household property.

40. Account ending 3898 was her account throughout the time I knew her; it was not created after the divorce filing. Exhibit I includes its September 27–October 25, 2024 statement and the October 8, 2024 record of a $60,000 wire instruction toward Ameriprise, shown as in transit. These records concern the period when she told me we had no money and required me to keep loading debt onto my cards. I seek the underlying bank and destination records to trace the funds she siphoned away and recover the estate for creditors and my lawful interests.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 17, 2026.

*/s/ Jason Emory McKemie*

Jason Emory McKemie

Exhibit A · November 9, 2026 UPS shipment receipt · $66.25



**Shipment Receipt: Page #1 of 1**

THIS IS NOT A SHIPPING LABEL. PLEASE SAVE FOR YOUR RECORDS.

SHIP DATE:
MON 9 NOV 2026

EXPECTED DELIVER" DATE:
TUES 10 NOV 2026 10:30 AM

SHIP FROM:
JASON MCKENIE
[redacted]
(214) 519-8958

SHIP TO:
CLERK US BANKRUP" COURT
NORTERN DIVISON OF TX, DALLAS
1100 COMMERCE ST
STE 1254
DALLAS TX 75242-:305
BUSINESS

SHIPPED THROUGH:
THE UPS STORE #2047
COLLEGE STATION,"X 77840-3303
(979) 764-6107

SHIPMENT INFORMATION:
UPS NEXT DAY AIR COM
4.0 lb manual wt
4.000 lb billable wt
BOX: 16.00X11.00X3.00 IN STORE PACKED

TRACKING NUMBER: 1Z063EE40110728310
SHIPMENT ID: MMPWRDU0ZPSMW
SHIP REF 1: - -
SHIP REF 2: - -

DESCRIPTION OF GOODS:
DOCUMENTS

| SHIPMENT CHARGES: | |
|---|---|
| NEXT DAY AIR COM | 49.46 |
| SERVICE OPTIONS | 0.00 |
| FUEL SURCHARGE | 16.57 |
| CMS PROCESSING FEE | 0.22 |
| TOTAL | $66.25 |

COMPLETE ONLINE TRACKING: ENTER THIS ADDRESS IN YOUR WEB BROWSER TO TRACK: HTTP://THEUPSSTORE.COM (SELECT TRACKING. ENTER SHIPMENT ID #) SHIPMENT
QUESTIONS? CONTACT SHIPPED THROUGH ABOVE.
NEED PACKAGE HELP? (LOST/DAMAGED). PROVIDE DETAILS SO WE CAN HELP:
HTTPS://ONLINE.UPSCAPITAL.COM/TCCP

CUSTOMER ACKNOWLEDGEMENT: I ACKNOWLEDGE AND ACCEPT TERMS & CONDITIONS IN FORCE FOR TENDERING SHIPMENTS THROUGH THIS LOCATION AND CERTIFY THAT ADDRESS, CONTENTS AND VALUES PROVIDED FOR THIS SHIPMENT ARE ACCURATE IN ALL RESPECTS.

Signature:

SHIPMENTID: MMPWRDU0ZPSMW

The UPS Store

Powered by iShip(r)
11/09/2026 06:41 PM Pacific Time F

SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.

Win a $250 gift card
... how we're doing for your chance to win a ... $100 Amazon.com ... month.

Exhibit B · November 10, 2026 UPS shipment receipt · $38.99



Exhibit C · November 14, 2026 gasoline transaction · $75.00 (shown as pending)



Exhibit D · November 16, 2026 UPS shipment receipt · $76.67



Shipment Receipt: Page #1 of 1
THIS IS NOT A SHIPPING LABEL. PLEASE SAVE FOR YOUR RECORDS.

SHIP DATE:
MON 16 NOV 2026

EXPECTED DELIVERY DATE:
TUES 17 NOV 2026 10:30 AM
SHIP FROM:
[redacted]
(214) 519-8958

SHIP TO:
CLERK US BANKRUPT COURT
NORTERN DIVISON OF TX, DALLAS
1100 COMMERCE ST
STE 1254
DALLAS TX 75242-1305
BUSINESS

SHIPPED THROUGH:
THE UPS STORE #2647
COLLEGE STATION,TX 77840-3303
(979) 764-6107

SHIPMENT INFORMATION:
UPS NEXT DAY AIR COM
1 lb 0.0 oz manual wt
7.000 lb billable wt (dim wt)
DIMS: 19.00X15.00X4.00 IN

TRACKING NUMBER: 1Z063EE40110827427
SHIPMENT ID: MMPWRDU5E6FJ5
SHIP REF 1: - -
SHIP REF 2: - -

DESCRIPTION OF GOODS:
DOCUMENTS

SHIPMENT CHARGES:

| | |
|---|---|
| NEXT DAY AIR COM | 57.92 |
| SERVICE OPTIONS | 0.00 |
| FUEL SURCHARGE | 18.53 |
| CMS PROCESSING FEE | 0.22 |
| TOTAL | $76.67 |

COMPLETE ONLINE TRACKING: ENTER THIS ADDRESS IN YOUR WEB BROWSER TO TRACK:
HTTPS://THEUPSSTORE.COM (SELECT TRACKING, ENTER SHIPMENT ID #) SHIPMENT
QUESTIONS? CONTACT SHIPPED THROUGH ABOVE.
NEED PACKAGE HELP? (LOST/DAMAGED). PROVIDE DETAILS SO WE CAN HELP:
HTTPS://ONLINE.UPSCAPITAL.COM/TCCP

CUSTOMER ACKNOWLEDGEMENT: I ACKNOWLEDGE AND ACCEPT TERMS & CONDITIONS IN FORCE FOR TENDERING SHIPMENTS THROUGH THIS LOCATION AND CERTIFY THAT ADDRESS, CONTENTS AND VALUES PROVIDED FOR THIS SHIPMENT ARE ACCURATE IN ALL RESPECTS.

Signature:

SHIPMENTID: MMPWRDU5E6FJ5

Powered by iShip(r)
11/16/2026 06:39 PM Pacific Time F

The UPS Store

Exhibit E · October 9, 2025 employer letter · Advanced Calls, LLC

ADVANCED CALLS

**Advanced Calls, LLC**
1603-B Northwest Blvd
Georgetown, TX 78628

October 9, 2025

**To Whom It May Concern:**

My name is **Ron Nations**, and I am the owner of **Advanced Calls, LLC**. I have brought **Jason E McKemie** on board as **Director of Strategic Partnerships** for a new healthcare technology deployment. Jason worked with us previously during a challenging product cycle, and his composure and dedication under pressure spoke volumes about his professionalism and character.

This position requires reliable transportation to meet clients and promote our product in person. Jason has the skill, drive, and work ethic to succeed; however, his ongoing divorce has created significant financial strain. He temporarily lost vehicle insurance coverage, and we were unable to send him into the field during that period. He is now at risk of losing his vehicle entirely. Without transportation, he cannot perform his duties and given our company's growth and client-facing demands, we simply would be unable to retain him.

Jason is making every effort to remain self-sufficient and employed. I respectfully ask the Court to consider any measures that would allow him to retain his vehicle during these proceedings. He is an asset to our company, and I am eager for him to continue contributing to our success.

Sincerely,

Ron Nations

**Ron Nations**
Owner, Advanced Calls, LLC
ron.nations@atintegration.com
(713) 446-4249

**Exhibit "A"**

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 16, 2026**

**United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 7** |
| | § | |
| **JASON EMORY MCKEMIE,** | § | **CASE NO. 26-30161-MVL-7** |
| | § | |
| **Debtor.** | § | |
| | § | |
| | § | |

**ORDER REINSTATING THE AUTOMATIC STAY AS TO 5609 LA FOY BLVD., DALLAS, TX 75209**

Before the Court is the *Emergency Motion for Stay Pending Appeal, Temporary Administrative Stay, Alternative Motion to Alter or Amend for Reconsideration, and Request for Expedited Hearing* (the "**Emergency Motion**") filed by Jason Emory McKemie (the "**Debtor**"),

*pro se*, on April 16, 2026 [ECF No. 54].[1] In the Motion, the Debtor requests that the Court reconsider its *Order Terminating 11 U.S.C. § 362 Automatic Stay* (the "**Lift Stay Order**") entered on April 9, 2026 [ECF No. 43], in which the Court granted the *Skweres Properties LLC's Motion for Relief from Stay of Action Against Property Pursuant to 11 U.S.C. § 362 Debtor Stay as to Jason Emory McKemie and Co-Debtor Stay as to Gwendolyn Laura Ulijasz, Waiver of Thirty Day Requirement Pursuant to § 362(e), and Request for Hearing in Dallas, Texas* (the "**Lift Stay Motion**") filed by Skweres Properties LLC (the "**Creditor**") on January 21, 2026 [ECF No. 20].

As stated in the Emergency Motion, the Debtor alleges that he was not served with the Lift Stay Motion at the mailing address listed on the Debtor's petition, and therefore did not receive notice of the hearing held with respect to the Lift Stay Motion on March 31, 2026. *See* ECF No. 1. More specifically, the Debtor lists two addresses on the petition: (1) a physical address located at 5609 La Foy Blvd., Dallas, TX 75209—the real property that is the subject of the Lift Stay Motion and the Lift Stay Order: and (2) a mailing address located at 539 W. Commerce St., #2010, Dallas, TX 75208.

The Court held an emergency hearing on April 16, 2026. The Debtor appeared *pro se*. Counsel for the Creditor appeared. At the hearing, the Debtor testified that he has not paid any post-petition lease payments owed with respect to the property that is the subject of the Lift Stay Motion. Furthermore, counsel for the Creditor provided no records indicating that the Debtor was sufficiently served with the Lift Stay Motion or notice of the hearing on March 31, 2026. Finally, the Debtor testified that, if provided the relief requested in the Emergency Motion, he would be able to vacate the property located at 5609 La Foy Blvd by April 30, 2026.

---

[1] The Court notes that the Debtor's Motion has been docketed three times [ECF Nos. 54–56], given that the Debtor requests multiple forms of relief therein.

Therefore, the Court finds that, given the lack of proper service to the Debtor of the Lift Stay Motion, as well as the lack of notice given to the Debtor with respect to the March 31st hearing, the Emergency Motion filed by the Debtor is granted in part and the automatic stay is hereby reinforced pursuant to § 362 of the Bankruptcy Code **temporarily** through April 30, 2026. Any action to enforce a writ of execution in connection with ongoing eviction procedures on the property located at 5609 La Foy Blvd., Dallas, TX 75209 shall **cease immediately**. Moreover, no other party shall remove any of the possessions from the premises.

Accordingly, it is

**ORDERED** that the Emergency Motion is **GRANTED IN PART** solely to the extent that the automatic stay is reinstated as to the property located at 5609 La Foy Blvd., Dallas, TX, 75209 (and the personal property located at same) through April 30, 2026 pursuant to § 362 of the Bankruptcy Code; it is further

**ORDERED** that any and all action to enforce a writ of execution in connection with an eviction of the Debtor with respect to the real property located at 5609 La Foy Blvd., Dallas, TX 75209 shall **CEASE IMMEDIATELY**; it is further

**ORDERED** that if the locks have been changed, the landlord of the property at issue shall supply the Debtor with new keys; and it is further

**ORDERED** that the Clerk of Court shall serve a copy of this Order via regular first-class mail to the Debtor at 539 W. Commerce St., #2010, Dallas, TX 75208, and via e-mail at jmckemie@mckemie.net.

**###END OF ORDER###**

14:18:41 Q. So she was loading property from the house. So you are saying she represented that she currently lived there. Am I understanding you correctly?
14:18:48 A. She was saying that she had items in there that was hers.
14:19:00 Q. Okay. And then when the bankruptcy judge ordered the stop to it, what did she do then?
14:19:08 A. She continued to take her items, which we can't stop her from taking her items. The only people we stopped from taking anymore items out of that address was the people that were there to move your items out, which was hired by the plaintiff from the eviction court.
14:19:31 Q. So, actually, that moving company was hired by Merritt McClayton, and that is petitioner's -- that is her best friend and so --
14:19:46 MR. STEELE: Objection. Hold on. Objection. He's giving testimony now, not asking a question.
14:19:52 THE COURT: Sustained.
14:19:52 MR. McKEMIE: Yes, you are right. Sustained.
14:19:54 Q (By Mr. McKemie) So when the writ was stopped, did a judge give any instructions, regarding the property that was in the house, when she ordered it stopped?
14:20:10 A. As far as I can remember, the judge stated that everything was to be put back in the house.

14:20:14 Q. And was everything put back in the house?
14:20:17 A. I left. I was no longer there once the -- I was actually at home and the judge called my personal county phone and stated to me to stop the eviction and to order the movers to stop moving things out of the house. And that's when I called Deputy Banda, Jonathan Banda, and that he was still out at the scene, and I instructed him what the judge had told me, and he relayed the message to the movers that were out there.
14:20:51 Q. And when she departed the house, you are saying that -- did she unload any property or did she leave with property?
14:21:02 A. That was after I had already left. The writ was still going on. I didn't receive the phone call from the judge until I was home and off the clock already. I can't testify to what happened when I wasn't there.
14:21:20 MR. McKEMIE: Okay. Great. I would like to pass the witness.
14:21:22 MR. STEELE: I have no questions of this witness. Thank you, Judge.
14:21:25 MR. McKEMIE: I am going to move through these exhibits very quickly.
14:21:29 THE COURT: Deputy Hernandez, you are free to go.
14:21:34 DEPUTY HERNANDEZ: Thank you.

2. the steps completed within 24 hours to restore functional access; and
3. your production schedule to meet the 7-day deadline.

---

**This is not a request for sympathy. It is a demand for performance.**

**All rights reserved. No waiver.**

**ATTACHMENTS:** **ERISA - Benfits Termination (DropBox)**

Sincerely,

**Jason McKemie**
539 W. Commerce St., Ste. 2010
Dallas, TX 75208
214-868-4901
jmckemie@mckemie.net

---

**From:** USBenefits <USBenefits@accenture.com>
**Date:** Wednesday, January 21, 2026 at 4:40 PM
**To:** Jason McKemie <jmckemie@mckemie.net>
**Cc:** Jason McKemie <mckemie76@gmail.com>
**Subject:** RE: ERISA §104(b)(4) Request – SECOND DEMAND FOR REINSTATEMENT / 80 DAYS WITHOUT ACCESS TO CRITICAL MEDICATIONS / NOTICE OF ESCALATING MEDICAL HARM

Mr. McKemie,

Thank you for reaching out. We want to address your concerns. We will start by confirming that your coverage was reinstated in December and has now been reinstated effective as of the initial

drop date, so there is no longer any gap in coverage. See below for more details and a response to your letter.

Your coverage was dropped due to a participant-reported life event, and that triggered the COBRA notice which was in accordance with our plan rules. When Accenture was informed by our Benefits Center in December that the qualifying event that triggered Cobra notice wasn't final yet, and therefore you were still an eligible dependent, we directed them to negate the life event. Manual intervention was required to return your coverage to active status because of the unique facts of your situation. While our intent was for there to be no gap in coverage, unfortunately our health plan administrators reinstated coverage from that point forward. We have reached out to both your medical carrier and pharmacy benefit manager to correct their records such that there is now no gap in coverage.

Aetna has informed us they are already reprocessing any denied claims in the November/December timeframe. If you have additional claims to be filed, you can file them now. If you need assistance with that, please let us know. Similarly, we can have CVS Caremark reach out to you directly to help process any pharmacy claims if you would like. Aetna has confirmed both of your MRI requests from last week have been approved.

We are unfortunately unable to take action related to your Health Savings Account or Health Care Flexible Spending Account. Only employees have the ability to elect their level of coverage; we cannot direct them or put in place coverage they did not ask for. Similarly, the Health Savings Account and Flexible Spending Account are controlled by employees, and we do not have the ability or authority to issue HSA cards, PIN numbers or give access to websites to anyone other than employees.

We acknowledge your request for documents under ERISA. In our response to you on January 15, 2026, we provided you with copies of the "instruments under which the plan is established or operated" as required under ERISA § 104(b)(4). You have requested additional documents below. Under ERISA § 503 and 29 C.F.R. § 2560.503-1, if an adverse benefit determination has been made and you have submitted a claim or appeal, the Plan must provide the "relevant documents" (as defined under 29 C.F.R. § 2560.503-1(m)(8)) that formed the basis of that benefit determination. To our knowledge, as noted above, all of your claims for benefits under the Plan have been approved by Aetna. If there are claims that are currently denied **or specific claims for which you are seeking relevant documents**, please identify the claim and we will be happy to assist.

Thank you,
Accenture Benefits

*NOTE: Accenture reserves the right, in its sole discretion, to amend, modify or terminate any of its benefit plans at any time.*

---

**From:** Jason McKemie <jmckemie@mckemie.net>
**Sent:** Monday, January 19, 2026 1:27 PM
**To:** USBenefits <USBenefits@accenture.com>
**Cc:** Jason McKemie <jmckemie@mckemie.net>; Jason McKemie <mckemie76@gmail.com>; Pott, Wynn E. <wynn.e.pott@accenture.com>

**Accenture (c/o Businessolver, Inc.)**
P.O. Box 3013
Monroe, WI 53566-3013
**DO NOT MAIL CORRESPONDENCE OR PAYMENTS TO THIS ADDRESS**

accenture

Jason Mckemie and Family
5609 La Foy Blvd
Dallas, TX 75209

Notice Date: November 11, 2025

Prepared For: Jason Mckemie and Family

Mail check(s) and correspondence to this address only:

**Accenture (c/o Businessolver, Inc.)**
**PO BOX 850512**
**Minneapolis, MN 55485-0512**

If you have any questions regarding your benefits or this notice, please login to **benefitscenter.accenture.com.**

# COBRA Continuation Coverage & Other Health Coverage Alternatives

You're getting this notice because you recently lost coverage under Accenture group health plan ("the Plan"). This notice has important information about your right to COBRA continuation coverage, which is a temporary extension of coverage under the Plan. Please read the information in this notice very carefully before you make your decision.

This notice has important information about your right to continue your health care coverage under the Plan, as well as other health coverage options that may be available to you including coverage through the Health Insurance Marketplace. To sign up for Marketplace coverage, visit **www.HealthCare.gov** or call 1-800-318-2596 (TTY: 1-855-889-4325). **You may be able to get coverage through the Health Insurance Marketplace that costs less than COBRA continuation coverage.** People in most states use **www.HealthCare.gov** to apply for and enroll in health coverage; if your state has its own Marketplace platform, you can find contact information here: **www.HealthCare.gov/marketplace-in-your-state/**.

Please read the information in this notice very carefully before you make your decision. If you choose to elect COBRA continuation coverage, you should enroll online at **benefitscenter.accenture.com** or use the Election Form provided later in this notice.

## Enrolling in COBRA Continuation Coverage Online Is Easy & Secure

1. **Go to benefitscenter.accenture.com** and log in with your username and password. If you don't know them, you may reset your username and password or **Register** as a first-time user. Your Company Key is **accenture**.
2. **Review and make your COBRA continuation coverage elections**. The online enrollment process makes it easy to select the coverage you're eligible for. Click "Start Here" to begin your enrollment.
3. **Choose the payment method you want.**
   a. **Pay Online** – Provide your bank account information. You can set up automatic monthly payments and avoid the usual $2.00 monthly convenience fee.
   b. **Pay by Check** – Make your check payable to **Businessolver, Inc**.

