FILED
NOV 25 2026
CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| IN RE: **JASON EMORY McKEMIE,**<br>Debtor. | CASE NO. **26-30161-mvl7**<br>*CHAPTER 7* |

# DEBTOR'S MOTION TO EXTEND AUTOMATIC STAY AND COMPEL IN-PERSON TESTIMONY (ECF 110)

**TO THE HONORABLE MICHELLE V. LARSON, UNITED STATES BANKRUPTCY JUDGE:**

**Jason Emory McKemie,** the Debtor, asks the Court to enter as an order the agreement that Movant Gwendolyn Laura Ulijasz and the Debtor each stated to the Court in writing on November 18, 2026: the automatic stay remains in effect as to Movant, and the periods under 11 U.S.C. § 362(e) are extended, through the reset hearing and the Court's ruling on ECF 110. He also asks the Court to order now that Movant appear in person and testify at that hearing, and to state in the order what will follow if she does not. He asks for a separate written ruling, granted or denied, on each lettered request in Section III.

This motion stands alone. It is not a supplement. It replaces in full the papers docketed as ECF Nos. 150, 150-1, 150-2, 150-3, 151, 151-1 and 152, which the Debtor withdrew by his Notice of Withdrawal served on November 20, 2026, and it relies on nothing in them. It is the replacement filing identified in paragraph 14 of that notice.

The second request rests on the record. Twice this Court has set an in-person evidentiary hearing on Movant's own motion. Twice her counsel committed her to the date. And twice that commitment was withdrawn immediately after the Debtor stated that he would call her as a witness. The Debtor told the Court in writing, before it happened, that it would happen. He has done so before. On December 11, 2024, he called the police and told the 911 operator that he was being set up and needed protection from false police reports and a fraudulent protective order. The call log reads "caller thinks is being set up by wife." The false police reports began three days later, on December 14, 2024. Movant's fraudulent application for a protective order was filed exactly one week after his call, on December 18, 2024, and it was denied in full on January 7, 2025 (ECF 134 ¶ 19 at 4). He has predicted what has been done to him since then, each time in advance and on the record, and he has had no ability to stop the harm from escalating since that day.

The hearing was first set for November 18, 2026, then for December 8, 2026, and it is now to be held on January 20, 2027, twenty-five months into a divorce in which the Debtor has never once been able to question Movant under oath. For Movant, no hearing is a win. Each reset extends a coordinated campaign: the weaponization of civil and criminal filings, procedural delay, and the relentless obstruction of the Debtor's finances, resources, housing, healthcare, transportation and employment. Procedural delay and

prolonged deprivation are the weapons, and the desperation of the Debtor and his parents is measured in days, not months.

This campaign began in December 2024, and it was built in advance. Through the second half of 2024 Movant told the Debtor the household faced a short-term cash crunch because she had to pre-fund her investment in Accenture's VEIP equity program and her Accenture expense account, and she directed him to carry the community's expenses on his personal credit cards. She assured him the balances would be cleared when the first half of her $300,000 signing bonus arrived in November. She received that $150,000 on November 21, 2024 and told him it had been moved to December (ECF 148 at 2 ¶ 3; ECF 134 at 24 ¶ 3). He had spinal surgery on December 10, 2024. The next day, having uncovered documentation of Movant's long history of civil and criminal filings against past romantic partners, the former spouses of former partners, neighbors and a landlord, and of settlements extracted from at least three prior employers under threat of litigation over workplace-abuse allegations, he called 911 and reported exactly what was coming (ECF 134 ¶ 19 at 4, and at 25 ¶ 6; Decl. ¶ 23). It came. More than $650,000 has since been siphoned out of the marital estate (ECF 122 at 29–30 ¶ 19). The campaign has not stopped, and it has now destroyed two generations of his family. Neither generation has ever faced a more desperate financial crisis. When it began, his parents loaned him $50,000. That was the money they had set aside for his father's placement in a memory-care facility, and the room the family waited two years for was lost. His parents' homeowners and vehicle insurance will be cancelled on November 29, 2026 unless $1,501.50 is paid by November 28, and his father's life insurance, which he has paid into for more than thirty years, is about to lapse. His parents' accounts are overdrawn, the three of them have less than $100 between them, and they face the loss of their home (Decl. ¶ 22; ¶ 26 below). Every court the Debtor has gone to has pointed him to another, and every police department has told him it is a civil matter (¶ 26 below). Procedural delay is the weapon. Deprivation through procedural delay is the weapon. Every continuance and every reset is exactly what Movant wants. The harm is compounding exponentially. It will keep compounding if this Court permits the delay to continue any longer, and the time in which the Debtor and his parents can still recover is measured in days, not months.

# I. FACTS

## A. MOVANT'S MOTION, THE SIXTIETH DAY, AND THE DEBTOR'S REQUESTS TO CONTINUE THE STAY

1. Movant filed her motion for relief from the automatic stay, ECF 110, on September 11, 2026. It asked the Court to annul the stay and, in the alternative, to modify it (ECF 110 ¶ 2 at 2–3). The sixtieth day after that filing was November 10, 2026.

2. The Debtor asked the Court three times to continue the stay and extend the periods in 11 U.S.C. § 362(e): on October 2, 2026 (ECF 122 at 11–12); in his revised proposed order of October 5,

2026, which was before the Court at the October 6 hearing (ECF 127 at 3 ¶ 4); and in his supplement file-stamped November 13, 2026 (ECF 148 at 5, request (7), and at 17 ¶ 35).

## B. THE COURT SET AN IN-PERSON EVIDENTIARY HEARING, AND MOVANT NOTICED IT

3. On October 6, 2026, the twenty-fifth day, the Court heard argument on ECF 110, stated that it needed a half-day, in-person evidentiary hearing, and set that hearing for November 18, 2026 (Decl. ¶ 7). Movant describes the setting the same way: a "final in person, evidentiary hearing" (ECF 143 ¶ 4 at 3; ECF 141 ¶ 3 at 3). On October 7 her counsel filed the notice. The hearing "will be conducted in-person" (ECF 128 at 1). Movant has "known of the in-person setting since October 2026" (ECF 141 ¶ 1 at 2). November 18 was the sixty-eighth day. Movant noticed her own final hearing for that day and did not invoke § 362(e).

## C. THE DEBTOR TOLD THE COURT WHAT WOULD HAPPEN, AND IT HAPPENED

4. On Saturday, November 7, 2026, at 5:59 p.m., the Debtor emailed Movant's counsel that he would move to compel Movant's in-person appearance and asked for their position (ECF 134 at 28). Thirteen minutes later Jonathan D. Steele answered that Movant "opposes the relief requested," that "an email sent on a Saturday evening eleven days before the hearing is not adequate notice," and that Movant "will comply with whatever the Court directs" (ECF 144 at 10). He gave no reason she could not appear.

5. On November 10 the Debtor filed the motion (ECF 134). It asked for "nothing new." The Court had set an in-person evidentiary hearing on Movant's own motion. Her own counsel had noticed it as "conducted in-person" (ECF 128 at 1) and had written three days earlier that she "will comply with whatever the Court directs" (ECF 144 at 10). The motion answered counsel in one line: "If it's too late to keep the setting, it's too late to change it." (ECF 134 ¶¶ 12–13 at 3, quoted at ECF 144 at 3.)

6. The same filing told the Court what would come next. Each time Movant would have to answer questions, "a new claim of danger appears: a police report, an emergency, a request to appear remotely or not at all. . . . The November 18 hearing is the next such point." (ECF 134 ¶ 5 at 2.) It warned that a claim "framed as danger, emergency, or inability to appear is foreseeably likely before that hearing" (ECF 134 ¶ 23 at 5). It was not the first warning. The Debtor's predictions of December 11, 2024 and February 6, 2026, each made before the event, are in the same filing (ECF 134 ¶ 5 at 2; ¶¶ 19–20 at 4).

7. That same morning, at 11:24 a.m., Mr. Steele, Movant's Chicago-based counsel, wrote that Movant would move to testify by WebEx. He stated no reason she could not appear in person (ECF 144, Ex. 8 at 119). Two days later, on November 12, Movant filed ECF 141. It attached an unsworn letter dated November 11, 2026, signed by a family nurse practitioner, Jennifer Lopez, FNP-C, of Texan Family Clinic in San Antonio. The letter says that Movant is "currently being treated for a medical condition,"

which it does not name; that she should "refrain from travel for the next two months, through approximately January 11, 2027"; and that she "remains able to participate in video conferencing" (ECF 141 at 35). Mr. Steele certified that he "learned of the medical circumstances" on November 11 (ECF 141 at 13; ECF 142 at 4).

8. **THE SEQUENCE.**

a) **October 6 and 7:** The Court sets this matter for an in-person evidentiary hearing, and Movant's own counsel notices it as an in-person hearing (ECF 128).

b) **November 7:** The Debtor gives notice that he will move to compel Movant's in-person appearance. Mr. Steele opposes it thirteen minutes later. In the same email he writes that Movant "will comply with whatever the Court directs" and that "[t]he Debtor is not entitled to dictate how a creditor appears" (ECF 135, Ex. E at 4; ECF 134 at 28). He gives no reason she cannot appear.

c) **November 10:** The Debtor's motion tells the Court to expect "a request to appear remotely or not at all." Mr. Steele announces the WebEx motion that morning and gives no reason.

d) **November 11:** The provider letter is dated, and Mr. Steele, by his own certification, first learns of the medical circumstances offered as the reason Movant cannot attend the hearing in person.

e) **November 12:** The WebEx motion is filed with that letter. Mr. Steele certifies to the Court that it was served on the Debtor that day by email and by first-class United States mail. No service was made on the Debtor on November 12. The Debtor asks for proof of the service Mr. Steele certified, either the sent email or proof of mailing, and, if neither can be provided, for a corrected certificate filed with the Court (request H). Movant's application filed the same day states that she "does not intend to offer testimony at the November 18 hearing" (ECF 142 ¶ 5 at 3).

