FILED
NOV 25 2026
CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br>**JASON EMORY McKEMIE,**<br>Debtor. | Case No. 26-30161-mvl7<br>Chapter 7 |

## DEBTOR'S MOTION FOR TURNOVER OF $20,643.56 AND FOR SANCTIONS

**EXPEDITED HEARING REQUESTED. The Debtor asks that this Motion be heard the week of November 30, 2026, and no later than December 8, 2026 at 1:30 p.m., when his Rule 2004 motion (ECF 97) is set. His Motion for Expedited Hearing is filed with this Motion. A response is required. N.D. Tex. L.B.R. 9014-1(a).**

TO THE HONORABLE MICHELLE V. LARSON, UNITED STATES BANKRUPTCY JUDGE:

Since she left the marriage, Gwendolyn Laura Ulijasz has pursued one purpose: to burn the Debtor's cash, cut off his income and his healthcare, burden him with the marital estate's costs, and keep him from hiring competent counsel. This Motion is about the healthcare, and about one sum of money.

On December 17, 2025, twenty-six days before the petition, a Texas court found that "immediate relief is necessary to prevent medical harm" and ordered Ms. Ulijasz to restore the Debtor's health coverage and his access to the health savings and flexible spending accounts within twenty-four hours, or to deposit $20,643.56. She did neither. Eleven months later the Debtor still has no working HSA card and no way to reach the FSA, and the Plan has put in writing that only she can give him either. The Debtor's right to that money existed on January 12, 2026. It is property of this estate. It is matured. Section 542(b) says the person who owes it "shall pay." The Debtor has claimed it exempt, and it is the money that pays for his medical care. He asks the Court to order it paid.

### RELIEF REQUESTED

1. The Debtor asks the Court to order Ms. Ulijasz to pay $20,643.56 to the Chapter 7 Trustee within three business days; to direct the Trustee to pay that sum to the Debtor as exempt property; to set a fine of $4,100 for each day the sum goes unpaid after the deadline; and to award the Debtor his costs.

### I. THE PATTERN

2. The December 17, 2025 order was not an isolated event. For two years Ms. Ulijasz has used her control of her employer's plan, the health savings account (HSA) and the flexible spending account (FSA) to keep the Debtor from medical care. Each entry below comes from her own words, her own filings, the Plan's records, or the Debtor's sworn declaration.

| Date | What Ms. Ulijasz did | Proof |
|---|---|---|
| Dec. 17–18, 2024 | Demanded receipts the Debtor had already given her, then announced that the HSA card was suspended for lack of receipts. His spinal procedure was six days away. | "They suspended the card already because I have not received receipts from you in a timely manner." "I cannot in good conscience give you money[,] even for medical care." "I am not open to discussion about putting you on COBRA until you can accomplish the above. … Do the needful." Ex. B at 1–3. The HSA administrator: "no need to submit any documents at all." Ex. G at 3. |
| Jan. 20, 2025 | Told the Debtor's lawyer that he would have no health insurance at all. | "No health insurance of any kind is on the table for discussion as Jason has not demonstrated responsible and ethical actions required to have health insurance." McKemie Decl. ¶ 6. |
| July 2025 | After the Debtor was hospitalized five days for a staph infection, the HSA card on her account worked for one $41 pharmacy charge. By the next morning it had been reported lost or stolen. He could not fill the antibiotics, and the infection kept returning for eight months. On July 27, 2025 he sent her lawyers his twenty-sixth written request for the card, with photographs of the infection. | McKemie Decl. ¶ 7. The account is controlled by her alone. Ex. F at 1. The photographs and the request: Ex. H. |
| Oct. 31, 2025 (hearing) | Testified under oath in the divorce court that she had not changed, limited or restricted the Debtor's healthcare and would not. The HSA card had been cut off since December 18, 2024, and his coverage was terminated effective that same day on her report of a divorce. Perjury. Tex. Penal Code §§ 37.02, 37.03. | McKemie Decl. ¶ 8. Ex. B at 1–3. Ex. E. Ex. F at 1. |
| Oct. 31, 2025 | Reported a divorce to the Plan as a qualifying life event. No divorce had occurred. The report terminated the Debtor's coverage eight weeks before his scheduled surgery. A knowingly false statement to a health plan in connection with health care benefits is a federal offense. 18 U.S.C. § 1035(a)(2). It is a federal crime for any person to use fraud to restrain a plan beneficiary for the purpose of interfering with his rights under the plan: a $100,000 fine, ten years in prison, or both. 29 U.S.C. § 1141. | COBRA notice: coverage "ends on 10/31/2025 due to the following qualifying event: Divorce." Ex. E. Accenture: coverage "was dropped due to a participant-reported life event"; the Debtor was "still an eligible dependent." Ex. F at 1. Ms. Ulijasz is the participant. |
| Oct. 31, 2025 to today | Has never produced what she submitted to the Plan to report the divorce. In this Court she asked that the Debtor's requests for the Plan's records of it be struck. | McKemie Decl. ¶ 13. She asks for an order that "strikes the requests directed to the group health plan and to dependent-eligibility events." ECF 111 at 17. |

