NO. **DF-24-18010** **NOTICE: FILING CONTAINS SENSITIVE INFORMATION**

| | | |
|---|---|---|
| **IN THE MATTER OF THE MARRIAGE OF** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| **GWENDOLYN ULIJASZ** | § | **302ND JUDICIAL DISTRICT** |
| **&** | § | |
| **JASON MCKEMIE** | § | **DALLAS COUNTY, TEXAS** |

Associate Judge's Ruling

~~(PROPOSED)~~ ORDER ON EMERGENCY

# REINSTATEMENT OF HEALTHCARE

On this day, the Court considered **Jason McKemie's** (Respondent's) **Emergency Motion** regarding reinstatement of healthcare coverage. The Court finds Immediate relief is necessary to prevent medical harm.

~~Respondent~~ Pet (Gwendolyn McKemie) did not appear & the court took a default. The Court signed the proposed order as presented.

**IT IS ORDERED:**

**I. COMPLIANCE PATH (PETITIONER MUST CHOOSE AND COMPLETE ONE PATH)**

1. Within twenty-four (24) hours of the signing of this Order, Petitioner shall complete one of the following two compliance paths and provide Respondent written proof of completion (email is sufficient).

**OPTION A — EMPLOYER REINSTATEMENT**

A. Petitioner shall reinstate Respondent's dependent healthcare coverage through Petitioner's employer-sponsored plan and provide written proof that coverage is active, including the information necessary to fill prescriptions (member ID/policy number and pharmacy benefit information).

B. Petitioner shall provide Respondent information sufficient to access and use the HSA and FSA associated with the plan (card and/or portal access information sufficient for Respondent to use the benefits without obstruction).

**OPTION B — COBRA FUNDING PATH (RESPONDENT ELECTS COBRA AFTER FUNDING)**

A. If Petitioner does not complete Option A, Petitioner shall proceed under this COBRA funding path by doing both:

   1. By 6:00 PM on the same day this Order is signed, deposit $671.14 into joint account ending XX6893 (COBRA activation amount: Medical $609.23 + Dental $55.32 + Vision $6.59), and

2. Within (24) hours of the signing of this Order, deposit the remaining balance so that the total deposit equals $20,643.56 into joint account ending XX6893 ("Coverage Preservation Judgment").

B. Petitioner shall provide written notice (email is sufficient) within the same twenty-four (24) hours stating Petitioner is proceeding under Option B.

C. After the required funds are deposited under Option B, Respondent is authorized to elect and activate COBRA continuation coverage immediately to preserve medical access.

**II. NO WAIVER**

A. Any COBRA election by Respondent is solely to preserve medical access and shall not be construed as an acknowledgment that any qualifying life event occurred, a concession regarding the propriety of any benefit termination, or a waiver of any rights, claims, or defenses relating to Respondent's healthcare coverage.

**III. COVERAGE PRESERVATION JUDGMENT DEFINITION ($20,643.56)**

A. The **$20,643.56** Coverage Preservation Judgment is comprised of:

1. COBRA premiums (four months): $2,684.56 (Medical $609.23 + Dental $55.32 + Vision $6.59, multiplied by four months), and

2. HSA/FSA replacement amounts totaling $17,959.00 (2025 HSA $5,959.00; 2026 HSA $6,000.00; 2025 FSA $3,000.00; 2026 FSA $3,000.00).

**IV. NON-INTERFERENCE**

A. Petitioner shall not interfere with, restrict, disable, or obstruct Respondent's access to healthcare coverage, prescriptions, or medical care pending further order of the Court.

**V. ENFORCEMENT AND PAYMENT DEADLINES**

A. Failure to timely complete Option A or Option B (including written proof and/or required deposits) constitutes noncompliance.

B. **Coverage Preservation Judgment + $1,000/day.** If Petitioner fails to comply with Paragraph 1 within 24 hours, an automatic judgment shall enter in favor of Respondent in the amount of $20,643.56, and Petitioner shall deposit $20,643.56 into joint account ending XX6893 within twenty-four (24) hours of the noncompliance trigger. If not deposited on time, a coercive fine of $1,000 per day shall accrue until paid in full.

C. **Compliance Judgment (two weeks total gross compensation) + $1,000/day.** If Petitioner fails to comply with Paragraph 1 within 24 hours, an additional automatic judgment shall enter in

favor of Respondent in an amount equivalent to two (2) weeks of Petitioner's total gross compensation, including base salary, bonuses, cash incentives, equity compensation, deferred compensation, and employer-provided remuneration of any kind. Petitioner shall deposit that amount into joint account ending XX6893 within seventy-two (72) hours of the noncompliance trigger. If not deposited on time, a coercive fine of $1,000 per day shall accrue until paid in full.

D. **Future interference.** The same remedies apply to any future interference with Respondent's access to active coverage, prescriptions, or medical care through the date of trial.

VI. CONTINUANCE / EXTENSION FUNDING REQUIREMENT

A. If any continuance, reset, or extension of any hearing or trial setting occurs for any reason (whether requested by Petitioner or Respondent), then within seventy-two (72) hours after the continuance order is signed, Petitioner shall deposit into joint account ending XX6893 an additional amount sufficient to fund COBRA premiums for each additional month created by the continuance, at the same monthly COBRA premium rate used in this Order (Medical + Dental + Vision). This requirement shall apply each time a continuance is granted and shall continue until trial occurs.

B. Failure to timely deposit any additional continuance-month funding required by this paragraph shall constitute noncompliance and shall trigger the same enforcement remedies set forth in the Enforcement and Payment Deadlines section of this Order, including the $1,000 per day coercive fine until paid in full.

**VI. NON-OFFSET**

A. Any judgment or coercive fine imposed under this Order is an enforcement remedy and shall not be treated as a division of property, an advance against community assets, or an offset against Respondent's share of the marital estate.

SIGNED on 12/17, 2025.

