FILED
NOV 25 2026
CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br>**JASON EMORY McKEMIE,**<br>Debtor. | Case No. 26-30161-mvl7<br>Chapter 7 |

**DECLARATION OF JASON EMORY McKEMIE IN SUPPORT OF DEBTOR'S MOTION FOR HSA CARD AND FSA ACCESS AND FOR STAY SANCTIONS**

I, Jason Emory McKemie, declare under penalty of perjury under 28 U.S.C. § 1746:

1. I am the Debtor in this case. I am over eighteen and competent to make this declaration. The facts stated here are within my personal knowledge.

2. Exhibits 1 through 4 to the Motion are true copies. Exhibit 1 is email between Ms. Ulijasz and me on December 17 and 18, 2024; a telephone number on page 1 is redacted. Exhibit 2 is the first page of the COBRA notice dated November 11, 2025 that I received. Exhibit 3 is email between Accenture's U.S. Benefits mailbox and me. Page 1 is its email of January 21, 2026. Pages 2 and 3 are my email with six written questions and, below it, its email of November 12, 2026 and my email of October 30, 2026; a member identification number on page 3 is redacted. Page 4 is its email of November 17, 2026 answering the six questions. Exhibit 4 is pages 3 and 4 of the letter the Plan Administrator sent me dated February 18, 2026, ending with the signature of Wynn E. Pott. The page numbers in the lower right corners of Exhibits 3 and 4 are from earlier compilations of mine.

3. There have been two health savings accounts. The first was at MetLife, through Ms. Ulijasz's former employer, Cognizant. She was the account holder, and the card on that account is the HSA card I used for my prescriptions and medical care through 2024. The second is at Inspira Financial, through Accenture, where she has worked since October 2024. MetLife has never administered the Accenture account. I am a named user on the Accenture account, and Ms. Ulijasz is the account holder on Inspira's records. I have never had a working card on the Accenture account. FSA claims are submitted through the same card and login as the HSA, and Ms. Ulijasz controls both.

4. In mid-December 2024, days before December 18, Ms. Ulijasz and I spoke by telephone. I recorded the call. She said, "I don't want you to die." She said she was not going to leave me without anything to live on. She said she could not keep me on the health insurance and that I was "only good for 31 days." On a recorded call that month she committed to pay for six months of COBRA coverage for me. On December 18, 2024 I wrote to her and asked whether she was going back on her commitments. Exhibit 1, page 1.

5. In the months before she filed for divorce, Ms. Ulijasz screamed at me, again and again, that I had to upload receipts to the HSA administrator. Each time I asked her for the username and password, she refused and told me I had to do it on my own. On December 17, 2024 she demanded receipts again. I had already given them to her, by hand and by email. On December 18, 2024 she wrote to me that the HSA card was suspended. That same day she filed an application for a protective order against me in Cause

No. DF-24-18010. My spinal procedure was six days away. Since December 18, 2024 the only charge I have been able to make on an HSA card is the charge described in paragraph 7.

6. On January 20, 2025 Ms. Ulijasz wrote to my lawyer at the time: "No health insurance of any kind is on the table for discussion as Jason has not demonstrated responsible and ethical actions required to have health insurance."

7. In 2025 I was hospitalized for five days with a staph infection. The hospital and the pharmacy worked for a day and a half to get the HSA card on file at the pharmacy working. That was the old MetLife card. It worked for one charge of $41. By the next morning the card had been reported lost or stolen and was declined, and I could not fill the antibiotics. I did not report the card lost or stolen. I was not able to complete the antibiotics, and the infection kept returning for more than eight months. On July 27, 2025 I sent Ms. Ulijasz's lawyers my twenty-sixth written request for the HSA card credentials.

8. No divorce had been granted on October 31, 2025. I did not report a divorce to the Plan. My coverage was terminated effective that date. I was present at the hearing held in Cause No. DF-24-18010 on October 31, 2025. At that hearing Ms. Ulijasz testified under oath that she had not changed, limited or restricted my healthcare and would not. No one gave me notice of the termination. I learned of it on or about November 23, 2025, in an emergency room. I had been taking a prescribed GLP-1 medication. I was cut off from it with no taper. I gained about fifty-two pounds of fluid and was hospitalized with congestive heart failure. I did not get that medication back until about April 2026.

9. Surgery to repair a torn rotator cuff and a ruptured biceps was scheduled for December 27, 2025. I had met my deductible and out-of-pocket maximum for 2025. I asked the divorce court for the December 17, 2025 order in two parts, for two reasons. The twenty-four-hour requirement, with written proof, was so that my benefits would be confirmed in time for the surgery to go forward before the end of 2025. The $20,643.56 was the safeguard if Ms. Ulijasz delayed into 2026: to preserve my access to the surgery after my deductible and out-of-pocket maximum started over, and to cover what I had paid out of pocket while the HSA card was cut off. She did not restore my benefits within twenty-four hours, and she has not paid any part of the $20,643.56. I have not had the surgery.

10. On January 6, 2026, in open court, Ms. Ulijasz handed me an Inspira Financial mailer for a card ending in 5379. The card had been cancelled before she gave it to me. When I called Inspira Financial, the representative told me it was not the card on the account and that the last four digits of the active card were needed. I did not have that card. Ms. Ulijasz was brought onto the call. She said I had to do it on my own, said she was not doing anything, and hung up. I was a party to the call and I recorded it. The transcript pages at ECF 138-1, pages 59 through 61, are true and accurate.

11. Since Ms. Ulijasz left the marital home I have not received one reimbursement from the HSA or the FSA. I do not have an active HSA card, and I have no login to either account. Without them I cannot use the HSA or the FSA to pay for my care. I pay cash for my prescriptions and medical care.

12. On April 16, 2026, while I was away from my home, Ms. Ulijasz entered it. I had left my only pair of prescription glasses on my desk. When I returned I found them destroyed. The frame was crushed and twisted, one temple arm was bent back on itself, and a lens was out of the frame. They cannot be worn. I have not been able to replace them. I also need dental work.

13. The Plan's benefit summary generated February 2, 2026 lists spouse critical illness, optional life, optional accidental death and dismemberment, and spouse or domestic partner life and accidental death and

dismemberment coverage as "Coverage Waived." Those coverages were in place before October 31, 2025. They have not been restored.

14. When I filed this case I owed medical providers for care I had received, including care billed back to me after my coverage was terminated on October 31, 2025. I still owe them.

15. I have never been given the report of a divorce that was submitted to the Plan and terminated my coverage effective October 31, 2025, or the Plan's record of that report.

16. On or about January 20, 2026, at a hearing in the divorce case, I told the court that I had gone a year without an HSA card. Ms. Ulijasz answered that I had cut off my own card and pointed to a MetLife record from January 2025. I told the court that MetLife was her former employer's administrator and that it was a different card.

17. Exhibit 5 to the Motion is four photographs of my legs, ankles and feet. Each is a true and accurate picture of how they looked when it was taken. The file data of the photograph on page 1 dates it August 24, 2025.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 24, 2026.

Jason Emory McKemie