Deadline to Enroll in COBRA continuation coverage

Your elections must be completed and/or postmarked no later than

**01/11/2026**

Your active coverage ends on
**10/31/2025**

If elected, COBRA continuation coverages will be effective on
**11/01/2025**

*If you are electing COBRA continuation coverage as an active employee who did not lose all benefits due to your Qualifying Event, a retiree who is enrolled in retiree benefits with this employer, or a dependent electing COBRA continuation coverage, either as a result of a dependent qualifying event (such as divorce or child reaching maximum age) or the dependent of a former employee who is not also electing COBRA continuation coverage,* ***you cannot enroll online.*** *You will need to return the paper election form found in this package. Once enrolled, you will be able to login to* ***benefitscenter.accenture.com*** *and create your online account.*

Coverage provided by Accenture to you and/or your covered dependent(s) ends on 10/31/2025 due to the following qualifying event: **Divorce**. You have the right to elect COBRA continuation coverage for a duration of up to 36 months.

Only members covered at the time of Qualifying Event are eligible for continuation. The following Qualified Beneficiaries are eligible to continue coverage under COBRA:
Jason McKemie

Docusign Envelope ID: 96DE836C-19E7-420E-BE5D-7D517C9323FE

**February 18, 2026**
**Via Email**

Jason McKemie
jmckemie@mckemie.net

Re: **Accenture US Group Health Plan — Response to Correspondence, ERISA §§ 503 and 104(b)(4), and Related Requests**

Dear Mr. McKemie:

The Plan Administrator of the Accenture US Group Health Plan (the "Plan") writes in response to your correspondence dated January 9, 2026, January 30, 2026, February 2, 2026, February 3, 2026, February 8, 2026, and February 9, 2026, including your ERISA §503 request, demand for action, and preservation notice (collectively, the "Correspondence").

This letter is intended to (i) acknowledge receipt of your Correspondence, including your requests characterized as arising under ERISA §§ 503 and 104(b)(4); (ii) summarize the Plan's current understanding of the matters raised; (iii) identify the information needed to evaluate certain assertions; (iv) address the status of your coverage; and (v) clarify the scope of the Plan's obligations and next steps. Nothing in this letter constitutes a waiver of any Plan rights, defenses, or positions.

Going forward, if you have any further legal concerns or wish to pursue formal claims or litigation, please direct those matters to our legal counsel, Danielle Herring at Littler (DHerring@littler.com). If you have any documentation responsive to our specific requests below, please email the documentation to USBenefits@accenture.com.

**Medical and Prescription Drug Coverage Status**

As previously communicated, your medical coverage, including prescription drug benefits, under the Aetna HDHP option of the Participating Medical Plan component of the Plan has been reinstated retroactive to October 31, 2025. Based on the Plan's current eligibility records and carrier confirmations, there is no current lapse in Plan medical or prescription drug coverage.

This statement relates solely to coverage under the Participating Medical Plan. Health Savings Account ("HSA") and Flexible Spending Account ("FSA") matters are addressed separately below.

**Alleged Functional or Point-of-Sale Issues**

You have asserted that, notwithstanding reinstated eligibility, you have experienced issues with "functional access," including at the pharmacy point of sale. To date, the Plan has directed its administrators and vendors to correct eligibility records and synchronize coverage status across systems.

If you continue to experience real-time claim denial issues (and not payment, as that is separate and not a Plan concern), the Plan requires transaction specific information to investigate and address those issues, including:

- pharmacy name and location, date and time of attempted fill;
- medication name and, if available, NDC;

***46 of 117***

- rejection code or message provided to the pharmacist; and
- any related reference or authorization numbers.

Without this information, the Plan cannot validate or remediate alleged coverage-related point of sale failures.

**Alleged Financial Impact and Make-Whole Requests**

You have asserted that the temporary administrative disruption in late 2025 resulted in financial harm, including the loss of the ability to utilize benefits after meeting your 2025 annual out-of-pocket maximum.

The Plan has confirmed with the medical carrier that you met 100% of your annual out-of-pocket maximum for 2025. However, the carrier does not reflect any record of claims submissions or authorization attempts by providers on your behalf in November or December 2025.

Accordingly, based on the Plan's records alone, the Plan cannot verify that additional eligible costs were incurred solely as a result of the temporary administrative disruption. If you believe otherwise, please provide documentation supporting that contention, such as:

- confirmation that a procedure or surgery was scheduled for 2025;
- documentation of a 2025 authorization request and its disposition;
- itemized bills reflecting dates of service, amounts billed, and any rebilling; and
- copies of any written denial notices you reference.

Upon receipt of such information, the Plan will evaluate whether corrective or make whole relief is appropriate under the terms of the Plan and applicable law.

**Claims and Adverse Benefit Determinations**

You have requested documentation relating to alleged denied claims. At present, the Plan is not aware of any specific denied claims affecting you.

If you believe a claim is denied, please identify the claim with reasonable specificity (for example, claim number, date of service, provider or pharmacy, and denial reason). If a claim number is unavailable, transaction level details may be provided. The Plan will review and respond in accordance with the Plan's claims procedures and ERISA § 503.

**ERISA § 104(b)(4) Requests**

You characterize certain requests as arising under ERISA § 104(b)(4). ERISA § 104(b)(4) requires the furnishing of certain governing plan documents, such as the summary plan description and instruments under which the Plan is established or operated. It does not require production of all internal administrative records, system logs, audit trails, or third-party operational materials. The documents required to be furnished to you under ERISA § 104(b)(4) were provided on January 15, 2026.

**Requests for Fiduciary Attestation**

You request a notarized or sworn fiduciary attestation regarding benefit status. The Plan Administrator does not provide sworn or notarized attestations on demand. However, the Plan can

Docusign Envelope ID: 96DE836C-19E7-420E-BE5D-7D517C9323FE

provide written confirmation of benefit status based on Plan eligibility records and administrator confirmations, as reflected in this correspondence. Please see Attachment A for a list of your current coverage under Accenture's benefit plans.

**Qualifying Life Event ("QLE") and COBRA Assertions**

With respect to the QLE referenced in your Correspondence, the Plan agrees that the QLE was implemented in error and as you know, the resulting coverage drop has been reversed.

The Plan further agrees that no COBRA qualifying event occurred, and that the notices were generated in error based on the mistaken implementation of the QLE. Accordingly, the Plan is not required under ERISA to provide you with any additional information or documents related to the QLE or the subsequent COBRA notices.

**Health Savings Account and Flexible Spending Accounts**

**HSA** – As to your requests related to the HSA, please note that Plan rules do not provide dependents with the right to establish HSA accounts through Accenture. Further, the HSA is a custodial account and is not an ERISA governed group health plan administered by Accenture. The Plan's role with respect to the HSA is limited to forwarding employee and employer contributions, if any, as directed through payroll. Issues concerning HSA cards, PINs, portals, or account access are administered by the HSA custodian and are subject to accountholder controls and security requirements. We cannot assist you with your HSA concerns. The Plan's role with respect to the HSA is limited to forwarding employee and employer contributions, if any, as directed through payroll. Issues concerning HSA cards, PINs, portals, or account access are administered by the HSA custodian and are subject to account-holder controls and security requirements.

**FSA** – As to your requests related to the FSA, please note that Plan rules do not provide dependents with the right to establish FSA accounts through Accenture. Further, Healthcare FSAs are subject to HIPAA privacy rules. The Plan cannot disclose information regarding another individual's Healthcare FSA account to you absent appropriate authorization or a legal requirement. Any concerns regarding the employee's FSA accounts must be addressed through the account holder.

**Prior Communications Referenced in Your Correspondence**

You reference a statement made by Wynn E. Pott concerning a misunderstanding at the Benefits Center.[1] That statement was made before all relevant facts were fully understood. The Plan's current position is that the coverage drop was processed in error and has been reversed, and the Plan's focus remains on ensuring accurate eligibility records and addressing any substantiated downstream impact.

**Requests for Compensation, Equity, Bonus, and Beneficiary Records**

Your Correspondence seeks extensive records relating to compensation, bonuses, equity programs, and beneficiary records. No basis exists to request such information, and we will not provide any of those records to you.

---

[1] Excerpt of a statement made by Wynn Pott, "...misunderstanding at our Benefits Center. It appears they thought your husband was no longer eligible for coverage, so contrary to your wishes, they terminated coverage."

CHASE

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

September 27, 2024 through October 25, 2024
Account Number: XXXX3898

**CUSTOMER SERVICE INFORMATION**

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-888-262-4273 |
| Para Espanol: | 1-888-262-4273 |
| International Calls: | 1-713-262-1679 |
| We accept operator relay calls | |

00220743 DRE 111 212 30024 NNNNNNNNNNN 1 000000000 18 0000
MS GWENDOLYN L ULIJASZ
539 WEST COMMERCE STREET
#2010
DALLAS TX 75208

## CHECKING SUMMARY

Chase Sapphire Checking

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$20,938.92** |
| Deposits and Additions | 72,802.90 |
| ATM & Debit Card Withdrawals | -1,614.22 |
| Electronic Withdrawals | -77,598.36 |
| Fees | -25.00 |
| **Ending Balance** | **$14,504.24** |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.13 |
| Interest Paid Year-to-Date | $2.07 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 09/27 | Met Life Ins. CO Er Fin Pay PPD ID: 9051600002 | $2,783.92 |
| 09/30 | ATM Surcharge Refund 09/28 Dfw Int'l Airport Dfw Airport TX Card 0416 | 3.00 |

Wires & global transfers | Send money | Payment activity | Manage recipients | Help & support

We've scheduled your wire.

Please print and save this page for your records.

How would you rate your wire experience?

Account details

| | |
|---|---|
| Wire to | Wells Fargo Bank Ameriprise (...1293) |
| Wire from | SAPPHIRE CHECKING (...3898) |
| Wire status | In transit |
| Transaction number | 12017637545 |

Sender information

| | |
|---|---|
| Wire date | Oct 8, 2024 |
| Wire amount | $60,000.00 USD (U.S. Dollars) |
| Outgoing wire transfer fee | No fee |
| Total | $60,000.00 USD (U.S. Dollars) |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 26-30161-mvl7 |
| JASON EMORY McKEMIE, | § | Chapter 7 |
| Debtor. | § | |

**PROPOSED ORDER ON STAY CONTINUATION, ELECTRONIC FILING ACCESS, AND PROCEDURAL PROTECTIONS**

The Court has considered the AMENDED EMERGENCY MOTION FOR CONTINUATION AND SPECIFIC EXTENSION OF THE AUTOMATIC STAY, ELECTRONIC FILING ACCESS, AND ENFORCEABLE PROCEDURAL PROTECTIONS, its declarations and supporting evidence, and responses and arguments after notice and an opportunity to be heard. Each part of this Order is independently effective and shall not delay the other relief granted.

**FINDINGS**

1. Gwendolyn Laura Ulijasz filed ECF 110 on September 11, 2026. November 10, 2026 was the sixtieth day after that filing. The Debtor requested continuation and extension on October 2, before the asserted statutory deadlines. ECF 122, pp. 11–12.

2. On October 7, 2026, before the applicable § 362(e) deadlines expired, Movant filed ECF 128 affirmatively noticing a November 18 final hearing on ECF 110. She later expressly confirmed that she did not dispute the setting. ECF 143, p. 3 ¶ 4. The Court finds that her affirmative pre-deadline conduct was inconsistent with insisting that the stay terminate before the noticed final hearing and constituted waiver of reliance on the § 362(e) deadlines for ECF 110.

3. Movant's November 11 and 12 submissions and subsequent request for a reset corroborate that course of conduct. They are not treated as a retroactive revival of an expired stay. The stay did not terminate as to Movant under § 362(e) on November 10, 2026.

4. Good cause requires a specific extension: the final hearing was continued after Movant stated that she could not appear in person; the proposed reset dates are in December; her submitted provider letter

recommends no travel through approximately January 11, 2027; the Court must resolve the scope of the relief requested in ECF 110 and ECF 143; and the parties and Trustee must have a fair opportunity to address the affected estate interests. ECF 141, p. 35; ECF 143, pp. 4–5; the Debtor's declaration. January 29, 2027 allows a reset after the period stated in that letter and time for a decision.

5. To the extent § 362(e)(1) applies, the same circumstances are compelling circumstances requiring the specified period. There is a reasonable likelihood that the Debtor will prevail against the requested broad stay relief in light of the unresolved affected estate interests, the pending opposition, and the required showing of cause for the particular relief requested. These findings concern interim protection and do not adjudicate ownership or the ultimate merits of ECF 110.

6. The present continuation rests on the pre-deadline waiver and the express findings above. No finding of Trustee consent is inferred from silence or nonappearance; no backdated judicial ruling is created; and no new injunction is issued through an assumed waiver of adversary procedure.

**ORDER**

A. Waiver and continuation. The Emergency Motion is GRANTED on its pre-deadline waiver ground. The automatic stay remains operative as to Movant, subject to its statutory scope and other operative orders. The Court determines that § 362(e) did not terminate the stay as to Movant on November 10, 2026.

B. Specific extension. The applicable § 362(e) period is EXTENDED through 5:00 p.m. Central Time on January 29, 2027, or entry of a final decision on ECF 110, whichever occurs first. The stay shall remain in effect pending that decision during this period. Denial of ECF 110 shall leave the statutory stay in effect according to law. This paragraph itself grants no termination, annulment, modification, or conditioning of the stay at the endpoint. Any request for further extension shall be presented before the specified period expires.

C. Prohibited acts. While the stay remains operative, Movant and persons acting for her shall comply with § 362(a). They shall not prosecute a division of property of the estate in Cause No. DF-24-18010, obtain an adjudication dividing estate property, enforce an award against estate property, or obtain possession of or exercise control over estate property in violation of § 362(a). This order makes no determination that any identified property or act falls outside the stay. It authorizes no transfer, possession, inspection, imaging, copying, use, or derivative use of the Debtor's property or evidence.

D. Other continuation theories. The requests for additional determinations under the all-parties agreement, prior-ruling, forfeiture, and estoppel theories are DENIED AS MOOT in light of the independent waiver determination and full continuation granted in paragraphs A and B. This disposition rejects none of the Debtor's factual assertions or preserved objections and grants Movant no relief.

E. Alternative injunction. The contingent request for a new § 105(a) injunction is DENIED AS MOOT because this order continues the operative statutory stay. No new injunction is issued and no new adversary proceeding is adjudicated by this order.

F. Costs procedure. The request for a separate determination of actual recoverable costs is GRANTED as to procedure. Within seven days after entry of this order, the Debtor may file and serve an itemized declaration identifying each amount, date, payee, receipt, causal act, and legal basis. Movant may respond within seven days after service. Entitlement, any required misconduct or stay-violation findings, causation, amount, and the responsible payor shall be determined by a separate order after any necessary hearing. Any amount awarded against Movant shall be payable directly to the Debtor within seven days after that award. Filing a declaration alone creates no payment obligation. The costs determination shall not delay the stay protection ordered here.

G. Preserved claims and enforcement. The Debtor's § 362(k)(1) claims, objections to ECF 110 and ECF 143, and claims concerning prior acts remain preserved. The Court retains jurisdiction to enforce this order, including through legally available contempt remedies after notice, an opportunity to be heard, and the required findings. No fees, costs, or sanctions are awarded against the Debtor.

H. Merits and hearing. This order grants none of the relief sought in ECF 110 or ECF 143, grants no leave to withdraw any request, determines no ownership interest, and validates no past act. The final hearing on ECF 110 shall be reset by separate notice or order. No final hearing on ECF 110 will be held on November 18, 2026.

**ELECTRONIC FILING ACCESS**

1. Under Federal Rule of Bankruptcy Procedure 5005(a)(3)(B)(i), Jason Emory McKemie is authorized to file electronically on his own behalf in Case No. 26-30161-mvl7. This authorization concerns this bankruptcy case only.

2. Within two business days after entry of this Order, the Clerk shall provide Debtor at jmckemie@mckemie.net the instructions for remote completion of applicable registration, identity-verification, security, and training requirements. Upon completion, the Clerk shall promptly activate the authorized access and associated electronic notices.

3. Pending activation, the Clerk shall designate in writing an electronic method through which Debtor may submit signed PDFs for review and docketing and shall identify how filing acceptance will be confirmed. If direct CM/ECF access cannot be implemented, that designated method shall remain available in this case. A submission shall not be represented as filed before the Clerk accepts and enters it under the designated procedure.

4. Debtor shall comply with applicable signature, redaction, document-format, security, and service requirements. This Order does not dispense with service required by Rules 7004, 7005, 9014, or 9036, and does not alter any substantive filing deadline.

5. This access relief is granted independently of the merits of the case-management requests.

**PROCEDURAL PROTECTIONS AND ESTATE STATUS**

1. Complete delivery. Each party filing or submitting a paper for judicial consideration that is required to be served on Debtor shall promptly email the complete readable paper and all attachments to jmckemie@mckemie.net on the day of filing or submission, in addition to formal service required by law. The message shall identify the title, filing date, docket entry when available, and attachments. Multiple messages shall be numbered sequentially. A paywalled, inaccessible, or expiring link shall not substitute for the required PDFs.

2. Proof and correction. A certificate shall identify the papers served, recipients, addresses, service date, and method. Direct email delivery shall be stated with its actual time and time zone. The sender shall preserve sent messages, attachment lists, rejection notices, and existing mailing records. Upon a particularized written dispute identifying a filing and claimed service failure, the sender shall provide contemporaneous proof within two business days. An inaccurate certificate shall be corrected within one business day after discovery of the inaccuracy. A known failed electronic delivery shall be remedied promptly by effective delivery and any legally required service.

3. Hearing notice. The party responsible for noticing a hearing shall file and serve notice of every setting and continuance. The notice shall identify the motions and relief to be heard, whether testimony will be taken, the date, time, time zone, location, and authorized participation instructions. No party shall treat an uncommunicated setting or substantive change as notice to Debtor.

4. Conferral. Before an ordinary motion affecting Debtor, the movant shall deliver the specific proposed relief and allow at least three business days for his written position. Certificates shall report the current position on each material request and all stated conditions. Any claimed agreement shall be supported by the substantive conferral exchange. Failure to receive a response shall be reported as no response, not affirmative agreement. A party invoking emergency circumstances shall disclose the circumstances and actual efforts to confer and seek relief from the ordinary conference interval.

5. Express agreement. No party or counsel shall represent that Debtor agreed to a motion, order, stipulation, withdrawal, waiver, or material amendment without his express signature approving the exact matter represented. An agreed proposed order shall bear his signature approving that version. Scheduling assent, silence, receipt of an email, or agreement to a different or narrower request shall not be represented as consent to substantive relief, fees, indemnity, withdrawal of objections, or waiver of testimony.

6. Shortened time. An application shall identify the ordinary and proposed deadlines, specific urgency, actual delivery time, and Debtor's current position. An order shortening time shall identify the response deadline and opportunity to answer new material. A party seeking restoration of time because of defective service shall promptly request a ruling. This Order does not automatically change a statutory deadline or authorize disregard of an existing deadline.