- No proof of email service has ever been provided to the Debtor.
- No proof of mailing has ever been provided to the Debtor.
- No corrected certificate has ever been filed with the Court.

9. **WHAT THE DATES SHOW.** On November 7 the hearing was set in person, and Mr. Steele wrote that Movant would comply with whatever the Court directed. He opposed her in-person appearance in the same email. Movant's own declaration dates her hospital treatment to November 10 (ECF 141

at 23 ¶ 5), three days after that opposition. Mr. Steele announced the WebEx motion on the morning of November 10 and, by his own certification, did not learn of any medical circumstance until November 11. Movant's application calls her treatment and the travel advice "an additional basis for the present request" (ECF 142 ¶ 5 at 3). The request to testify remotely was announced on November 10. The letter offered as the reason for it is dated November 11. The motion citing that letter was filed on November 12. Remote testimony requires good cause in compelling circumstances and appropriate safeguards. Fed. R. Civ. P. 43(a); Fed. R. Bankr. P. 9017. Convenience of the witness falls outside that standard. Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment. The cost Movant's declaration assigns to appearing in person is that she "would miss the full workday" (ECF 141 at 24 ¶ 5). She gave the divorce court the same kind of reason ten months earlier. On January 20, 2026, she asked to appear there by Zoom because hearings in Dallas "require multiple days away from work with little notice to her employer and cancellations on her client meetings, as well as travel, lodging, and dog boarding" (Decl. ¶ 15).

10. **THE MEDICAL NOTE AND ITS VARIOUS RESTRICTIONS.** Counsel has since described that advice to the Court three different ways. On November 12 he wrote that Movant had been advised "not to fly until she is reassessed" (ECF 142 ¶ 2 at 2) and called it "advice against air travel" (ECF 142 ¶ 5 at 3; ECF 143 ¶ 2 at 2). The letter says "refrain from travel" (ECF 141 at 35). On November 18 he wrote that the advice "includes the drive to Dallas" (Ex. A-11).

## D. NOVEMBER 12: THE RELIEF CHANGED, THE PAPERS WERE NOT SERVED, AND THE COURT WAS ASKED TO SHORTEN THE DEBTOR'S TIME

11. On Wednesday, November 11, Movant filed her witness list and exhibit list (ECF 136; ECF 137), and Mr. Dafoe emailed both to the Debtor that morning (Decl. ¶ 9). Her list names one witness, the Debtor, whom she "intends to call . . . as an adverse witness" (ECF 136 at 1). The Debtor's list, designating Movant as an adverse witness for in-person testimony, was already on file (ECF 140 at 1).

12. On Thursday, November 12, six days before the hearing and after the witness lists were on file, Movant changed what the hearing was about. She limited ECF 110 to modification of the stay and a determination under 11 U.S.C. § 362(b)(2)(A)(iv), and asked for "leave to withdraw her requests for annulment of the stay and for a determination that particular property was not property of the estate, without adjudication of those requests on their merits" (ECF 143 ¶ 6 at 4). She announced that she "does not intend to offer her declaration or to testify" (ECF 143 ¶ 1 at 2). The Debtor's witnesses and exhibits had been prepared to meet the motion she filed, not the one she substituted. She made that substitution without serving it on him that day (¶¶ 13–14 below), against a party who represents himself by necessity and not by choice, who has no CM/ECF access and must deliver every filing to the Clerk on paper with an ink signature (ECF 141 at 12; Decl. ¶ 9), who lives three hours from the courthouse, and who has no vehicle because he had to surrender it to InTouch Credit Union

(ECF 145 at 15; Decl. ¶ 6). That surrender is the direct result of the financial ambush Movant carried out in December 2024 and of the coordinated aggravated perjury, Tex. Penal Code §§ 37.02, 37.03, of Movant and her out-of-state sister, Pamela Woodman, together with the false financial testimony Movant placed before the state court at the January 7, 2025 hearing on her fraudulent protective-order application, which the court denied, and on temporary orders. Those temporary orders stripped the Debtor of access to every marital asset while he was recovering from emergency spinal surgery and left him carrying approximately $25,000 a month for the entire marital estate with no income (ECF 134 ¶ 40 at 9–10; ECF 134 ¶ 74 at 18; ECF 144 at 2; ECF 148 at 3).

13. The three papers Movant filed that day, ECF 141, 142 and 143, were not served on the Debtor that day (Decl. ¶ 9). Mr. Steele's certificate on each states that it was served on the Debtor on November 12 "by email" and "by first-class United States mail" (ECF 141 at 13; ECF 142 at 5; ECF 143 at 13). The Debtor received no such email from Mr. Steele or anyone in his office on that date. Two days earlier he had told counsel in writing that he "has no CM/ECF access" and had asked them to serve their filings on him "by email when you file them" (ECF 141 at 12).

14. The Debtor knew that filings were imminent. Just before the Clerk's office closed on November 12 he called and was told that ECF 141, 142 and 143 had been filed. The Clerk could not email copies. He was locked out of PACER for fees he had been unable to pay, and Movant's counsel knew he could not retrieve filings from the docket himself (ECF 141 at 12; Decl. ¶ 9). He borrowed money to restore his PACER access, downloaded the filings, and drafted his response through the night. On Friday, November 13, he drove a borrowed vehicle three hours to Dallas to file it before the Clerk closed. Movant's papers were first emailed to him at 9:45 a.m. that day, by counsel's paralegal, when he was two hours into that drive (Ex. A-1; Decl. ¶ 9).

15. Among those papers was ECF 142, an application to shorten the Debtor's time. It told the Court that the Debtor "agrees" to a schedule under which he would serve any supplement by 5:00 p.m. on Friday, November 13, and asked the Court "to adopt that schedule" (ECF 142 ¶ 3 at 2). That was not an agreed response deadline. It was the time the Debtor had offered on November 10 for a voluntary supplement, on the stated condition that Movant serve her filings on him by email when she filed them (ECF 141 at 12), a day before counsel says he learned of any medical ground. Mr. Steele presented it to the Court as a time that "allows him to address" those grounds (ECF 141 at 13; ECF 142 at 4). The grounds were first sent to the Debtor at 9:45 a.m. on the day the Court was asked to make his response due.

16. The Debtor has asked Movant's counsel three times for proof of how those papers were served on November 12. None has been produced (Decl. ¶ 9). At 3:54 p.m. on November 13 he asked Mr. Steele, Mr. Dafoe and Ms. Boucher to state by 5:00 p.m. how ECF 141, 142 and 143 were served on him on November 12: if by email, "send me the sent email"; if by mail, "send me proof of mailing: the postage or tracking record, and who mailed it, when, and from where"; and "[i]f neither was done on November 12, say so" (Ex. A-2). Local counsel answered instead that a "widespread outage involving

Microsoft products" explains "why you did not received [sic] emails sent by our office on Nov. 12 until Nov. 13" (Ex. A-3). The Debtor replied that evening: "That is not an answer to either question." An outage "explains why a message did not arrive. It does not erase a sent-items record, a postage receipt, or a tracking number." Mr. Steele's certificates state service by first-class United States mail, and "Microsoft does not carry the United States mail." Mr. Dafoe is "not the certifying party"; Mr. Steele signed the three certificates, and his office is in Illinois (Ex. A-4). No sent email and no proof of mailing has been produced. The email that delivered the papers is dated November 13 (Ex. A-1).

17. Proper service is not something the Debtor has been able to rely on in this case, and the Court knows it. On April 16, 2026, the Court reinstated the automatic stay after a landlord obtained relief from it on a motion that was never properly served on the Debtor, at a hearing of which he was given no notice. The Court found a "lack of proper service to the Debtor of the Lift Stay Motion" and a "lack of notice given to the Debtor with respect to the March 31st hearing" (ECF 57 at 2–3).

## E. NOVEMBER 13 TO 18: THREE COMMITMENTS TO APPEAR IN PERSON, WITHDRAWN IN SIX MINUTES

18. On November 13 Court staff told the Debtor in person that the Court had denied the WebEx request and continued the hearing to a date on which Movant will appear in person (Decl. ¶ 8). Movant's counsel confirms it: "the Court has directed that the hearing proceed in person" (Ex. A-11).

19. On November 14 Mr. Steele wrote to the Debtor: "We are available for an in-person hearing on Tuesday, December 1, Tuesday, December 8, or Friday, December 18." (Ex. A-5; Decl. ¶ 5.) Every one of those dates falls inside the period in which his client's provider says she cannot travel. He had filed that provider's letter two days earlier.