| Date | What Ms. Ulijasz did | Proof |
|---|---|---|
| Dec. 17–19, 2025 | Ordered to restore coverage and HSA and FSA access within 24 hours or deposit $20,643.56. Did neither. Two days later filed a "Notice of Impossibility of Compliance." | Ex. A at 1–2. She "did not willfully not comply." Ex. C at 1. |
| Jan. 6–8, 2026 | Handed the Debtor an HSA card in open court. Two days later the administrator told him it was not the card on the account. Bridged onto the call, she refused to give the login and hung up. | "[T]hat's not the one associated here on the account." Ex. G at 1. "No, I don't have a password. You got to do this on your own Jason. So I'm not doing anything." Ex. G at 2. |
| Jan. 13, 2026 | Filed a "Notice of Compliance" in the state court. It was false. By its own terms reinstatement took "a matter of days" and no card reached the Debtor until January 6, twenty days after the order. It does not mention the FSA or the $20,643.56. | Ex. D at 1–2. |
| June 26, 2026 (after the petition) | The day the state-court decree was signed, and without relief from the stay, removed the Debtor from coverage, cancelled the HSA card and changed her beneficiary designations. Coverage ended June 30. The Plan restored it only after the state court vacated the decree's property division. | ECF 110 at 33 ¶ 13; ECF 121-1 at 92 ¶ 5; Ex. F at 2. |
| Nov. 12 and 17, 2026 | Still holds the only key to the HSA card and the FSA. The health care FSA is part of the Accenture US Group Health Plan, an employee welfare benefit plan under ERISA, and the Debtor is a covered dependent spouse and a beneficiary under it. 29 U.S.C. § 1002(1), (8). The Plan's written position is that a card for the Debtor is her decision alone, and that what he pays for his own care is reimbursable only to her. | "Ms. Ulijasz is able to seek reimbursement under the healthcare FSA for eligible expenses incurred by you …." "[Y]our ability to seek reimbursement of expenses under the FSA can only be secured through the accountholder." Ex. F at 2–3. "[T]he decision to provide that access is at the accountholder's discretion." Ex. F at 4. McKemie Decl. ¶ 11. |



*The Debtor's foot and neck during the staph infection, July 2025, from the image he sent Ms. Ulijasz's lawyers on July 27, 2025. Ex. H at 1; McKemie Decl. ¶¶ 2, 7.*

3. Three times she blocked the same surgery. The Debtor needs surgery for a torn rotator cuff and a ruptured biceps. It was set for December 27, 2025. The October 31 termination took the coverage. The December 17 order was entered to save the date. She let the twenty-four hours pass, and on January 1, 2026 the deductible and out-of-pocket maximum the Debtor had met for 2025 started over. By early July 2026 he had met them again for 2026. On her June 26 change the Plan ended his coverage effective June 30. He has not had the surgery. McKemie Decl. ¶¶ 9–10.