~~JUDGE PRESIDING~~
Assoc Judge

**From:** **Jason McKemie** jmckemie@mckemie.net
**Subject:** Re: Vision receipts needed and update on pay back from David Aron
**Date:** December 18, 2024 at 2:12 PM
**To:** Gwen Ulijasz gulijasz@gmail.com
**Cc:** Brant Webb brant@webbfamilylaw.com

Gwen,

As you had previously received these receipts by me handing you and copy and through email.

You have and have had the receipts, so yes you do have the power to reactivate it. I do not have an email from you with the response of Aetna, but upon looking in the portal it appears they need some additional information. As I do not receive emails from this account, it would greatly help expedite things as well as ensure that we get them all the necessary information timely to ensure we don't miss any deadlines in the future. I'll see what they are wanting, but once again, I need you to forward me any correspondence for me to be able to follow up on it timely.

Let me know if you have any more demands.

So just to confirm, you're not following through with your commitments on our recorded call regarding rental payment, 6mo Cobra Insurance, no intention of canceling our joint card, as well as funding the joint checking with $2k per month?

And your terminating medical coverage prior to my final spinal procedure next Tuesday? You are aware of how much pain I am in, and that this procedure will correct that. Seems like that would be pretty malicious. I hope that's not what you're implying.

Best Regards,

Jason McKemie
[redacted]

---

**From:** Gwendolyn Laura Ulijasz <gulijasz@gmail.com>
**Date:** Wednesday, December 18, 2024 at 12:20 PM
**To:** Jason McKemie <jmckemie@mckemie.net>
**Subject:** Fwd: Vision receipts needed and update on pay back from David Aron

Jason, I called the HSA card administrator , Met Life. They suspended the card already because I have not received receipts from you in a timely manner. This was not my doing.

Despite many conversations as well as my creation of a physical folder for receipts I placed in the kitchen and showed you and you acknowledged, you have not been able to responsibility use the card.

i cannot reactivate it. They need the receipts. You need to provide them to me or I cannot pay for your medical care. It's in your hands now.

Further, I called PhysicalAddress.com and it seems that on this account as well, you

set up our mail receipt in a way that you are the only Owner. You have taken steps to disallow me from seeing my mail in the app and I have no ability to collect my mail or see it online.

All of these items need to be handled responsibility. I cannot in good conscience give you money , even for medical care, with what is going on as result of your continued financial neglect of responsibility and controlling actions.

You can choose whether to cooperate so that I can upload the receipts, get the HSA turned back on, and then have your shot. I dont know how long after you provide the receipts it takes to get the card turned on. I would suggest you finally start to treat this stuff w/ the attention it's always deserved.

Action Required Receipt Required to Process Your Claim – Second Attempt Inbox

**MetLife** <MetLifeHSSA@metlife.lh1ondemand.com> Wed, Dec 11, 3:01AM (7 days ago)
to me

**MetLife**

Important information – Please review

Gwendolyn,

**Why we're contacting you**
We recently sent you an email requesting a receipt for your MetLife Health Savings & Spending Account debit card claim. Before we can process your claim, we need you to send us your receipt(s) so we can ensure your claim meets the IRS requirements for a qualified expense. As of today, our records show we haven't received the required documentation from you.

**What you need to do**
Please login to your account on the MetLife participant portal and follow the instructions below to submit your receipt:

---------- Forwarded message ---------
From: **Gwen Ulijasz** <gulijasz@gmail.com>
Date: Tue, Dec 17, 2024 at 8:48 PM
Subject: Vision receipts needed and update on pay back from David Aron
To: Jason McKemie <jmckemie@mckemie.net>

Receipts are needed for both the attached purchases i made for you for glasses. Please send by tomorrow end of day so that I can see you have intent to participate responsibly and I can leave the HSA available for your next shot.If receipts are not provided in a timely manner and without an argument like I've experienced in the past, then the transactions become reportable to the IRS and a taxable event. The tax is approximately half of each of the bills below including penalties. $840. This will be your responsibility if the steps the federal gov't needs to qualify these expenses are ignored.

Separately, $800 remains unaccounted for after 5 months with your therapist David Aron. A month ago you told me that it would take a month. This is after months of

discussion on the same and assurances that it was not urgent and did not matter whether we were active on my old Aetna health plan. An update, please, with screen shoots as needed so that I can see where things stand. An explanation of your own is not necessary.

I am not open to discussion about putting you on COBRA until you can accomplish the above. This requires no back and forth.

Do the needful.

FILED
12/19/2025 11:44 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Shunta Jackson DEPUTY

**DF-24-18010**

| | |
|---|---|
| In the matter of<br>The Marriage of<br>Gwendolyn Ulijasz<br>&<br>Jason McKemie | In the District Court<br><br>302nd Judicial District<br><br>Dallas County Texas |

-----------------------------------------------------------------------------------------------

## Emergency Motion to Stay and Clarify Temporary Orders, Notice of Impossibility of Compliance, and Request for Appearance by Videoconference

**TO THE HONORABLE JUDGE OF SAID COURT:**

This motion is filed by Petitioner, Gwendolyn Ulijasz ("Petitioner"), appearing pro se, to address temporary orders entered following an emergency hearing held without Petitioner's presence. Petitioner respectfully provides notice to the Court that Options given in the order require acts that are legally and practically impossible, requests a stay and clarification of enforcement, and requests permission to appear by videoconference at any subsequent hearing.

### I. Good Faith and Procedural Background

Petitioner did not willfully fail to appear at the emergency hearing and did not willfully not comply. Notice was sent to only one of two email addresses customarily used between the parties, and the hearing time conflicted with a pre-existing professional obligation requiring Petitioner to present on stage and host clients day and evening over a three day period this week. Petitioner resides more than five hours from Dallas County, making travel in this instance impossible. Petitioner has acted in good faith at all times and promptly seeks relief upon learning of the Court's order.