7. Disclosure. For a contested evidentiary hearing scheduled at least ten calendar days after entry of this Order, parties shall file and exchange their witness lists, witness topics and estimated testimony time, exhibit lists and complete exhibits, and deposition designations at least seven calendar days before the hearing. Material offered solely for impeachment is excepted as provided by Local Rule 9014-1(c). Existing earlier deadlines remain effective. For a sooner hearing, existing deadlines remain effective unless the Court expressly changes them after notice and reasonable opportunity to comply.

8. Late material. A party seeking to add substantive relief, a witness, or non-impeachment evidence after the applicable deadline shall identify the addition and show good cause in a written request. Before relying on it, the Court shall allow the affected party to respond and shall determine an appropriate remedy for prejudice, including a continuance, additional response, or exclusion when authorized.

9. Proposed orders. A materially revised proposed order shall be supplied in clean and redline form. Parties shall identify disputed provisions before submission for entry. Unrequested indemnity, fees, releases, estate-property determinations, or waivers shall not be presented as previously agreed or already adjudicated. Disputed substantive provisions shall be determined after notice and opportunity to object.

10. Court communications. Parties shall copy Debtor on nonprivileged communications with court staff concerning settings, proposed orders, or the scope of relief. Rule 9003 governs prohibited ex parte communications; authorized administrative communications shall not be used to obtain an undisclosed merits ruling.

11. Existing service dispute. Within two business days after entry, counsel responsible for the certificates in ECF 141, 142, and 143 shall provide Debtor the contemporaneous email-transmission and mailing evidence supporting the November 12 service statements, identifying the attachments transmitted. Any party disputing that evidence may file a response. Any required correction shall comply with paragraph 2.

12. Estate status. Within fourteen days after entry, the Chapter 7 Trustee shall provide Debtor and file a status statement identifying the estate interests and recovery claims under evaluation, specifically including April 16 theft and the alleged pre-divorce siphoning of marital assets, effective abandonment affecting the identified interests, the contemplated discovery route, and next steps and target dates. Any request to withhold responsive information shall identify the legal basis for Court determination under 11 U.S.C. § 704(a)(7).

13. Status conference. The courtroom deputy shall issue a setting notice for a status conference addressing the information in paragraph 12 and the authorized discovery route and schedule for the records requested in ECF 97 and opposed in ECF 111. This Order does not determine estate ownership, approve a distribution, or confer the Trustee's statutory authority on Debtor.

14. Enforcement. A party asserting a violation shall identify the specific provision, conduct, prejudice, and requested remedy. The Court shall determine relief after notice and opportunity to be heard, including restoration of response time, an evidentiary cure, and legally authorized compensatory relief, sanctions, or contempt upon satisfaction of the applicable requirements. This Order does not award fees against Debtor.

15. Scope. These procedures apply in this main bankruptcy case and do not adjudicate or alter procedures in Adversary Proceeding No. 26-03034-mvl. Existing substantive rights, objections, and burdens remain for decision in the proper proceeding.

Submitted by: Jason Emory McKemie, Debtor, pro se. 539 W. Commerce St., #2010, Dallas, TX 75208. (214) 519-8958.

**# # # End of Order # # #**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>**JASON EMORY McKEMIE,**<br><br>Debtor. | Case No. 26-30161-mvl7<br><br>Chapter 7 |

# DEBTOR'S DECLARATION AND RECORD INDEX

*Why I am in this Court, what I have already told this Court, and what Movant's own filings now state*

I, Jason Emory McKemie, declare under 28 U.S.C. § 1746:

1. I am the Debtor in this Chapter 7 case. I am over eighteen and competent to make this declaration. I state facts from my personal knowledge. Where I describe a court record or other document, I give its docket number and page, and the document controls. "Movant" is Gwendolyn Laura Ulijasz. "RR" is the reporter's record in Cause No. DF-24-18010, the divorce case.

## A. WHAT I ASK THE COURT TO DO

2. I ask for a separate written ruling on each of the following:
   (a) a written determination that the automatic stay remains in effect as to Movant, with the extension under 11 U.S.C. § 362(e) requested in my Emergency Motion;
   (b) the Rule 2004 subpoenas requested in ECF 97, with production to me and to the Chapter 7 Trustee at the same time;
   (c) hearing ground rules: every witness identified by individual name before the hearing, no unnamed "representative," and no testimony by telephone or video without a prior written order;
   (d) complete, provable service, and no paper presented as "agreed" without my signature;
   (e) an interim payment for medical access in the amount a state court already fixed, $20,643.56, and my costs; and
   (f) a hearing on damages and sanctions for the stay violations and the false sworn statement identified below. 11 U.S.C. § 362(k)(1).

## B. WHY I AM IN THIS COURT

3. On January 12, 2026 I went to the divorce court for emergency protection from eviction, the loss of my vehicle, and the loss of healthcare before surgery. District Judge Sandra Jackson read my papers and directed me to this Court. As I remember the substance of what she said, the bankruptcy court was the court with the ability to provide the immediate protections I needed. She told me there was no time and that I needed to run. I filed this case that day. My Declaration in Support of CM/ECF Access and Procedural Protections, ¶¶ 7–16, gives the full account.

4. Since then each forum has sent me to another:
   (a) The divorce court has told me to take these matters to the justice court or to the bankruptcy court. The justice court has told me to take them to the divorce court.

(b) After the April 16, 2026 taking of my property, I presented photographs to this Court. I recall being told in substance that I might have a significant claim but that this was not the forum for it.

(c) The Dallas police and the San Antonio police have told me this is a civil matter involving community property. My requests for records from the San Antonio Police Department have been met with denials through the City Attorney's office. I have been told that the district attorney may take something to a grand jury. No one has told me what it is or what I am accused of. Ten police reports between December 2024 and May 2026 produced no arrest, charge or conviction (ECF 144, Ex. 9 at 121).

(d) On September 3, 2026 Movant's lead counsel, Jonathan D. Steele, told the divorce court: "the remedy for a stay violation isn't a vacatur here; it's in the bankruptcy court, which can determine the estate status or annul the stay under section 362(d) to validate the division." RR Vol. 3 at 43:20–24. On September 18, 2026 the divorce court vacated the property division. On November 12, 2026, in this Court, Movant stated that she "does not intend to offer her declaration or to testify" and asked to withdraw her annulment and estate-property requests "without adjudication of those requests on their merits." ECF 143 ¶¶ 1, 6.

5. The state district judge sent me here. Movant's own counsel told the state court that the remedy is here. I am asking this Court for the protection both of them said this Court can give.

**C. WHAT I HAVE ALREADY TOLD THIS COURT, AND WHERE**

6. I reported each of the following to this Court before today.

| Filed | Where | What I told the Court |
|---|---|---|
| Apr. 16, 2026 | ECF 51 at 3–5 ¶¶ 18–20, 45–52 | After I retained counsel, Movant reported my retainer as fraud and blocked survival funds and my rehabilitation equipment. On December 17, 2025 the divorce court ordered reinstatement of my coverage or funding, restoration of health savings and flexible spending access, and non-interference. I was then handed a health savings account card in court as purported compliance. The card was not functional: a replacement had been ordered in her name and her cancelled card was handed to me. She refused to provide the PIN. |
| Apr. 16, 2026 | ECF 51 at 5 ¶¶ 54–61 | On October 31, 2025 Movant testified in the divorce court that she was never on the lease. That was false: the lease application names her as the financial guarantor. When I said I could produce the lease, her lawyer disclosed a "buyout" with the landlord that had been concealed from me since July 2025. |
| Aug. 21, 2026 | ECF 97 at 2 ¶¶ 1–3 | The Trustee's Form 1 (ECF 91) carries my community-property interests in the Accenture equity plans, retirement and investment accounts, and "all marital assets and funds acquired or retained by non-filing spouse," several at "Unknown." I asked for subpoenas to the institutions that hold the records, to learn what exists and what moved. |

| Filed | Where | What I told the Court |
|---|---|---|
| Oct. 1, 2026; signed copy Nov. 10, 2026 | ECF 121 at 9 ¶¶ 17–19; ECF 138 at 12 | On April 16, 2026 this Court ordered that "no other party shall remove any of the possessions from the premises" (ECF 57 at 3). A constable testified that the movers stopped and Movant continued to take items and left with them. My clothing, identification and passport, medication, computers, drives, trial binders and tools of trade left the house. Nothing has been returned. The December 17, 2025 healthcare order has never been performed or paid. |
| Nov. 10, 2026 | ECF 134 at 14 ¶¶ 56–57 | Her October 31, 2025 testimony that she "was never on th[e] lease," against her sworn statement in this Court that the lease was "[t]he one obligation on which both of our names appeared" (ECF 110 at 31 ¶ 12). The April 16 taking is theft, Tex. Penal Code § 31.03, and a violation of the automatic stay and of ECF 57. 11 U.S.C. § 362(a)(3). |
| Nov. 10, 2026 | ECF 133 at 4 | What I would use to prepare for a hearing, including my computers, printers, files, and about seventy terabytes of professional and litigation drives, was taken on April 16 and May 22, 2026. None of it has been returned. Movant controls all marital assets and is represented by two Dallas firms and a Chicago firm. |
| Nov. 12, 2026 | ECF 144, Ex. 10 at 123 | A San Antonio detective stated on May 21, 2025: "none of the information is linked to you. The information goes back to her email and her phone numbers." |
| Nov. 16, 2026 (delivered Nov. 13) | ECF 148 at 10 ¶¶ 15–16 | Between November 19, 2025 and July 27, 2026 I filed at least nineteen papers in the divorce asking for leave to subpoena these institutions. No subpoena was authorized. In no forum has one institution been required to produce a record of where the community's money went. |
| Nov. 16, 2026 | ECF 149 at 2–3 | The Plan Administrator's letters. On October 14, 2026 the plan confirmed my prescription and vision coverage restored retroactive to July 1, 2026. On November 12, 2026 the plan wrote that reimbursement of my expenses under the flexible spending account "can only be secured through the accountholder." |

## D. WHAT MOVANT AND HER COUNSEL HAVE PUT IN WRITING

7. The following are Movant's statements, or her counsel's, with the page where each appears.

| Where | The statement | What it shows |
|---|---|---|
| ECF 110 at 12 ¶ 13 (motion signed by Richard G. Dafoe) | "The overdraft establishes that the funds then held in the account were depleted; it does not by itself exclude earlier withdrawals having been placed in another asset or later redeposited." "No one has identified an asset into which any earlier funds can be traced." | I have said from the beginning that she moved the money into accounts I do not know about. Her answer is not that it did not happen. Her answer is that no one has traced it. |

| Where | The statement | What it shows |
|---|---|---|
| ECF 111 at 17 ¶ 43(c) (Dafoe) | Asks that any subpoena be limited to interests "identified account by account"; that later records be produced "only where the Debtor identifies the petition-date interest they are offered to trace"; that "any production be made to the Chapter 7 Trustee rather than to the Debtor, and that the records not be disseminated to the Debtor absent further order"; and for an order that "prohibits use of any records produced in Cause No. DF-24-18010 or in any other proceeding." | I must name the concealed asset before I may see the records that would show it. The records are to be kept from me and out of the court that will divide the property. |
| ECF 110 at 29 ¶ 10 (her declaration, signed Sept. 10, 2026) | Her current account "replaced my prior Chase account ending x3898 in January 2025." Two deposits, "$5,103 on January 14, 2025 and $5,000 on January 29, 2025, each followed my withdrawal of the same amount from the account a few days earlier"; "I withdrew my own funds and redeposited them." | In the weeks after she filed for divorce she replaced the account her pay went into and moved money by withdrawal and redeposit. She calls earnings during the marriage "my own funds." |
| ECF 110 at 32 (her declaration) | "The only items I took from the premises were a handbag, two or three skirts, and a wooden carving." | False. Deputies testified on September 3, 2026 that "they started to take property" and that "[s]he continued to take her items" after this Court's order (RR Vol. 3 at 17:2–25:16). A deputy constable said on body camera: "Her security guy just left with that computer, did she approve that?" and "those hard drives" (ECF 135, Ex. I at 18). |
| ECF 110 at 27 ¶ 4 (her declaration) | "I learned of the case from the notice he filed in the divorce court on February 18, 2026." | She knew of this case almost four months before the June 11, 2026 trial. The transcript of that trial contains no mention of the bankruptcy, the stay or the Trustee (RR Vol. 1). On September 3, 2026 the divorce court told her counsel: "But you did because that decree violates it" (RR Vol. 3 at 41:9–20). |
| ECF 110 at 33 ¶ 13 (her declaration) | "In reliance on the Decree, on June 26, 2026, the day it was signed, I submitted ... the enrollment change removing Mr. McKemie from my employer-sponsored health coverage ... I cancelled the card he held on my health savings account, and I changed the beneficiary designations." | She acted the same day on a decree whose property division the divorce court vacated on September 18, 2026. The plan did not confirm restoration of my coverage until October 2026 (ECF 149 at 3). |

| Where | The statement | What it shows |
|---|---|---|
| ECF 110, Ex. 3 at 76–94 (her inventory); RR Vol. 1 at 22:12–23:1, 34:13–23 | At trial she answered "Yes" when asked whether her equity plan account and the health savings account were "the entirety of your community property," and "No, that's it" when asked about other bank accounts. Her inventory lists five bank accounts, one "in the name of GLU Distribution LLC," a 401(k), and restricted stock units in grants of 510 and 292 units. Under closely held business interests it says "None." | Her trial testimony and her own inventory cannot both be true. |
| ECF 136 at 1 (witness disclosures signed by Richard G. Dafoe, Nov. 11, 2026) | Names one witness: me. "Gwendolyn reserves the right to call a representative from any company (including but not limited to, banks, credit card companies, other financial institutions and the like)"; "any rebuttal witnesses"; "any additional witness necessary to offer evidence in light of subsequent discovery." | Movant may not call any person, from any company, about anything, on the day of the hearing. A witness against me must be identified in advance by name, employer and title, with the subjects of testimony, must be sworn in open court, and must be someone I can cross-examine. A voice on a telephone line is not a witness. |

**E. "WE ARE BROKE"**

8. From about August 2024 Movant told me the household faced a short-term budget crunch and told me to put household expenses on my personal credit cards. She told me the first installment of her $300,000 signing bonus would pay my cards off in November 2024. She told me we were going to bounce a utility check; I have that call recorded. She told me we could not stay in a hotel and could not afford my retainer because we did not have any money.

9. Exhibit RI-1 is her Chase account ending 3898 for the same period, as she produced it:

| Statement period | Deposits | Ending balance |
|---|---|---|
| September 27 – October 25, 2024 | $72,802.90 | $14,504.24 |
| October 26 – November 27, 2024 | $134,199.71 | $78,343.72 |
| November 28 – December 26, 2024 | $15,291.21 | $5,927.24 |
| **Three periods** | **$222,293.82** | |

10. On November 21, 2024 Accenture payroll deposited $106,407.03 and $10,448.03 into that account. On November 22, 2024 she paid $37,571.87 to her own Chase credit card and sent me $1,500. On December 2, 2024 she paid American Express $23,406.03. On December 11, 2024 she paid SoFi $25,513 (ECF 110 at 33 ¶ 14). My cards were not paid.

11. On December 10, 2024, the day of my spinal surgery, she wrote her sister that she had "already put up a retainer" with a family lawyer and: "I have plenty of money." I have that message.

12. I was left burdened with about $25,000 a month in expenses while I was undergoing spinal surgery, after the estate's money had been siphoned away. That, the medical bills that

followed the October 31, 2025 termination of my coverage, and the eviction are what brought me to this Court.

13. At trial on June 11, 2026 Movant testified that she had a Chase checking account before the marriage and asked the court to award it to her as non-marital property (RR Vol. 1 at 7:1–13). She identified her Exhibit 32 as the statements for "that Chase account" and added that she had closed one account number and opened another: "So while I always just had one, you will see that there is two different checking account numbers" (RR Vol. 1 at 25:15–26:6). The court found that "the wife's checking accounts in her name are her separate property" (RR Vol. 1 at 43:6–7). Exhibit RI-1 is that account. In the three statement periods shown, during the marriage, it received $222,293.82.

**F. OCTOBER 2025: THE $6,500 AND THE JOB**

14. On October 1, 2025 I filed an emergency motion in the divorce court for leave to withdraw $6,500 from an IRA in my own name to reinstate my car insurance and keep a new job (DF-24-18010, pleading 097). My employer's October 9, 2025 letter is Exhibit E to my access declaration. I went to the court three times that week and told the judge I would lose the job by Friday. The matter was put off to Monday because opposing counsel could not be there until Monday. I asked to make a statement for the record. I was told there was no court reporter and that the microphones would not be turned on. By Monday the job was gone. On October 20, 2025 the court signed an order reciting that "the parties have agreed" to the same $6,500 withdrawal I had requested on October 1 (pleading 099). Nothing in it had changed.

15. In November 2024 I had been offered a position paying about $250,000 a year, and Movant urged me not to take it (access declaration ¶¶ 29–30). At trial on June 11, 2026 she pointed to my October 2025 employer letter as proof that I was employed and testified that I was "[a]bsolutely" capable of supporting myself (RR Vol. 1 at 20:24–21:18). That job ended in October 2025.

**G. WHERE I AM TODAY**

16. I have about $200. I do not have a suit, dress shoes or a belt. I do not have a car. I do not have a cell phone. My identification and passport were taken from my home on April 16, 2026. I cannot interview for work in this condition. She stole everything I would need to do it. I am living with my parents. Within ten days they need about $3,000 to keep my father's life, home and vehicle insurance from lapsing, and they do not have it.

16A. On December 12, 2024 Movant texted me that she was "concerned about your health insurance coverage" and "Found out I can have you on my healthcare through cobra for 6 months." At the same time she reported my retainer, my survival-funds transfer and my rehabilitation equipment as fraud. She then emailed my attorney that "no healthcare is on the table for Jason." On December 18, 2024 she cut off my health savings account card. When I was later handed her cancelled card in court, she refused to provide the last four digits of the newly issued card so the pharmacy could process a charge for my heart medication. I have the texts and the email.

16B. The November 12, 2026 shortened-time request served on me the next day is not an exception. It is the rule with Movant's counsel. Donna Tomlinson withdrew before the January 7, 2025 protective-order hearing, stating on the record that continuing would violate her ethical oath as an officer of the court (ECF 134 at 9 ¶ 40). On April 29, 2025, with discovery open until June 23, the divorce court signed the order withdrawing Will Cook; Movant then had no attorney of record for 55 days and would not declare herself pro se; I

served my discovery on May 27, 2025 and there was no one to answer it. At 11:08 p.m. on June 23, 2025, the last day of discovery, Ethan Scroggins of the same firm appeared and filed blanket objections; about an hour later discovery was declared closed. On October 31, 2025 I told the 302nd District Court that when I pressed for the records her counsel would move to withdraw. On November 3, 2025, the next business day, Mr. Scroggins moved to withdraw; I objected on November 4 and 10 and asked that withdrawal wait until the court-ordered financial records were produced (DF-24-18010, pleadings 109, 111); the court signed the withdrawal on November 18, 2025 (pleading 113). The records were never produced. Mr. Steele then appeared pro hac vice. Each hearing is moved back until I am in medical and logistical collapse, and then they take a ruling. That is how the June 26, 2026 decree was obtained.

17. Accenture confirmed that my coverage was dropped on October 31, 2025 because of a participant-reported, divorce-based qualifying life event when no divorce had occurred. It acknowledged that I remained an eligible dependent and later confirmed that no COBRA qualifying event occurred. See DF-24-18010, pleading 168 at 11.