20. On November 18, 2026, the following was written to the Court in under four hours (Ex. A-6 to A-11):

a) **7:38am, Mr. Steele:** "Movant is available on both dates and proposes December 18."

b) **8:45am, Ct. Deputy:** "Judge Larson has agreed to a half day setting on Tuesday, 12/8."

c) **8:49am, Mr. Steele:** "Movant requests the 1:30 p.m. start on Tuesday, December 8, 2026."

d) **8:54am, Ct. Deputy:** Wrote to confirm that both matters were being reset to December 8 at 1:30 p.m.

e) **11:06am, the Debtor:** Confirmed December 8 and wrote: "I will call her as an adverse witness and cross-examine her in person, and I am serving a hearing subpoena for her testimony."

f) **11:12am, Mr. Steele:** (six minutes later) States that his statement that Movant was available on December 8 was made "in error"; that her provider has advised her to refrain from travel through approximately January 11, 2027, "which includes the drive to Dallas"; "the Court has directed that the hearing proceed in person"; and Movant asks that ECF 97 and ECF 110 both be reset to the Court's first available date after January 11, 2027.

21. Three times in five days Movant's counsel told the Debtor or the Court that Movant was available in person, inside the very period her provider's letter covers (Ex. A-5, A-6, A-8). The statement was withdrawn six minutes after the Debtor wrote that he would call her as a witness, and counsel gave that as the reason: "The Debtor wrote this morning that he will call her as an adverse witness in person and is serving a hearing subpoena on her, and the Court has directed that the hearing proceed in person. Movant therefore respectfully asks" for the reset (Ex. A-11). In the same email she asked to put off the Debtor's Rule 2004 motion, ECF 97, which requires no testimony from her. The Court kept ECF 97 on December 8 (Ex. A-13).

22. This is the second withdrawal. Twice this Court has set an in-person evidentiary hearing on Movant's own motion, the second time by continuing the November 18 hearing specifically so that she would appear in person. Twice her counsel committed her to it (ECF 128 at 1; Ex. A-6, A-8). Twice the commitment was withdrawn immediately after the Debtor stated his intention to call Movant for cross-examination (ECF 144 at 2; Ex. A-11). The Debtor told the Court in writing on November 10 that this would happen. His record of Movant's false police reports and false danger narrative is at ECF 134 and ECF 144 and is not repeated here.

## F. THE AGREEMENT ON THE STAY, AND THE RESET TO JANUARY 20, 2027

23. In the same 11:12 a.m. email Mr. Steele wrote: "Because the later date is at Movant's request, Movant agrees that the automatic stay remains in effect as to her motion, and that the periods under 11 U.S.C. 362(e) are extended, through the reset hearing and the Court's ruling on ECF 110." (Ex. A-11.) The Debtor replied to the Court that afternoon. He agreed to reset ECF 110 to the first available date after January 11, 2027; agreed that the automatic stay remains in effect as to Movant's motion and that the periods under § 362(e) are extended through the reset hearing and the Court's ruling on ECF 110; and told the Court he would file this motion and a proposed order so that the extension is of record (Ex. A-12).

24. The Chapter 7 Trustee was copied on each of these emails. She has stated no opposition (Decl. ¶ 4).

25. At 3:34 p.m. the courtroom deputy wrote that the Court will set ECF 97 for December 8, 2026 at 1:30 p.m., a hybrid setting, and will set ECF 110 for a date after January 11, 2027. She offered January 20, 2027 for "this in-person only final hearing" (Ex. A-13). The Debtor has accepted January 20, 2027 at 1:30 p.m. (Ex. A-14; Decl. ¶ 10). On November 24, 2026 the courtroom deputy advised that a full day beginning at 9:30 a.m. can be reserved for the hearing if the parties agree, and the Debtor agreed in writing that afternoon (Decl. ¶ 10).

## G. WHAT THE DELAY COSTS THE DEBTOR

26. By January 20, 2027 the divorce will have been pending twenty-five months. In that time the Debtor has never been able to ask Movant one question under oath in any proceeding (Decl. ¶ 6). For the November 18 hearing she announced that she "does not intend to offer her declaration or to testify" (ECF 143 ¶ 1 at 2). Her availability for December 8 was withdrawn six minutes after the Debtor wrote that he would call her (Ex. A-10, A-11). She did not intend to be present on November 18. She did not intend to be present on December 8. She does not intend to be present on January 20, 2027. The Debtor told the Court in writing on November 10 that this would happen, and it has now happened twice (ECF 134; ¶ 22 above). **Movant will not appear and submit to cross-examination under oath unless this Court orders her to and states, in the same order, consequences she cannot pay her way out of.**

An order by itself has never been enough for this party. This is what Movant has done with the orders already entered:

- **EXCLUSIVE POSSESSION.** The temporary orders of January 7, 2025 gave the Debtor exclusive possession of the residence and its contents and enjoined Movant from entering it or removing property. The state court gave her access periods to collect her things and refused her more. Her own settlement with the landlord barred her from the premises while the Debtor remained in possession. On April 16, 2026 she went in with movers and a 26-foot truck and took his property (ECF 55 at 69; ECF 71 at 1; ECF 122 at 22 ¶ 2; ECF 138 at 11–12 ¶ 17).

- **THIS COURT'S ORDER OF APRIL 16, 2026.** This Court directed that the taking stop, and its written order states that "no other party shall remove any of the possessions from the premises" (ECF 57 at 3). When the Court's direction was relayed, the movers stopped. Movant did not. The constable told her to stop and to unload what she had put in her vehicle. She got in and fled with the Debtor's property (ECF 122 at 23 ¶ 5B; ECF 138 at 11 ¶ 17). Nothing has been returned (ECF 138 at 12 ¶ 18).

- **THE TWENTY-FOUR-HOUR ORDER.** The order of December 17, 2025 gave her twenty-four hours to reinstate the Debtor's health benefits and to prove it in writing. She did not (ECF 55 at 53; ECF 121-1 at 125).

- **THE $20,643.56.** The same order required her, failing that, to pay $20,643.56. It came due on December 18, 2025. She has not paid a dollar of it (ECF 55 at 53–54; Decl. ¶ 17).

- **THE HSA CARD.** The order required access "sufficient for Respondent to use the benefits without obstruction" (ECF 55 at 53). She handed the Debtor a cancelled card in open court and called it compliance (ECF 121-1 at 125; ECF 138-1 at 59). He has no working HSA card today, and with no card and no login he cannot use the FSA either (Decl. ¶¶ 13, 21).

- **THE BENEFITS SHE TERMINATED.** The supplemental life insurance of which the Debtor was the beneficiary, his accidental death and dismemberment coverage and his critical-illness coverage ended on October 31, 2025, on Movant's fraudulent participant-reported divorce-based qualifying life event, when no divorce had occurred. They were never restored (ECF 138 at 10 ¶ 15; ECF 148 at 3).

- **DISCOVERY.** At the pretrial conference of September 9, 2025 the state court directed her counsel to release the missing financial statements immediately. On January 6, 2026 it ordered her to complete her production by January 9. She did neither. That court twice found her out of compliance, and on February 5, 2026 she could not produce a single one of the records the Debtor had requested (ECF 149-3 at 10–11; ECF 122 at 29 ¶ 16; Decl. ¶ 16).

- **THE AUTOMATIC STAY.** With the stay in force, Movant tried the divorce on June 11, 2026 in the Debtor's absence and took a decree, without relief from the stay, that divided the property, ordered him to pay within thirty days half of debts on accounts he never had access to, and added an indemnity with attorney's fees. The decree names this case by number (ECF 110 at 42). She then asked this Court to annul the stay after the fact (ECF 110). After the Debtor moved to compel her testimony, she asked to withdraw that request "without adjudication of those requests on their merits" (ECF 143 ¶ 6 at 4; ECF 134 ¶ 64 at 16; ECF 138 at 12 ¶ 19; Decl. ¶ 21).

Movant has not obeyed one order entered for the Debtor's protection (¶ 28 below). An order to appear on January 20, 2027 with nothing behind it will be the next.

A fine will not change that. Movant's target compensation is approximately $1,500,000 a year, about $125,000 a month (Decl. ¶ 12). A sanction she can pay out of one month's compensation is not a consequence. It is the price of not being cross-examined, and she can afford it. The consequence that reaches her is the loss of the relief she came here to get. Without her in the witness chair her declaration is hearsay, and her lawyers cannot make it evidence for her (Fed. R. Evid. 602, 801(c),

802; Part II.D below). **The order should say so now: no testimony, no declaration, and ECF 110 denied with prejudice (request F).**

For two years the Debtor has lived under weaponized deprivation: obstruction of his healthcare, his prescriptions, his employment, his housing, his transportation and his access to counsel. Over the same period he has been interrogated and read his Miranda rights on the strength of Movant's constant false police reports (Decl. ¶ 20). His eviction from the marital residence was manufactured. It followed a concealed financial arrangement Movant made with the landlord, on a residence for which she was the sole financial guarantor (¶ 27 below; ECF 122 at 20–22 ¶¶ 2–4; Decl. ¶ 23). The stay was then lifted for the landlord at a hearing of which the Debtor was never served notice (ECF 57 at 2–3), and on April 16, 2026 the writ was executed. The writ manufactured his absence from the residence and opened a window. Movant, who lives five hours away, had personnel inside the house within two minutes of his departure, and she arrived minutes later by Uber from the airport, carrying her luggage (ECF 149 at 35; ECF 75 at 6; Decl. ¶ 23). She and the personnel she sent stole and destroyed everything he needed to live, survive, provide for himself and protect his health and safety, including his litigation hard drives and nearly everything he owns. **It is a coordinated destabilization campaign, and its object is that he never be able to retain counsel.** For more than a year he emailed approximately twenty law offices every week and telephoned firms. Those willing to discuss the divorce required retainers of at least $50,000, and the marital funds that would have paid one were out of his reach (ECF 122 at 29 ¶ 17). He has asked every authority there is for help. He filed 144 times in the divorce court, and not a dollar reached him (Ex. B at 2; ¶ 28 below). His surgery has been blocked three times: in December 2025, by the January 2026 reset, and by the second termination effective June 30, 2026 (¶ 28 below; Decl. ¶ 17). The divorce court sent him to the bankruptcy court and the justice court, and the justice court sent him back to the divorce court. The Dallas police told him the theft of his property was a civil matter. The San Antonio police subpoenaed Apple and learned that every tracking tag Movant had turned in as proof that he was stalking her was registered to her own Apple account. No charge has been pursued against her (ECF 51 at 3–4; ECF 122 at 31 ¶ 25A). A judge of the divorce court told him that the bankruptcy court was the only court that could give him the protection he was describing, and he filed this case the same day. When he brought the April 16 taking to this Court, he understood the Court to tell him that he likely has a significant claim but that it would have to be pursued elsewhere. His position is of record: it was a post-petition taking of estate property in violation of the automatic stay and of this Court's own order (ECF 57 at 3; ECF 138 at 12 ¶ 18), and only this Court can enforce its own order. 11 U.S.C. § 105(a). Those claims are preserved here and are made by separate motion (request K). Every court and every agency has pointed him to another one (Decl. ¶ 21).