4. **He still has no working card.** To use the benefits the Plan says he has, the Debtor needs an active HSA card and access to the FSA. The same card and login serve both accounts. McKemie Decl. ¶ 11. He has not had a working card since December 18, 2024, except for one $41 charge. *Id.* ¶¶ 3, 7. The Plan will not issue him one: the accounts "are controlled by employees, and we do not have the ability or authority to issue HSA cards, PIN numbers or give access to websites to anyone other than employees." Ex. F at 1. On November 17, 2026 the Plan answered his written questions. Whether he gets a card is "at the accountholder's discretion." What he pays for his own care can be reimbursed only to her, unless it is paid directly to the provider or at the point of sale, and payment at the point of sale takes the card. He has no "independent rights" to the FSA. Ex. F at 4. The accountholder is the person who reported a divorce that had not occurred.

5. **ERISA names this conduct.** The FSA is a benefit under an employee welfare benefit plan, and the Debtor is a beneficiary. 29 U.S.C. § 1002(1), (8). It is unlawful for "any person" to use fraud to restrain a beneficiary "for the purpose of interfering with or preventing the exercise of any right to which he is or may become entitled under the plan." 29 U.S.C. § 1141. A willful violation is punished by a fine of $100,000, imprisonment for up to ten years, or both. *Id.* It is also unlawful for "any person" to "discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. "Person" includes an individual. 29 U.S.C. § 1002(9). Ms. Ulijasz announced that the HSA card was suspended because the Debtor had not sent her receipts. Ex. B at 1–3. She told his lawyer he would have no health insurance because he had "not demonstrated responsible and ethical actions required to have health insurance." McKemie Decl. ¶ 6. She reported a divorce that had not occurred, and the report ended his coverage. Ex. E; Ex. F at 1. She handed him a card in open court that was not the card on the account, and then told the state court she had complied. Ex. G at 1; Ex. D at 1. That is coercive interference, 29 U.S.C. § 1141, and interference with protected rights, 29 U.S.C. § 1140.

## II. THE DEBT

6. **The order.** The Associate Judge of the 302nd Judicial District Court of Dallas County, Texas signed the Order on Emergency Reinstatement of Healthcare on December 17, 2025, in Cause No. DF-24-18010. Ex. A. Ms. Ulijasz did not appear, and the court took a default. *Id.* at 1. Section I gave her twenty-four hours to "complete one of the following two compliance paths and provide Respondent written proof of completion." Option A: reinstate the Debtor's dependent coverage, with written proof including member ID and pharmacy information, and give him information sufficient to access and use the HSA and the FSA. Option B: "If Petitioner does not complete Option A," deposit $671.14 by 6:00 p.m. that day and, within twenty-four hours, the balance, "so that the total deposit equals $20,643.56 into joint account ending XX6893 ('Coverage Preservation Judgment')." *Id.* at 1–2. Section III states what the sum is: $2,684.56 for four months of COBRA premiums, and $17,959.00 to replace the HSA and FSA funds for 2025 and 2026. *Id.* at 2.

7. **She did not perform Option A.** Her own filings say so. Two days after the order she filed an "Emergency Motion to Stay and Clarify Temporary Orders, Notice of Impossibility of Compliance," stating that she "did not willfully not comply." Ex. C at 1. On January 13, 2026 she told the state court that reinstatement "was complete in a matter of days thereafter," that she requested replacement HSA cards on December 18, received them on December 28, and gave one to the Debtor "in the presence of the Court on January 6, 2026." Ex. D at 1. Twenty days is not twenty-four hours. And the card was not a working card. On January 8, 2026 the HSA administrator told the Debtor that the card she had handed him was "not the one associated here on the account." Ex. G at 1, 4. The administrator bridged her onto the call. She said, "No, I don't have a password. You got to do this on your own Jason. So I'm not doing anything," and hung up. Ex. G at 2. The FSA access the order required was never given. Eleven months later the Plan's answer is still that the Debtor's reimbursement "can only be secured through the accountholder." Ex. F at 3.

8. **She did not perform Option B.** No part of the $20,643.56 has been paid. McKemie Decl. ¶ 4. On the petition date the account the order named held negative $88. ECF 91 at 2 (asset 11).