### II. Impossibility of Compliance – Health Insurance

The order directs Petitioner to reinstate Respondent's health insurance coverage through Petitioner's employer and to provide proof of reinstatement within 24 hours, or pay for and activate COBRA coverage via her employer. Petitioner does not control eligibility determinations for addition or removal of any person from Petitioner employer's health plans or for COBRA coverage. Health insurance eligibility is governed by the employer's ERISA-regulated plan documents as are all employer-sponsored medical plans and administered solely by the plan administrator. Petitioner cannot decide to remove coverage

Copy from re:SearchTX

within the existing plan year for an individual nor can she decide to reinstate coverage for an individual deemed ineligible by the Plan Administrator. She cannot compel or influence either decision. Petitioner has requested written confirmation from Human Resources regarding eligibility and will provide it to the Court upon receipt.

## III. Impossibility and Risk – Health Savings Account (HSA)

The order further requires Petitioner to provide Respondent immediate access to Petitioner's Health Savings Account (HSA), including provision of a debit card or portal access within 24 hours. The HSA is an ERISA-governed investment account in Petitioner's name and is an employer-sponsored benefit but is not part of the employer's health insurance plan. It is an investment account Petitioner's employer contributes to similar to a 401k and also regulated by ERISA and audited by the IRS. IRS publications relied on consider it community property, and was therefore left untouched and unspent with the understanding that a decision on the division would be made at final trial.

As cited in the January 2025 hearing, when Respondent previously had access to the HSA, funds saved by Petitioner prior to marriage as well as funds that would have been part of the marital estate were spent without the Petitioner's consent, proper receipts were not provided, and the plan incurred an estimated $1,500 in tax reimbursement obligations and penalties that remain unpaid as of today. This reflects a pattern of misuse and a small portion of extensive financial abuse.

Petitioner has therefore refrained from using the account herself during 2025 and only recently learned that no active debit card existed even for her own use. Petitioner has requested that the Plan Administrator mail a new one. Portals are also regulated by the Plan Administrator. Because the account is held and must be held in the Respondent's name only, and because full transparency is not granted to an authorized user, there is no portal option for an authorized user available. These are Plan Administrator, HIPPA, and ERISA rules.

## IV. Ongoing Prejudice and Property Loss (5609 La Foy)

Petitioner has suffered ongoing and substantial prejudice due to lack of access to her personal property. The former marital residence located at 5609 La Foy was subject to a lease that expired on October 31, 2025. Prior temporary orders issued in January 2025 granting Respondent exclusive use of the residence and its contents were tied to the pendency of that lease and have now effectively expired. Despite this, Petitioner has continued to be denied access to her belongings.

An eviction proceeding is currently pending, with a bench trial set for December 31, to remove Respondent from the property. Time is therefore of the essence. Each additional delay materially increases the risk that Petitioner's personal property will be further lost, sold, destroyed, or otherwise unrecoverable before lawful possession is restored.

Additionally, Respondent unilaterally took exclusive possession and control of a shared storage unit without Petitioner's knowledge or consent. The unit is located at Public Storage on Harry Hines Parkway, Unit 3131. Respondent represented that if Petitioner paid certain

Copy from re:SearchTX

sums toward storage costs incurred during the period she was denied access, he would permit her to retrieve her belongings. Petitioner paid the requested funds. Despite this, access was not meaningfully restored.

When Petitioner ultimately gained access to the unit, she discovered that the vast majority of her personal property, separate property, and marital property was gone, and several remaining items were damaged or broken. These events occurred without Petitioner's consent, inventory, or accounting.

As a result of prolonged denial of access and the failure of prior agreements, Petitioner is now incurring out-of-pocket expenses to replace most clothing and all household necessities, including furniture, that already belong to her, simply because she cannot wait any longer for access or recovery. This pattern of conduct underscores the need for immediate clarification, safeguards, and court oversight before granting Respondent unrestricted financial access or control over assets pending final trial.

## V. Request for Relief

Petitioner respectfully requests that the Court:

1. Stay enforcement of the temporary orders pending clarification;
2. Clarify that Petitioner is not required to perform acts outside her legal control, including reinstatement of ERISA-governed insurance;
3. Modify any HSA/FSA financial access provisions to include safeguards consistent with law and reflective of the grossly irresponsible behavior the Respondent has demonstrated in his use of the HSA/FSA in the past;
4. Set a prompt hearing on these issues; and
5. Permit Petitioner to appear by videoconference due to distance and hardship.

Respectfully submitted,

Gwendolyn Ulijasz
Petitioner, Pro Se
Date: December 19, 2025

Copy from re:SearchTX

FILED
1/13/2026 9:33 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Brittany Irvin DEPUTY

Petitioners Notice of Compliance with Court Order (Health Insurance & Health Savings Account access)

CASE DF-24-18010
IN THE MATTER OF THE MARRIAGE OF
GWENDOLYN ULIJASZ, Petitioner
AND
JASON McKEMIE, Respondent
IN THE 302nd JUDICIAL DISTRICT COURT
DALLAS COUNTY, TEXAS

PETITIONER'S NOTICE OF COMPLIANCE WITH COURT ORDER

Petitioner files this Notice to confirm compliance with the Court's order regarding reinstatement of health insurance coverage and delivery of the Health Savings Account (HSA) card.

Petitioner confirms that health insurance coverage has been reinstated as directed by the Court. Petitioner was alerted of the issue by the court order and escalated to senior HR leadership for faster research and resolution. Reinstatement was complete in a matter of days thereafter. In the email from her employer's HR that Petitioner read outloud to the Respondent and the Court confirmed this was an Employer mistake, that the coverage reinstatement was being expedited, that there would be no gap in coverage, and that the Respondent will lose his health insurance provided by the Petitioner's employer on February 24, 2026 in conjunction with a divorce ruling. Eligibility determinations and coverage status are controlled by the employer and plan administrator, not by Petitioner.

The insurance card and the prescriptions card and coverage remain the same.