18. On December 17, 2025 Associate Judge Abendroth signed an order requiring Movant, within twenty-four hours, to reinstate my coverage and give me working access to the health savings and flexible spending accounts, or to deposit $20,643.56, of which $17,959.00 replaces the health savings and flexible spending amounts (Exhibit RI-3, §§ I, III). Her handwritten note on the order states that Movant did not appear and that the court took a default. In January 2026 I was handed a health savings account card in court as purported compliance. It was not functional; it was her cancelled card (ECF 51 at 4–5 ¶¶ 47–52). On June 26, 2026 she "cancelled the card he held on my health savings account" (ECF 110 at 33 ¶ 13). The $20,643.56 has never been deposited. I have no working access to the health savings or flexible spending accounts today. On November 12, 2026 the Plan Administrator wrote that reimbursement of my expenses under the flexible spending account "can only be secured through the accountholder" (ECF 149 at 2). The accountholder is Movant. The money I paid out of pocket can be claimed only by her. On November 17, 2026 the Plan Administrator wrote that the plan "does not restrict the accountholder from extending access to an eligible dependent, such as through an additional debit card," and that "the decision to provide that access is at the accountholder's discretion" (Exhibit RI-4).

19. Exhibit RI-1 is a true copy of the statements for Movant's Chase account ending 3898 for September 27 through December 26, 2024, as produced by her, with the account number redacted to its last four digits under Fed. R. Bankr. P. 9037. Exhibit RI-2 is a demonstrative prepared from the Dallas County docket in Cause No. DF-24-18010 as checked on November 13, 2026. It counts 300 docket events: 161 filed by me, 51 filed by Movant, and 88 by the court or clerk; 62 of my filings sought emergency or stabilization relief. Its classifications are mine and are not judicial findings. Exhibit RI-3 is a true copy of the signed December 17, 2025 Order on Emergency Reinstatement of Healthcare, with the associate judge's handwritten changes. Exhibit RI-4 is a true copy of the Plan Administrator's email to me of November 17, 2026.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 17, 2026.

*/s/ Jason Emory McKemie*

Jason Emory McKemie

# EXHIBIT RI-1

Chase account ending 3898

Statements for September 27 – December 26, 2024

(as produced by Gwendolyn Laura Ulijasz; account number redacted to last four digits, Fed. R. Bankr. P. 9037)

In re McKemie, No. 26-30161-mvl7 | Debtor's Declaration and Record Index, November 17, 2026

CHASE

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

September 27, 2024 through October 25, 2024
Account Number: ending 3898

## CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-888-262-4273 |
| Para Espanol: | 1-888-262-4273 |
| International Calls: | 1-713-262-1679 |
| We accept operator relay calls | |

00220743 DRE 111 212 30024 NNNNNNNNNNN 1 000000000 18 0000
MS GWENDOLYN L ULIJASZ
539 WEST COMMERCE STREET
#2010
DALLAS TX 75208

## CHECKING SUMMARY

Chase Sapphire Checking

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$20,938.92** |
| Deposits and Additions | 72,802.90 |
| ATM & Debit Card Withdrawals | -1,614.22 |
| Electronic Withdrawals | -77,598.36 |
| Fees | -25.00 |
| **Ending Balance** | **$14,504.24** |

| | |
|---|---|
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.13 |
| Interest Paid Year-to-Date | $2.07 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 09/27 | Met Life Ins. CO Er Fin Pay PPD ID: 9051800002 | $2,783.92 |
| 09/30 | ATM Surcharge Refund 09/28 *Dfw Intl Airport Dfw Airport TX Card 0416 | 3.00 |
| 09/30 | Cognizant Techno Direct Dep PPD ID: 9111111103 | 2,410.82 |
| 10/03 | Met Life Ins. CO Er Fin Pay PPD ID: 9051800002 | 1,670.35 |
| 10/08 | Sofi Pl Disb Pl Disb 25242392 Web ID: 2452499523 | 60,000.00 |
| 10/11 | ATM Surcharge Refund 10/10 ATM Ag F0Rtuna Mltsv San Jose Card 0416 | 3.96 |
| 10/15 | Cognizant Techno Direct Dep PPD ID: 9111111103 | 5,930.72 |
| 10/25 | Interest Payment | 0.13 |
| **Total Deposits and Additions** | | **$72,802.90** |



GU000066

CHASE

September 27, 2024 through October 25, 2024
Account Number: ending 3898

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 09/30 | Non-Chase ATM Withdraw 09/28 *Dfw Intl Airport Dfw Airport TX Card 0416 | $503.00 |
| 10/02 | Recurring Card Purchase 10/02 Costco *Annual Renewa 800-774-2678 WA Card 0416 | 130.00 |
| 10/07 | Non-Chase ATM Withdraw 10/06 Banco Nacional Puntarenas Card 0416 CR Colon 200000.00 X 0.001939650 (Exchg Rte) | 387.93 |
| 10/11 | Non-Chase ATM Withdraw 10/10 ATM Ag F0Rtuna Mltsv San Jose Card 0416 CR Colon 200000.00 X 0.001946633 (Exchg Rte) | 393.29 |
| 10/15 | ATM Withdrawal 10/12 5220 W Lovers Ln Dallas TX Card 0416 | 200.00 |
| **Total ATM & Debit Card Withdrawals** | | **$1,614.22** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 09/30 | Zelle Payment To Travis Jpm99Aoi4Pvw | $5,000.00 |
| 09/30 | 09/29 Online Transfer To Chk ...6893 Transaction#: 22210011388 | 500.00 |
| 10/07 | 10/05 Online Transfer To Chk ...6893 Transaction#: 22291584824 | 400.00 |
| 10/07 | 10/05 Payment To Chase Card Ending IN 2372 | 5,287.65 |
| 10/07 | Amex Epayment ACH Pmt A3778 Web ID: 6133133497 | 683.04 |
| 10/08 | 10/08 Online Domestic Wire Transfer Via: Wells Fargo NA/121000248 A/C: Wells Fargo Bank MN NA Minneapolis MN 55479 US Ref: Rollover-Repay 60 Day Loan/Bnf/Gwendolyn Laura Ulijasz IRA 88157988 2 133/Time/08:26 Imad: 1008Mmqfmp2M008259 Trn: 3184594282Es | 60,000.00 |
| 10/09 | 10/09 Online Transfer To Chk ...6893 Transaction#: 22323393645 | 2,000.00 |
| 10/11 | 10/11 Online Transfer To Chk ...6893 Transaction#: 22342298113 | 1,500.00 |
| 10/15 | Venmo Payment 1037575332134 Web ID: 3264681992 | 100.00 |
| 10/15 | Intouch Credit U Ck-Wth PPD ID: 311079474 | 1,161.70 |
| 10/15 | Zelle Payment To Ammy 22391656605 | 70.00 |
| 10/23 | Loan-Aig 8002655054 3610000801410O Web ID: 1132592361 | 695.97 |
| 10/25 | Venmo Payment 1037807854782 Web ID: 3264681992 | 200.00 |
| **Total Electronic Withdrawals** | | **$77,598.36** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/25 | Monthly Service Fee | $25.00 |
| **Total Fees** | | **$25.00** |

Did you know you can waive your Chase Sapphire Checking Monthly Service Fee by keeping an average daily balance of at least $75,000 in qualifying linked deposits and investments? During this statement period, your combined average daily balance was $19,593.

CHASE

September 27, 2024 through October 25, 2024
Account Number: ending 3898

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

Call us at 1-866-564-2262 or write us at the address on the front of this statement immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

**For personal accounts only:** We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number;
- A description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and
- The amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**For business accounts**, see your deposit account agreement or other applicable agreements that govern your account for details.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC FUNDS TRANSFERS:** Contact us immediately if your statement is incorrect or if you need more information about any non-electronic funds transfers on this statement. For more details, see your deposit account agreement or other applicable agreements that govern your account.

**JPMorgan Chase Bank, N.A. Member FDIC**



GU000068

CHASE

September 27, 2024 through October 25, 2024
Account Number: ending 3898

This Page Intentionally Left Blank

CHASE
JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

October 26, 2024 through November 27, 2024
Account Number: ending 3898

**CUSTOMER SERVICE INFORMATION**

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-888-262-4273** |
| Para Espanol: | 1-888-262-4273 |
| International Calls: | 1-713-262-1679 |
| We accept operator relay calls | |

00222170 DRE 111 212 33324 NNNNNNNNNNN 1 000000000 18 0000
MS GWENDOLYN L ULIJASZ
539 WEST COMMERCE STREET
#2010
DALLAS TX 75208

**Please review our overdraft service options at the end of this statement**

We've included an overview of our overdraft services and fees that are available for personal checking account(s) at the end of this statement.

Please note, the following overdraft services are not available for certain accounts:

- Standard Overdraft Practice and Chase Debit Card Coverage(SM) are not available for Chase High School Checking(SM), Chase Secure Checking(SM) and Chase First Checking(SM).
- Overdraft Protection is not available for Chase Secure Checking(SM) and Chase First Checking(SM).

If you have questions, please visit **chase.com/overdraft** or call us at the number on this statement. We accept operator relay calls.

## CHECKING SUMMARY

Chase Sapphire Checking

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$14,504.24** |
| Deposits and Additions | 134,199.71 |
| ATM & Debit Card Withdrawals | -500.00 |
| Electronic Withdrawals | -69,835.23 |
| Fees | -25.00 |
| **Ending Balance** | **$78,343.72** |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.23 |
| Interest Paid Year-to-Date | $2.30 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/28 | Remote Online Deposit 1 | $3,084.16 |
| 10/29 | Mspbna ACH Trnsfr PPD ID: 1391321258 | 0.11 |
| 11/06 | Accenture Llp Payroll PPD ID: 1720542904 | 10,607.36 |
| 11/06 | Accenture Llp Payments PPD ID: 8975729001 | 70.00 |
| 11/12 | Online Transfer From Chk ...6893 Transaction#: 22695263377 | 3,400.00 |
| 11/20 | Payoneer 7362 EDI Paymnt 366184728596456 CCD ID: 1352254039 | 123.79 |
| 11/21 | Accenture Llp Payroll PPD ID: 1720542904 | 106,407.03 |

CHASE

October 26, 2024 through November 27, 2024
Account Number: ending 3898

## DEPOSITS AND ADDITIONS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/21 | Accenture Llp Payroll PPD ID: 1720542904 | 10,448.03 |
| 11/26 | State of Ill Ilsttaxrfd PPD ID: 1376002057 | 59.00 |
| 11/27 | Interest Payment | 0.23 |
| **Total Deposits and Additions** | | **$134,199.71** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/25 | ATM Withdrawal 11/23 5220 W Lovers Ln Dallas TX Card 0416 | $500.00 |
| **Total ATM & Debit Card Withdrawals** | | **$500.00** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/28 | 10/27 Online Transfer To Chk ...6893 Transaction#: 22516949333 | $500.00 |
| 10/28 | American Express ACH Pmt W3000 Web ID: 2005032111 | 174.00 |
| 10/31 | Zelle Payment To Travis Jpm99Aqathrj | 5,000.00 |
| 11/04 | 11/04 Payment To Chase Card Ending IN 4005 | 1,000.00 |
| 11/06 | 11/06 Payment To Chase Card Ending IN 4005 | 5,000.00 |
| 11/07 | Amex Epayment ACH Pmt A6336 Web ID: 6133133497 | 683.04 |
| 11/07 | Sofi Bank Pl Pl Pymt T52510340 Web ID: 3452499527 | 2,782.26 |
| 11/12 | Intouch Credit U Ck-Wth PPD ID: 311079474 | 1,161.70 |
| 11/13 | 11/12 Payment To Chase Card Ending IN 4005 | 12,053.39 |
| 11/15 | Zelle Payment To Housekeeperfiras Jpm99AR8Jme1 | 40.00 |
| 11/18 | American Express ACH Pmt M8164 Web ID: 2005032111 | 15.00 |
| 11/18 | Venmo Payment 1038312877401 Web ID: 3264681992 | 158.00 |
| 11/22 | 11/22 Online Transfer To Chk ...6893 Transaction#: 22796750628 | 1,500.00 |
| 11/22 | 11/22 Payment To Chase Card Ending IN 4005 | 37,571.87 |
| 11/22 | Zelle Payment To Jason Mckemie 22806450937 | 1,500.00 |
| 11/25 | Loan-Aig [redacted] Web ID: [redacted] | 695.97 |
| **Total Electronic Withdrawals** | | **$69,835.23** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/27 | Monthly Service Fee | $25.00 |
| **Total Fees** | | **$25.00** |

Did you know you can waive your Chase Sapphire Checking Monthly Service Fee by keeping an average daily balance of at least $75,000 in qualifying linked deposits and investments? During this statement period, your combined average daily balance was $26,181.

CHASE

October 26, 2024 through November 27, 2024
Account Number: ending 3898

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

Call us at 1-866-564-2262 or write us at the address on the front of this statement immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

**For personal accounts only:** We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number;
- A description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and
- The amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**For business accounts**, see your deposit account agreement or other applicable agreements that govern your account for details.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC FUNDS TRANSFERS:** Contact us immediately if your statement is incorrect or if you need more information about any non-electronic funds transfers on this statement. For more details, see your deposit account agreement or other applicable agreements that govern your account.

**JPMorgan Chase Bank, N.A. Member FDIC**

12217002020000000062



GU000072

CHASE

October 26, 2024 through November 27, 2024
Account Number: ending 3898

## Overdraft and Overdraft Fee Information for Your Chase Checking Account

### What You Need to Know About Overdrafts and Overdraft Fees

An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway. Whether your account has enough money to cover a transaction is determined during our nightly processing. During our nightly processing, we take your previous end of day's balance and post credits. If there are any deposits not yet available for use or holds (such as a garnishment), these will reduce the account balance used to pay your transactions. Then we subtract any debit transactions presented during our nightly processing. The available balance shown to you during the day may not be the same amount used to pay your transactions as some transactions may not be displayed to you before nightly processing.

We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize or pay any transactions presented for payment. If we do not authorize an overdraft, your transaction will be declined. If we do not pay an overdraft, your transaction will be returned. Additional information about overdrafts and your account features can be found in the *Deposit Account Agreement*.

We can cover your overdrafts in three different ways:

1. We have a Standard Overdraft Practice that comes with your account.
2. We offer Overdraft Protection through a link to a Chase savings account, which may be less expensive than our Standard Overdraft Practice. You can contact us to learn more.
3. We also offer Chase Debit Card Coverage℠, which allows you to choose how we treat your everyday debit card transactions (e.g. groceries, gasoline or dining out), in addition to our Standard Overdraft Practice.

This notice explains our Standard Overdraft Practice and Chase Debit Card Coverage.

- **What is the Standard Overdraft Practice that comes with my account?**
  We **do** authorize and pay overdrafts for the following types of transactions:
  - Checks and other transactions made using your checking account number
  - Recurring debit card transactions (e.g. movie subscriptions or gym memberships)

- **What is Chase Debit Card Coverage?**
  If you enroll in Chase Debit Card Coverage we **may** authorize and pay overdrafts for **everyday debit card transactions** (e.g. groceries, gasoline or dining out) in addition to our Standard Overdraft Practice.

- **What fees will I be charged if Chase pays my overdraft?**
  If we authorize and pay an overdraft, we'll charge you a $34 Overdraft Fee per transaction during our nightly processing beginning with the first transaction that overdraws your account balance by more than $50 (maximum of 3 fees per business day, up to $102).

  We won't charge you an Overdraft Fee in the following circumstances:
  - With Chase Overdraft Assist℠, we won't charge an Overdraft Fee if you're overdrawn by $50 or less at the end of the business day **OR** if you're overdrawn by more than $50 and you bring your account balance to overdrawn by $50 or less at the end of the next business day (you have until 11 p.m ET (8 p.m PT) to make a deposit or transfer). Chase Overdraft Assist does not require enrollment and comes with eligible Chase checking accounts.
  - We won't charge an Overdraft Fee for transactions that are $5 or less.
  - We won't charge an Overdraft Fee if your debit card transaction was authorized when there was a sufficient available balance in your account.
  - For Chase Sapphire℠ Checking and Chase Private Client Checking℠ accounts, there are no Overdraft Fees when item(s) are presented against an account with insufficient funds on the first four business days during the current and prior 12 statement periods. On a business day when we returned item(s), this counts toward the four business days when an Overdraft Fee will not be charged.

- **What if I want Chase to authorize and pay overdrafts on my everyday debit card transactions?**
  If you or a joint account owner want Chase to authorize overdrafts on your everyday debit card transactions, please make your Chase Debit Card Coverage selection. You can change your Chase Debit Card Coverage selection at any time by signing in to chase.com or Chase Mobile® to update your account settings, calling us at 1-800-935-9935 (or at 1-713-262-1679 if outside the U.S.), or visiting a Chase branch. We accept operator relay calls.

CHASE

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

November 28, 2024 through December 26, 2024
Account Number: ending 3898

**CUSTOMER SERVICE INFORMATION**

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-888-262-4273 |
| Para Espanol: | 1-888-262-4273 |
| International Calls: | 1-713-262-1679 |
| We accept operator relay calls | |

00223248 DRE 111 212 36224 NNNNNNNNNNN 1 000000000 18 0000
MS GWENDOLYN L ULIJASZ
539 WEST COMMERCE STREET
#2010
DALLAS TX 75208

## CHECKING SUMMARY

Chase Sapphire Checking

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$78,343.72** |
| Deposits and Additions | 15,291.21 |
| ATM & Debit Card Withdrawals | -600.00 |
| Electronic Withdrawals | -87,082.69 |
| Fees | -25.00 |
| **Ending Balance** | **$5,927.24** |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.25 |
| Interest Paid Year-to-Date | $2.55 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/05 | Accenture Llp Payments PPD ID: 8975729001 | $25.29 |
| 12/06 | Accenture Llp Payroll PPD ID: 1720542904 | 3,510.88 |
| 12/19 | Accenture Llp Payments PPD ID: 8975729001 | 887.87 |
| 12/20 | Accenture Llp Payroll PPD ID: 1720542904 | 10,614.24 |
| 12/20 | Accenture Llp Payroll PPD ID: 1720542904 | 252.68 |
| 12/26 | Interest Payment | 0.25 |
| **Total Deposits and Additions** | | **$15,291.21** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/09 | ATM Withdrawal 12/07 4236 Wycliff Ave Dallas TX Card 0416 | $200.00 |
| 12/23 | ATM Withdrawal 12/21 4236 Wycliff Ave Dallas TX Card 0416 | 400.00 |
| **Total ATM & Debit Card Withdrawals** | | **$600.00** |

CHASE

November 28, 2024 through December 26, 2024
Account Number: ending 3898

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/29 | American Express ACH Pmt M8190 Web ID: 2005032111 | $627.76 |
| 12/02 | Zelle Payment To Travis Jpm99As276Ku | 5,000.00 |
| 12/02 | Amex Epayment ACH Pmt M1990 Web ID: 6133133497 | 23,406.03 |
| 12/04 | 12/04 Online Transfer To Chk ...6893 Transaction#: 22943224993 | 500.00 |
| 12/06 | Zelle Payment To Housekeeperfiras Jpm99Asgk8Tm | 480.00 |
| 12/09 | Sofi Bank Pl Pl Pymt T53788115 Web ID: 3452499527 | 2,782.26 |
| 12/09 | American Express ACH Pmt W5980 Web ID: 2005032111 | 819.03 |
| 12/11 | 12/10 Payment To Chase Card Ending IN 4005 | 8,947.35 |
| 12/11 | Sofi Bank Pl Pl Pymt T53952861 Web ID: 3452499527 | 25,513.00 |
| 12/12 | Intouch Credit U Ck-Wth PPD ID: 311079474 | 1,161.70 |
| 12/12 | 12/12 Online Transfer To Chk ...6893 Transaction#: 23024969605 | 2,000.00 |
| 12/18 | 12/18 Payment To Chase Card Ending IN 7396 | 1,344.58 |
| 12/23 | Zelle Payment To Josh Webster Jpm99Aten1Yh | 500.00 |
| 12/23 | American Express ACH Pmt M7108 Web ID: 2005032111 | 11,905.09 |
| 12/23 | Zelle Payment To Josh Webster Jpm99Atgh941 | 500.00 |
| 12/23 | American Express ACH Pmt W2920 Web ID: 2005032111 | 801.92 |
| 12/24 | Loan-Aig [redacted] Web ID: 1132592361 | 695.97 |
| 12/24 | Zelle Payment To Josh Webster Jpm99Atiie0Q | 98.00 |
| | **Total Electronic Withdrawals** | **$87,082.69** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/26 | Monthly Service Fee | $25.00 |
| | **Total Fees** | **$25.00** |

Did you know you can waive your Chase Sapphire Checking Monthly Service Fee by keeping an average daily balance of at least $75,000 in qualifying linked deposits and investments? During this statement period, your combined average daily balance was $36,656.