That is what a reset costs. Moving the hearing to January 20, 2027 does not bring Movant to the courtroom. It gives her sixty-three more days in which the Debtor has no home, none of his property and not a dollar of the community estate. He has no work computers, AI servers or files, no passport, no family heirlooms and no furniture. He does not own a suit for an interview, a pair of dress shoes, a monitor, a printer or even a belt to hold up his pants (Decl. ¶¶ 14, 21, 23). He had to surrender his

vehicle, so he cannot travel to see clients (ECF 145 at 15; Decl. ¶ 6). His entire career has been built on traveling to customers and distribution partners, and without these things he cannot rebuild it or step back into his field. The same delay holds up the estate. More than $650,000 has been siphoned out of the marital estate into accounts the Debtor has been trying to trace since December 2024 (ECF 122 at 29–30 ¶ 19). Traced and recovered, the community assets Movant controls pay every creditor of this estate in full and leave a surplus. She asked to put off his Rule 2004 motion, ECF 97, in the same email in which she asked to put off her own hearing (Ex. A-11).

Every day of that delay compounds the harm, and the harm does not stop with the Debtor. In December 2024, when Movant's financial ambush began, his parents loaned him $50,000. It was the money they had set aside for his father's placement in a memory-care facility, a room the family had waited about two years for. When a room came open there was no deposit, and the room was lost. His parents' homeowners and vehicle insurance will be cancelled at 12:01 a.m. on November 29, 2026 unless $1,501.50 is paid by November 28. His father's life insurance, which he has paid into for more than thirty years, is about to lapse. His parents' checking accounts are overdrawn, they carry more than $70,000 in credit card debt, and the three of them have less than $100 between them. His parents now face the loss of their home. The financial crisis Movant manufactured has destroyed two generations of this family, and the harm is compounding exponentially (Decl. ¶ 22). Sixty-three more days is not a scheduling convenience. It is the time in which that harm becomes permanent.

**If the hearing on Movant's motion is going to wait until January 20, 2027, at the cost of two more months of weaponized deprivation through continued procedural delay, the Debtor asks the Court to make certain, in a written order entered now, that Movant is in the witness chair that day: an order that she appear in person and testify, that the hearing not be continued again, that she acknowledge the order in writing, and that states now what follows if she does not appear (requests C through F).**

27. The delay is not neutral. The Debtor has borne this campaign of financial, healthcare, housing, employment and property deprivation, combined with weaponized procedural delay, since December 12, 2024. That is when Movant had his legal retainer, a transfer of survival funds made on the advice of counsel, and the rehabilitation equipment for his spinal surgery reported as fraud and withheld, so that she could file first and take the position of Petitioner (ECF 51 at 3; ECF 122 at 19–20). His reduced retainer was not restored until late Friday, December 13. Her Original Petition was filed Monday morning, December 16, 2024, and her fraudulent application for a protective order followed two days later (ECF 134 at 25 ¶ 7; Ex. B at 2). The Debtor has set out the record of that campaign under oath, by the names of the acts that make it up (ECF 122 at 18–32; ECF 134; ECF 148 at 2–4). He does not reargue it here. In summary:

a) **DEBT SHIFTING.** Movant told the Debtor the household was in a short-term budget crunch because she had to fund an investment in her Accenture VEIP equity fund and pre-fund her Accenture expense account. She told him to put the family's expenses on his personal

credit in the meantime, as something he needed to do for the family, and assured him those debts would be paid down as soon as the first half of her $300,000 sign-on bonus arrived. That account was false. The first half arrived on November 21, 2024, and the debts were not paid (ECF 148 at 2; ECF 134 at 24 ¶ 3; Decl. ¶ 11). His personal credit was exhausted, and not by his own choice.

b) **FRAUDULENT FINANCIALS AND COORDINATED AGGRAVATED PERJURY.** On January 7, 2025, on fraudulent financials and the coordinated aggravated perjury of Movant and her sister, Pamela Woodman, Tex. Penal Code §§ 37.02, 37.03, the Debtor was stripped of access to all marital assets and burdened with the obligations of the entire marital estate, approximately $25,000 a month (ECF 148 at 3; ECF 134 ¶ 40 at 9–10; ECF 122 at 20 ¶ 2). More than $650,000 has been siphoned out of the marital estate (ECF 122 at 29–30 ¶ 19). He has not been able to reach a dollar of community assets since his access to all of them was severed in December 2024 (Decl. ¶ 13).

c) **HEALTH SAVINGS ACCOUNT.** His HSA card was cut off on December 18, 2024 (ECF 134 at 25 ¶ 8; ECF 122 at 25 ¶ 6). He has been able to use it on one evening since, in 2025, for a $41 prescription, after Presbyterian Hospital of Dallas spent a day and a half restoring the card on file at a pharmacy. The card was reported lost or stolen immediately after that charge (ECF 122 at 25 ¶ 8; ECF 134 at 13). Despite the state court's order of December 17, 2025, he has never been given a functional replacement card. Its issuance is solely under Movant's control (Decl. ¶ 13).

d) **HOUSING.** Movant made a concealed agreement with the landlord, a "Mutual Release and Private Settlement Agreement" dated July 22, 2025, for consideration that has never been fully disclosed. It released her and dismissed the eviction as to her alone, while the eviction went forward against the Debtor for a period for which rent had been at least partly paid (ECF 122 at 20–22 ¶¶ 2–4; ECF 71 at 15; Decl. ¶ 14). The stay was then lifted for the landlord on a motion that was never properly served on the Debtor, at a hearing of which he was given no notice (ECF 57 at 2–3).

e) **THEFT OF HIS PROPERTY.** On April 16, 2026, in violation of the automatic stay and of this Court's order that "no other party shall remove any of the possessions from the premises" (ECF 57 at 3), nearly everything the Debtor owns was taken. That is theft. Tex. Penal Code § 31.03 (ECF 148 at 3; ECF 134 ¶ 71 at 17, and at 26 ¶ 13). Nothing has been returned. He is homeless, had to surrender his vehicle, and holds almost none of his possessions: family heirlooms, professional clothing, shoes, tools of trade, furniture, ties, desk, televisions, grooming materials, pots, pans, silverware, washer and dryer, computers, litigation hard drives, networking equipment, AI servers and GPUs, paper, ink and toner. He lacks what a person needs to live, earn a living, travel to see clients and dress for an interview (Decl. ¶ 14).

f) **HEALTHCARE.** On October 31, 2025, his coverage was terminated on a fraudulent participant-reported divorce qualifying life event. There was no divorce (ECF 148 at 3; ECF 122 at 26 ¶ 8B). He was hospitalized on November 24, 2025 with a torn rotator cuff and a ruptured bicep, and lost the surgery scheduled for late December 2025 (ECF 134 at 25 ¶ 10; ECF 122 at 26 ¶ 8B). The state court's order of December 17, 2025 gave Movant twenty-four hours to restore his coverage and give him written proof that it was restored, in time to preserve that surgery while his deductible and out-of-pocket maximum for 2025 were met. Failing that, she was to pay $20,643.56, the amount the order set to preserve his coverage and his surgical access in 2026, after those limits reset. She did neither. The right to that payment is property of the bankruptcy estate, and it remains unpaid (ECF 55 at 53–54; ECF 138 at 9 ¶ 13 and at 12 ¶¶ 17–19; ECF 134 at 25–26 ¶ 11). His benefits have never been fully restored. Life, Supplemental Life, AD&D, Critical Illness and FSA coverage were never reinstated (ECF 148 at 3). He had to escalate to the Employee Benefits Security Administration of the U.S. Department of Labor, which accepted his case and is still handling it, because Movant's employer has refused to release the QLE records relied on to terminate his coverage. He has gone a year without the surgery. His imaging is scheduled for the week of November 23, 2026 (Decl. ¶¶ 14, 17).

g) **CONCEALMENT OF THE STAY IN THE DIVORCE COURT.** On June 11, 2026, with the stay in place, Movant tried the divorce in the Debtor's absence. The 47-page record of that trial does not contain the words "bankruptcy," "stay," "trustee" or "362," thirteen days after her lead counsel had sworn to the petition date, the Trustee and this Court's stay orders; her proposed decree went to that court the same afternoon (ECF 134 ¶ 64 at 16; ECF 138 at 3). At the September 3, 2026 hearing on the Debtor's motion for new trial, her counsel told that court he did not know the status of the automatic stay or whether it had been lifted (ECF 122 at 31 ¶ 24). On September 18, 2026 that court vacated the property division and ruled that the remaining issues will be tried "once the stay has been lifted" or this case is otherwise disposed (ECF 122 at 17). Those matters are for the hearing on ECF 110. They are noted here only to show what turns on the hearing Movant keeps putting off.