9. **A card delivered now is not Option A.** Option A had to be completed within twenty-four hours, with written proof. Ex. A at 1. When it was not, the order required the deposit, and Section III fixed $17,959.00 of it to replace the HSA and FSA funds for 2025 and 2026. *Id.* at 2. The Debtor asks for the sum the order fixed. A card, a login or a promise delivered now does not perform Option A and does not pay the debt. The card on her account stopped working the morning after its first charge in July 2025, and the card she handed him in open court on January 6, 2026 was not the card on the account. McKemie Decl. ¶ 7; Ex. G at 1. The Plan has confirmed that every route to these accounts runs through her. Ex. F at 1, 4. Money paid to the Trustee does not.

10. **The order is in force.** A temporary order rendered and signed by an associate judge "constitutes an order of the referring court." Tex. Fam. Code § 201.007(a)(14)(C), (c). No order has stayed, modified or vacated it. McKemie Decl. ¶ 5. No final judgment supersedes it. On September 18, 2026 the state court vacated every provision of the June 26, 2026 decree that divided property or allocated debt, and ordered that the remaining issues be tried "once the stay has been lifted or Respondent's bankruptcy case is otherwise disposed." ECF 121 at 3. Ms. Ulijasz told that court herself: "What the Ruling did ... was eliminate the final judgment." ECF 121-1 at 93 ¶ 10. The provisions it vacated include Section 14, which denied "any other pleading or request for affirmative relief filed by Respondent," and Section 15, which declared the decree "a final judgment" and denied "[a]ll relief requested in this case and not expressly granted in this Decree." ECF 110 at 44; ECF 121-1 at 2. No section that remains mentions the December 17, 2025 order.

11. **The struck provisions are not at issue.** The Associate Judge struck the penalty and automatic-judgment sections of the order (Sections V and VI), initialed the strikes, and signed the order with Section I and Section III intact. The debt arises under those two sections, and this Motion relies on nothing else.

## III. THE DEBT IS PROPERTY OF THE ESTATE, AND SECTION 542(b) REQUIRES PAYMENT

12. The estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). That reach is broad and takes in intangible rights and claims. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05 & n.9 (1983). State law defines the interest. *Butner v. United States*, 440 U.S. 48, 55 (1979). Under Texas law the Debtor held, from December 18, 2025, a court-

ordered right to $20,643.56. He held it on January 12, 2026. He identified it to this Court as an asset of the estate on October 1, 2026. ECF 121 at 9 ¶ 19.

13. The account the order named is itself listed by the Trustee as an asset of this estate, ECF 91 at 2 (asset 11), and Ms. Ulijasz swears it is "our joint Chase household account." ECF 110 at 30 ¶ 10. Community property under the spouses' joint management is property of the estate. 11 U.S.C. § 541(a)(2)(A). Had she obeyed the order, the money would have been in that account on the petition date.

14. An entity that owes a debt that is property of the estate and that is matured "shall pay such debt to, or on the order of, the trustee." 11 U.S.C. § 542(b). The debt matured on December 18, 2025. Ms. Ulijasz has known of this case since February 18, 2026. ECF 110, Ulijasz Decl. ¶ 4. She has paid nothing. Section 542 is the Code's turnover provision. *See City of Chicago v. Fulton*, 592 U.S. 154 (2021). Payment now runs to the Trustee, not to an account on which Ms. Ulijasz can draw.

15. Ms. Ulijasz brought the question of what belongs to this estate to this Court herself. ECF 110 at 25. Her present position is that any state-court division is "subject to the rights of the Chapter 7 Trustee and to this Court's determination of the estate's interest in any property." ECF 143 at 4 ¶ 7. The Debtor asks for that determination as to one asset.

16. The Court has jurisdiction under 28 U.S.C. § 1334(b) and (e)(1). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (B), (E), (O). It is a contested matter under Fed. R. Bankr. P. 9014. The facts are a signed order and Ms. Ulijasz's own filings. The Court may direct that any Part VII rule it finds useful applies. Fed. R. Bankr. P. 9014(c)(1).

## IV. THE MONEY IS EXEMPT AND IS OWED FOR THE DEBTOR'S CARE

17. With this Motion the Debtor files amended Schedules A/B and C. They list the Coverage Preservation Judgment and claim it exempt. Fed. R. Bankr. P. 1009(a). A temporary order that requires one spouse to fund the other's health coverage and medical expenses while the divorce is pending is an order "requiring payments to be made for the support of either spouse." Tex. Fam. Code § 6.502(a)(2). Texas exempts, without dollar limit, "alimony, support, or separate maintenance received or to be received by the debtor for the support of the debtor." Tex. Prop. Code § 42.001(b)(3); 11 U.S.C. § 522(b)(3)(A).