With respect to the Health Savings Account ("HSA"), Petitioner confirms compliance with the Court's order. Access to the HSA card was addressed promptly upon discovery that she had no functioning card for either herself or Respondent. The account had not been used all year in anticipation that because this was community property it would be decided at trial. At that time replacement cards were requested for both Petitioner and Respondent on December 18, 2025, and those cards were issued and delivered to her on December 23, 2025. They were physically received by the Petitioner when she came home from holiday travel on December 28th.

A physical HSA card for Respondent, together with activation instructions, was then physically provided to Respondent in the presence of the Court on January 6, 2026.

Copy from re:SearchTX

No separate HSA portal is available for dependents to the best of Petitioner's knowledge. A portal and a password is not required to utilize the physical HSA card for qualified expenses, whether in person or online.

To ensure proper documentation and avoid tax and penalties, Respondent may submit receipts for qualified medical expenses by email to Petitioner, consistent with the process previously used by the parties but in a timely manner. Petitioner requests the Court's awareness that this has been an issue in the past resulting in tax and penalities.

**Respondent repeatedly and incorrectly continues to assert that**

- health insurance removal in 2025 was a result of the Petitioner's intentional actions,
- continued insinuations that insurance was not continuous and , that as a result ,$30,000 of Respondent's recent medical claims during what is now a non-existent gap period will not be paid;
- that Petitioner continues to restrict HSA access because he does not have her portal account password.

**Petitioner attaches limited documentation solely to confirm compliance and avoid future confusion.**

Respectfully submitted,

Gwendolyn Ulijasz
Petitioner, Pro Se
11703 Huebner Road, Ste106 PMB499
210-278-6377
GUlijasz@gmail.com

**Accenture (c/o Businessolver, Inc.)**
P.O. Box 3013
Monroe, WI 53566-3013
**DO NOT MAIL CORRESPONDENCE OR PAYMENTS TO THIS ADDRESS**

accenture

Jason Mckemie and Family
5609 La Foy Blvd
Dallas, TX 75209

Notice Date: November 11, 2025

Prepared For: Jason Mckemie and Family

Mail check(s) and correspondence to this address only:

**Accenture (c/o Businessolver, Inc.)**
**PO BOX 850512**
**Minneapolis, MN 55485-0512**

If you have any questions regarding your benefits or this notice, please login to **benefitscenter.accenture.com.**

# COBRA Continuation Coverage & Other Health Coverage Alternatives

You're getting this notice because you recently lost coverage under Accenture group health plan ("the Plan"). This notice has important information about your right to COBRA continuation coverage, which is a temporary extension of coverage under the Plan. Please read the information in this notice very carefully before you make your decision.

This notice has important information about your right to continue your health care coverage under the Plan, as well as other health coverage options that may be available to you including coverage through the Health Insurance Marketplace. To sign up for Marketplace coverage, visit **www.HealthCare.gov** or call 1-800-318-2596 (TTY: 1-855-889-4325). **You may be able to get coverage through the Health Insurance Marketplace that costs less than COBRA continuation coverage.** People in most states use **www.HealthCare.gov** to apply for and enroll in health coverage; if your state has its own Marketplace platform, you can find contact information here: **www.HealthCare.gov/marketplace-in-your-state/**.

Please read the information in this notice very carefully before you make your decision. If you choose to elect COBRA continuation coverage, you should enroll online at **benefitscenter.accenture.com** or use the Election Form provided later in this notice.

## Enrolling in COBRA Continuation Coverage Online Is Easy & Secure

1. **Go to benefitscenter.accenture.com** and log in with your username and password. If you don't know them, you may reset your username and password or **Register** as a first-time user. Your Company Key is **accenture.**
2. **Review and make your COBRA continuation coverage elections**. The online enrollment process makes it easy to select the coverage you're eligible for. Click "Start Here" to begin your enrollment.
3. **Choose the payment method you want.**
   a. **Pay Online** – Provide your bank account information. You can set up automatic monthly payments and avoid the usual $2.00 monthly convenience fee.
   b. **Pay by Check** – Make your check payable to **Businessolver, Inc**.

Deadline to Enroll in COBRA continuation coverage

Your elections must be completed and/or postmarked no later than

**01/11/2026**

Your active coverage ends on
**10/31/2025**

If elected, COBRA continuation coverages will be effective on
**11/01/2025**

*If you are electing COBRA continuation coverage as an active employee who did not lose all benefits due to your Qualifying Event, a retiree who is enrolled in retiree benefits with this employer, or a dependent electing COBRA continuation coverage, either as a result of a dependent qualifying event (such as divorce or child reaching maximum age) or the dependent of a former employee who is not also electing COBRA continuation coverage,* ***you cannot enroll online.*** *You will need to return the paper election form found in this package. Once enrolled, you will be able to login to* ***benefitscenter.accenture.com*** *and create your online account.*

Coverage provided by Accenture to you and/or your covered dependent(s) ends on 10/31/2025 due to the following qualifying event: **Divorce**. You have the right to elect COBRA continuation coverage for a duration of up to 36 months.

Only members covered at the time of Qualifying Event are eligible for continuation. The following Qualified Beneficiaries are eligible to continue coverage under COBRA:
Jason McKemie

3607127784

Copy from re:SearchTX

**From:** **USBenefits** USBenefits@accenture.com
**Subject:** RE: ERISA §104(b)(4) Request – SECOND DEMAND FOR REINSTATEMENT / 80 DAYS WITHOUT ACCESS TO CRITICAL MEDICATIONS / NOTICE OF ESCALATING MEDICAL HARM
**Date:** January 21, 2026 at 4:40 PM
**To:** Jason McKemie jmckemie@mckemie.net
**Cc:** Jason McKemie mckemie76@gmail.com

Mr. McKemie,

Thank you for reaching out. We want to address your concerns. We will start by confirming that your coverage was reinstated in December and has now been reinstated effective as of the initial drop date, so there is no longer any gap in coverage. See below for more details and a response to your letter.