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

Call us at 1-866-564-2262 or write us at the address on the front of this statement immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

**For personal accounts only:** We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number;
- A description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and
- The amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**For business accounts**, see your deposit account agreement or other applicable agreements that govern your account for details.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC FUNDS TRANSFERS:** Contact us immediately if your statement is incorrect or if you need more information about any non-electronic funds transfers on this statement. For more details, see your deposit account agreement or other applicable agreements that govern your account.

**JPMorgan Chase Bank, N.A. Member FDIC**

# EXHIBIT RI-2

Exhibit Q-8

Due Process / Updated Docket Demonstrative, Cause No. DF-24-18010

Updated November 13, 2026

(demonstrative; classifications are not judicial findings)

In re McKemie, No. 26-30161-mvl7 | Debtor's Declaration and Record Index, November 17, 2026

**CAUSE NO. DF-24-18010 — IN THE 301ST JUDICIAL DISTRICT COURT, DALLAS COUNTY, TEXAS**

In the Matter of the Marriage of Gwendolyn Ulijasz-McKemie and Jason Emory McKemie

Updated November 13, 2026 — Live Dallas County docket checked on that date

# RESPONDENT'S EXHIBIT Q-8

Due Process Collapse / Updated Docket Demonstrative

Docket events through October 16, 2026

*Updated demonstrative — classifications are not judicial findings*

# DF-24-18010 - DUE PROCESS COLLAPSE / RESPONDENT FILING DEMONSTRATIVE

Updated through the latest displayed event, 10/16/2026; live Dallas County portal checked 11/13/2026. A '1' means a Respondent filing addresses that issue. Flags classify filing content and allegations for demonstrative purposes; they are not judicial findings.

| CONTROL COUNT | VALUE |
|---|---|
| Official docket events | 300 |
| Respondent-filed docket items | 161 |
| Petitioner-filed docket items | 51 |
| Court / clerk events | 88 |
| Respondent emergency / stabilization filings | 62 |
| Explicit adverse / denied court actions | 9 |
| Respondent-favorable court actions (includes partial) | 7 |
| Indexed pages across Respondent filings* | 2335 |

| ISSUE CATEGORY | COUNT | % RESP |
|---|---|---|
| Healthcare | 72 | 45% |
| Emergency | 62 | 39% |
| Discovery Violations | 83 | 52% |
| Financial Relief | 121 | 75% |
| Due Process | 129 | 80% |
| Parity / Status Quo | 75 | 47% |
| Court Reporter | 32 | 20% |
| False Narratives | 61 | 38% |
| Medical Risk | 82 | 51% |
| Attorney Gamesmanship | 29 | 18% |
| Danger / High Risk | 63 | 39% |
| Stolen Evidence | 35 | 22% |

| ROW COLOR | MEANING |
|---|---|
| WHITE | Petitioner filing |
| GRAY | Court / clerk / administrative event |
| GREEN | Court action favorable to Respondent (may be partial) |
| ROSE | Respondent emergency / stabilization filing |
| ORANGE | Respondent filing; no favorable ruling shown on that row |
| DARK RED | Adverse / denied court disposition |

Method / control: The original 267-event sequence is retained, with source-backed filer/status corrections and recovered issue/page data. Added: 22 indexed filings and 11 hearing/clerk/appellate entries (33 events). Category totals count Respondent filing content, including attached submissions and proposed orders; a proposed order is not a grant. Other historical flags are carried forward from Q-8, not a fresh adjudication of each allegation.

Source / page key: C = original certified docket page as cited in Q-8 (printed 08/06/2026); U = physical page of county portal report printed 10/16/2026; L = live portal entry checked 11/13/2026. Pages = matched filing PDF length, including attachments; blank means not matched/not applicable. *Four pages for pleading #249 are index-only; its PDF link remains unresolved. Updated material is not represented as a newly certified clerk record.

Stolen evidence safeguard: This demonstrative creates no access, inspection, imaging, copying, testing, authentication, review, use, derivative use, or benefit pathway for Petitioner, counsel, experts, vendors, agents, or anyone acting for her with respect to Jason McKemie's stolen hard drives or evidence repositories.

## Appendix A - Complete Docket Alignment / Updated through 10/16/2026

| Seq | Date | Pg | Event | Filer | Status | Docket description / matched filing title | Pages | HC | EM | DISC | FIN | DP | PAR | CR | FALSE | MED | ATTY | RISK | STOL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 12/18/2024 | C1 | NEW CASE FILED (OCA) - FAMILY | COURT | COURT | NEW CASE FILED (OCA) - FAMILY | | | | | | | | | | | | | |
| 2 | 12/15/2024 | C1 | ORIGINAL PETITION | PETITIONER | PETITIONER | ORIGINAL PETITION | | | | | | | | | | | | | |
| 3 | 12/16/2024 | C1 | ISSUE CITATION | COURT | COURT | ISSUE CITATION | | | | | | | | | | | | | |
| 4 | 12/18/2024 | C1 | APPLICATION - PROTECTIVE ORDER | PETITIONER | PETITIONER | APPLICATION - PROTECTIVE ORDER | | | | | | | | | | | | | |
| 5 | 12/18/2024 | C1 | APPLICATION - TEMPORARY RESTRAINING ORDER | PETITIONER | PETITIONER | APPLICATION - TEMPORARY RESTRAINING ORDER | | | | | | | | | | | | | |
| 6 | 12/18/2024 | C1 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | TEMPORARY EX PARTE PROTECTIVE ORDER | | | | | | | | | | | | | |
| 7 | 12/18/2024 | C1 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | TEMPORARY EXPARTE TRO AND ORDER SETTING HEARING FOR TEMPORARY ORDERS | | | | | | | | | | | | | |
| 8 | 12/18/2024 | C1 | JUDGE DOCKET ENTRY | COURT | COURT | Temporary ex parte protective order and ex parte Restraining Order signed and given to Attorney to bring to clerk | | | | | | | | | | | | | |
| 9 | 12/18/2024 | C1 | TEMPORARY EX PARTE PROTECTIVE ORDER | COURT | COURT | Vol /Book 0. Page 0. 0 pages | | | | | | | | | | | | | |
| 10 | 12/18/2024 | C1 | ORDER - TEMPORARY RESTRAINING ORDER | COURT | COURT | AND ORDER SETTING HEARING FOR TEMPORARY ORDERS | | | | | | | | | | | | | |
| 11 | 12/18/2024 | C1 | ORDER - NOTICE OF HEARING | COURT | COURT | PROTECTIVE ORDER | | | | | | | | | | | | | |
| 12 | 12/18/2024 | C1 | ISSUE TEMPORARY PROTECTIVE ORDER | COURT | COURT | ISSUE TEMPORARY PROTECTIVE ORDER | | | | | | | | | | | | | |
| 13 | 12/18/2024 | C1 | ISSUE TRO AND NOTICE | COURT | COURT | ISSUE TRO AND NOTICE | | | | | | | | | | | | | |
| 14 | 12/18/2024 | C2 | TEMPORARY PROTECTIVE ORDER | COURT | COURT | JASON MCKEMIE - Unserved; anticipated server ATTORNEY | | | | | | | | | | | | | |
| 15 | 12/18/2024 | C2 | TRO / NOTICE | COURT | COURT | MCKEMIE, JASON Unserved JASON MCKEMIE | | | | | | | | | | | | | |
| 16 | 12/18/2024 | C2 | JUDGE DOCKET ENTRY | COURT | COURT | Amended TRO signed and sent to clerk by email | | | | | | | | | | | | | |
| 17 | 12/18/2024 | C2 | ORDER - TEMPORARY RESTRAINING ORDER | COURT | COURT | Vol./Book 1, Page 1. 1 pages AMEND EMERGENCY EX PARTE TRO AND SETTING HEARING FOR TEMP ORDER | | | | | | | | | | | | | |
| 18 | 12/19/2024 | C2 | NOTICE OF APPEARANCE | RESPONDENT | RESP-FILING | Party ATTORNEY WEBB, BRANT MARTIN | 3 | | | | | | | | | | | | |
| 19 | 12/20/2024 | C2 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | AMENDED TEMPORARY EX PARTE ORDER | | | | | | | | | | | | | |
| 20 | 12/20/2024 | C2 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | PETITIONER AMENDED EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER SETTING HERING FOR TEMPORARY ORDERS | | | | | | | | | | | | | |
| 21 | 12/20/2024 | C2 | AMENDED MOTION | PETITIONER | PETITIONER | APPLICATION FOR AMENDED TEMPORARY EX PARTE PROTECTIVE ORDER | | | | | | | | | | | | | |
| 22 | 12/20/2024 | C2 | AMENDED MOTION | PETITIONER | PETITIONER | AMENDED REQUEST FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER | | | | | | | | | | | | | |
| 23 | 12/20/2024 | C2 | ORDER - TEMPORARY RESTRAINING ORDER | COURT | COURT | AMENDED EMERGENCY EX PARTE TRO AND ORDER SETTING HEARING FOR TEMPORARY ORDERS | | | | | | | | | | | | | |
| 24 | 12/20/2024 | C2 | ISSUE TRO AND NOTICE | COURT | COURT | ISSUE TRO AND NOTICE | | | | | | | | | | | | | |
| 25 | 12/20/2024 | C2 | TRO / NOTICE | COURT | COURT | MCKEMIE, JASON Unserved JASON MCKEMIE | | | | | | | | | | | | | |
| 26 | 12/20/2024 | C2 | COUNTER CLAIM | RESPONDENT | RESP-FILING | Party RESPONDENT MCKEMIE, JASON ORIGINAL COUNTERPETITION FOR DIVORCE | 31 | | | | 1 | 1 | 1 | | | | | | |
| 27 | 12/27/2024 | C2 | NOTICE OF HEARING / FIAT | RESPONDENT | RESP-FILING | REQUEST FOR TEMPORARY ORDERS | 3 | | | | 1 | 1 | 1 | | | | | | |
| 28 | 12/31/2024 | C2 | PROTECTIVE ORDER - FAM VIOLENCE (1:30 PM) (Judicial Officer BEDARD | COURT | COURT | LORNA) | | | | | | | | | | | | | |
| 29 | 12/31/2024 | C2 | TRO HEARING (1:30 PM) (Judicial Officer BEDARD, LORNA) | COURT | COURT | TRO HEARING (1:30 PM) (Judicial Officer: BEDARD, LORNA) | | | | | | | | | | | | | |
| 30 | 12/31/2024 | C3 | MOTION - EXTEND TRO | PETITIONER | PETITIONER | AND ORDER SETTING HEARING FOR TEMPORARY ORDERS | | | | | | | | | | | | | |
| 31 | 12/31/2024 | C3 | MOTION - EXTEND MISC | PETITIONER | PETITIONER | TEMPORARY EX PARTE PROTECTIVE ORDERS | | | | | | | | | | | | | |
| 32 | 12/31/2024 | C3 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | ORDER MODIFYING AND EXTENDING TEMPORARY EX PARTE PROTECTIVE ORDER AND ORDER SETTING HEARING | | | | | | | | | | | | | |
| 33 | 12/31/2024 | C3 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | ORDER MODIFYING AND EXTENDING TRO AND ORDER SETTING HEARING FOR TEMPORARY ORDERS | | | | | | | | | | | | | |
| 34 | 12/31/2024 | C3 | ORDER - TEMPORARY RESTRAINING ORDER | COURT | COURT | EXTENDING AND ORDER SETTING HEARING FOR TEMPORARY ORDERS | | | | | | | | | | | | | |