28. Exhibit B shows what the divorce court has been like. It is the Debtor's demonstrative of the certified docket in Cause No. DF-24-18010 through July 29, 2026, offered as a summary of that public record. Fed. R. Evid. 201(b), 902(4), 107. Its counts are the Debtor's classifications of the docket entries, not judicial findings (Ex. B at 2; Decl. ¶ 3). Of 267 docket events, 144 are the Debtor's filings. A filing can fall into more than one category. Among them:

- 54 are emergency or stabilization filings;
- 55 concern healthcare;
- 99 seek financial relief; and

- 106 raise due process.

Against those 144 filings the docket shows 6 court actions favorable to the Debtor and 10 denials or adverse actions (Ex. B at 2). Exhibit C goes behind those counts, filing by filing. It lists the 103 filings in which the Debtor or his counsel asked the divorce court for relief or warned it of harm, with the pleading and page for each and the order or outcome located on the county register as checked on November 21, 2026: 8 granted, 4 granted in part, 19 denied or overridden, and 60 never ruled on. The other 12 were notices and warnings that asked for no ruling, and other actions. **Not one of the 103 restored his money, his benefits or the records** (Ex. C at 1; Decl. ¶ 3). This is what they produced:

- **TWO FINDINGS OF DISCOVERY NON-COMPLIANCE.** Courts do not set compliance hearings after a motion to compel discovery when the party has fully complied. The divorce court twice found that Movant had not complied with discovery, and each time set another hearing to verify that her production was complete. On January 20, 2026, Movant told that court in writing that she "objects to any characterization suggesting that discovery remains incomplete." The third hearing on her compliance was held on February 5, 2026, eleven days after discovery had closed under the pretrial order and nineteen days before the February 24, 2026 trial setting (ECF 148 at 19 ¶ 5; Ex. C at 1). At that hearing the Debtor asked Movant to produce, from her own production, any of the documents identified in the supplemental discovery request he had sent to her then-counsel, Ethan Scroggins. She could not produce any of them (Decl. ¶¶ 15–16).

- **$0 OF COMMUNITY ASSETS EVER REACHED.** The Debtor has not received a dollar of marital assets since Movant filed the divorce (ECF 148 at 20 ¶ 10; Decl. ¶ 13).

- **$0 OF THE $20,643.56 COVERAGE PRESERVATION JUDGMENT.** The December 17, 2025 Order on Emergency Reinstatement of Healthcare found that immediate relief was necessary to prevent medical harm. Its two parts had two different purposes. The twenty-four-hour deadline protected the Debtor's surgery in 2025. Movant had twenty-four hours to reinstate his benefits and give him written proof that it was done, so that his provider could confirm coverage to the surgeon and the surgery set for December 27, 2025 could go forward while his deductible, copays and out-of-pocket maximum for the year were already met. The $20,643.56 protected his surgery in 2026. It was the safeguard if Movant delayed past year-end. A delay would cost him the December surgery and reset every deductible and copay on January 1, wiping out what he had already paid out of pocket while Movant obstructed his access to the HSA card and every other shared payment tool. The $20,643.56 was there so that she could not block the surgery twice. The order builds that amount from four months of COBRA premiums and the HSA and FSA amounts for both 2025 and 2026 (ECF 55 at 54). Movant did neither. His benefits did not work again until nearly February 2026, after the reset, and she never paid one dollar of the $20,643.56. The surgery was lost in December 2025 and blocked again in 2026. By early July 2026, weeks after the June 11

trial, he had met the 2026 deductible and out-of-pocket maximum again. His coverage was then cut off again, effective June 30, 2026. He still has not had the surgery. The order priced his coverage at $671.14 a month. Movant's total target compensation is approximately $1,500,000 a year, about $125,000 a month (ECF 55 at 53–54; ECF 122 at 4 and at 26 ¶ 8B; ECF 134 at 18; ECF 138 at 9 ¶ 13; Decl. ¶ 17).

- **$0 FROM THE HEALTH SAVINGS ACCOUNT.** Movant's own sworn inventory lists that account with "Account holder: Jason McKemie" (ECF 110 at 83). On January 6, 2026, in open court, Movant handed the Debtor a cancelled HSA card, in an envelope from the administrator so that it would appear to be a new card, and represented that she had rush-ordered it for him in full compliance with the order. A recorded call with the administrator, Inspira, confirmed what she had done. The card she handed him, ending in 5379, is "not the one associated here on the account, probably because there was a card order before." Inspira brought Movant onto the call. She told the representative to "remind him that everything requires a receipt, and it must be uploaded in your portal." The Debtor asked her for the portal address and the password. She answered, "No, I don't have a password. You got to do this on your own Jason. So I'm not doing anything," and hung up before Inspira could get the last four digits of the active card (ECF 138-1 at 59–61, 71). The card failed when the Debtor tried to fill critically needed prescriptions after repeated hospitalizations for staph infections, congestive heart failure, a torn rotator cuff and a ruptured bicep (Decl. ¶¶ 13, 17). That is performative compliance, and it is fraud upon the court.

- **MOVANT'S OWN WRITTEN DECLARATIONS OF COMPLIANCE.** They prove the Debtor's case. The order of December 17, 2025 gave Movant twenty-four hours, with written proof. Its reinstatement path required her to give the Debtor "card and/or portal access information sufficient for Respondent to use the benefits without obstruction" (ECF 55 at 53). Her notice of January 13, 2026 "confirms compliance with the Court's order." The same notice admits that on December 18, 2025, when the twenty-four hours ran out, "she had no functioning card for either herself or Respondent"; that the replacement cards were "issued and delivered to her" on December 23 and "physically received by the Petitioner when she came home from holiday travel on December 28th"; and that no card was "physically provided to Respondent" until January 6, 2026, twenty days after the order (ECF 121-1 at 125). That card was not the one on the account (ECF 138-1 at 59). The notice then sends his receipts to her: "Respondent may submit receipts for qualified medical expenses by email to Petitioner" (ECF 121-1 at 126). The administrator had already told him that for a health savings account there is "no need to submit any documents at all" (ECF 138-1 at 61). The order required access "without obstruction." A party with no functioning card for the Debtor when performance was due did not comply with a twenty-four-hour order. Movant filed an admission of non-compliance and titled it a notice of compliance.

- **MOVANT'S OWN ADMISSION THAT THE ACCOUNT WENT UNUSED ALL YEAR.** The same notice states: "The account had not been used all year in anticipation that because this was community property it would be decided at trial" (ECF 121-1 at 125). That is the Debtor's case in Movant's words. She had written the same to him on May 18, 2025: "The HSA account has not been touched. It's a qualified investment account and community property" (ECF 110 at 74). Ten days earlier he had written to her, in a demand she attaches to her own motion, "I currently have no access to prescriptions necessary for congestive heart failure and post-operative care," and demanded the card number (ECF 110 at 72–73). On July 27, 2025 he sent her counsel an email headed "HSA CARD - NEEDED URGENTLY / 26th REQUEST." It reported that the HSA statement from her own discovery production showed one purchase of $41 and none after it (ECF 71 at 14; ECF 122 at 26 ¶ 8A). That $41 prescription is the only charge he has been able to make since December 18, 2024, and the card was reported lost or stolen immediately afterward (Decl. ¶ 13). He gained about fifty-two pounds of fluid and was hospitalized with congestive heart failure (ECF 71 at 11). Of his filings in the divorce court, 55 concern his healthcare (Ex. B at 2). A man with a working card does not ask for it twenty-six times, and an account he can reach does not go a year without a charge. What her notice calls a "discovery" made in December 2025, he had been telling her and her counsel since December 18, 2024, and the divorce court in filing after filing.

- **MOVANT'S OWN STATEMENT THAT NOTHING WAS UNMET.** One week later, on January 20, 2026, Movant told the divorce court that she "is not aware of any unmet court-ordered obligation regarding healthcare coverage or HSA access" and "is committed to full compliance with all written orders of the Court" (Decl. ¶ 15). The order states what follows when the reinstatement path is not completed in twenty-four hours: "If Petitioner does not complete Option A [reinstatement], Petitioner shall proceed under this COBRA funding path" and deposit the $20,643.56 (ECF 55 at 53–54). **Her own notice shows that she did not complete it.** Reinstatement took "a matter of days," and there was no functioning card (ECF 121-1 at 125). The $20,643.56 was due on December 18, 2025. It was unpaid when she told the court that nothing was unmet. It is unpaid today, and the card she handed the Debtor had been cancelled before she gave it to him. She knew the order, and her own notice recites the facts. Her statements to the court were, once again, false.

Not a dollar has ever come to the Debtor from Movant's control of the community assets. Movant has never followed a court order entered for his protection. And his benefits have never been fully restored since October 31, 2025, when his coverage was terminated on Movant's fraudulent participant-reported divorce-based qualifying life event. No divorce had occurred (ECF 148 at 3; ECF 122 at 26 ¶ 8B).