18. Property claimed as exempt is exempt unless a party in interest objects. 11 U.S.C. § 522(l); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992). An exemption is an interest "withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Owen v. Owen*, 500 U.S. 305, 308 (1991). No creditor is entitled to this money. The Trustee should receive it under § 542(b) and pay it to the Debtor.

19. The money has a stated purpose: COBRA premiums, and the HSA and FSA funds that pay for the Debtor's prescriptions, treatment and surgery. Ex. A at 2. The state court ordered it paid within twenty-four hours "to prevent medical harm." *Id.* at 1. The harm has occurred and it continues. McKemie Decl. ¶¶ 7, 9–11.

## V. SANCTIONS

20. Ms. Ulijasz has defied the December 17, 2025 order for eleven months and § 542(b) for nine. Section IV of the order, which the Associate Judge left intact, forbids her to "interfere with, restrict, disable, or

obstruct Respondent's access to healthcare coverage, prescriptions, or medical care pending further order of the Court." Ex. A at 2. With that order in force she handed the Debtor a card that was not the card on the account and, bridged onto his call with the administrator, refused to give the login, Ex. G at 1–2, and she filed a Notice of Compliance that was false, Ex. D. After the petition and without relief from the stay she removed the Debtor from coverage, cancelled "the card he held on my health savings account," and changed her beneficiary designations. ECF 110 at 33 ¶ 13. Those post-petition acts are already before the Court. ECF 121; ECF 138. There is no final judgment, the order governs today, and she has not paid.

21. The Court has civil contempt power under 11 U.S.C. § 105(a). *Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997). The Debtor asks for a coercive fine of $4,100 per day, payable to him, for each day the $20,643.56 remains unpaid after the deadline in the Court's order. A court setting a coercive fine considers the financial resources of the person it must move. *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947). Ms. Ulijasz's total target compensation under her Accenture offer is approximately $1.5 million a year, about $4,100 a day. ECF 138 at 13 (PX-9). The Court set $100 a day for the Debtor. ECF 103 at 2. That figure against her pay would coerce nothing. He also asks for his costs of this Motion, and that the order be enforceable by execution. Fed. R. Bankr. P. 7069, 9014(c)(1).

## VI. REQUESTS FOR RULING

22. The Debtor requests that the Court rule on each of the following separately and in writing, granted or denied:

(a) Ms. Ulijasz did not perform Option A or Option B of Section I of the December 17, 2025 order, and owes $20,643.56 under Sections I and III of that order.

(b) Ms. Ulijasz has not at any time given the Debtor information sufficient to access and use the HSA and the FSA. No card, login or other act after December 18, 2025 performs Option A or reduces the $20,643.56.

(c) The Debtor's right to that sum is property of the estate under 11 U.S.C. § 541(a)(1).

(d) Ms. Ulijasz shall pay $20,643.56 to the Chapter 7 Trustee by cashier's check or wire transfer within three business days after entry of the order, and shall file proof of payment within one business day after paying.

(e) The Trustee shall file a notice of receipt within two business days after receiving the funds, and shall pay them to the Debtor within two business days after the time to object to the Debtor's amended Schedule C expires with no objection pending.

(f) If Ms. Ulijasz does not pay by the deadline, she shall pay the Debtor $4,100 for each day after the deadline until the $20,643.56 is paid in full.

(g) Ms. Ulijasz shall pay the Debtor's costs of this Motion, as stated in a declaration the Debtor will file within seven days after entry of the order.

(h) The order is a money judgment enforceable by execution under Fed. R. Bankr. P. 7069.

(i) Nothing in the order releases, limits or decides any other claim, right or remedy of the Debtor against Ms. Ulijasz or any other person.

## VII. RESERVATION OF RIGHTS

23. This Motion asks for one sum under one order. That sum does not measure the harm. The Debtor has not had the surgery the order was entered to save, an infection kept returning for more than eight months because he could not fill the antibiotics, and he still cannot reach the HSA or the FSA. McKemie Decl. ¶¶ 7, 9–11. He will file supplemental papers on what the loss of care has done to him.