Your coverage was dropped due to a participant-reported life event, and that triggered the COBRA notice which was in accordance with our plan rules. When Accenture was informed by our Benefits Center in December that the qualifying event that triggered Cobra notice wasn't final yet, and therefore you were still an eligible dependent, we directed them to negate the life event. Manual intervention was required to return your coverage to active status because of the unique facts of your situation. While our intent was for there to be no gap in coverage, unfortunately our health plan administrators reinstated coverage from that point forward. We have reached out to both your medical carrier and pharmacy benefit manager to correct their records such that there is now no gap in coverage.

Aetna has informed us they are already reprocessing any denied claims in the November/December timeframe. If you have additional claims to be filed, you can file them now. If you need assistance with that, please let us know. Similarly, we can have CVS Caremark reach out to you directly to help process any pharmacy claims if you would like. Aetna has confirmed both of your MRI requests from last week have been approved.

We are unfortunately unable to take action related to your Health Savings Account or Health Care Flexible Spending Account. Only employees have the ability to elect their level of coverage; we cannot direct them or put in place coverage they did not ask for. Similarly, the Health Savings Account and Flexible Spending Account are controlled by employees, and we do not have the ability or authority to issue HSA cards, PIN numbers or give access to websites to anyone other than employees.

We acknowledge your request for documents under ERISA. In our response to you on January 15, 2026, we provided you with copies of the "instruments under which the plan is established or operated" as required under ERISA § 104(b)(4). You have requested additional documents below. Under ERISA § 503 and 29 C.F.R. § 2560.503-1, if an adverse benefit determination has been made and you have submitted a claim or appeal, the Plan must provide the "relevant documents" (as defined under 29 C.F.R. § 2560.503-1(m)(8)) that formed the basis of that benefit determination. To our knowledge, as noted above, all of your claims for benefits under the Plan have been approved by Aetna. If there are claims that are currently denied **or specific claims for which you are seeking relevant documents**, please identify the claim and we will be happy to assist.

Thank you,
Accenture Benefits

*NOTE: Accenture reserves the right, in its sole discretion, to amend, modify or terminate any of its benefit plans at any time.*

**From:** Jason McKemie <jmckemie@mckemie.net>

**From:** **Jason McKemie** jmckemie@mckemie.net
**Subject:** RE: Status request - Health Care Flexible Spending Account - Six Questions Requiring Written Answers by November 20, 2026 (EBSA File No. 202630-18882)
**Date:** November 14, 2026 at 12:48 AM
**To:** USBenefits USBenefits@accenture.com
**Cc:** Wynn E. Pott wynn.e.pott@accenture.com, info@businessolver.com, Nathan T. Boone NBoone@littler.com, Lizeth Juarez LGJuarez@littler.com, DHerring@littler.com

Mr. Pott:

Your reply states that the FSA Plan "permits, but does not require" that I be given a right to seek reimbursement, that my access "can only be secured through the accountholder," and that "Accenture has no involvement in that process."

The accountholder is the participant who reported a divorce-based qualifying life event when no divorce had occurred. That report terminated my coverage on October 31, 2025. The Plan has confirmed in writing that I remained an eligible dependent spouse and that no COBRA qualifying event occurred. Your reply now makes that same participant the only person who can be paid for medical expenses I paid myself.

Answer each of the following in writing by November 20, 2026.

1. Identify by section number the Plan provision that "permits, but does not require" that I be given a right to seek reimbursement, and quote it.

2. Who holds that discretion under the Plan: the Plan Administrator or the participant? If the Plan Administrator holds it, state whether it has decided not to exercise it for me, who made that decision, on what date, and for what reason.

3. Confirm yes or no: under the Plan Administrator's position, reimbursement for eligible expenses I incurred and paid in 2026 can be paid only to Ms. Ulijasz.

4. State the 2026 Health Care FSA election amount, the total reimbursed to date for expenses incurred by me, the remaining balance, and the last date a claim for 2026 expenses can be submitted.

5. Records produced by Ms. Ulijasz show the Health Care FSA as "Coverage Terminated" effective June 30, 2026. Your reply says reimbursement is available for expenses through December 31, 2026. State which is correct and the current status of the account.

6. For 2025: state whether any Health Care FSA or HSA reimbursement was paid to Ms. Ulijasz for expenses incurred by me, the amounts and dates, and whether any 2025 balance was forfeited.

FSA claims are submitted through the same card and login as the HSA, both of which the participant controls and has withheld from me since December 18, 2024. Confirm whether any other method of submitting a claim exists.

Under ERISA Section 104(b)(4), 29 U.S.C. Section 1024(b)(4), I request copies of the Health Care FSA plan document, the cafeteria plan document, the summary plan description for each, and the claims procedures. This is a written request by a beneficiary.

The statement that "Accenture has no involvement" is not accurate. The Plan processed the report that terminated my coverage, and the Plan decides who may submit a claim. I am asking the Plan to state, in writing, whether it will allow me to submit my own claims and be paid directly.

Jason Emory McKemie
Covered Dependent Spouse, Accenture US Group Health Plan
(214) 519-8958 | jmckemie@mckemie.net
539 W. Commerce St., Ste. 2010, Dallas, TX 75208

> On Nov 12, 2026, at 4:07 PM, USBenefits <USBenefits@accenture.com> wrote:
>
> Dear Mr. McKemie,
>
> As you know, you are a dependent spouse covered under the Accenture US Group Health Plan and your coverage under the plan was restored retroactive to July 1, 2026. With respect to the FSA, the restoration of your coverage means that Ms. Ulijasz is able to seek reimbursement

under the healthcare FSA for eligible expenses incurred by you from January 1, 2026 through December 31, 2026 (or such earlier date if your coverage is terminated in accordance with plan rules). As a covered dependent, you do not have independent entitlement to establish or access an Accenture FSA account. The FSA Plan permits, but does not require, that you be provided a right to seek reimbursement for eligible claims. However, your ability to seek reimbursement of expenses under the FSA can only be secured through the accountholder and Accenture has no involvement in that process.

We provide the following information with respect to your vision coverage. Documentation related to your vision coverage is available using the information below.