| Seq | Date | Pg | Event | Filer | Status | Docket description / matched filing title | Pages | HO | EM | DISC | FIN | DP | PAR | CR | [illegible] | MED | ATTY | RISK | STOL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 35 | 12/31/2024 | C3 | ORDER - EXPARTE (TEMP) PROTECTIVE ORDER | COURT | COURT | ORDER SETTING HEARING | | | | | | | | | | | | | |
| 36 | 12/31/2024 | C3 | AMENDED PETITION | RESPONDENT | RESP-FILING | FIRST AMENDED COUNTERPETITION FOR DIVORCE | 1 | | | | 1 | | | | | | | | |
| 37 | 12/31/2024 | C3 | NOTICE OF HEARING / FIAT | RESPONDENT | RESP-FILING | NOTICE OF COURT PROCEEDING REQUEST FOR TEMPORARY ORDERS | 3 | | | | | 1 | | | | | | | |
| 38 | 01/03/2025 | C3 | MOTION - WITHDRAW ATTORNEY | PETITIONER | PETITIONER | Party: ATTORNEY TOMLINSON, DONNA R ; PETITIONER ULUASZ MCKEMIE, GWENDOLYN | | | | | | | | | | | | | |
| 39 | 01/06/2025 | C3 | MOTION - CONTINUANCE | PETITIONER | PETITIONER | Party: PETITIONER ULUASZ MCKEMIE, GWENDOLYN | | | | | | | | | | | | | |
| 40 | 01/06/2025 | C3 | MOTION - EXTEND TRO | PETITIONER | PETITIONER | MOTION TO EXTEND EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER SETTING HEARING FOR TEMPORARY ORDERS | | | | | | | | | | | | | |
| 41 | 01/06/2025 | C3 | MOTION - EXTEND MISC | PETITIONER | PETITIONER | MOTION TO EXTEND TEMPORARY E PARTE PROTECTIVE ORDERS | | | | | | | | | | | | | |
| 42 | 01/06/2025 | C3 | MOTION - WITHDRAW ATTORNEY | PETITIONER | PETITIONER | Party: ATTORNEY TOMLINSON, DONNA R.; PETITIONER ULUASZ MCKEMIE, GWENDOLYN | | | | | | | | | | | | | |
| 43 | 01/07/2025 | C3 | PROTECTIVE ORDER - FAM VIOLENCE (1:30 PM) (Judicial Officer: BEDARD, | COURT | COURT | LORNA) set at 2:30pm | | | | | | | | | | | | | |
| 44 | 01/07/2025 | C3 | TRO HEARING (1:30 PM) (Judicial Officer: BEDARD, LORNA) | COURT | COURT | set at 2:30pm | | | | | | | | | | | | | |
| 45 | 01/07/2025 | C3 | ORDER - WITHDRAW ATTORNEY | COURT | COURT | Party: ATTORNEY TOMLINSON, DONNA R | | | | | | | | | | | | | |
| 46 | 01/07/2025 | C4 | ASSOCIATE JUDGE'S REPORT | COURT | COURT | Vol /Book 1, Page 1 1 pages | | | | | | | | | | | | | |
| 47 | 01/21/2025 | C4 | NOTICE OF APPEARANCE | PETITIONER | PETITIONER | NOTICE OF APPEARANCE | | | | | | | | | | | | | |
| 48 | 03/03/2025 | C4 | VACATION LETTER | PETITIONER | PETITIONER | ATTORNEY WILLIAM COOK | | | | | | | | | | | | | |
| 49 | 03/05/2025 | C4 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | NOTICE OF HEARING - PRE TRIAL | 3 | | | | | | | | | | | | |
| 50 | 03/12/2025 | C4 | ORDER - NOTICE OF HEARING | COURT | COURT | ORDER - NOTICE OF HEARING | | | | | | | | | | | | | |
| 51 | 03/14/2025 | C4 | MOTION - WITHDRAW ATTORNEY | RESPONDENT | RESP-FILING | AGREED - BRANT WEBB | 4 | | | | | [illegible] | | | | | | | |
| 52 | 03/17/2025 | C4 | ORDER - WITHDRAW ATTORNEY | COURT | COURT | Vol /Book 0, Page 0 2 pages Party: ATTORNEY WEBB, BRANT MARTIN | | | | | | | | | | | | | |
| 53 | 03/26/2025 | C4 | VACATION LETTER | PETITIONER | PETITIONER | AMENDED - WILLIAM COOK | | | | | | | | | | | | | |
| 54 | 03/28/2025 | C4 | MOTION - CONTINUANCE | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON NOTICE OF FAILED MEDIATION AND MOTION FOR CONTINUANCE OF APRIL 7th 2025, PRE-TRIAL HEARING | 2 | | | | | 1 | | | | | | | |
| 55 | 04/02/2025 | C4 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | FOR CONTINUANCE OF APRIL 7th, 2025, PRE-TRIAL HEARING | 2 | | | | | 1 | | | | | | | |
| 56 | 04/07/2025 | C4 | PRETRIAL (2:30 PM) | COURT | COURT | PRETRIAL (2:30 PM) | | | | | | | | | | | | | |
| 57 | 04/07/2025 | C4 | PRETRIAL STATUS INFORMATION | COURT | COURT | PRETRIAL STATUS INFORMATION | | | | | | | | | | | | | |
| 58 | 04/14/2025 | C4 | MOTION - STRIKE | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON | 5 | | | | 1 | [illegible] | | | | | | | |
| 59 | 04/24/2025 | C4 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON MOTION FOR NOTICE PRIOR TO ANY DISMISSAL | 2 | | | | 1 | | | | | | | | |
| 60 | 04/24/2025 | C4 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER ON MOTION FOR NOTICE PRIOR TO ANY DISMISSAL | 4 | | | | 1 | 1 | | | | | | | |
| 61 | 04/24/2025 | C4 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-FILING | MOTION TO DESIGNATE PRO SE REPRESENTATION AND REQUEST FOR EQUAL ACCESS | 1 | | | | | 1 | 1 | | | | | | |
| 62 | 04/24/2025 | C4 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER ON MOTION TO DESIGNATE PRO SE REPRESENTATION AND REQUEST FOR EQUAL ACCESS | 3 | | | | 1 | 1 | 1 | | | | | | |
| 63 | 04/28/2025 | C5 | MOTION - WITHDRAW ATTORNEY | PETITIONER | PETITIONER | MOTION - WITHDRAW ATTORNEY | | | | | | | | | | | | | |
| 64 | 04/29/2025 | C5 | ORDER - WITHDRAW ATTORNEY | COURT | COURT | Party: ATTORNEY COOK, JEFFREY, ESQ; PETITIONER ULUASZ MCKEMIE, GWENDOLYN | | | | | | | | | | | | | |
| 65 | 06/17/2025 | C5 | DISCOVERY | PETITIONER | PETITIONER | PETITIONER NOTICE OF FORMAL DISCOVERY SERVED | | | | | | | | | | | | | |
| 66 | 06/23/2025 | C5 | NOTICE OF APPEARANCE | PETITIONER | PETITIONER | Party: ATTORNEY SCROGGINS, ETHAN L | | | | | | | | | | | | | |
| 67 | 06/23/2025 | C5 | AMENDED PETITION | PETITIONER | PETITIONER | FIRST AMENDED PETITION FOR DIVORCE | | | | | | | | | | | | | |
| 68 [illegible] | 06/24/2025 | C5 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | EMERGENCY MOTION FOR TEMPORARY FINANCIAL RELIEF DUE TO IMMINENT HOUSING LOSS, MEDICAL HARDSHIP | 8 | | 1 | 1 | 1 | 1 | 1 | | [illegible] | [illegible] | 1 | 1 | |
| 69 | 06/27/2025 | C5 | OBJECTIONS - MISC | RESPONDENT | RESP-FILING | NOTICE OF OBJECTION TO PROCEDURAL REENTRY AND MOTION FILING BY RESPONDENT'S COUNSEL | 4 | | | | 1 | 1 | | | 1 | | | | |
| 70 | 06/27/2025 | C5 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON MOTION TO PRESERVE DISCOVERY RIGHTS AND COMPELL DISCOVERY RESPONSES | 4 | | | 1 | 1 | 1 | 1 | | 1 | 1 | | | |
| 71 | 07/08/2025 | C5 | MOTION - CONTINUANCE | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON OF BENCH TRIAL | 5 | 1 | | | 1 | 1 | | | 1 | 1 | | 1 | |
| 72 | 07/10/2025 | C5 | MOTION - CONTINUANCE | RESPONDENT | RESP-FILING | FINANCIAL RELIEF, ENFORCEMENT OF STANDING ORDERS, PROTECTION AGAINST PROCEDURAL ABUSE, AND HEARING ON SPOUSAL SUPPORT, LEGAL FEES, MARITAL DEBT AND EARLY LOAN REPAYMENT DUE TO MEDICAL HARDSHIP | 26 | | | 1 | 1 | 1 | 1 | | 1 | 1 | 1 | 1 | |
| 73 | 07/10/2025 | C5 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER ON MOTION TO COMPELL DISCOVERY AND REQUEST FOR SANCTIONS | 2 | | | 1 | | | | | | | | | |
| 74 | 07/10/2025 | C5 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER TO REOPEN A LIMITED DISCOVERY DUE TO PROCEDURAL MISCONDUCT AND OBSTRUCTION | 1 | | | 1 | 1 | | | | | | | | |
| 75 | 07/10/2025 | C5 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER TO PREVENT ANY FURTHER OBSTRUCTION AND TO COMPEL ACCESS TO HSA CARD/ FUNDS | 2 | 1 | | 1 | 1 | 1 | 1 | | 1 | 1 | | | |
| 76 | 07/10/2025 | C5 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER TO ENFORCE STANDING ORDERS AND PREVENT LITIGATION INTERFERENCE | 2 | | | 1 | 1 | | 1 | | | | | | |
| 77 | 07/10/2025 | C6 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER FOR EMERGENCY FINANCIAL RELIEF AND RELATED REQUESTS | 1 | | 1 | 1 | 1 | 1 | | | | | | | |
| 78 | 07/10/2025 | C6 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER GRANTING EMERGENCY MOTION TO STAY EXECUTION OF WRIT OF POSSESSION | 1 | | 1 | | 1 | | | | | | | | |
| 79 | 07/10/2025 | C6 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | FINDING OF FACT AND FRAUD UPON THE COURT | 1 | | | | | [illegible] | | | 1 | | | | |
| 80 | 07/11/2025 | [illegible] | [illegible] | COURT | [illegible] | [illegible] | | | | | | | | | | | | | |
| 81 | 07/11/2025 | C6 | CANCELED "DISMISSAL FOR WANT OF PROSECUTION (9:00 AM) (Judicial | COURT | COURT | Officer: BROWN, KIM) REQUESTED BY ATTORNEY/PRO SE | | | | | | | | | | | | | |
| 82 | 07/11/2025 | C6 | NOTICE OF FILING | RESPONDENT | RESP-EMERG | REQUEST FOR EMERGENCY HEARING TO PREVENT EVICTION DURING MEDICAL HARDSHIP WITH DECLARATION AND WITNESS STATEMENTS | 98 | 1 | 1 | | 1 | 1 | | | 1 | 1 | | 1 | |
| 83 | 07/11/2025 | C6 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | GRANTING REQUEST FOR EMERGENCY HEARING | 43 | 1 | 1 | | 1 | 1 | | | 1 | 1 | | 1 | |
| 84 | 07/16/2025 | C6 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | EMERGENCY M/PRESERVE EVIDENCE AND CONTINUE TRIAL DUE TO PROCEDURAL SABOTAGE AND BREAKDOWN IN JUDICIAL OVERSIGHT | 12 | | 1 | 1 | 1 | 1 | 1 | | 1 | 1 | 1 | 1 | 1 |
| 85 | 07/16/2025 | C6 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER GRANTING M/SANCTIONS AND REFERRAL | 4 | | | | | | | | | | | | |
| 86 | 07/16/2025 | C6 | MOTION - SANCTIONS | RESPONDENT | RESP-FILING | MOTION - SANCTIONS | 4 | | | | 1 | 1 | | | 1 | | | | |
| 87 | 07/17/2025 | C6 | NOTICE OF FILING | RESPONDENT | RESP-FILING | NOTICE OF MATERIAL DISCOVERY | 2 | | | 1 | 1 | 1 | | | 1 | | | | |
| 88 | 07/17/2025 | C6 | NOTICE OF INTENT | RESPONDENT | RESP-FILING | TO SEEK DISPROPORTIONATE DIVISION OF MARITAL ESTATE | 4 | | | | 1 | 1 | 1 | | 1 | | | | |
| 89 | 07/17/2025 | C6 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | EMERGENCY NOTICE OF COUNSEL MISCONDUCT, PRIOR COMMUNICATIONS, AND DEMAND FOR IMMEDIATE COURT REVIEW | 17 | | [illegible] | 1 | 1 | 1 | 1 | | 1 | 1 | 1 | 1 | 1 |
| 90 | [illegible] | [illegible] | [illegible] | COURT | [illegible] | [illegible] [redacted] | | | | | | | | | | | | | |
| 91 | 07/22/2025 | C6 | EXHIBITS | RESPONDENT | RESP-FILING | EXHIBITS | 4 | | | | 1 | 1 | 1 | | 1 | | | | |
| 92 | 07/23/2025 | C6 | BENCH TRIAL (1:30 PM) (Judicial Officer: BROWN, KIM) | COURT | COURT | BENCH TRIAL (1:30 PM) (Judicial Officer: BROWN, KIM) | | | | | | | | | | | | | |
| 93 | 07/23/2025 | C6 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | GRANTING RESPONDENT'S EMERGENCY MOTION FOR CONTINUANCE | 1 | | 1 | | | 1 | | | | | | | |
| 94 | 07/23/2025 | C7 | ORDER - RECUSAL | COURT | FAVORABLE | Vol /Book 1, Page 1, 1 pages | | | | | | | | | | | | | |
| 95 | 07/23/2025 | C7 | MOTION - RECUSE | RESPONDENT | RESP-FILING | RESPONDENT VERIFIED M/RECUSE | 8 | 1 | | 1 | 1 | 1 | | | 1 | 1 | | 1 | |
| 96 | 07/23/2025 | C7 | MOTION - RECUSE | PETITIONER | PETITIONER | Party: PETITIONER ULUASZ MCKEMIE, GWENDOLYN | | | | | | | | | | | | | |
| 97 | 07/24/2025 | C7 | AFFIDAVIT | RESPONDENT | RESP-EMERG | DECLARATION OF RESPONDENT'S DISASSOCIATION FROM BINDER INTRODUCED BY PETITIONER'S COUNSEL | 5 | | 1 | | 1 | 1 | | | | | | | |
| 98 | 07/24/2025 | C7 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | EMERGENCY MOTION FOR IMMEDIATE RELIEF, OBJECTION TO TRIAL, AND REQUEST FOR ACKNOWLEDGEMENT | 11 | 1 | 1 | 1 | 1 | 1 | 1 | | 1 | 1 | | 1 | |
| 99 | 07/24/2025 | C7 | ORDER - TRANSFER (NOT CHANGE OF VENUE) | COURT | FAVORABLE | TO 302ND COURT | | | | | | | | | | | | | |
| 100 | 07/24/2025 | C7 | MOTION - SEAL | RESPONDENT | RESP-EMERG | Party: RESPONDENT MCKEMIE, JASON ERRONEOUS PUBLIC FILING AND EMERGENCY MOTION TO SEAL PREVIOUSLY SUBMITTED DECLARATION | 3 | | 1 | | | 1 | | | | | | | |
| 101 | 07/29/2025 | C7 | E-SERVED COPY OF ORDER | COURT | COURT | E-SERVED COPY OF ORDER TRANSFERRING | | | | | | | | | | | | | |
| 102 | 07/29/2025 | C7 | RULE 11 | RESPONDENT | RESP-FILING | RULE 18A SUPPLEMENTAL CERTIFICATE OF SERVICE | 12 | 1 | | 1 | 1 | 1 | 1 | | 1 | 1 | | 1 | |
| 103 | 07/30/2025 | C7 | OBJECTIONS - MISC | RESPONDENT | RESP-FILING | COVER PAGE OBJECTION INVENTORY PROCEDURAL NOTIFICATION 18010 | 5 | | | | 1 | 1 | 1 | | | | | | |
| 104 | 08/06/2025 | C7 | PLEA IN ABATEMENT | RESPONDENT | RESP-EMERG | EMERGENCY MOTION TO ABATE TRIAL SETTING AND WITHHOLD FINAL ORDERS PENDING RESOLUTION OF OUTSTANDING MOTIONS, PROCEDURAL VIOLATIONS, AND DISCOVERY COLLAPSE | 7 | 1 | 1 | 1 | 1 | 1 | 1 | | 1 | 1 | 1 | 1 | 1 |
| 105 | 08/07/2025 | C7 | MISCELLANEOUS EVENT | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON JUDICIAL NOTICE OF UNRULED MOTIONS REQUIRING DETERMINATION PRIOR TO ANY PRETRIAL HEARING, TRIAL, OR FINAL ORDERS | 11 | 1 | | 1 | 1 | 1 | 1 | | 1 | 1 | 1 | 1 | 1 |
| 106 | 08/08/2025 | C7 | MISCELLANEOUS EVENT | RESPONDENT | RESP-FILING | Party: RESPONDENT MCKEMIE, JASON NOTICE OF PROCEDURAL BAR TO PRETRIAL OR TRIAL SETTING AND PRESERVATION OF OBJECTION | 4 | | | | 1 | 1 | 1 | | 1 | 1 | | 1 | 1 |
| 107 | 08/12/2025 | C7 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | NOTICE OF HEARING | | | | | | | | | | | | | |
| 108 | 08/14/2025 | C7 | ORDER - NOTICE OF HEARING | COURT | COURT | ORDER - NOTICE OF HEARING | | | | | | | | | | | | | |
| 109 | 08/20/2025 | C8 | E-SERVED COPY OF ORDER | COURT | COURT | E-SERVED COPY OF NOTICE OF HEARING | | | | | | | | | | | | | |
| 110 | 09/08/2025 | C8 | PRETRIAL (1:30 PM) (Judicial Officer: JACKSON, SANDRA) | COURT | COURT | PRETRIAL (1:30 PM) (Judicial Officer: JACKSON, SANDRA) | | | | | | | | | | | | | |