29. The Debtor is homeless, has no vehicle, and cannot pay the witness fee and mileage required to subpoena Movant (Decl. ¶ 6). Movant's total target compensation under her Accenture contract is

approximately $1,500,000 per year (ECF 134 ¶ 75 at 18; ECF 148 ¶ 12 at 8; Decl. ¶ 12). Three law firms presently represent her across this case and the divorce, and she has retained at least six in the past two years (ECF 149-2 at 8; Decl. ¶ 19). She has also retained private security, movers, reputation-defense vendors, and agents who inventoried only the property the Debtor removed from the residence, while nothing she took from him or destroyed was inventoried (ECF 134 ¶ 49 at 12; ECF 138 at 11–12 ¶¶ 17–18; ECF 149-2 at 8; Decl. ¶ 20). Since his attorney withdrew in March 2025, the Debtor has had to represent himself, by necessity and not by choice, in the divorce in three district courts (Cause No. DF-24-18010), in this Chapter 7 case and Adversary No. 26-03034-mvl, in three eviction suits in the justice court, in the eviction appeal in the county court at law, in the Fifth Court of Appeals at Dallas, and before the U.S. Department of Labor (ECF 148 at 20 ¶ 11; Decl. ¶ 19).

Preparing for those proceedings has required the Debtor to reconstruct his evidence while homeless, without cell-phone service, and on a laptop with a broken screen. He has had to do it after the theft and destruction of his property, including the theft of the litigation hard drives he relied on to prepare his case, and with limited access to paper, ink and toner (ECF 134 ¶ 50 at 12; ECF 138 at 12 ¶ 17; Decl. ¶¶ 14, 20). He has been questioned by police again and again, with repeated Miranda warnings, on Movant's false reports against him. By his count he has had to answer eighteen of them (ECF 51 at 4; ECF 122 at 31 ¶ 25A; ECF 144 at 121). Like her financial assertions and her marital timeline, those reports fail the moment a source record is set beside them. To learn of each new allegation he has had to file repeated open-records requests and then contact the detective assigned. To answer them he kept a continuous record of his own location, with location tags on his wallet, his keys and the vehicle he then had, that vehicle's own GPS, and his phone and watch, so that when a new allegation appeared he could show the detective where he, his vehicle, his phone, his watch and his wallet were at the time alleged. That data is how he defeated some of those reports (Decl. ¶ 20).

To learn what Movant told the officers, and to obtain the evidence that answers her, he has pursued public-information requests and has contested the withholding of records through the Texas Attorney General's open-records process (Decl. ¶ 20). The April 16, 2026 writ shows the problem. The constable testified on September 3, 2026 that the identification Movant presented bore the Debtor's surname and the residence address (ECF 138 at 11 ¶ 17). She used it to represent that she lived there and that the property was hers to take (ECF 122 at 31 ¶ 26; ECF 138 at 11 ¶ 17). The body-camera recordings produced to the Debtor contain no audio of that exchange (Decl. ¶ 20). **All of this is designed to keep the Debtor unable to hire counsel and unable to litigate against Movant or to defend himself against her allegations.**

At the same time, while his access to employment was obstructed and his health benefits were cut off, the Debtor has had to seek restoration of those benefits from Accenture, and production of the record of the participant-reported divorce-based qualifying life event on which his coverage was terminated when no divorce had occurred. Accenture has refused to release that record. He pursued those requests in extensive correspondence, secured the involvement of the Employee Benefits Security Administration of the U.S. Department of Labor, and is preparing to seek relief in federal

court for breach of fiduciary duty under ERISA, 29 U.S.C. §§ 1104(a), 1132(a) (ECF 148 at 3 and at 20 ¶ 11; Decl. ¶ 14). Each missing record has cost him more time to obtain the evidence he needs to ask one material question under oath. **The disparity now bears directly on whether that examination will happen at all. Movant seeks affirmative relief from this Court with three law firms representing her. The Debtor cannot afford to subpoena the person seeking that relief. He asks for a written order requiring Movant to appear in person and testify at the evidentiary hearing on her own motion, ECF 110, so that he can examine her on the financial assertions on which she asks the Court to act.**

30. An agreement stated in an email can be withdrawn in precisely the way the last two commitments were withdrawn. That is why the Debtor asks for an order. He and his family have suffered long enough, and the relentless campaign of financial, resource, housing, transportation, healthcare and employment obstruction cannot be permitted to continue any further.

31. In the almost two years since these proceedings began on December 16, 2024, the Debtor has never been able to cross-examine Movant under oath about any of these events: not the financial ambush that preceded the filing, not the lease buyout that left him homeless and without nearly all of his property, and not the repeated cutoff of his healthcare, which caused more than $30,000 in medical bills that had been approved and paid to be clawed back and billed to him, and which ultimately drove him into this Court (Decl. ¶ 18). He asks for a written order: the stay remains in force through the evidentiary hearing at which Movant can be cross-examined in person, and through the Court's ruling on ECF 110.

# II. LAW

## A. THE STAY REMAINS IN EFFECT, AND § 362(E) IS SATISFIED ON EACH OF FOUR GROUNDS

32. In the case of an individual debtor, the stay terminates sixty days after a request for relief unless a final decision is rendered within that period or the period "is extended— (i) by agreement of all parties in interest; or (ii) by the court for such specific period of time as the court finds is required for good cause, as described in findings made by the court." 11 U.S.C. § 362(e)(2)(B). The thirty-day period that follows a preliminary hearing may likewise be extended "with the consent of the parties in interest or for a specific time which the court finds is required by compelling circumstances." 11 U.S.C. § 362(e)(1).

33. **AGREEMENT.** Movant and the Debtor, the parties to ECF 110, have agreed in writing before the Court (Ex. A-11, A-12). The Trustee received each email and has stated no opposition. Movant's words are that the stay "remains in effect." That is her agreement, and it is also her statement to the Court that the stay did not terminate on November 10. The agreement belongs in an order, because § 362(e)

operates by its own terms when no order is entered. *In re River Hills Apartments Fund*, 813 F.2d 702, 706–07 (5th Cir. 1987); *Paczkowski v. Garven (In re Paczkowski)*, No. 19-6029, slip op. at 3–4 & n.1 (B.A.P. 8th Cir. Feb. 13, 2020) (stay terminated by operation of law where the record did not reflect an extension; noting "the importance of placing any such agreement to extend the 60-day period on the record").

34. **GOOD CAUSE.** The same extension is independently required for good cause under § 362(e)(2)(B)(ii), and the cause is Movant's own. The reset is at her request, for a reason she supplied, to a date after one she chose (Ex. A-11). The period is specific: through the conclusion of the final hearing on ECF 110 and the entry of the Court's written ruling on it. The Debtor asked for this relief before the sixtieth day and again after it (¶ 2 above).

35. **WAIVER.** A movant waives the § 362(e) periods by conduct "inherently inconsistent with adherence to the time constraints" of the statute. *In re Wedgewood Realty Grp., Ltd.*, 878 F.2d 693, 698–99 (3d Cir. 1989) (collecting cases of a creditor who did not set the final hearing within the period, who agreed to a continuance beyond it, or who attended a hearing beyond it without objection, including *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982)). This Court's Local Rules apply the same principle in the setting they address: a stay movant who seeks more time for its own affidavit "waives the time periods provided by Section 362(e)." N.D. Tex. L.B.R. 4001-1(e)(4). Movant noticed her own final hearing for the sixty-eighth day (ECF 128 at 1). After the sixtieth day she asked the Court to modify the stay (ECF 143 ¶ 6 at 4), proposed three more hearing dates (Ex. A-5), asked for a fourth (Ex. A-11), and agreed in writing that the stay "remains in effect." A stay that has terminated cannot be modified. She has waived any reliance on the § 362(e) periods for ECF 110. Waiver of § 362(e)(2) is a defense the debtor must raise in the bankruptcy court. *Paczkowski*, slip op. at 3–4 (citing *Bugg v. Gray (In re Gray)*, 642 F. App'x 641, 643 (8th Cir. 2016) (per curiam)). The Debtor raises it here.

36. **SECTION 105(A).** Independently of § 362(e), the Court "retains, at the least, authority under" 11 U.S.C. § 105(a) to enjoin action against the Debtor's property. *River Hills*, 813 F.2d at 707. An order continuing a stay after a § 362(e) period has run operates as a new stay within that authority. *In re Martin Exploration Co.*, 731 F.2d 1210, 1214 (5th Cir. 1984). Movant has consented to that protection. The Debtor asks that the order rest on each ground, so that it stands on any one of them.

## B. THE COURT SHOULD ORDER MOVANT TO APPEAR AND TESTIFY

37. Testimony on a disputed material fact in a contested matter is taken in open court. Fed. R. Bankr. P. 9014(d), 9017; Fed. R. Civ. P. 43(a). The rule that will govern on January 20, 2027 says so in its own text: such testimony "must be taken in open court." Fed. R. Bankr. P. 9014(d)(1) (eff. Dec. 1, 2026). In this District a final hearing on a motion for relief from the stay is conducted "in-person with remote attendance generally not permitted," and another mode is for the Court's discretion, "particularly if all affected parties consent." General Order 2023-05 ¶ 1.b. The Debtor does not consent. The Court

has ruled. Movant's request to testify by WebEx was denied, and the final hearing is "in-person only" (Decl. ¶ 8; Ex. A-11, A-13).