24. Nothing in this Motion waives, releases, limits or elects any claim, right or remedy. The Debtor reserves all of them, including:

(a) damages, contempt, sanctions, fees and costs against Ms. Ulijasz for every act described in Part I, including damages under 11 U.S.C. § 362(k) for the acts after the petition and relief under 29 U.S.C. §§ 1132(a)(3) and 1140;

(b) sanctions and damages against her counsel, past and present, including Sullivan & Cook, Beermann LLP, Armstrong Divorce & Family Law, PLLC, and every other lawyer who has appeared for her;

(c) every claim against Accenture, its employee benefit plans, the plan administrator, the plans' fiduciaries and their vendors, including Businessolver and Inspira Financial, for benefits, equitable relief, breach of fiduciary duty and statutory penalties that accrue by the day, including for the Plan's written refusal on November 12 and 17, 2026 to give the Debtor any way to claim FSA benefits except through Ms. Ulijasz, 29 U.S.C. §§ 1104(a)(1), 1132(a), (c), 1133;

(d) full restoration of every benefit terminated on the October 31, 2025 report, including the health care FSA and the dependent life, accidental death and dismemberment and critical illness coverage; an active HSA card in his own name; the right to claim FSA benefits and be paid directly; and an order that his access to plan benefits not depend on Ms. Ulijasz;

(e) the right to ask this Court, the United States Attorney and state prosecutors to act on the crimes named in this Motion, 18 U.S.C. § 1035, 29 U.S.C. § 1141 and Tex. Penal Code §§ 37.02 and 37.03;

(f) his complaint before the U.S. Department of Labor, Employee Benefits Security Administration, File No. 20263018882, in which he has asked the agency to compel the Plan's records of the October 31, 2025 report;

(g) his counterclaims in Cause No. DF-24-18010 and a separate civil action for damages;

(h) every other provision of the December 17, 2025 order; and

(i) the right to supplement and amend this Motion.

## VIII. EXPEDITED HEARING

25. The Debtor requests an expedited hearing: the week of November 30, 2026, and no later than December 8, 2026 at 1:30 p.m., when his Rule 2004 motion (ECF 97) is set. A written motion and notice of hearing must be served seven days before the hearing, and the Court may shorten any period for cause. Fed. R. Bankr. P. 9006(c)(1), (d)(1). The Debtor has met his 2026 deductible and out-of-pocket maximum, and they start over on January 1, 2027. McKemie Decl. ¶ 10. The grounds are stated in his Motion for Expedited Hearing, filed with this Motion.

Respectfully submitted,

_______________________________

Jason Emory McKemie
Debtor, pro se
539 W. Commerce St., #2010, Dallas, TX 75208
(214) 519-8958 | jmckemie@mckemie.net

**CERTIFICATE OF CONFERENCE**

No conference was held before filing. Ms. Ulijasz's stated position is that she complied with the December 17, 2025 order. Ex. D. The Debtor has demanded performance of that order in the state court and in this case since December 2025. ECF 121 at 9 ¶ 19; ECF 122 at 26 ¶ 9. The Motion is opposed.

_______________________________

Jason Emory McKemie

**CERTIFICATE OF SERVICE**

I certify that on November 24, 2026 I served this Motion, with the Declaration, Exhibits A through H and the proposed order, by email on Jonathan D. Steele (jsteele@beermannlaw.com), Beermann LLP; Richard G. Dafoe (rdafoe@wslawpc.com), Waddell Serafino Geary Rechner Jenevein, P.C.; Rebecca L. Armstrong (rebecca@armstronglawtexas.com) and Lauren Shaw (lauren@armstronglawtexas.com), Armstrong Divorce & Family Law, PLLC; Areya Holder Aurzada, Chapter 7 Trustee (areya@holderlawpc.com; trustee@holderlawpc.com); and the Office of the United States Trustee (ustpregion06.da.ecf@usdoj.gov), with a copy to the courtroom deputy (mvl_settings@txnb.uscourts.gov). The ink-signed original was sent to the Clerk by overnight delivery on November 24, 2026.

_______________________________

Jason Emory McKemie