- Member/subscriber ID - [redacted]
- Member-services number - +1 800 940 5711

Your eligibility for, and entitlement to, any benefits remains subject to the applicable Plan terms. The Plan Administrator expressly reserves all rights, defenses, and positions.

Sincerely,
ACCENTURE US GROUP HEALTH PLAN

Wynn E. Pott
On behalf of the Plan Administrator
*NOTE: Accenture reserves the right, in its sole discretion, to amend, modify or terminate any of its benefit plans at any time.*

---

**From:** Jason McKemie <jmckemie@mckemie.net>
**Sent:** Friday, October 30, 2026 7:34 PM
**To:** Pott, Wynn E. <wynn.e.pott@accenture.com>
**Cc:** USBenefits <USBenefits@accenture.com>; info@businessolver.com; NA.HR.Questions <NA.HR.Questions@accenture.com>; NBoone@littler.com; LGJuarez@littler.com; DHerring@littler.com
**Subject:** [External] Status request — Health Care Flexible Spending Account and UnitedHealthcare Vision Plan access / Response Requested by Monday, Nov 2nd

Wynn E. Pott, on behalf of the Plan Administrator,

Two items. Please answer in writing.

1. Health Care Flexible Spending Account. This is an ERISA employee welfare benefit plan. ERISA § 3(1), 29 U.S.C. § 1002(1). My enrollment in it was terminated on October 31, 2025 by an erroneous qualifying life event submission — a divorce-based QLE submitted when no divorce had occurred. The Plan has represented that all of my benefits have been restored. Where is my Health Care Flexible Spending Account?

State in writing: (a) my current status under that account; (b) if it was restored after the October 31, 2025 erroneous QLE submission, the date it was restored and the proof of restoration; (c) if it was not restored, confirm that; and (d) the exact process by which I submit a claim against that account and receive reimbursement.

This item concerns the Health Care Flexible Spending Account, not the Dependent Care Flexible Spending Account.

2. UnitedHealthcare Vision Plan. Your October 14, 2026 letter states that my vision coverage under the Participating Vision Plan was restored retroactive to July 1, 2026. I cannot log in to UnitedHealthcare Vision and cannot use the coverage. Provide my member or subscriber ID, the group number, the member services number, and a copy of any vision ID card on file for me.

I cannot obtain either of these from the Benefits Center. Every time I call, I am told I am not authorized to speak to anyone about the account. That is why I am requesting this in writing from you.

Please respond by Monday, Nov 2nd

Jason Emory McKemie
Covered Dependent Spouse, Accenture US Group Health Plan
(214) 519-8958 | jmckemie@mckemie.net
539 W. Commerce St., Ste. 2010, Dallas, TX 75208

On Oct 14, 2026, at 3:07 PM, Pott, Wynn E. <wynn.e.pott@accenture.com> wrote:

Dear Mr. McKemie:

For the specific reason recited in our communication dated October 6, 2026, the Plan Administrator confirms that your active prescription drug coverage under the Participating Medical Plan and your vision coverage under the Participating Vision Plan, both under the Accenture US Group Health Plan, have been restored retroactive to July 1, 2026, with no gap in coverage. We are also working with Aetna to ensure that claims affected during the period beginning July 1 are reprocessed under the Participating Medical Plan.

In response to the additional benefit-administration matters identified in your October 9 correspondence, we provide the following:

**From:** **USBenefits** USBenefits@accenture.com
**Subject:** RE: Status request - Health Care Flexible Spending Account - Six Questions Requiring Written Answers by November 20, 2026 (EBSA File No. 202630-18882)
**Date:** November 17, 2026 at 8:54 AM
**To:** Jason McKemie jmckemie@mckemie.net
**Cc:** Pott, Wynn E. wynn.e.pott@accenture.com, Nathan T. Boone nboone@littler.com, Lizeth Juarez lgjuarez@littler.com, DHerring@littler.com dherring@littler.com

Dear Mr. McKemie,

Responses to your questions below.

1. The Plan "permits but does not require" certain administrative arrangements, such as the issuance of an additional debit card. This does not establish an independent reimbursement right for a dependent. Rather, the Plan does not restrict the accountholder from extending access to an eligible dependent, such as through an additional debit card for point-of-sale payment, and the decision to provide that access is at the accountholder's discretion. The 2026 Flexible Spending Summary Plan Description (SPD) document is attached.
2. As noted in our prior response, your ability to seek reimbursement of expenses under the FSA can only be secured through the FSA accountholder and Accenture has no involvement in that process.
3. Yes, except where payment is made directly to a service provider or at a point of sale, each as permitted under the Plan.
4. As you do not have independent rights to the Flexible Spending Account, the Plan Administrator is unable to provide you with the requested account-specific information.
5. As you do not have independent rights to the Flexible Spending Account, the Plan Administrator is unable to provide you with the requested account-specific information.
6. As you do not have independent rights to the Flexible Spending Account, the Plan Administrator is unable to provide you with the requested account-specific information.

In response to your request for documents, I am including a copy of the Accenture US Group Health Plan along with all amendments. I note that the "cafeteria plan" is a component plan titled the "Participating Flexible Benefits Plan" set forth in Supplement D, which component plan includes the Health Care Flexible Spending Account Option set forth in Supplement F. As noted earlier, the applicable SPD is also attached.

Your eligibility for, and entitlement to, any benefits remains subject to the applicable Plan terms. The Plan Administrator expressly reserves all rights, defenses, and positions.

Sincerely,
ACCENTURE US GROUP HEALTH PLAN

Wynn E. Pott
On behalf of the Plan Administrator
***NOTE: Accenture reserves the right, in its sole discretion, to amend, modify or terminate any of its benefit plans at any time.***

---

**From:** Jason McKemie <jmckemie@mckemie.net>
**Sent:** Friday, November 13, 2026 10:48 PM
**To:** USBenefits <USBenefits@accenture.com>
**Cc:** Pott, Wynn E. <wynn.e.pott@accenture.com>; info@businessolver.com; Nathan T. Boone <NBoone@littler.com>; Lizeth Juarez <LGJuarez@littler.com>; DHerring@littler.com
**Subject:** [External] RE: Status request - Health Care Flexible Spending Account - Six Questions Requiring Written Answers by November 20, 2026 (EBSA File No. 202630-18882)

**WARNING:** External email. Be vigilant with links, attachments, and requests.

Mr. Pott:

Your reply states that the FSA Plan "permits, but does not require" that I be given a right to seek reimbursement, that my access "can only be secured through the accountholder," and that "Accenture has no involvement in that process."