| Seq | Date | Pg | Event | Filer | Status | Docket description / matched filing title | Pages |
|---|---|---|---|---|---|---|---|
| 111 | 09/08/2025 | C8 | ORDER - PRETRIAL | COURT | COURT | (DIVORCE) | |
| 112 | 10/01/2025 | C8 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party RESPONDENT MCKEMIE, JASON EMERGENCY EX PARTE MOTION TO AUTHORIZE WITHDRAWAL FROM IRA | 15 |
| 113 | 10/06/2025 | C8 | TEMPORARY ORDERS HEARING (9:00 AM) (Judicial Officer ABENDROTH, TAMIKA | COURT | COURT | JONES) | |
| 114 | 10/15/2025 | C8 | MISCELLANEOUS EVENT | RESPONDENT | RESP-FILING | Party RESPONDENT MCKEMIE, JASON LETTER | 1 |
| 115 | 10/20/2025 | C8 | TEMPORARY ORDERS HEARING (9:00 AM) (Judicial Officer ABENDROTH, TAMIKA | COURT | COURT | JONES) | |
| 116 | [illegible] | C8 | ORDER - WITHDRAW MISC. | COURT | FAVORABLE | AGREED ORDER TO WITHDRAW FUNDS | |
| 117 | 10/22/2025 | C8 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-FILING | WAITING FOR $80.00- | 6 |
| 118 | 10/23/2025 | C8 | NOTICE OF HEARING / FIAT | PETITIONER | PETITIONER | NOTICE OF HEARING / FIAT | |
| 119 | [illegible] | C8 | MOTION - REINSTATE | RESPONDENT | RESP-FILING | Party RESPONDENT MCKEMIE, JASON WAITING ON $80 | 5 |
| 120 | 10/28/2025 | C8 | MOTION HEARING (9:00 AM) (Judicial Officer ABENDROTH, TAMIKA JONES) | COURT | COURT | MOTION HEARING (9:00 AM) (Judicial Officer ABENDROTH, TAMIKA JONES) | |
| 121 | [illegible] | C8 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party RESPONDENT MCKEMIE, JASON MOTION TO OBTAIN CERTIFIED TRANSCRIPT OF JANUARY 7, 2025, HEARING AND REQUEST FOR PAYMENT FROM COMMUNITY FUNDS UNDER PETITIONER'S CONTROL | 6 |
| 122 | [illegible] | C8 | NOTICE OF FILING | RESPONDENT | RESP-FILING | STANDING REQUEST FOR COURT REPORTER FOR OCTOBER 31, 2025 HEARING AND ALL SUBSEQUENT PROCEEDINGS | 3 |
| 123 | [illegible] | C8 | [illegible] | [illegible] | [illegible] | [illegible] | |
| 124 | 11/03/2025 | C8 | E-SERVED COPY OF ORDER | COURT | COURT | ESERVE COVER LETTER - ORDER DENY JASON MCKEMIE'S RELIEF | |
| 125 | 11/03/2025 | C8 | MOTION - WITHDRAW ATTORNEY | PETITIONER | PETITIONER | AGREED | |
| 126 | 11/03/2025 | C8 | PROPOSED ORDER/JUDGMENT | PETITIONER | PETITIONER | ORDER FOR WITHDRAWAL OF COUNSEL | |
| 127 | 11/04/2025 | C8 | OBJECTIONS - MISC | RESPONDENT | RESP-EMERG | EMERGENCY OBJECTION TO MOTION TO WITHDRAW AS COUNSEL AND REQUEST FOR EXPEDITED HEARING (INCLUDES PROPOSED ORDER) | 9 |
| 128 | 11/10/2025 | C8 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | PROPOSED ORDER SUPPLEMENTAL OBJECTION TO MOTION TO WITHDRAW OF PETITIONER COUNSEL | 3 |
| 129 | 11/10/2025 | C8 | OBJECTIONS - MISC | RESPONDENT | RESP-FILING | SUPPLEMENTAL OBJECTION TO MOTION TO WITHDRAW OF PETITIONER COUNSEL | 1 |
| 130 | 11/14/2025 | C8 | NOTICE OF HEARING / FIAT | RESPONDENT | RESP-FILING | NOTICE OF HEARING / FIAT | 3 |
| 131 | 11/18/2025 | C9 | ORDER - WITHDRAW ATTORNEY | COURT | COURT | Party ATTORNEY SCROGGINS, ETHAN L. | |
| 132 | 11/19/2025 | C9 | MOTION HEARING (1:30 PM) (Judicial Officer, ABENDROTH, TAMIKA JONES) | COURT | COURT | Events. 11/03/2025 MOTION - WITHDRAW ATTORNEY | |
| 133 | 11/19/2025 | C9 | MOTION - VACATE | RESPONDENT | RESP-EMERG | Party RESPONDENT MCKEMIE, JASON EMERGENCY MOTION TO VACATE SETTING BEFORE ASSOCIATE JUDGE AND RESET ENFORCE | 14 |
| 134 | 11/21/2025 | C9 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party RESPONDENT MCKEMIE, JASON MOTION FOR DE NOVO DISTRICT JUDGE REVIEW OF PRIOR RULINGS AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER | 6 |
| 135 | 11/21/2025 | C9 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER FOR DE NOVO REVIEW AND TRO | 2 |
| 136 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | |
| 137 | 11/25/2025 | C9 | NOTICE OF FILING | RESPONDENT | RESP-FILING | NOTICE OF FILING OF SWORN AFFIDAVIT - CORRECTING FALSE RECORDING ALLEGATIONS AND EX PARTE PREJUDICE | 8 |
| 138 | 12/1/2025 | C9 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party RESPONDENT MCKEMIE, JASON EMERGENCY MOTION FILING SEEKING IMMEDIATE RELIEF REQUIRING MEDICAL ACCESS | 25 |
| 139 | 12/13/2025 | C9 | ORDER - NOTICE OF HEARING | COURT | COURT | ORDER - NOTICE OF HEARING | |
| 140 | 12/15/2025 | C9 | MISCELLANEOUS EVENT | RESPONDENT | RESP-FILING | NOTICE OF SERVICE - MOTION FOR THE REINSTATEMENT OF HEALTHCARE - CERT MAIL | 2 |
| 141 | 12/17/2025 | C10 | MOTION HEARING (1:30 PM) (Judicial Officer ABENDROTH, TAMIKA JONES) | COURT | COURT | Events 12/12/2025 MOTION - MISCELLANEOUS | |
| 142 | 12/17/2025 | C10 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER ON EMERGENCY REINSTATEMENT OF HEALTHCARE | 3 |
| 143 | 12/17/2025 | C10 | RENDITION/MEMORANDUM RULING | COURT | COURT | ASSOCIATE JUDGE RULING | |
| 144 | 12/15/2025 | C10 | MOTION - COMPEL | RESPONDENT | RESP-FILING | Party RESPONDENT MCKEMIE, JASON | 26 |
| 145 | 12/19/2025 | C10 | ORDER - MISC. | COURT | FAVORABLE | EMERGENCY ENFORCEMENT ORDER FOR MEDICAL PRESERVATION | |
| 146 | 12/19/2025 | C10 | NOTICE OF FILING | RESPONDENT | RESP-FILING | NOTICE OF NONCOMPLIANCE WITH 24-HOUR HEALTHCARE REINSTATEMENT ORDER | 2 |
| 147 | 12/19/2025 | C10 | NOTICE OF FILING | RESPONDENT | RESP-FILING | NOTICE REGARDING OF HEALTH COVERAGE, QUALIFYING LIFE EVENT AND REQUEST FOR LEAVE TO ISSUE SUBPOENA TO EMPLYER HR | 4 |
| 148 | 12/19/2025 | C10 | MISCELLANEOUS EVENT | RESPONDENT | RESP-FILING | NOTICE OF SERVICE OF SIGNED ORDER - GWENDOLYN ULUASZ-MCKEMIE | 7 |
| 149 | 12/19/2025 | C10 | MOTION - CLARIFY | PETITIONER | PETITIONER | Party: PETITIONER ULUASZ MCKEMIE, GWENDOLYN | |
| 150 | 12/19/2025 | C10 | CORRESPONDENCE - LETTER TO FILE | RESPONDENT | RESP-FILING | WAITING ON $8.00-Motion for Leave to Issue Third-Party Subpoena to Accenture HR Concerning Asserted Qualifying Life Event (FILED UNDER SEAL) | 5 |
| 151 | 12/22/2025 | C10 | MOTION - TEMPORARY ORDERS | RESPONDENT | RESP-FILING | APPLICATION | 13 |
| 152 | 12/22/2025 | C10 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | TEMPORARY RESTRAINING ORDER | 2 |
| 153 | 12/23/2025 | C10 | MOTION - LEAVE | RESPONDENT | RESP-FILING | Party RESPONDENT MCKEMIE, JASON TO ISSUE SUBPOENA REGARDING LEASE BUYOUT AND ASSOCIATED PAYMENTS | 3 |
| 154 | 12/23/2025 | C10 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER GRANTING LEAVE TO SERVE SUBPOENAS | 2 |
| 155 | 12/23/2025 | C10 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | TEMPORARY RESTRAINING ORDER HEALTHCARE REINSTATEMENT & CONTINUITY | 2 |
| 156 | 12/29/2025 | C10 | NOTICE OF FILING | RESPONDENT | RESP-FILING | SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION TO COMPEL (REQUEST FOR CUSTODIAN CONTINUITY RECORDS / SUBPOENA LEAVE) | 13 |
| 157 | 12/29/2025 | C11 | MOTION - SEAL | RESPONDENT | RESP-FILING | Party RESPONDENT MCKEMIE, JASON MOTION - SEALED SUBMISSION FOR IN CAMERA REVIEW ONLY (CONFIDENTIAL) | 181 |
| 158 | 12/31/2025 | C11 | MOTION - MISCELLANEOUS | PETITIONER | PETITIONER | Party: PETITIONER ULUASZ MCKEMIE, GWENDOLYN MOTION TO APPEAR REMOTELY VIA ZOOM | |
| 159 | [illegible] | C11 | NOTICE OF FILING | RESPONDENT | RESP-EMERG | NOTICE REGARDING ORDER FOR HEALTHCARE REINSTATEMENT AND IMMINENT ESCALATION DUE TO MEDICAL NECESSITY AND NON-COMPLIANCE | 10 |
| 160 | 01/05/2026 | C11 | MISCELLANEOUS EVENT | RESPONDENT | RESP-FILING | NOTICE REGARDING ORDER FOR HEALTHCARE | 10 |
| 161 | 01/05/2026 | C11 | MOTION - LEAVE | PETITIONER | PETITIONER | Party PETITIONER ULUASZ MCKEMIE, GWENDOLYN | |
| 162 | 01/05/2026 | C11 | NOTICE OF FILING | RESPONDENT | RESP-FILING | NOTICE OF PRIOR STANDING REQUEST FOR COURT REPORTER/ OFFICIAL RECORD | 8 |
| 163 | 01/06/2026 | C11 | MOTION HEARING (9:00 AM) (Judicial Officer ABENDROTH, TAMIKA JONES) | COURT | COURT | MOTION HEARING (9:00 AM) (Judicial Officer ABENDROTH, TAMIKA JONES) | |
| 164 | 01/08/2026 | C11 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER ON MOTION TO COMPEL | 4 |
| 165 | 01/08/2026 | C11 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER ON EMERGENCY TRO | 3 |
| 166 | 01/08/2026 | C11 | APPLICATION - TEMPORARY RESTRAINING ORDER | RESPONDENT | RESP-EMERG | EMERGENCY TRO | 13 |
| 167 | 01/08/2026 | C11 | MISCELLANEOUS EVENT | RESPONDENT | RESP-FILING | NOTICE OF VOL COMPLIANCE & OBJ TO POST-CUTOFF SUBPOENA WITHOUT PRIOR REQUEST | 4 |
| 168 | [illegible] | [illegible] | [illegible] | COURT | [illegible] | [illegible] | |
| 169 | 01/12/2026 | C11 | ASSOCIATE JUDGE'S REPORT | COURT | COURT | Vol /Book 0 Page 0 0 pages | |
| 170 | 01/12/2026 | C11 | DOCKET SHEET | COURT | COURT | DOCKET SHEET | |
| 171 | 01/12/2026 | C11 | AFFIDAVIT | RESPONDENT | RESP-FILING | AFFIDAVIT ON PUBLIC STORAGE THEFT ACCUSATIONS AND PETITIONERS ACQUISITION OF WEAPON DURING PROCEEDINGS | 8 |
| 172 | 01/12/2026 | C11 | MOTION - STAY | RESPONDENT | RESP-EMERG | EMERGENCY MOTION TO STAY EVICTION PROCEEDINGS | 4 |
| 173 | 01/12/2026 | C11 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | PROPOSED ORDER ON EMERGENCY MOTION TO STAY EVICTION PROCEEDINGS | 4 |
| 174 | 01/12/2026 | C12 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party RESPONDENT MCKEMIE, JASON EMERGENCY MOTION TO TEMORARY STAY OR IN THE ALTERNATIVE, IMPOSE PROTECTIVE CONDITIONS ON COURT-AUTHORIZED PROPERTY RETRIEVAL DUE TO MEDICAL INCAPACITY | 10 |
| 175 | 01/12/2026 | C12 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER ON EMERGENCY MOTION TO TEMPORARILY STAY OR IMPOSE PROTECTIVE CONDITIONS ON PROPERTY RETRIEVAL SUE TO MEDICAL INCAPACITY | 6 |
| 176 | 01/12/2026 | C12 | APPLICATION - TEMPORARY RESTRAINING ORDER | RESPONDENT | RESP-EMERG | EMERGENCY | 14 |
| 177 | 01/12/2026 | C12 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER ON EMERGENCY TRO | 14 |
| 178 | 01/12/2026 | C12 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER ON EMERGENCY MOTION FOR MEDICAL PRESERVATION, INTERIM MAKE-WHOLE RELIEF, JUDICIAL FINDINGS MISREPRESENTATION/IMPOSSIBILITY, CONDITIONAL SANCTIONS, AND THIRD-PARTY SUBPOENA AUTHORITY (OLE RECORDS) | 14 |
| 179 | 01/12/2026 | C12 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | ORDER ON EMERGENCY MOTION TO STAY EVICTION PROCEEDINGS EXTEND RENT REGISTRY DEADLINE AND PRESERVE PROPERTY | 7 |
| 180 | 01/12/2026 | C12 | OBJECTIONS - MISC | RESPONDENT | RESP-EMERG | AND EMERGENCY MOTION TO STRIKE | 4 |
| 181 | 01/12/2026 | C12 | AFFIDAVIT | RESPONDENT | RESP-FILING | AFFIDAVIT ON MANUFACTURED ALLEGATIONS & CONCERN FOR PROPERTY RETRIEVAL / CLEAN OUT | 4 |
| 182 | 01/12/2026 | C12 | APPLICATION - TEMPORARY RESTRAINING ORDER | RESPONDENT | RESP-EMERG | EMERGENCY | 14 |
| 183 | 01/12/2026 | C12 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party RESPONDENT MCKEMIE, JASON EMERGENCY MOTION ON MEDICAL HARM | 14 |

NOTICE OF FILING; MOTION - ENFORCE MISC; MOTION - MISCELLANEOUS; C13 NOTICE OF HEARING / FIAT; C13 MOTION HEARING (9:00 AM) (Judicial Officer: ABENDROTH, TAMIKA JONES); MISCELLANEOUS EVENT; NOTICE OF FILING; C13 CANCELED MOTION HEARING (9:00 AM) (Judicial Officer: ABENDROTH, TAMIKA); C13 NOTICE OF FILING; C13 MOTION - MISCELLANEOUS; C13 MOTION HEARING (1:30 PM) (Judicial Officer: ABENDROTH, TAMIKA JONES); C13 NOTICE OF FILING; C13 PROPOSED ORDER/JUDGMENT; C13 PROPOSED ORDER/JUDGMENT; C13 OBJECTIONS - MISC; C13 WITNESS LIST; C13 MISCELLANEOUS EVENT; C13 NOTICE OF BANKRUPTCY; C13 MOTION - MISCELLANEOUS; C14 MOTION - MISCELLANEOUS; C14 WITNESS LIST; C14 MOTION - MISCELLANEOUS; C14 RETURN OF SERVICE; C14 PROPOSED ORDER/JUDGMENT; C14 NOTICE OF FILING; 208 C14 BENCH TRIAL (9:00 AM) (Judicial Officer: JACKSON, SANDRA); 209 C14 MOTION - RECUSE; 210 C14 OBJECTIONS - MISC; 211 C14 AFFIDAVIT INABILITY TO PAY; C14 ORDER - RECUSAL; C14 ORDER - TRANSFER/CONSOLIDATE; C14 MOTION - MISCELLANEOUS; 215 03/24/2025 C14 MOTION - MISCELLANEOUS; 216 03/24/2025 C14 10 DAY LETTER; 03/24/2025 C14 PROPOSED ORDER/JUDGMENT; 04/02/2025 C15 OBJECTIONS - MISC; 04/06/2025 C15 NOTICE OF FILING; C15 OBJECTIONS - MISC; 04/07/2025 C15 NOTICE OF HEARING / FIAT; 222 05/07/2025 C15 MOTION - MISCELLANEOUS; 05/11/2025 C15 MOTION HEARING (1:30 PM) (Judicial Officer: DUNLOP; 05/12/2025 C15 MOTION - MISCELLANEOUS; 05/13/2025 C15 MOTION - MISCELLANEOUS; 05/13/2025 C15 [redacted]; C15 NOTICE OF HEARING / FIAT; 05/13/2025 C15 MOTION - CONTINUANCE; 05/20/2025 C15 MOTION HEARING (1:30 PM) (Judicial Officer: DUNLOP; 05/21/2025 C15 APPLICATION - PROTECTIVE ORDER; C15 NOTICE OF HEARING / FIAT; 05/26/2025 C15 MOTION - MODIFY OTHER (SAPCR) (OCA FJA); 05/26/2025 C16 RESPONSE; 234 05/29/2025 C16 AFFIDAVIT; 235 05/29/2025 C16 TEMPORARY ORDERS HEARING (1:30 PM) (Judicial Officer: DUNLOP; 236 06/01/2025 C16 RESPONSE; 237 06/01/2025 C16 EXHIBITS LIST; 238 06/01/2025 C16 ASSOCIATE JUDGE'S REPORT; 239 06/01/2025 C16 E-SERVED COPY OF ORDER; 240 06/02/2025 C16 REQUEST FOR DE NOVO HEARING; 241 06/05/2025 C16 BENCH TRIAL (1:30 PM) (Judicial Officer: WYSOCKI, ASHLEY); 242 06/11/2025 C16 MOTION - MISCELLANEOUS; 243 06/11/2025 C16 PROPOSED ORDER/JUDGMENT; 244 06/11/2025 C16 MOTION - RECUSE; 245 06/11/2025 C16 MISCELLANEOUS EVENT; 246 06/11/2025 C16 NOTICE OF FILING; 247 06/11/2025 C16 OBJECTIONS - MISC; 248 06/12/2025 C17; 249 06/15/2025 C17 MOTION - RECUSE; 250 06/16/2025 C17 NOTICE OF FILING; 251 06/16/2025 C17 MOTION - MISCELLANEOUS

| Filer | Status |
|---|---|
| PETITIONER | PETITIONER |
| RESPONDENT | RESP-FILING |
| RESPONDENT | RESP-FILING |
| RESPONDENT | RESP-FILING |
| COURT | COURT |
| RESPONDENT | RESP-FILING |
| RESPONDENT | RESP-FILING |
| COURT | COURT |
| RESPONDENT | RESP-FILING |
| RESPONDENT | RESP-EMERG |
| COURT | COURT |
| RESPONDENT | RESP-EMERG |
| RESPONDENT | RESP-FILING |
| RESPONDENT | RESP-FILING |
| RESPONDENT | RESP-FILING |
| PETITIONER | PETITIONER |
| PETITIONER | PETITIONER |
| RESPONDENT | RESP-FILING |
| RESPONDENT | RESP-EMERG |
| PETITIONER | PETITIONER |
| RESPONDENT | RESP-FILING |
| RESPONDENT | RESP-FILING |
| RESPONDENT | RESP-FILING |
| RESPONDENT | RESP-FILING |
| PETITIONER | PETITIONER |
| COURT | COURT |
| RESPONDENT | RESP-FILING |
| PETITIONER | PETITIONER |
| RESPONDENT | RESP-FILING |
| COURT | FAVORABLE |
| COURT | FAVORABLE |
| PETITIONER | PETITIONER |
| PETITIONER | PETITIONER |
| PETITIONER | PETITIONER |
| PETITIONER | PETITIONER |
| RESPONDENT | RESP-FILING |
| RESPONDENT | RESP-FILING |
| RESPONDENT | RESP-FILING |
| RESPONDENT | COURT |
| COURT | RESP-EMERG |
| RESPONDENT | COURT |
| COURT | RESP-EMERG |
| RESPONDENT | RESP-EMERG |
| RESPONDENT | [redacted] |
| [redacted] | RESP-FILING |
| RESPONDENT | PETITIONER |
| PETITIONER | COURT |
| COURT | RESP-EMERG |
| RESPONDENT | COURT |
| COURT | RESP-FILING |
| RESPONDENT | PETITIONER |
| PETITIONER | PETITIONER |
| PETITIONER | COURT |
| COURT | RESP-FILING |
| RESPONDENT | RESP-FILING |
| RESPONDENT | COURT |
| COURT | COURT |
| COURT | RESP-EMERG |
| RESPONDENT | COURT |
| COURT | RESP-EMERG |
| RESPONDENT | RESP-EMERG |
| RESPONDENT | RESP-FILING |
| RESPONDENT | RESP-EMERG |
| RESPONDENT | RESP-FILING |
| RESPONDENT | RESP-EMERG |
| RESPONDENT | RESP-EMERG |
| RESPONDENT | RESP-EMERG |
| RESPONDENT | RESP-EMERG |