38. What is missing is an order that names the witness. Movant's position is that the October 6 setting "did not order anyone to testify" (ECF 143 ¶ 2 at 2), that it "is not an order directing any particular person to take the stand" (ECF 143 ¶ 8 at 5), and that the Debtor should have used a subpoena. In the same paper she tells the Court that she "does not question the Court's authority to control the hearing" (ECF 143 ¶ 11 at 7), that she "will comply with any order it enters" (ECF 143 ¶ 2 at 2), and that she, "a Texas resident, is within the reach of a subpoena for a hearing in Dallas" (ECF 143 ¶ 10 at 6–7). The Debtor asks for that order.

39. The Court has the power to enter it:

a) Movant is the moving party. She invoked this Court's jurisdiction, she concedes that she "bears the initial burden of showing cause" (ECF 143 ¶ 7 at 4), and the facts her motion depends on are within her own knowledge. *Mooney v. Gill*, 310 B.R. 543, 547 (N.D. Tex. 2002) (movant "must, in the first instance, establish a legally sufficient basis" for relief).

b) The Court controls "the mode and order of examining witnesses and presenting evidence" so as to determine the truth. Fed. R. Evid. 611(a). A party may call an adverse party and examine her by leading questions. Fed. R. Evid. 611(c)(2). And the Court "may call a witness on its own or at a party's request." Fed. R. Evid. 614(a).

c) A court has inherent power to manage its proceedings "so as to achieve the orderly and expeditious disposition of cases," *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), and that power reaches a party's personal attendance, *In re Stone*, 986 F.2d 898, 903 (5th Cir. 1993) (inherent power to require a party to have a representative with full settlement authority present). The Court may also enter any order necessary or appropriate "to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

d) The limit the Fifth Circuit has drawn is the reach of the Court's subpoena power. *GFI Computer Indus., Inc. v. Fry*, 476 F.2d 1, 5 (5th Cir. 1973) (civil defendant living 1,500 miles away, in another country). Movant is inside it. A party may be commanded to attend a hearing anywhere "within the state where the person resides." Fed. R. Civ. P. 45(c)(1)(B)(i); Fed. R. Bankr. P. 9016. She lives in San Antonio, "approximately 275 miles from the courthouse" (ECF 142 ¶ 2 at 2).

40. The Debtor should not be made to buy the movant's attendance at the hearing on her own motion. A subpoena requires tender of the attendance fee and mileage. Fed. R. Civ. P. 45(b)(1); 28 U.S.C. § 1821. The Debtor cannot pay them, and Movant's answer is that "[i]nability to pay does not excuse the requirement" (ECF 143 ¶ 11 at 7). A party whose target compensation is approximately

$1,500,000 a year should not be heard to say that the hearing on her own motion will go forward without her because the Debtor, who has not been able to reach a dollar of community assets since December 2024, cannot tender her a witness fee. An order to the party-movant requires none. In the alternative, the Debtor asks that the Clerk issue a hearing subpoena under Fed. R. Civ. P. 45(a)(3), that Movant's counsel be directed to accept service of it by email, and that, as a term of the reset Movant requested, no fee or mileage need be tendered.

41. The decision Movant cites makes the point. In *Wells v. Rushing*, as she describes it, the Fifth Circuit found an abuse of discretion where "defense counsel had confirmed days earlier that the defendant would testify and he then did not appear" (ECF 143 ¶ 12 at 7, describing 755 F.2d 376, 380–81 (5th Cir. 1985)). Here counsel confirmed Movant's in-person availability three times and withdrew it when the Debtor relied on it.

## C. THE ORDER SHOULD STATE NOW WHAT FOLLOWS IF MOVANT DOES NOT APPEAR

42. A monetary consequence alone will not secure her appearance. Movant's target compensation is approximately $1,500,000 a year, about $125,000 a month (Decl. ¶ 12). A fine sized for an ordinary litigant is, to her, the price of not appearing. A coercive sanction is set with regard to "the character and magnitude of the harm threatened by continued contumacy," its "probable effectiveness . . . in bringing about the result desired," and the party's "financial resources." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947). The harm here is every further month the Debtor spends without a home, a vehicle, his property or his medical care while the hearing on Movant's own motion is put off.

43. The consequence that matters is to her own motion. ECF 110 is hers, she bears the initial burden on it, and her declaration is the only sworn evidence behind it. She has already told the Court that she "does not intend to offer her declaration or to testify" (ECF 143 ¶ 1 at 2) and has asked to withdraw part of her motion "without adjudication of those requests on their merits" (ECF 143 ¶ 6 at 4). She accepts that "she bears the consequences of the choice" (ECF 143 ¶ 8 at 5). The Debtor asks the Court to state those consequences in the order. They are in request F.

44. Stating them in advance is the course the Fifth Circuit prefers. A movant who does not prosecute her motion or comply with a court order is subject to dismissal on the merits. Fed. R. Civ. P. 41(b); Fed. R. Bankr. P. 7041, 9014(c); *Link*, 370 U.S. at 630–31. Before that sanction a court considers lesser ones, and "explicit warnings" are among them. *Callip v. Harris Cnty. Child Welfare Dep't*, 757 F.2d 1513, 1521 (5th Cir. 1985); *Rogers v. Kroger Co.*, 669 F.2d 317, 320–22 (5th Cir. 1982). An order entered now gives Movant two months' notice of exactly what her absence will cost. If she appears, it costs her nothing.

45. An order that names the witness also makes the consequence enforceable. A bankruptcy court enforces its own orders by civil contempt. 11 U.S.C. § 105(a); Fed. R. Bankr. P. 9020; *In re Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609, 612–13 (5th Cir. 1997). Contempt lies for the violation of an order that

is definite and specific. *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). The order the Debtor asks for is definite and specific: a named person, a date, a time, a courtroom and an act. Civil contempt serves two purposes: "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United Mine Workers*, 330 U.S. at 303–04. Request F asks for both: the Debtor's actual costs if Movant does not appear, and a coercive sanction, set against her resources, that runs until she does.

46. Movant may not withdraw her way out of the hearing. A contested request is withdrawn only by court order, "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2); Fed. R. Bankr. P. 7041, 9014(c). The terms are those that cure the prejudice to the party who prepared to meet the request. *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317–20 (5th Cir. 2002). Movant changed her relief six days before the last hearing, after the witness lists were filed (¶ 12 above). The order should fix the relief she will press and bar another change of course on the eve of the next one. The terms should also include the Debtor's actual out-of-pocket costs of the two settings that were lost. And a request that is withdrawn and then filed again may be made to wait until the costs of the first are paid. Fed. R. Civ. P. 41(d). Those terms are in requests F, G and I.

47. The order should also govern service. Twice in this case relief has been sought against the Debtor on papers that did not reach him (¶¶ 13–17 above). The order should require same-day email service of anything Movant files, with the time of service certified. It should bar any request to shorten the Debtor's time that does not show when he was actually served. Nothing should be represented to the Court as agreed by the Debtor unless his written agreement is attached (Ex. A-10, A-12). And Movant's counsel should be required to file the proof of the November 12 service he certified, or a corrected certificate. 11 U.S.C. § 105(a); Fed. R. Bankr. P. 9006(c)(1).

## D. PARITY, AND WHAT THE RECORD WILL BE IF MOVANT IS ABSENT

48. **PARITY.** Movant's witness list names the Debtor. She "intends to call the debtor . . . as an adverse witness" (ECF 136 at 1), while announcing that she will not take the stand herself. The Local Rules presume that the debtor will testify at a stay hearing. N.D. Tex. L.B.R. 4001-1(d), 9014-1(c)(2). The Debtor has no home and no vehicle, and he has told the Court he will be in the courtroom: "If he can be there, she can be there." (ECF 134 ¶ 7 at 2.) On June 11, 2026, Movant tried her case in the divorce court in the Debtor's absence and took a decree on that record (ECF 122 at 28 ¶ 15; ECF 134 ¶ 64 at 16). The Debtor asks for the same rule here. If Movant is absent, the hearing proceeds, the Debtor presents his evidence, and the Court rules.

49. **NO WITNESS, NO EVIDENCE.** If Movant is absent, her side has no witness. Her declaration is hearsay without her. Fed. R. Evid. 801(c), 802. Her counsel has no personal knowledge of what she did, saw and relied on. Fed. R. Evid. 602. A lawyer may not serve as advocate and witness in the same hearing. Tex. Disciplinary R. Prof'l Conduct 3.08. Statements of counsel are not evidence. *Skyline Corp. v. NLRB*,

613 F.2d 1328, 1337 (5th Cir. 1980); *INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984). Every fact that depends on Movant's own knowledge is unproven if she is not there to be cross-examined on it. An attorney is not a witness.

50. **JUDICIAL NOTICE DOES NOT FILL THE GAP.** Movant says she will carry her burden with court records (ECF 143 ¶ 7 at 5). Judicial notice establishes only that a filing or order exists and what it says, not that the facts stated in it are true. Fed. R. Evid. 201(b); *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829–31 (5th Cir. 1998). Movant concedes it. She asks the Court to notice "the entry and terms of those orders and filings, not the truth of disputed assertions made in them" (ECF 143 ¶ 7 at 5). Judicial notice of the existence of the filing, not the truth of its contents. The decision she cites turned on documents and facts the debtors had admitted. *Mooney*, 310 B.R. at 547–48. The facts on which ECF 110 depends are disputed (ECF 122; ECF 148).