The accountholder is the participant who reported a divorce-based qualifying life event when no divorce had occurred. That report terminated my coverage on October 31, 2025. The Plan has confirmed in writing that I remained an eligible dependent spouse and that no COBRA qualifying event occurred. Your reply now makes that same participant the only person who can be paid for medical expenses I paid myself.

Answer each of the following in writing by November 20, 2026.

1. Identify by section number the Plan provision that "permits, but does not require" that I be given a right to seek reimbursement, and quote it.

2. Who holds that discretion under the Plan: the Plan Administrator or the participant? If the Plan Administrator holds it, state whether it has decided not to exercise it for me, who made that decision, on what date, and for what reason.

3. Confirm yes or no: under the Plan Administrator's position, reimbursement for eligible expenses I incurred and paid in 2026 can be paid only to Ms. Ulijasz.

4. State the 2026 Health Care FSA election amount, the total reimbursed to date for expenses incurred by me, the remaining balance, and the last date a claim for 2026 expenses can be submitted.

5. Records produced by Ms. Ulijasz show the Health Care FSA as "Coverage Terminated" effective June 30, 2026. Your reply says reimbursement is available for expenses through December 31, 2026. State which is correct and the current status of the account.

6. For 2025: state whether any Health Care FSA or HSA reimbursement was paid to Ms. Ulijasz for expenses incurred by me, the amounts and dates, and whether any 2025 balance was forfeited.

FSA claims are submitted through the same card and login as the HSA, both of which the participant controls and has withheld from me since December 18, 2024. Confirm whether any other method of submitting a claim exists.

Under ERISA Section 104(b)(4), 29 U.S.C. Section 1024(b)(4), I request copies of the Health Care FSA plan document, the

**00:09:34 Jason M.**
Five three seven nine is the last four.

**00:09:38 HSA Rep.**
Correct last four. Hold on one second for me, is there more than one I'm? Actually sorry, that's not the one associated here on the account, probably because there was a card order before. That's why that's not. The one that's updated here is the one that we sent out updated.

**00:10:09 HSA Rep.**
Twenty five days ago, that account holder requested.

**00:10:14 Jason M.**
So wait, wait, wait, hold on. You said that you ordered. There was a card order twenty five days ago.

**00:10:24 HSA Rep.**
The date I cannot confirm that. But since the card you have or the card you provided to me is not matching what we have here on file. You stated that there was a requested card order. Probably the one associated with this account already is the one we sent out for the requested card.

**00:10:52 Jason M.**
So I think what might have happened. All of our HSA cards have always worked the same. We've had it so it doesn't matter if it's my name or her name on it. It's always the same card credentials. It's the same zip code, it's the same PIN, so it doesn't really matter which card. She was supposed to produce it at the court yesterday. And if she hadn't ordered that in time, I think she brought the card that she had because she had to comply with a court order. This is supposed to be a working card for me right now because I am actually having surgery.

**00:11:40 Jason M.**
So I don't know if you need to call her, but I need to get a card mailed to me asap because I need it for a procedure.

**00:11:51 HSA Rep.**
So no worries. Here's what we'll do. We will call the account holder to ask her about that and then just get verbal authorization as well. So that I can freely provide you information about the account because all of the information that I'm providing right now is general information. Since I cannot fully authenticate the account first, we will try to call her with the best number that you provided to me earlier. But just in case we got disconnected, what's going to be your best callback number for me to call? 214[redacted]

**00:12:36 HSA Rep.**
I got two one four eight six eight four nine zero one. Correct? That's correct. Thank

you so much. So I just placed the call on hold, sir. I'll go ahead and dial this. I might place it for thirty seconds or one minute and then I'll merge the call once I got through.

**00:12:57 Jason M.**
It's okay. If you find out what you need, that's fine. That's great. That sounds good. Talk to you soon. I'll be right here.

**00:13:06 HSA Rep.**
Thank you so much and please stay on the line.

(Gwendolyn Ulijasz) Hello? Hello?

**00:13:31 HSA Rep.**
Hi, ma'am. This is Bein from Inspire Financial. I am looking tfor Gwen Ulijasz. (Gwendolyn Ulijasz) Hi, Yes, this is she. (HSARep). Hi, ma'am. I have your ex-spouse here on the other line, Mister Jason McKemie, and we are here trying to process things about your Inspire Financial account or information. I'm calling because we wanted to get a verbal authorization from you. Are you free today? (Gwendolyn Ulijasz). So what is the authorization for? (HSA Rep) I'm calling your Oh, let's see sorry. Mr. McKemie is calling in trying to activate the (HSA) card and add his Apple Pay to the HSA.

**00:14:28 HSA Rep.**
We are here trying to validate the card associated with the account. We wanted to get a verbal authorization from you before we process this. (Gwendolyn Ulijasz) You can go ahead. Please remind him that everything requires a receipt, and it must be uploaded in your portal. (HSA Rep) He is actually on the line ma'am.

**00:14:54 Jason M.**
Yeah, So I just need the portal web address and the password and that'll be done. As soon as I receive that password, I will begin uploading those receipts. But thank you. (Gwendolyn Ulijasz) No, I don't have a password. You got to do this on your own Jason. So I'm not doing anything. (Jason McKemie) There's only one account holder. (Gwendolyn Ulijasz) Thank you very much. (Gwendolyn Hangs up the Phone) (Jason McKemie) Tell me, are there two passwords for this system, or is there only one? Predominant, is there only one account holder password like our old one?