| Docket description / matched filing title | Pages |
|---|---|
| PETITIONER'S NOTICE OF COMPLIANCE WITH COURT ORDER | 11 |
| MOTION TO ABATE, ENFORCE DISCOVERY AND HEALTHCARE WAITING ON $95 FEE | 4 |
| Party: RESPONDENT MCKEMIE, JASON RESPONDENT'S MOTION TO ESTABLISH CONDITIONS FOR RE-ENTRY OF COUNSEL AND TO PRESERVE FAIR TRIAL PROCEDURES | 4 |
| NOTICE OF HEARING (CONSOLIDATED) | 34 |
| MOTION HEARING (9:00 AM) (Judicial Officer: ABENDROTH, TAMIKA JONES) | 3 |
| RESPONDENT'S NOTICE OF DISCOVERY AND HEALTHCARE COMPLIANCE; REQUEST FOR REMOTE APPEARANCE; REQUEST FOR ACCESS TO PERSONAL PROPERTY; REQUEST FOR CONSOLIDATION & HEARING LIMITS AND CASE MANAGEMENT CLARIFICATION | 5 |
| NOTICE OF PRIOR STANDING REQUEST FOR COURT REPORTER/VERBATIM RECORD | 8 |
| JONES) AGREEMENT BY PARTIES | |
| NOTICE OF PRESERVATION OF WITNESSES & LARGE DISCOVERY PRODUCTION IN FINAL HOUR | 38 |
| Party: RESPONDENT MCKEMIE, JASON EMERGENCY MOTION TO ABATE PROCEEDINGS, PRESERVE LIFE-SAFETY, COMPEL A WRITTEN RECORD & AUTHORIZE SUBPOENAS | 7 |
| Compel - Via Zoom | 6 |
| NOTICE ON STATUS OF PROPOSED ORDER, IMMINENT LIKELIHOOD OF IMMINENT LITIGATIVE ESCALATION/FALSE THREAT NARRATIVE & BENEFITS CANCELLATION | 24 |
| PROPOSED UNIFIED ORDER REGARDING MATERIAL DEVELOPMENTS 3RD PARTY VER.-HSA/FSA FUNCTIONALITY | 3 |
| ORDER ON STATUS, VERIFICATION, INTERIM RELIEF, AND PRETRIAL MANAGEMENT | 9 |
| RESPONDENT'S - TO ANY PURPORTED SEALING OF RECORDS | |
| PLAINTIFF'S FINAL WITNESS LIST | 4 |
| PROPOSED PROPERTY DIVISION | 5 |
| RESPONDENT'S NOTICE OF BANKRUPTCY AUTOMATIC STAY | 2 |
| Party: RESPONDENT MCKEMIE, JASON EMERGENCY VERIFIED MOTION TO CONTINUE OR ABATE BENCH TRIAL | 3 |
| Party: PETITIONER ULUASZ MCKEMIE, GWENDOLYN PETITIONER'S MOTION IN LIMINE REGARDING AUDIO AND VIDEO RECORDING | |
| WITNESS LIST | 6 |
| Party: RESPONDENT MCKEMIE, JASON FOR REMOTE TESTIMONY OF WITNESS CHRISTOPHER MCNALLY BY VIDEOCONFERENCE AND TO OVERRULE WITNESS-STRIKE OBJECTION 3RD PTY PO | 68 |
| EXECUTED ATTORNEY ISSUED SUBPOENA - CHRISTOPHER MCNALLY | |
| ORDER AUTHORIZING THE REMOTE TESTIMONY OF CHRISTOPHER MCNALLY & OVERRULING WITNESS-STRIKE OBJECTIONS | 13 |
| PETITIONER'S AMENDED PROPOSED PROPERTY DIVISION | |
| BENCH TRIAL (9:00 AM) (Judicial Officer: JACKSON, SANDRA) | |
| Party: RESPONDENT MCKEMIE, JASON | 6 |
| TO UNFILED AND UNSERVED MOTION TO RECUSE AND REQUEST FOR IMMEDIATE RESET | |
| Party: RESPONDENT MCKEMIE, JASON | 2 |
| ORDER - RECUSAL | 2 |
| 301ST DISTRICT COURT | 4 |
| REBECCA ARMSTRONG'S MOTION IN SUPPORT OF JONATHAN DRAKE STEELE'S MOTION PRO HAC VICE | 18 |
| SWORN MOTION OF JONATHAN DRAKE STEELE TO APPEAR PRO HAC VICE | |
| 10 DAY LETTER | |
| ORDER GRANTING PRO HAC VICE ADMISSION OF JONATHAN DRAKE STEELE | 17 |
| RESPONDENT'S OBJECTION TO PRO HAC VICE ADMISSION | |
| NOTICE OF SUPPLEMENTAL FILING TO BE SUBMITTED TODAY AND MOTION FOR LEAVE | |
| RESPONDENT'S OBJECTION TO SWORN MOTION OF JONATHAN DRAKE STEELE TO APPEAR PRO HAC VICE, AND REQUEST PRIORITIZE ENFORCEMENT & STABILIZATION | 42 |
| NOTICE OF HEARING / FIAT | 13 |
| Party: RESPONDENT MCKEMIE, JASON EMERGENCY MOTION FOR WRITTEN DISCOVERY RULINGS, SUBPOENA LEAVE, EVIDENCE PRESERVATION AND IMMEDIATE HEARING | |
| STACY. Location: 301ST ASSOCIATE JUDGE) Events: 03/24/2025 MOTION - MISCELLANEOUS JASON CALLED HE IS RUNNING LATE, HE THOUGHT HIS HEARING WAS ON ZOOM. | 14 |
| Party: RESPONDENT MCKEMIE, JASON SUPPLEMENTAL EMERGENCY MOTION FOR INTERIM STABILIZATION, HEALTH CARE ENFORCEMENT, CASE MGMT, AND OBJECTION TO PHV ADMISSION | |
| Party: RESPONDENT MCKEMIE, JASON MOTION TO PRESERVE DISCOVERY AND TRIAL RIGHTS [redacted] | 54 |
| Party: RESPONDENT [redacted] | |
| SUPPLEMENTAL NOTICE FOR MAY 21 HEARING | 18 |
| Party: PETITIONER ULUASZ MCKEMIE, GWENDOLYN PETITIONER'S MOTION FOR CONTINUANCE | 18 |
| STACY. Location: 301ST ASSOCIATE JUDGE) ZOOM APPEARANCE | |
| Party: RESPONDENT MCKEMIE, JASON | |
| MOTIONS | |
| MOTION FOR ENFORCEMENT, SANCTIONS, CONTINUANCE, AND LEAVE TO ISSUE THIRD-PARTY SUBPOENAS | 111 |
| TO MOTION FOR ENFORCEMENT AND COUNTER MOTION FOR PROTECTIVE ORDER | 26 |
| Affidavit of Jonathan Steele | |
| STACY. Location: 301ST ASSOCIATE JUDGE) Awaiting Respondent to set motions. 1 hour per side. (AJ Dunlop) | |
| RESPONDENT'S REPLY IN SUPPORT OF ENFORCEMENT, SANCTIONS, CONTINUANCE, AND LEAVE; OBJECTION TO PETITIONER'S BAD-FAITH PROTECTIVE ORDER AND FEE REQUEST; AND REQUEST FOR SANCTIONS, SHOW CAUSE, COUNSEL CERTIFICATION, FEE SHIFTING, FORENSIC ACCOUNTING, ESTATE RECONSTITUTION, DISPROPORTIONATE DIVISION, AND SOURCE-RECORD VERIFICATION | 164 |
| PROPOSED ORDERS AND SUBPOENA TARGETS, MOTION TO ENFORCE, SANCTIONS, LEAVE | 19 |
| Vol /Book 0, Page 0, 0 pages | 10 |
| ASSOCIATE JUDGE'S REPORT | 7 |
| REQUEST FOR DE NOVO HEARING | 8 |
| BENCH TRIAL (1:30 PM) (Judicial Officer: WYSOCKI, ASHLEY) | 7 |
| VERIFIED EMERGENCY MOTION TO ABATE, STAY OR CONTINUE TRIAL | 15 |
| ORDER ON RESPONDENT'S VERIFIED EMERGENCY MOTION TO ABATE, STAY, OR CONTINUE TRIAL | 20 |
| VERIFIED MOTION TO RECUSE AND REQUEST FOR REFERRAL | 158 |
| RESPONDENT'S SUPPLEMENTAL VERIFIED NOTICE OF CURRENT MEDICAL EMERGENCY, INABILITY TO SAFELY APPEAR AFTER TRIAL SETTING, REQUEST TO HALT PROCEEDINGS, REQUEST FOR REMOTE APPEARANCE, AND NON-WAIVER OF ALL OBJECTIONS | 6 |
| NOTICE OF NON-WAIVER OF SANCTIONS, CIVIL CLAIMS, ATTORNEY MISCONDUCT CLAIMS, AND OBJECTION | |
| RESPONDENT'S EMERGENCY OBJECTION TO PROPOSED FINAL DECREE, NOTICE OF PENDING RECUSAL MATTERS, REQUEST TO WITHHOLD SIGNATURE AND ENTRY, AND NOTICE OF MANDAMUS | |
| RESPONDENT'S EMERGENCY SUPPLEMENT TO PENDING RECUSAL | |
| RESPONDENT'S EMERGENCY SUPPLEMENTAL EXHIBIT MAP AND FILING INDEX | |
| RESPONDENT'S EMERGENCY RULE 18A STATUS NOTICE REGARDING PENDING VERIFIED RECUSAL, REQUEST FOR WRITTEN RULING OR REFERRAL, AND OBJECTION TO DECREE ACTION | |

DF-24-18010 - Updated O-8 | Original certified alignment + county update report; live portal checked 11/13/2026

| Seq | Date | Pg | Event | Filer | Status | Docket description / matched filing title | Pages | HC | EM | DISC | FIN | DP | PAR | CR | FALSE | MED | ATTY | RISK | STOL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 252 | 06/16/2026 | C17 | MOTION - ENFORCE MISC | PETITIONER | PETITIONER | SIGN & ENTER FINAL DECREE OF DIVORCE | | | | | | | | | | | | | |
| 253 | 06/16/2026 | C17 | COA - CORRESPONDENCE LETTER | COURT | COURT | OPINION ISSUED LETTER | | | | | | | | | | | | | |
| 254 | 06/16/2026 | C17 | OPINION | COURT | ADVERSE | 5TH COA DISMISSED | | | | | | | | | | | | | |
| 255 | 06/17/2026 | C17 | OBJECTIONS - MISC | RESPONDENT | RESP-EMERG | EMERGENCY OBJECTION TO ENTRY OF FINAL DECREE AND RESPONDENT'S LIFE SAFETY AND MEDICAL HARM BRIEF | 25 | 1 | 1 | | 1 | 1 | | | 1 | 1 | | 1 | 1 |
| 256 | 06/22/2026 | C17 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | Party: RESPONDENT MCKENNIE, JASON EMERGENCY VERIFIED MOTION TO PRESERVE AND PRODUCE | 4 | | 1 | | 1 | 1 | | 1 | | | | | |
| 257 | 06/23/2026 | C17 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | RESPONDENT'S EMERGENCY NOTICE OF UNACCOUNTED-FOR PERSONAL PROPERTY, DEMAND FOR INVENTORY, REQUEST FOR PRESERVATION AND PRESERVATION OF RIGHTS | 6 | | 1 | 1 | | | | | | | | | |
| 258 | 06/24/2026 | C17 | RESPONSE | RESPONDENT | RESP-FILING | IN OPPOSITION TO PETITIONER'S MOTION TO SIGN AND ENTER FINAL DECREE OF DIVORCE, AND MOTION TO SEVER AND RESERVE ALL DIVISION OF BANKRUPTCY-ESTATE PROPERTY | 16 | 1 | | 1 | 1 | 1 | | 1 | 1 | 1 | 1 | 1 | 1 |
| 259 | 06/25/2026 | C17 | ORDER - [illegible] | COURT | ADVERSE | FATHER'S MOTION FOR RECUSAL | | | | | | | | | | | | | |
| 260 | 06/25/2026 | C17 | [illegible] | COURT | ADVERSE | [illegible] | | | | | | | | | | | | | |
| 261 | 06/29/2026 | C18 | E-SERVED COPY OF ORDER | COURT | COURT | ORDER DENYING FATHER'S MOTION TO RECUSE & FINAL DECREE | | | | | | | | | | | | | |
| 262 | 07/06/2026 | C18 | NOTICE OF FILING | RESPONDENT | RESP-FILING | RESPONDENT'S W-9 SWORN DECLARATION RE PROPERTY ITEMS | 52 | | | | | | | | | | | | |
| 263 | 07/08/2026 | C18 | MISCELLANEOUS EVENT | RESPONDENT | RESP-EMERG | EMERGENCY NOTICE OF UNHEARD DE NOVO REQUEST AND TRIAL DISPOSITIVE OBJECTIONS | 11 | | 1 | | | 1 | | | | | | | |
| 264 | 07/15/2026 | C18 | FINDINGS OF FACT/CONCLUSIONS OF LAW | RESPONDENT | RESP-FILING | RESPONDENT'S FIRST AMENDED AND SUPPLEMENTAL REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW | 8 | 1 | | 1 | 1 | 1 | | | | 1 | | | 1 |
| 265 | 07/17/2026 | C18 | MOTION - NEW TRIAL | RESPONDENT | RESP-EMERG | MOTION - NEW TRIAL | 27 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| 266 | 07/17/2026 | C18 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | PROPOSED ORDER GRANTING NEW TRIAL, VACATING FINAL DECREE, SUSPENDING ENFORCEMENT, ENTERING TEMPORARY PROTECTIVE AND STABILIZATION ORDERS, AUTHORIZING SOURCE-RECORD RECONSTRUCTION, AND SETTING EXPEDITED | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| 267 | 07/29/2026 | C18 | NOTICE OF FILING | RESPONDENT | RESP-EMERG | RESPONDENT'S NOTICE OF FILING WITH THE UNITED STATES DEPARTMENT OF LABOR, EMPLOYEE BENEFITS SECURITY ADMINISTRATION | 33 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| 268 | 08/07/2026 | U22 | NOTICE PAST DUE FINDING OF FACTS/COL | RESPONDENT | RESP-FILING | NOTICE PAST DUE FINDING OF FACTS/COL \| Notice of Past Due Findings of Fact and Conclusions of Law | 11 | 1 | | 1 | 1 | 1 | | | | 1 | | | 1 |
| 269 | 08/14/2026 | U22 | NOTICE OF FILING | RESPONDENT | RESP-FILING | RESPONDENT'S VERIFIED MOTION TO SET EXPEDITED HEARING | 13 | | | | | 1 | | 1 | | 1 | | | |
| 270 | 08/14/2026 | U22 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ORDER SETTING EVIDENTIARY HEARING ON RESPONDENT'S VERIFIED MOTION FOR NEW TRIAL AND MOTION TO VACATE | 2 | | | | | 1 | | 1 | | | | | |
| 271 | 08/19/2026 | U22 | MOTION - SET HEARING | RESPONDENT | RESP-FILING | RESPONDENT'S MOTION TO SET THE EVIDENTIARY HEARING BEFORE THE 09-09-26 OPERATION-OF-LAW-DATE, AND ACCEPTANCE OF THE 09-02-26 SETTING UNDER OBJECTION | 33 | | | | | 1 | | | | | 1 | | |
| 272 | 08/19/2026 | U22 | RESPONSE | PETITIONER | PETITIONER | PETITIONER'S LIMITED RESPONSE TO RESPONDENT'S MOTION TO SET THE EVIDENTIARY HEARING BEFORE 09-09-26 OPERATION -OF LAW DATE | 6 | | | | | | | | | | | | |
| 273 | 08/19/2026 | U22 | RESPONSE | RESPONDENT | RESP-FILING | RESPONDENT'S VERIFIED REPLY TO PETITIONER'S LIMITED RESPONSE AND CLARIFIED REQUEST FOR AN EXPEDITED PRE- SEPTEMBER 9 EVIDENTIARY SETTING | 40 | | | | | 1 | | 1 | 1 | 1 | | 1 | |
| 274 | 08/21/2026 | U22 | OBJECTIONS - MISC | RESPONDENT | RESP-FILING | RESPONDENT'S - TO REMOTE APPEARANCE AND TESTIMONY OF PETITIONER AND MATERIAL FACT | 5 | | | | | 1 | | 1 | | | | | |
| 275 | 08/21/2026 | U22 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | ON VERIFIED OBJECTION TO REMOTE APPEARANCE AND TESTIMONY | 5 | | | | | 1 | | 1 | | | | | |
| 276 | 08/28/2026 | U22 | MOTION HEARING | COURT | COURT | MOTION HEARING (9:00 AM) WYSOCKI, ASHLEY - CANCELED BY COURT ADMINISTRATOR | | | | | | | | | | | | | |
| 277 | 08/31/2026 | U23 | OBJECTIONS - MISC | RESPONDENT | RESP-EMERG | TO PROCEEDING WITHOUT DUE PROCESS: RENEWED MOTION FOR EXISTING EVIDENTIARY RECORD | 25 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| 278 | 08/31/2026 | U23 | REQUEST REPORTER RECORD | RESPONDENT | RESP-FILING | RESPONDENT'S RENEWED \| Renewed Request and Designation for Complete Reporter's Record and Specific Clerk's-Record Items | 7 | 1 | | | 1 | 1 | | 1 | | 1 | | | 1 |
| 279 | 09/03/2026 | U23 | MOTION HEARING | COURT | COURT | MOTION HEARING (1:30 PM) WYSOCKI, ASHLEY - HEARING HELD. Petitioner counsel and Respondent listed present | | | | | | | | | | | | | |
| 280 | 09/03/2026 | U23 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-EMERG | GRANTING MOTION FOR NEW TRIAL TO VACATE FINAL DECREE OF DIVORCE | 4 | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | 1 |
| 281 | 09/11/2026 | U23 | BRIEF FILED | PETITIONER | PETITIONER | PETITIONERS BRIEF ON THE EFFECT OF THE BANKRUPTCY AUTOMATIC STAY ON THE FINAL DECREE OF DIVORCE | 133 | | | | | | | | | | | | |
| 282 | 09/11/2026 | U23 | MOTION - MISCELLANEOUS | RESPONDENT | RESP-EMERG | EMERGENCY REQUEST TO WITHHOLD RULING PENDING SAME DAY RESPONSE TO PETITIONER'S SEPT. 11, 2026 BRIEF | 3 | | 1 | | | 1 | | | | | | | |
| 283 | 09/11/2026 | U23 | NOTICE OF FILING | RESPONDENT | RESP-FILING | NOTICE OF FORTHCOMING SUPPLEMENTAL BRIEF AND RESPONSE TO PETITIONER'S BRIEF ON THE EFFECT OF THE BANKRUPTCY AUTOMATIC STAY | 2 | | | | 1 | 1 | | | | | | | |
| 284 | 09/14/2026 | U23 | BRIEF FILED | RESPONDENT | RESP-FILING | SUPPLEMENTAL BRIEF ON THE BANKRUPTCY AUTOMATIC STAY IN SUPPORT OF COMPLETE VACATUR AND A NEW TRIAL | 53 | 1 | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| 285 | 09/18/2026 | U23 | ORDER - NEW TRIAL/SET ASIDE/ VACATE (OCA and REOPEN CASE) | COURT | PARTIAL | ORDER - NEW TRIAL/SET ASIDE/ VACATE (OCA and REOPEN CASE) \| Memorandum Ruling on Motion for New Trial \| Memorandum: new trial granted in part; property provisions vacated; remaining provisions interlocutory | 1 | | | | | | | | | | | | |
| 286 | 09/24/2026 | U23 | MOTION - VACATE | RESPONDENT | RESP-EMERG | MOTION - VACATE \| Motion to Vacate Remaining Decree Provisions, for Sanctions and Written Ruling | 12 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| 287 | 09/24/2026 | U23 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | PROPOSED ORDER/JUDGMENT \| Proposed Order on Motion to Vacate Remaining Decree Provisions | 4 | 1 | | 1 | 1 | 1 | 1 | 1 | | | 1 | | 1 |
| 288 | 09/28/2026 | U23 | NOTICE OF APPEAL - CT. OF APPEALS | RESPONDENT | RESP-FILING | RESPONDENT \| Protective Notice of Appeal | 3 | 1 | | | 1 | 1 | | | | | | | |
| 289 | 09/28/2026 | U24 | NOTICE OF FILING | RESPONDENT | RESP-FILING | RESPONDENT'S SUPPLEMENTAL NOTICE REGARDING THE INTERLOCUTORY POSTURE, APPELLATE TIMETABLE, AND SEPTEMBER 24, 2026, MOTION TO MODIFY | 3 | 1 | | | 1 | 1 | 1 | | | | | | |
| 290 | 09/29/2026 | U24 | PROPOSED ORDER/JUDGMENT | RESPONDENT | RESP-FILING | PROPOSED ORDER CLARIFYING INTERLOCUTORY POSTURE AND NONPRECLUSIVE EFFECT ON SECION 5 | 2 | | | | 1 | 1 | 1 | | | | | | |
| 291 | 09/29/2026 | U24 | MOTION - MISCELLANEOUS | PETITIONER | PETITIONER | PETITIONER'S MOTION TO CLARIFY AND MODIFY THE MEMORANDUM OF SEPT. 18-2026 | 18 | | | | | | | | | | | | |
| 292 | 09/30/2026 | U24 | NOTE - CLERKS | COURT | COURT | PREPARING CLERK'S RECORD | | | | | | | | | | | | | |
| 293 | 10/05/2026 | U24 | COA - POST CARD | COURT | COURT | 05-26-01443-CV | | | | | | | | | | | | | |
| 294 | 10/05/2026 | U24 | APPELLATE RECORD | COURT | COURT | 05-26-01443-CV CLERK'S RECORD SUBMITTED TO 5TH COA WITH TRACE #83039 | | | | | | | | | | | | | |
| 295 | 10/06/2026 | U24 | COA - POST CARD | COURT | COURT | 05-26-01443-CV | | | | | | | | | | | | | |
| 296 | 10/15/2026 | U24 | COA - POST CARD | COURT | COURT | 05-26-01443-CV | | | | | | | | | | | | | |
| 297 | 10/16/2026 | L | COA - CORRESPONDENCE LETTER | COURT | COURT | 5TH COA LETTER ISSUED \| Corrected June 16 mandamus records. No. 05-26-00854-CV: case-number typo correction. | | | | | | | | | | | | | |
| 298 | 10/16/2026 | L | COA - CORRESPONDENCE LETTER | COURT | COURT | CORRECTED OPINION AND ORDER \| Corrected June 16 mandamus records. No. 05-26-00854-CV: case-number typo correction. | | | | | | | | | | | | | |
| 299 | 10/16/2026 | L | ORDER - MISC. | COURT | COURT | 5TH COA - ORDER DISMISS \| Corrected June 16 mandamus records, No. 05-26-00854-CV; case-number typo correction. | | | | | | | | | | | | | |
| 300 | 10/16/2026 | L | OPINION | COURT | COURT | 5TH COA MEMORANDUM \| Corrected June 16 mandamus records, No. 05-26-00854-CV; case-number typo correction. | | | | | | | | | | | | | |

**Update notes**

September 18 (row 285): the memorandum grants a new trial in part and vacates decree §§8, 9, 11-15; §§1-7 and 10 remain interlocutory. The green row records partial relief, not complete vacatur. Source: DF24 pleading #254 / internal 249, physical PDF p. 1.

October 16 (rows 297-300): corrected records in mandamus No. 05-26-00854-CV fix the trial-cause number on the June 16 disposition. These are not a new October dismissal of appeal No. 05-26-01443-CV and are not counted as additional adverse rulings.