51. **CROSS-EXAMINATION IS NOT A FORMALITY.** Where a decision turns on disputed facts, due process requires "an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). The Debtor has waited twenty-five months for that opportunity. The order he asks for secures it, or decides the motion without the testimony Movant withholds.

## III. RELIEF REQUESTED

The Debtor asks the Court to enter the proposed order submitted with this motion and to rule separately in writing, granted or denied, on each of the following requests:

A. **STAY IN EFFECT; PERIODS EXTENDED.** Order that the automatic stay remains in effect as to Movant, and that the periods under 11 U.S.C. § 362(e) are extended, through the conclusion of the final hearing on ECF 110 and the entry of the Court's written ruling on ECF 110: by agreement under § 362(e)(1) and (e)(2)(B)(i); independently, for good cause under § 362(e)(2)(B)(ii) on the finding stated in the order; and, to the extent any period ran before the order is entered, under 11 U.S.C. § 105(a).

B. **NO TERMINATION.** Find that the stay did not terminate as to Movant under § 362(e) on November 10, 2026, or at any other time, and that Movant has waived the periods under § 362(e) for ECF 110.

C. **MOVANT SHALL APPEAR IN PERSON AND TESTIFY.** Order now that the reset hearing on ECF 110, which the Court has offered for January 20, 2027 and the Debtor has accepted for 1:30 p.m. that day, is an in-person evidentiary hearing; that Movant shall appear in person and shall testify when called by the Debtor as an adverse witness or by the Court, subject to cross-examination, on ECF 110 and on any motion of the Debtor set for that day; that her testimony will not be taken by video or other remote means; and that the order requires her attendance without a subpoena

and without tender of any fee. Fed. R. Bankr. P. 9014(d); Fed. R. Evid. 611(a), 611(c)(2), 614(a); 11 U.S.C. § 105(a). In the alternative, direct the Clerk to issue a hearing subpoena to Movant under Fed. R. Civ. P. 45(a)(3), direct her counsel to accept service of it by email, and order, as a term of the reset she requested, that no fee or mileage need be tendered.

D. **NO FURTHER CONTINUANCE.** Order now that the hearing shall not be continued again at Movant's request except on a motion filed and served at least fourteen days before the hearing and supported by the sworn declaration of a treating physician who is made available for cross-examination; and that any continuance granted at Movant's request extends the stay and the § 362(e) periods through the continued hearing and the Court's ruling, and is conditioned on her payment of the Debtor's actual out-of-pocket costs caused by it.

E. **ACKNOWLEDGMENT.** Order Movant to file, within seven days after entry of the order, a statement signed by her that she has received the order and will appear in person at the hearing.

F. **CONSEQUENCES IF MOVANT DOES NOT APPEAR.** State in the order what will follow if Movant does not appear in person and testify at the reset hearing. The Debtor does not ask the Court to decide ECF 110 now. He asks the Court to order that, if Movant does not appear in person and testify on the hearing date:

1) her declaration filed with ECF 110 shall not be considered, and no declaration, affidavit or other statement of hers shall be received in evidence;

2) ECF 110 shall be denied with prejudice for want of prosecution and for failure to comply with the order; no part of it may be withdrawn without prejudice; and it shall not be filed again, in whole or in part, without leave of Court and payment of the amounts awarded under the order (Fed. R. Civ. P. 41(b), (d); Fed. R. Bankr. P. 7041, 9014(c));

3) the hearing shall proceed in her absence on ECF 110 and on each motion of the Debtor set for that day. Movant's counsel may appear and argue. Statements of counsel are not evidence, and counsel shall not testify. No document shall be received through Movant's declaration. The Debtor may present his evidence, and the Court will make findings and rule on the record made;

4) Movant shall pay the Debtor his actual out-of-pocket costs of preparing for and attending the hearing, within seven days after he files a sworn statement of them;

5) Movant shall appear in person, on a date stated in the order, and show cause why she should not be held in civil contempt of the order (11 U.S.C. § 105(a); Fed. R. Bankr. P. 9020);

6) on a finding of contempt, the Court will award the Debtor compensation for the losses her non-appearance caused him and will impose a coercive sanction that runs until she

appears in person as ordered, in an amount the Court sets with regard to Movant's financial resources, her conduct, and the character and magnitude of the harm her continued non-appearance does to the Debtor, including what he needs to stabilize and rebuild (*United Mine Workers*, 330 U.S. at 303–04); and

7) the Court will impose any other consequence it finds necessary and appropriate for the continued procedural delay that prolongs the deprivation imposed on the Debtor.

G. **RELIEF FIXED.** Order Movant to file and serve, within fourteen days after entry of the order, a statement identifying each form of relief under ECF 110 that she will press at the hearing; order that no request in ECF 110 is withdrawn except by order of the Court on terms under Fed. R. Civ. P. 41(a)(2); and deny with prejudice any request she does not identify.

H. **SERVICE, AND PROOF OF THE NOVEMBER 12 SERVICE.** Order that every paper Movant files in this case be served on the Debtor by email at jmckemie@mckemie.net on the day it is filed, with the time of service stated in the certificate; that no request to shorten the Debtor's time to respond be considered unless it states the date and time he was served; that nothing be represented to the Court as agreed by the Debtor unless his written agreement is attached; and that Movant's counsel file, within seven days after entry of the order, the email and the proof of mailing by which ECF 141, 142 and 143 were served on the Debtor on November 12, 2026, as counsel certified, or a corrected certificate of service for each.

I. **COSTS OF THE TWO LOST SETTINGS.** Order Movant, as a term of the reset she requested and of any withdrawal of her requests, to pay the Debtor his actual out-of-pocket costs caused by the loss of the November 18 and December 8, 2026 settings and by the failure to serve ECF 141, 142 and 143 on him on November 12, 2026, within seven days after he files a sworn statement of those costs. 11 U.S.C. § 105(a); Fed. R. Civ. P. 41(a)(2).

J. **THE DEBTOR'S MOTIONS THAT REQUIRE MOVANT'S TESTIMONY.** Order that each motion of the Debtor that requires Movant's testimony in person, including his motions for the return of his property and for Movant's violations of the automatic stay, be heard after January 11, 2027 and before ECF 110; that if any is set on January 20, 2027 it be heard first, with a full day reserved; and that Movant shall appear in person and testify on each when called (Ex. A-12).

K. **NO FEES, COSTS OR SANCTIONS AGAINST THE DEBTOR; CLAIMS PRESERVED.** Award no fees, costs or sanctions against the Debtor. Order that nothing in the order decides or releases the Debtor's claims for actual and punitive damages under 11 U.S.C. § 362(k)(1), his claims for the return of his property or its value under 11 U.S.C. § 542(a), his objections to ECF 110 and ECF 143, or his request for sanctions concerning the statements of Movant's counsel. All are preserved. His requests for damages, for the return of his property and for those sanctions are made by separate motion.

L. **STAY NOT SHORTENED.** Order that the order does not shorten the stay; that after the Court rules on ECF 110 the stay continues as to Movant under 11 U.S.C. § 362(c) to the extent the Court does not grant relief from it, without further motion by the Debtor; and that Movant shall take no act stayed by § 362(a), in Cause No. DF-24-18010 or elsewhere, without a prior written order of this Court.

M. **RULINGS.** Enter requests A and B now, on the parties' written agreement. Rule on requests C through L on the papers, or at the Court's first available regular setting, in time for the order to operate before January 20, 2027. If the Court reserves any request, state the date on which it will be decided.

The Debtor asks for all other relief to which he is entitled.

Respectfully submitted,

**Jason Emory McKemie**
Debtor, Pro Se (Not by Choice)
539 W. Commerce St., #2010, Dallas, TX 75208
(214) 519-8958 | jmckemie@mckemie.net

Dated: November 24, 2026

# CERTIFICATE OF SERVICE

I certify that on November 24, 2026, a true copy of this Motion, the Declaration, Exhibits A, B and C, and the proposed order was served by email on counsel of record for Movant, Gwendolyn Laura Ulijasz, in this bankruptcy case, including:

- Jonathan D. Steele (jsteele@beermannlaw.com), Beermann LLP (Chicago)
- Sara Boucher (saboucher@beermannlaw.com), Beermann LLP (Chicago)
- Rosa Gutierrez (rgutierrez@beermannlaw.com), Beermann LLP (Chicago)
- Richard G. Dafoe (rdafoe@wslawpc.com), Waddell Serafino Geary Rechner Jenevein, P.C. (Dallas)
- Rebecca L. Armstrong (rebecca@armstronglawtexas.com), Armstrong Divorce & Family Law, PLLC (Dallas)
- Lauren Shaw (lauren@armstronglawtexas.com), Armstrong Divorce & Family Law, PLLC (Dallas)
- Terra Aguirre (terra@armstronglawtexas.com), Armstrong Divorce & Family Law, PLLC (Dallas)

and on:

- Areya Holder Aurzada, Chapter 7 Trustee (areya@holderlawpc.com)
- Office of the United States Trustee (ustpregion06.da.ecf@usdoj.gov)

On the same date a copy was emailed to the courtroom deputy (mvl_settings@txnb.uscourts.gov), and the ink-signed original was sent by overnight delivery to the Clerk, United States Bankruptcy Court, Northern District of Texas, 1100 Commerce Street, Room 1254, Dallas, Texas 75242.

Jason McKemie

**Jason Emory McKemie**