**00:15:31 HSA Rep.**
I'm so sorry about that.

**00:15:34 Jason M.**
I need to know if I can set up a separate account other than hers. I don't want to get into this game where she tells me to upload receipts but won't give me a password to log in and submit receipts. That was the old game.

**00:15:47 HSA Rep.**
I understand, Sir. Generally, if she has a health savings account, no need to submit any documents at all. All you have to do is keep the documentation, just in case the IRS does a random audit. But Sir, I will ask her for the last four digits of the (active) card. Probably she actually has it. I wasn't able to get that. I'm so sorry about that, but since I already got a verbal authorization from her.

**00:16:21 HSA Rep.**
About your account, I just need one more thing. I really needed the last four digits associated with the account, but since you don't have it with you, the other option is to provide me with the effective date of the account. I just need the month and the year.

**00:16:44 Jason M.**
Is it card? I have? Card? I have?

**00:16:48 HSA Rep.**
The HSA of the account holder.

**00:16:52 Jason M.**
I don't. I don't have the card that she has. I have the card that I read off to you earlier. So, are you telling me to?

**00:17:08 HSA Rep.**
Actually.

**00:17:10 IVR**
Mhm So

**00:17:11 Jason M.**
What are you asking me for? I am just curious because the card I have ends in five three seven nine, and that's the one that she presented to the court as the active card right now.

**00:17:25 HSA Rep.**
Card right now. Sir, here's what happened. You stated that there was a card order twenty five days ago. Correct?

**00:17:38 Jason M.**
No, I said that there was supposed to be a card. I don't have any clue whether a card was ordered or not.

**00:17:49 HSA Rep.**
Sir, I will be very honest with you. In this case, your call wasn't fully verified yet because I haven't caught the last four digits of the Inspire Financial debit card associated with the account. So I am very careful to provide any account information yet until I verify this. Even if we already got a verbal authorization from

inspira FINANCIAL

[redacted]

Number of Cards: 1

Card Number Ending In: 5379

1056415102403340

[redacted]

[redacted]




## Simplify your health care spending with your Inspira debit Mastercard®

**Good news!** Your Inspira Financial℠ account comes with a debit card, which will make it easier for you to spend your funds on eligible expenses.

**1. Activate your card**
Call the number on the sticker on your card. **If your card doesn't have a sticker, it's ready to use.** When you call, you'll get your PIN. If you order cards for covered family members, they'll use the same PIN.

**2. Set up your online account**
Visit the website on the back of your card to create your online account. Keep your card nearby — **you'll need to enter the card number.** Don't forget to download the Inspira app too!

QC9


Medical Benefits Obstruction
Sullivan & Cook
DB-24-18010

**Subject:** HSA CARD - NEEDED URGENTLY / 26th REQUEST - (PLEASE TRACK IN OFFICIAL RECORD) DB-24-18010
**Date:** Sunday, July 27, 2025 at 2:16:08 PM Central Daylight Time
**From:** Jason McKemie <jmckemie@mckemie.net>
**To:** Ethan Scroggins <escroggins@sullivancook.com>
**CC:** Theresa Sims <theresa.sims@dallascounty.org>, William Cook <wcook@sullivancook.com>, Chandler Alt <calt@sullivancook.com>, kjones@sullivancook.com <kjones@sullivancook.com>, jcook@sullivancook.com <jcook@sullivancook.com>
**Priority:** High
**Category:** Red category
**Attachments:** 21. Husband's HSA Activity.pdf, IMG_7039.jpg, IMG_7038.jpg

**Teresa - For tracking purposes, please consider this email part of the official case record in DF-24-18010. (Documented Harm Due to Obstruction and Silence by Sullivan Cook.)**

---

**Ethan,**

This message constitutes my **26th request** for the credentials to the MetLife HSA prescription benefits card since December 18th, 2025. Your client has an annual compensation package of $1.5 million that's an average of almost $130,000 a month. There is no justification for holding this card back other than to cause further harm and put my health in jeopardy. I have made these requests continuously since December 18, 2024. As you are aware, access to this benefit is protected under both the **Standing Orders** and any relevant **Temporary Orders** currently in effect.

Despite my repeated requests, you have not acknowledged or responded to a single one of my requests. As of today, I am suffering from an active and accelerating staph infection, and I have now been without critical heart medication for over three months. Your continued silence and obstruction place me at escalating medical risk.

As my emergency motion, nor my standing order enforcement motion, nor my motions for sanctions have worked, I will be next be filing a motion for a **"Protective Order Against Further Obstruction of Medical Access by Sullivan Cook Despite Documented Harm"** if I don't receive the card credentials today. It's been too long. I can't wait anymore.

I am formally demanding the following:

1. Immediate release of the card credentials, including:
   - Card number
   - CCV
   - Zip code associated with the card
2. That Petitioner immediately request a new card be mailed to me.
3. I am expecting delivery of that card within 21 calendar days

This card is a shared marital benefit. There is no lawful nor rational basis for withholding it. All potential arguments have been argued exhaustively.

To be clear:

- I am currently off antibiotics and experiencing the recurrence of a condition that previously required five days of hospitalization.
- During that hospitalization, I received notice that the HSA card had been reactivated. Believing Petitioner had taken a step toward cooperation; I attempted to fill my prescriptions. I was only able to fill one prescription for $41, which is reflected in the attached HSA transaction log.
- The next day, when I returned to pick up the remainder of my prescriptions, the card had been cancelled.

Attach, you will find from your discovery documents, the HAS statement, proving this purchase and showing that none happened after that. Thank you for providing me the exact evidence I needed to prove everything stated in my motion, as well as you and your clients continued obstruction of my access to healthcare and critical medication's.

**If I don't hear from you for midnight tonight, I will consider that yet another refusal to work with me in any capacity whatsoever, including denying me access to antibiotics during an infection.**

Thank you,
Jason McKemie
Pro Se Respondent
[redacted]
jmckemie@mckemie.net